# EXHIBIT B

Dockets.Justia.com

# CHASE ○
## Paymentech

# Facsimile

1601 Elm Street, 9th Floor
Dallas, Texas 75201
www.chasepaymentech.com

March 3, 2006

To: _David Golden_

Fax: _646-349-3272_

From: _Paul Mankins_

Phone: _214-849-2072_    Fax: (214) 849-2067

Number of pages including cover _12_

The pages comprising this facsimile contain confidential information of Paymentech, Inc. This information is intended for use solely by the individual or entity named as the recipient. Any disclosure, copying, distribution, or use of the contents of this transmission is prohibited. If you have received this transmission in error, please notify us by telephone at (214) 849-2083 immediately so that we may arrange to retrieve this transmission at no cost to you.

6/18/06

## Schedule E - 1

## Promissory Note for Postage Advances

| | |
|---|---|
| Principal Amount of Advance is: | $170,210.30 |
| Advance is Payable to: | Postmaster, Atlanta, GA |
| Advance will be made on: | 6/26/90 |
| First repayment will be made on | 7/16/90 |
| Daily Repayment amount is | $4311.47 |
| Last repayment will be made on: | 9/7/90 |

In consideration of Litle & Co. making advances for the account of MEMBER to Postmaster, Atlanta, GA., MEMBER agrees to pay on demand the Principal Amount of Advance plus accrued interest at 10% to Litle & Co., or order. Notwithstanding that such amounts are otherwise payable on demand, MEMBER agrees that (i) the Principal Amount of Advance, plus accrued interest at 10% less prior payments shall be paid in full on or before Sept. 10, 1990 and (ii) the Daily Repayments shall be deducted from daily NET PROCEEDS.

Upon a default in payment of any obligation of MEMBER under this Schedule, Litle & Co., may, upon 48 hours notice, at its option, declare all obligations of MEMBER to Litle & Co. immediately due and payable and exercise all rights and remedies available under applicable law. The rights and remedies of Litle & Co. under this Schedule are cumulative of, in addition to, and not in limitation of, any rights or remedies otherwise available to Secured Party including without limitation such other rights and remedies as may be available under the OPERATING GUIDE or MASTER MEMBERSHIP AGREEMENT. MEMBER shall pay reasonable costs of collection incurred by Secured Party, including reasonable fees of attorney.

No delay or omission on the part of Secured Party in exercising any right hereunder shall operate as a waiver of such right or of any other right. MEMBER waives presentment, demand, protest and notices of every kind and assents to any one or more extensions of time or other indulgences, to any substitutions, exchanges or releases of collateral (if any), and to the addition or release of any person primarily or secondarily liable.

Encoures, Inc.
MEMBER

ALLEN ABBOTT - VP. MARKETING
By (Type or Print Name & Title)

[signature]
Signature

6/22/90
Date

NOVUS - Expressnet, Inc. OPERATING GUIDE

June 18, 1990 - Page 11 of 11 — M-OG-11M

TOTAL P.03

## Schedule F - 1

## Security Agreement

To secure the prompt and full payment of any and all obligations, whether due or to become due, now existing or hereafter arising, of MEMBER to Litle & Co., Inc. ("Secured Party"), including without limitation those obligations arising under Schedule E - 1 of the OPERATING GUIDE for Postage Advances, MEMBER grants Secured Party a continuing security interest in all accounts, inventory, equipment, customer lists, furniture, fixtures, CARD SALES and all other tangible and intangible property of MEMBER, wherever located, now owned or hereafter acquired or arising and any and all additions, substitutions, proceeds and products thereto and thereof. All cash, deposits, instruments, sums due MEMBER from Secured Party, or other property of MEMBER in possession of Secured Party (whether for safekeeping or otherwise) shall constitute security for the obligations and may be applied or set off by Secured Party against the obligations at any time and whether or not any of the obligations are then due or other collateral is available to Secured Party.

MEMBER agrees that a copy of this security agreement may be filed as a financing statement and MEMBER agrees to take such additional acts and deliver such additional documents as Secured Party may reasonably request in order to protect, preserve and perfect the rights of Secured Party.

Upon a default in payment of any of the obligations secured hereby or performance of any obligation of MEMBER under this Schedule, Secured Party may, upon 48 hours notice, at its option, declare all obligations immediately due and payable and exercise all rights and remedies available to a secured party under applicable law. All rights and remedies of Secured Party under this Schedule are cumulative of, in addition to, and not in limitation of, any rights or remedies otherwise available to Secured Party including without limitation such other rights and remedies as may be available under the OPERATING GUIDE or MASTER MEMBERSHIP AGREEMENT. MEMBER shall pay reasonable costs of collection incurred by Secured Party, including reasonable fees of attorney.

No delay or omission on the part of Secured Party in exercising any right hereunder shall operate as a waiver of such right or of any other rights. MEMBER waives presentment, demand, protest and notices of every kind and assents to one or more extensions of time or other indulgences, to any substitutions, exchanges or releases of collateral (if any), and to the addition or release of any other person, primarily or secondarily liable.

| Exposures, Inc. | Litle & Co., Inc. |
|---|---|
| MEMBER | |
| ALLEN ABBOTT  VP MARKETING | By: JOHN E SHIREY |
| By (Type or Print Name & Title) | |
| _[signature]_ | _[signature]_ |
| Signature | Signature |
| 70 South Main St. | 54 Stiles Road |
| South Norwalk, CT 06854 | Salem, NH 03079 |
| Mailing Address | Mailing Address |
| June 15, 1990 | 6/25/90 |
| Date | Date |

Schedule F - 4

## Security Agreement

To secure the prompt and full payment of any and all obligations, whether due or to become due, now existing or hereafter arising, of MEMBER to Litle & Co., Inc. ("Secured Party"), including without limitation those obligations arising under Schedule E - 4 of the OPERATING GUIDE for Postage Advances, MEMBER grants Secured Party a continuing security interest in all accounts, inventory, equipment, customer lists, furniture, fixtures, CARD SALES and all other tangible and intangible property of MEMBER, wherever located, now owned or hereafter acquired or arising and any and all additions, substitutions, proceeds and products thereto and thereof. All cash, deposits, instruments, sums due MEMBER from Secured Party, or other property of MEMBER in possession of Secured Party (whether for safekeeping or otherwise) shall constitute security for the obligations and may be applied or set off by Secured Party against the obligations at any time and whether or not any of the obligations are then due or other collateral is available to Secured Party.

MEMBER agrees that a copy of this security agreement may be filed as a financing statement and MEMBER agrees to take such additional acts and deliver such additional documents as Secured Party may reasonably request in order to protect, preserve and perfect the rights of Secured Party.

Upon a default in payment of any of the obligations secured hereby or performance of any obligation of MEMBER under this Schedule, Secured Party may, upon 48 hours notice, at its option, declare all obligations immediately due and payable and exercise all rights and remedies available to a secured party under applicable law. All rights and remedies of Secured Party under this Schedule are cumulative of, in addition to, and not in limitation of, any rights or remedies otherwise available to Secured Party including without limitation such other rights and remedies as may be available under the OPERATING GUIDE or MASTER MEMBERSHIP AGREEMENT. MEMBER shall pay reasonable costs of collection incurred by Secured Party, including reasonable fees of attorney.

No delay or omission on the part of Secured Party in exercising any right hereunder shall operate as a waiver of such right or of any other rights. MEMBER waives presentment, demand, protest and notices of every kind and assents to one or more extensions of time or other indulgences, to any substitutions, exchanges or releases of collateral (if any), and to the addition or release of any other person, primarily or secondarily liable.

Exposures, Inc.
MEMBER

J. Randall Bourne
By (Type or Print Name & Title)

_[signature]_
Signature

70 South Main St.

South Norwalk, CT 06854
Mailing Address

June 19, 1991
Date

Schedule E - 4

# Demand Promissory Note for Postage Advances

| | |
|---|---|
| Principal Amount of Advance is: | $168,000.00 |
| Advance is Payable to: | Postmaster, Atlanta, GA |
| Advance will be made on: | 06/26/91 |
| First repayment will be made on: | 07/08/91 |
| Daily Repayment and Management Fee is: | $4412.50 |
| Last repayment will be made on: | 08/30/91 |

In consideration of Litle & Co. making advances for the account of MEMBER to Postmaster, Atlanta, GA, MEMBER agrees to pay on demand the Principal Amount of Advance plus accrued interest at 10% and $6720.00 Management Fee to Litle & Co., or order. MEMBER further agrees that all CHARGE CARD transactions from all divisions and subsidiaries will be processed by Litle & Co. while any amount owed under this note is still outstanding. Notwithstanding that such amounts are otherwise payable on demand, MEMBER agrees that (i) the Principal Amount of Advance, plus accrued interest at 10% and non-interest bearing Management Fee, less prior payments shall be paid in full on or before September 2, 1991 and (ii) the Daily Repayments shall be deducted from daily NET PROCEEDS.

Until such time as demand is made MEMBER shall make payments in accordance with the schedule above. The rights and remedies of Litle & Co. under this Schedule are cumulative of, in addition to, and not in limitation of, any rights or remedies otherwise available to Secured Party including without limitation such other rights and remedies as may be available under the OPERATING GUIDE or MASTER MEMBERSHIP AGREEMENT. MEMBER shall pay reasonable costs of collection incurred by Secured Party, including reasonable fees of attorney.

No delay or omission on the part of Secured Party in exercising any right hereunder shall operate as a waiver of such right or of any other right. MEMBER waives presentment, demand, protest and notices of every kind and assents to any one or more extensions of time or other indulgences, to any substitutions, exchanges or releases of collateral (if any), and to the addition or release of any person primarily or secondarily liable.

Exposures, Inc.
MEMBER

J. Randall Bourne

(Type or Print Name & Title)

Signature

Date 6/19/91

06/19/06 MON 14:20 FAX 214 849 2067          PAYMENTECH                                    ☒007
                                         ῟῟῟ ῟῟῟῟ ῟῟῟῟῟                                    ☒002
JUN 21 '90 15:59 CONSUMER VENTURE 209-629-2019                                             P.2

## SUBORDINATION AGREEMENT

THIS SUBORDINATION AGREEMENT, dated as of June 22, 1990 by and among EXPOSURES INC., a Delaware corporation ("Exposures"), THE CONNECTICUT BANK AND TRUST COMPANY, N.A., a national banking association (the "Bank"), CONSUMER VENTURE PARTNERS I, L.P., a Delaware limited partnership ("Consumer Venture Partnership") and FIRST BOSTON INVESTMENT LIMITED PARTNERSHIP NO. 6, a New York limited partnership ("First Boston Partnership" and together with Consumer Venture Partnership, the "Guarantors").

WHEREAS, on August 30, 1989, Exposures and the Bank entered into a Line of Credit/Grid Agreement (the "Line of Credit") and a Security Agreement (the "CBT Security Agreement");

WHEREAS, pursuant to the CBT Security Agreement, Exposures has granted to the Bank a continuing security interest (the "CBT Security Interest") in certain of its properties, including all of Exposures' accounts receivable and customer lists (Exposures' accounts receivable and customer lists, together with the proceeds thereof, but no other collateral subject to the CBT Security Interest or the Guarantors' Security Interest (defined below), are hereinafter called the "Priority Collateral");

WHEREAS, on August 30, 1989, Exposures, Consumer Venture Partners, L.P., a Delaware limited partnership ("CVP Partnership"), Consumer Venture Parallel Fund, L.P., a Delaware limited partnership ("CVPF Partnership") and First Boston Partnership entered into a Security Agreement (the "Guarantors' Security Agreement") with respect to the guarantee of the Line of Credit by CVP Partnership, CVPF Partnership and First Boston Partnership;

WHEREAS, pursuant to the Guarantors' Security Agreement, Exposures has granted to CVP Partnership, CVPF Partnership and First Boston Partnership a continuing security interest in certain of its assets (the "Guarantors' Security Interest");

WHEREAS, Consumer Venture Partnership has succeeded to all of the rights and obligations of CVP Partnership and CVPF Partnership under the Guarantors' Security Agreement;

WHEREAS, Litle & Co., Inc., a Delaware corporation ("Litle"), has agreed to make certain advances in the aggregate amount not to exceed $175,000 for the account of Exposures to Postmaster, Atlanta, Georgia and in connection therewith

-2-

Exposures has executed a security agreement dated as of the date hereof (the "Litle Security Agreement");

WHEREAS, the Bank has deemed the aforesaid advances for the account of Exposures to be in its interest as a creditor of Exposures and has entered into an amendment to the CBT Security Agreement in order to consent to the security interest granted pursuant to the Litle Security Agreement;

WHEREAS, the Guarantors have deemed the aforesaid advances for the account of Exposures to be in their respective interests as guarantors of the Line of Credit and have consented in writing to said advances; and

WHEREAS, in connection with the Litle Security Agreement, Exposures has agreed to obtain subordination of the CBT Security Interest and the Guarantors' Security Interest to Litle's security interest with respect to the Priority Collateral, but no other collateral subject to the CBT Security Interest or the Guarantors' Security Interest (as so limited, the "Litle Security Interest"), and the Bank has agreed to subordinate the CBT Security Interest and the Guarantors have agreed to subordinate the Guarantors' Security Interest to the Litle Security Interest.

NOW, THEREFORE, in consideration of the premises and the mutual promises herein contained, it is hereby agreed:

1. The Litle Security Interest shall take precedence over and have priority with respect to the CBT Security Interest and the Guarantors' Security Interest in the Priority Collateral.

2. The Bank hereby subordinates the CBT Security Interest, and the Guarantors hereby subordinate the Guarantors' Security Interest, in the Priority Collateral to and in favor of the Litle Security Interest, and any proceeds of the Priority Collateral shall be applied against amounts owing under the Litle Security Agreement, and paid over to Litle to the extent of the amount of Exposures' then-outstanding obligations to Litle secured by the Priority Collateral, prior to any application thereof against amounts owing to the Bank or to the Guarantors.

3. Neither the Bank nor the Guarantors shall institute any action or take any steps or use any means to realize upon the Priority Collateral as long as any claim made in respect to the Litle Security Interest remains unsatisfied and so long as Litle is diligently pursuing the satisfaction of its claims by, among other

-3-

things, realizing or attempting to realize upon the Priority Collateral.

4. Upon distribution of any assets of Exposures, whether by reason of sale, reorganization, liquidation, dissolution, arrangement, bankruptcy, receivership, assignment for the benefit of creditors, foreclosure or otherwise, Litle shall be entitled to receive the proceeds from the sale, collection or other disposition of the Priority Collateral until all amounts owing with respect to the Litle Security Agreement have been paid in full.

5. Neither the Bank nor the Guarantors shall sell, assign, transfer, pledge or hypothecate at any time while this Subordination Agreement remains in effect any right, claim or interest of any kind in or to any of the Priority Collateral without making such sale, assignment, transfer, pledge or hypothecation expressly subject to the terms of this Subordination Agreement.

6. The Bank, the Guarantors and Exposures will execute such further instruments and do such further acts as any party may reasonably request to effectively carry out the terms and purposes of this Subordination Agreement.

7. Nothing in this Agreement shall be deemed to affect the validity or priority of the CBT Security Interest or the Guarantors' Security Interest, except to the extent that the respective security interests of the Bank and the Guarantors in the Priority Collateral are subordinated to the Litle Security Interest hereunder. The Guarantors acknowledge that the CBT Security Interest shall take precedence over and have priority with respect to the Guarantors' Security Interest. No third party shall have any rights under this Agreement. Any failure of Litle to duly perfect its security interest under the Litle Security Agreement shall render this Subordination Agreement null and void.

8. This Subordination Agreement may be amended only by a writing signed by the parties and, if its interest is affected, by Litle. For so long as this Subordination Agreement is in effect, Exposures shall not increase the amount of the advances from Litle beyond $175,000 without the prior consent of the Bank and the Guarantors.

-4-

9. Any notice or demand required or made hereunder shall be by hand, by a nationally recognized overnight courier service or by express or certified mail, return receipt requested, to the following addresses:

   If to Exposures:

   Exposures, Inc.
   70 South Main Street
   South Norwalk, Connecticut  06854
   Attention:  Mr. J. Randall Bourne

   If to the Bank:

   The Connecticut Bank and Trust Company, N.A.
   Norwalk Commercial CTLF 015N
   Four Stamford Forum
   Stamford, CT 06901
   Attention:  Mr. John Stanley
               Vice President

   If to the Guarantors:

   Consumer Venture Partners I, L.P.
   Three Pickwick Plaza
   Greenwich, Connecticut  06830
   Attention:  Mr. Pearson C. Cummin, III

   and

   First Boston Investment Partnership No. 6
   The First Boston Corporation
   ~~Tower Forty-Nine~~ Park Avenue Plaza
   ~~12 East 49th Street~~ 55 East 52nd St.
   New York, New York  ~~10017~~ 10055
   Attention:  Mr. John F. Kenny, Jr.
               Vice President

10. This Subordination Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. This Subordination Agreement shall be binding upon, and inure to the benefit of, the parties hereto and Litle, as third party beneficiary, and their respective successors and assigns.

-5-

11. This Subordination Agreement shall be governed by, and construed and interpreted according to, the laws of the State of Connecticut.

IN WITNESS WHEREOF, the parties hereto have caused this Subordination Agreement to be executed as of the date first above written.

EXPOSURES INC.

By: _____
Its   President

CONSUMER VENTURE
PARTNERS I, L.P.

By: CONSUMER VENTURE
    ASSOCIATES, L.P.

By: _____
    General Partner

FIRST BOSTON INVESTMENT
PARTNERSHIP NO. 6

By: FBGB, INC.

By: _____
Its

THE CONNECTICUT BANK AND
TRUST COMPANY, N.A.

By: _____
Its VICE PRESIDENT

-5-

11. This Subordination Agreement shall be governed by, and construed and interpreted according to, the laws of the State of Connecticut.

IN WITNESS WHEREOF, the parties hereto have caused this Subordination Agreement to be executed as of the date first above written.

          EXPOSURES INC.

          By:_____
            Its


          CONSUMER VENTURE
          PARTNERS I, L.P.

          By: CONSUMER VENTURE
            ASSOCIATES, L.P.

          By: _/s/_____
            General Partner


          FIRST BOSTON INVESTMENT
          PARTNERSHIP NO. 6

          By: FBGB, INC.

          By:_____
            Its


          THE CONNECTICUT BANK AND
          TRUST COMPANY, N.A.

          By:_____
            Its

06/19/06 MON 14:23 FAX 214 849 2067   PAYMENTECH         ☒013
     06/21/90  15:55   ☏203 977 7301        DAY BERRY HOWARD       ☒006
                                                                   ☒006

-5-

11. This Subordination Agreement shall be governed by, and construed and interpreted according to, the laws of the State of Connecticut.

IN WITNESS WHEREOF, the parties hereto have caused this Subordination Agreement to be executed as of the date first above written.

        EXPOSURES INC.

        By:_____
          Its

        CONSUMER VENTURE
        PARTNERS I, L.P.

        By: CONSUMER VENTURE
           ASSOCIATES, L.P.

        By:_____
          General Partner

        FIRST BOSTON INVESTMENT
        PARTNERSHIP NO. 6

        By: FBCP, INC.

        By:_____
          Its  President

        THE CONNECTICUT BANK AND
        TRUST COMPANY, N.A.

        By:_____
          Its