# EXHIBIT D

Dockets.Justia.com

# CHASE 
# Paymentech

7106 63rd Street
Lubbock, Texas  79407

July 25, 2006

**To:**      David Goldin

**Company:**      AmeriMerchant

**Fax:**  (646) 349-3272


**From:**      Emma Coronado

**Phone:**      (806) 791-4831      **Fax:**  (806) 785-2424


**Number of pages to follow:**

**Re:   AdvanceMe, Inc. v. Rapidpay, LLC, et al.**

**Comments:**      Mr. Goldin received authorization from Hanover
Direct to produce the documents.

Emma

The pages comprising this facsimile contain confidential information from Chase Paymentech.
This information is intended for use solely by the individual or entity named as the recipient,
be aware that any disclosure, copying, distribution, or use of the contents of this transmission
is prohibited.  If you have received this transmission in error, please notify us by telephone
(806) 791-4831 immediately so that we may arrange to retrieve this transmission at no cost
to you.

www.chasepaymentech.com



54 Stiles Road, Salem, NH 03079 • Tel: 603/893-9333 • Fax: 603/894-5357

February 28, 1992

Mr. Robert George
Museum Publications of America
306 Dartmouth Street
Boston, MA 02116

Dear Mr. George:

The modified contract to accommodate VISA/MasterCard requirements is enclosed for your review and signature. As a recap of Bruce Alemian's letter of February 21, 1992, the primary change to the contract formalizes the role of National Processing Company , Inc. (NPC) and First National Bank of Louisville (FNBL).

While NPC and FNBL have been a part of the processing system with Litle & Co. all along, we are pleased that this involvement is being documented in the formal contractual agreement. This means you will have the contractual commitment of one of the largest merchant banks in the country.

Functionally, there is no change in the relationship between you and Litle & Co. Litle & Co. continues to be your credit card processor and will continue to work directly with you to provide a high level of customer and technical service.

Although Litle & Co. will be phoning you within a week to follow up on your review of the contract, please contact your Account Executive if you should have any immediate questions. We would appreciate your signing the 3 copies of the signature page and returning all of them to Doris Genest, the Contract Administrator at Litle & Co., as soon as possible. Please retain your copy of the contract.

Litle & Co., NPC and FNBL thank you for your assistance and co-operation, and extend our assurances that you will continue to receive the very best payment processing services.

Sincerely,

Thomas J. (Tim) Litle, Chairman
Litle & Company Inc.

Norman M. Martin
Norman M. Martin
Executive Vice President
National Processing Company

Senior Vice President
First National Bank of Louisville

07/18/2006 TUE 10:39  FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma                    @003/015

## Litle & Company

## MEMBER AGREEMENT

# AGREEMENT

THIS AGREEMENT is made and entered into by and among LITLE & COMPANY, INC. (hereinafter called 'LITLE'), a Delaware corporation with its principal office located in Salem, New Hampshire; NATIONAL PROCESSING COMPANY, INC. (hereinafter called "NPC"), an Arizona corporation with its principal office located in Louisville, Kentucky; FIRST NATIONAL BANK OF LOUISVILLE (hereinafter called 'FNBL'), a national banking association with its principal office located in Louisville, Kentucky; and the undersigned merchant (hereinafter called "MEMBER").

## WITNESSETH:

WHEREAS, FNBL is a participant in the worldwide MasterCard System, operated by MasterCard International, Inc. ("MCI"), and a participant in the worldwide Blue, White and Gold Bank Card Program, operated by VISA U.S.A., Inc.("VISA"), which systems enable holders of MasterCard and other MCI cards and VISA and other cards to purchase goods and services from selected MEMBERs through the use of BANK CARDS, and

WHEREAS, LITLE and NPC are engaged in the business of processing paper-based and electronic data representing transactions conducted through the use of CHARGE CARDS, and

WHEREAS, MEMBER desires to honor CHARGE CARDS in connection with the retail sale of PRODUCTS to MEMBER's customers, to submit SALES RECORDs and REFUNDs representing such transactions to LITLE for processing and to sell to FNBL the SALES RECORDs generated with BANK CARDs and the indebtednesses represented thereby.

NOW, THEREFORE, in consideration of these premises, the parties hereto covenant and agree as follows:

## 1. DEFINITIONS.

The following terms, when used in this AGREEMENT, shall have the meanings hereinafter set forth:

ACH (Automated Clearing House) is an electronic debit or credit to or from MEMBER's BANK ACCOUNT authorized by this AGREEMENT.

AGREEMENT is this document and related amendments, notices and revisions.

APPLICATION is the MEMBER's statement of the characteristics of its business which has induced LITLE to process MEMBER's SALES RECORDs under the terms and conditions of this AGREEMENT.

AUTHORIZATION CENTER means those facilities to be used by MEMBER for the purpose of obtaining authorization codes and instructions on handling CHARGE CARDS.

BANK ACCOUNT is MEMBER's account in MEMBER's bank within the United States, to which NET PROCEEDS will be transferred.

BANK CARD means a valid and unexpired CHARGE CARD issued by an ISSUING MEMBER of MCI or VISA which contains the MasterCard service mark or Visa's Blue, White and Gold Bank Design service mark. A BANK CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon.

BUSINESS DAY is a 24 hour period ending at 10:00 PM Eastern time. It is identified by the calendar date at the end of that period or, in the event that FNBL is not open to the public for carrying on substantially all of its banking functions on such date, it is the first subsequent date on which it is so open.

CARDHOLDER is a person to whom a CHARGE CARD is issued or who is authorized by such person to use the CHARGE CARD.

CARD ISSUER is the bank or other financial institution that issues a BANK CARD or the T&E CARD company that issues a T&E CARD.

CARD ORGANIZATION is VISA, MCI or the issuer of a T&E CARD.

CARD SALE is a sale of PRODUCTS made by MEMBER to a valid CARDHOLDER through the use of a CHARGE CARD. Each order MEMBER receives is a single CARD SALE unless the goods or services ordered cannot be delivered or completed at one time, in which case each partial delivery or completion is a CARD SALE.

CHARGE CARD is the plastic BANK CARD or T&E CARD issued by a CARD ORGANIZATION to the CARDHOLDER and the charge account number designated on the card, either of which MEMBER accepts from customers as payment for their purchases from MEMBER.

CHARGEBACK is the reversal of charge against a SALES RECORD which MEMBER has previously presented. It is generally initiated by the CARD ISSUER, often at the request of the CARDHOLDER.

CHARGEBACK DEPOSIT is an amount specified in Schedule D of this AGREEMENT and retained by FNBL. Such amount earns no compensating dividends and is used to fund CHARGEBACKs received by LITLE but not charged against GROSS PROCEEDS. FNBL has a security interest and right of set-off on such deposit to secure the payment and performance of all liabilities, obligations and indebtedness of MEMBER arising under this AGREEMENT.

CONVEYED describes those transactions which LITLE receives from one location and sends to another location and with respect to which LITLE, NFC and FNBL have no further involvement or liability.

DEPOSIT is the aggregate of SALES RECORDs and REFUNDs submitted to LITLE for processing.

GROSS PROCEEDS is an amount equal to:
   The BANK CARD SALES RECORD NET AMOUNT,
   Less the BANK CARD REFUND NET AMOUNT

GROSS RESERVE is an amount equal to:
   The aggregate amount that has been funded by PREPAYMENTS.

ISSUING MEMBER means any licensee or member of MCI or VISA which is authorized by MCI or VISA to issue BANK CARDS.

LITLE FEES are the aggregate of PASS THROUGH FEEs and PROCESSING FEES.

NET PROCEEDS is an amount equal to:
   The GROSS PROCEEDS,
   Less LITLE FEES,
   Less RELEASED CHARGEBACKs (if no RESERVE exists),
   Less any other amounts due from MEMBER to LITLE.
   Less any PREPAYMENTS.

NET RESERVE is:
   The GROSS RESERVE,
   Less CHARGEBACKs,
   Plus compensating dividends on NET RESERVEs as specified on Schedule D of the AGREEMENT,
   Less otherwise unfunded negative NET PROCEEDS.

ORIGINAL PAPER means the "Merchant" copy of a SALES RECORD or REFUND transcribed in writing on a paper form conforming to CARD ORGANIZATION rules and regulations.

PASS THROUGH FEE is the total of all charges and refunds of interchange fees, non-qualification surcharges, assessments and discounts levied by a CARD ORGANIZATION. LITLE passes these charges and refunds on to MEMBER in the same manner and amounts received by LITLE. This PASS THROUGH FEE will increase or decrease as a result of increases or decreases set by the various CARD ORGANIZATIONs.

PREPAYMENT is an amount to be paid to the RESERVE to increase the NET RESERVE and can be the result of a deduction from GROSS PROCEEDS or a payment from MEMBER.

PREPAYMENT PERCENTAGE is specified in Schedule D of this AGREEMENT and is used to calculate PREPAYMENTs deducted from the GROSS PROCEEDs or DEPOSITs MEMBER makes. The amount of the resulting PREPAYMENT is the PREPAYMENT PERCENTAGE multiplied by the GROSS PROCEEDs.

PROCESSING FEES are the fees LITLE charges MEMBER for services as specified in Schedule A of this AGREEMENT.

PRODUCTS mean those goods and services which are represented on MEMBER's application and are sold or rendered by MEMBER in connection with its usual business.

PURCHASED describes those transactions which FNBL purchases from MEMBER pursuant to this AGREEMENT.

REFUND means all documents or data used to evidence any refund or price adjustment made through the use of a CHARGE CARD.

01/18/2006 TUE 10:39   FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma                    ☑005/015

REFUND NET AMOUNT is the gross amount of all REFUNDs less the PASS THROUGH FEE s refunded for the REFUNDs.

RELEASED CHARGEBACKS are CHARGEBACKS which LITLE has received from FNBL and has determined should be charged against GROSS PROCEEDS or a RESERVE.

RESERVE is an amount retained by FNBL against which CHARGEBACKS are assessed and in which FNBL has a security interest and right of set-off to secure the payment and performance of all liabilities, obligations and indebtednesses of MEMBER arising under this AGREEMENT.

RESERVE DEFICIT is an amount by which MEMBER's NET RESERVE is less or is projected to become less than the minimum specified in Schedule D of this AGREEMENT.

RETRIEVAL REQUEST is a request by NPC for information on behalf of a CARDHOLDER or CARD ISSUER relating to a claim, complaint or inquiry concerning a CARD SALE.

SALE DATE is the effective date of the CARD SALE.

SALES RECORD means all documents or data presented to LITLE as evidence of a CARD SALE.

SALES RECORD NET AMOUNT is the gross amount of all SALES RECORDs less the PASS THROUGH FEEs charged for the SALES RECORDs.

SUBMISSION DATE is the date of the BUSINESS DAY on which MEMBER successfully completes a DEPOSIT to LITLE.

T&E CARD is a valid and unexpired Travel and Entertainment CHARGE CARD issued by American Express, Carte Blanche, Diner's Club or Discover. A T&E CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon.

## 2. HONORING BANK CARDS.

a. MEMBER shall honor all valid CHARGE CARDS when properly presented as payment for PRODUCTS; MEMBER shall not make any cash advance through the use of a CHARGE CARD. MEMBER shall display the MCI and VISA marks and symbols on promotional materials so as to inform the public that valid BANK CARDS will be honored.

b. MEMBER shall access the appropriate AUTHORIZATION CENTER to obtain authorization on all CARD SALES. If the sale is authorized by such AUTHORIZATION CENTER, the approval code evidencing such authorization shall be properly included on the SALES RECORD.

c. MEMBER shall complete each SALES RECORD to include a notation in the space provided for the CARDHOLDER's signature that the sale was initiated by mail order (MO), telephone order (TO) or pre-authorized order (PO) (except for sales made in person, for which the CARDHOLDER's signature shall be obtained); the CARDHOLDER's name and account number; the expiration date of the CHARGE CARD; the imprint of the embossed legend from the imprinter plate or electronic equivalent; the SALE DATE; the total dollar amount, including all applicable local, state and federal taxes; and a brief description of the PRODUCTS sold. MEMBER shall deliver to the CARDHOLDER a true copy of the completed SALES RECORD at the time the PRODUCTS are delivered.

d. MEMBER shall not conduct a CHARGE CARD transaction when only part of the total dollar amount due is included on a single SALES RECORD, except when the balance is paid at the time of sale in cash or by check, or both, or when otherwise allowed by CARD ORGANIZATION regulations.

e. If any merchandise is accepted for return or any services are terminated or cancelled or any price adjustment is allowed, MEMBER shall make the REFUND, replacement or adjustment to the CARDHOLDER by preparing, and shall deliver promptly to LITLE, a REFUND. MEMBER shall not make any cash refund to the CARDHOLDER but shall deliver to the customer a true copy of each REFUND completed so as to include the date of the transaction; a description of the PRODUCTS involved; the dollar amount of the credit granted including all applicable local, state and federal taxes; and the imprint of the embossed information on the CHARGE CARD and the MEMBER's imprinter plate or its electronic equivalent.

f. The amount of any REFUND shall not exceed the amount shown as the total on the original SALES RECORD except by the exact amount required to reimburse the CARDHOLDER for postage paid by the CARDHOLDER to return merchandise in accordance with a policy applied consistently by MEMBER to all customers.

g. MEMBER shall deliver to LITLE only those SALES RECORDs and REFUNDs which represent valid transactions between MEMBER and the CARDHOLDER.

## 3. PURCHASE OF BANK CARD SALES RECORDS.

a. MEMBER shall present SALES RECORDs to LITLE within two (2) BUSINESS DAYs of the SALE DATE and MEMBER shall present REFUNDs to LITLE within two (2) BUSINESS DAYS of the date when the REFUND was issued. Such SALES RECORDs and REFUNDs shall be presented in a format and in a manner acceptable to LITLE. LITLE shall deliver to NPC, in accordance with Schedule C of this AGREEMENT, the SALES RECORDs and REFUNDs so presented by MEMBER to LITLE which were generated with BANK CARDs.

b. The delivery to NPC of such BANK CARD-generated SALES RECORDs shall constitute an assignment to FNBL by MEMBER, conditional upon MEMBER's compliance with this AGREEMENT, of each such SALES RECORD and the indebtedness thereunder. In the event of loss in transit to NPC of any SALES RECORD or REFUND, MEMBER may, at its discretion, promptly deliver to LITLE or NPC a replacement SALES RECORD or REFUND, in a manner acceptable to LITLE or NPC, as the case may be.

c. FNBL agrees to purchase from MEMBER all SALES RECORDs and REFUNDs designated on Schedule B of this AGREEMENT as PURCHASED which have been generated with BANK CARDs and legibly completed in accordance with this AGREEMENT and have been successfully transmitted to NPC by LITLE on behalf of MEMBER. For transactions designated on Schedule B of this AGREEMENT as CONVEYED, MEMBER's rights with respect to payment therefor shall be governed by MEMBER's arrangements with the respective CARD ORGANIZATION.

d. Daily, LITLE shall calculate the GROSS PROCEEDS, PROCESSING FEES, PASS THROUGH FEE, RELEASED CHARGEBACKS, NET PROCEEDS and PREPAYMENT with respect to all SALES RECORDs and REFUNDs properly presented by LITLE to NPC on the preceding BUSINESS DAY.

e. LITLE shall promptly provide to NPC the results of the calculations described in Paragraph 3.d. above, in sufficient time for NPC and FNBL reasonably to meet the processing cycle set forth on Schedule C of this AGREEMENT. FNBL shall be entitled to rely upon such calculations and shall have no obligation to verify the completeness or accuracy thereof. Upon NPC's receipt of such calculations from LITLE, FNBL shall, in payment for the PURCHASED SALES RECORDs and PURCHASED REFUNDs to which such calculations relate:

1) Initiate a transfer, in an amount equal to NET PROCEEDS, to MEMBER's BANK ACCOUNT, as designated from time to time by MEMBER in writing, in accordance with the processing cycle set forth on Schedule C of this AGREEMENT. If NET PROCEEDS is a negative amount, MEMBER agrees to cure the deficiency within one (1) BUSINESS DAY. If MEMBER shall fail to so cure a deficiency FNBL may debit MEMBER's BANK ACCOUNT via ACH for such deficiency.

2) Pay to LITLE an amount equal to LITLE FEES.

3) If MEMBER maintains a RESERVE, credit such RESERVE for an amount equal to PREPAYMENT.

4) If MEMBER maintains a RESERVE, debit such RESERVE in an amount equal to RELEASED CHARGEBACKS.

f. Within three (3) BUSINESS DAYs following the close of a BUSINESS DAY on which activity occurs, LITLE will supply to MEMBER an accounting of MEMBER's NET PROCEEDS and MEMBER's T&E CARD transactions for such BUSINESS DAY. LITLE will not be responsible for any error which MEMBER does not bring to LITLE's attention within thirty (30) days from the date of such accounting.

g. For the purposes of honoring RETRIEVAL REQUESTs, MEMBER shall retain a copy of each SALES RECORD in the form of ORIGINAL PAPER for all in-person transactions and LITLE shall retain the ability to produce a readable document for all other transactions, each for a period of not less than one hundred and twenty (120) days from the transaction date. MEMBER authorizes and directs NPC to route all RETRIEVAL REQUESTs to LITLE, who shall receive same on MEMBER's behalf. LITLE or MEMBER, as the case may be, shall mail such requested item to the ISSUING MEMBER within fifteen (15) business days of the date of NPC's RETRIEVAL REQUEST.

07/25/06   TUE 16:21 FAX 603 213 5001                    ☑005/015

07/18/2006 TUE 10:39  FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma                    ☒006/015

## 4. RESERVE

a. MEMBER agrees to maintain the minimum NET RESERVE balance specified on Schedule D of this AGREEMENT after funding estimated CHARGEBACK liability to FNBL with the PREPAYMENTs specified on said Schedule D.

b. LITLE shall credit a compensating dividend to the NET RESERVE and provide to MEMBER and NPC a periodic accounting which relates the following to SUBMISSION DATEs or ranges of SUBMISSION DATEs; i) the amount of the BANK CARD-generated portion of the DEPOSITs submitted on those dates, ii) the GROSS RESERVE amounts for those dates, iii) the amounts of RELEASED CHARGEBACKs which relate to and reverse the specific SALES RECORDs submitted on those dates and iv) the resulting NET RESERVE for those dates.

c. If any periodic accounting shows that a NET RESERVE associated with a SUBMISSION DATE or range of SUBMISSION DATEs becomes less or is projected to become less than the minimum specified on Schedule D of this AGREEMENT, a RESERVE DEFICIT shall exist. Upon advice from LITLE of a RESERVE DEFICIT, FNBL shall replenish such RESERVE by withholding from future NET PROCEEDS the amount of such RESERVE DEFICIT. Upon notice from LITLE, MEMBER shall repay any remaining RESERVE DEFICIT within one (1) BUSINESS DAY by wire transfer to FNBL. FNBL may increase the PREPAYMENT PERCENTAGE as appears to it to be necessary to avoid RESERVE DEFICITs.

d. If any periodic accounting shows that a NET RESERVE associated with a SUBMISSION DATE or range of SUBMISSION DATEs is greater than and projected to remain greater than the minimum specified on Schedule D of this AGREEMENT, a rebate shall be due MEMBER. Such rebates for the affected SUBMISSION DATEs will be made no later than 15 days following the sixth full calendar month after the affected SUBMISSION DATEs. If FNBL reasonably believes a liability to third parties may exist after the sixth full calendar month, such rebates will not be made until FNBL no longer believes such liability may exist.

e. Upon termination of this AGREEMENT by any party for any reason MEMBER shall fund a RESERVE with an amount equal to the sum of the prior six (6) months' CHARGEBACKs or such other amount as LITLE and FNBL mutually deem appropriate. Such RESERVE will be administered as provided above.

## 5. CHARGEBACKS.

MEMBER authorizes and directs NPC to route all CHARGEBACK documentation to LITLE, who shall receive same on MEMBER's behalf. LITLE will review, recreate or retrieve available information which LITLE deems necessary to process CHARGEBACKs.

Notwithstanding any other provision of this AGREEMENT, FNBL is hereby authorized by MEMBER to charge daily the amount of any CHARGEBACKs or RELEASED CHARGEBACKs against each day's GROSS PROCEEDS (or, if a RESERVE exists, then against such RESERVE provided, however, should such charges exceed the balance in the RESERVE, then FNBL may charge such excess against GROSS PROCEEDS or any account of MEMBER at FNBL) and reassign the corresponding SALES RECORD to MEMBER in any of the following situations supported by reasonable evidence:

a. Where a SALES RECORD shows PRODUCTS which the customer claims were not received or have been returned to the MEMBER or the customer has a copy of a REFUND issued by the MEMBER for which the customer has not been compensated;

b. Where an authorization was required and not obtained;

c. Where any operable portion of the SALES RECORD or REFUND is missing, illegible, altered, incorrect or inconsistent;

d. Where the SALES RECORD describes goods and/or services other than PRODUCTS;

e. Where the sale was made in violation of law or applicable government regulations;

f. Where the CARDHOLDER contends that the PRODUCTS sold were defective or not of merchantable quality or that there has been a breach of warranty and the CARDHOLDER also contends an attempt of resolution was made with MEMBER;

g. Where the SALES RECORD was generated with or contains data of a card other than a BANK CARD;

h. Where the SALES RECORD is a duplicate of one previously delivered to an ISSUING MEMBER or includes PRODUCTS previously paid for by, or on behalf of, the CARDHOLDER;

i. Where the CARDHOLDER contends that he neither participated in nor authorized a mail order, telephone order or pre-authorized transaction or the BANK CARD number used in the transaction was fictitious, whether or not such transaction was properly authorized by the appropriate AUTHORIZATION CENTER;

j. Where the SALES RECORD for an in-person transaction does not contain the legible imprint of the embossed legend of a BANK CARD and the CARDHOLDER has certified that he did not make or authorize the in-person transaction;

k. Where the CARDHOLDER has submitted adequate proof that the total dollar amount shown on the SALES RECORD has been increased without his approval provided, however, the dollar amount of the CHARGEBACK shall be limited to the amount of the alleged unauthorized alteration;

l. Where the MEMBER's employee generated the SALES RECORD or REFUND under circumstances which indicate a fraudulent use of a BANK CARD;

m. Where the SALES RECORD was generated by a MEMBER location after MEMBER had received notice from LITLE or NPC that such location had been designated a "Special Merchant";

n. Where the SALES RECORD or REFUND does not contain such data as is required to comply with MCI's Rules or VISA's Operating Regulations and with federal and state billing disclosure laws and regulations relating to identification of transactions;

o. Where the SALES RECORD or REFUND was not transmitted in the manner agreed upon;

p. Where a RETRIEVAL REQUEST was made for the SALES RECORD within seven (7) years of the SALE DATE and MEMBER or LITLE, as the case may be, did not mail such requested item to the ISSUING MEMBER within fifteen (15) calendar days of the date of the RETRIEVAL REQUEST;

q. Where the SALES RECORD or REFUND does not evidence a valid transaction between MEMBER and the CARDHOLDER;

r. In any other situation where the SALES RECORD was executed or depository credit was given to MEMBER in circumstances constituting a breach of any representation or warranty of MEMBER hereunder, or any action or lack of action by MEMBER resulted in a SALES RECORD being charged back to FNBL pursuant to the terms of MCI's Rules or VISA's Operating Regulations as the same may be amended from time to time.

## 6. TITLE TO SALES RECORD.

FNBL and ISSUING MEMBERs shall have title to and the sole right to receive payment on all SALES RECORDs PURCHASED unless and until reassigned to MEMBER, in which event MEMBER may enforce collection for the balance thereof.

## 7. REPRESENTATIONS & WARRANTIES.

MEMBER represents and warrants that:

a. All financial and other information pertaining to MEMBER heretofore provided by MEMBER to LITLE is true, correct and complete as of the date hereof, and all such information hereafter provided by MEMBER to LITLE shall be true, correct and complete as of the date provided. MEMBER shall promptly advise LITLE of any material adverse change in such information.

b. Each SALES RECORD and REFUND presented for purchase hereunder shall be genuine and shall arise out of a bona fide sale of PRODUCTS in the dollar amount set forth thereon and shall not involve any element of credit for any other purpose, and the indebtedness shall not be subject to any defense, dispute, offset or counterclaim supported by reasonable evidence.

c. MEMBER shall not make any special charge to a CARDHOLDER nor require any CARDHOLDER to pay any part of any fee payable hereunder through any increase in price nor require any CARDHOLDER to pay any finance charge nor extract any special agreement or condition from a CARDHOLDER in connection with a CHARGE CARD transaction.

d. No SALES RECORD or REFUND presented for purchase hereunder has been or will be presented for purchase anywhere else.

## 8. SERVICE MARKS AND TRADEMARKS.

MEMBER may use without restriction any promotional materials which may be supplied to it in connection with this AGREEMENT and which contain the trademarks and service marks (hereinafter collectively called "Marks") owned by MCI or VISA. MEMBER may utilize such Marks in its own promotional and advertising materials without specific authorization so long as the colors, sizes and designs of such Marks as contained in the supplied materials are not altered

MPDMA-13

07/25/06    TUE 16:23 FAX 214 849 2007    ☐007

07/18/2006 TUE 10:40   FAX 603 896 8652 CHASE PAYMENTECH   ··· legal-Emma                           Ø007/015

or obscured in any way. MEMBER acknowledges that it will acquire no right, title or interest in or to any Marks or company names by virtue of this AGREEMENT.

## 9. SECURITY.

In the event of the occurrence or threat of a material adverse change in MEMBER's financial condition or of any other event which causes LITLE to reasonably deem itself insecure, or if any of MEMBER's locations shall be designated a "Special Merchant" as provided below, or if MEMBER is experiencing an excessive number of CHARGEBACKS (generally, CHARGEBACKS should not exceed a rate of 3 per 100 SALES RECORDS), LITLE may designate MEMBER as a "Special Member" and (a) cause some or all of MEMBER's GROSS PROCEEDS to be transferred as a PREPAYMENT to a RESERVE, (b) discontinue processing SALES RECORDS and REFUNDS presented by MEMBER, and/or (c) assume a continuing security interest in all of the now owned or hereafter acquired (and all products and proceeds thereof) accounts, inventory, general intangibles, chattel paper, fixtures, instruments, ownership titles, securities, trade secrets, computer programs, customer lists, tax refunds, liens, guarantees, rights, remedies and privileges pertaining to the foregoing, and is hereby authorized to sign and file financing statements evidencing such security interest.

LITLE or NPC may designate a MEMBER location a "Special Merchant" if it has reason to believe that the MEMBER (location: has committed or knowingly permitted misuse of BANK CARDs; has presented a SALES RECORD or REFUND involving a fraudulent transaction; has generated excessive numbers of transactions resulting in CHARGEBACKs, or is otherwise failing to comply with any requirement of Paragraph 2 of this AGREEMENT.

LITLE or NPC may, without terminating this AGREEMENT, cease accepting delivery of SALES RECORDS or REFUNDS from any MEMBER location which it suspects may be engaging in activity which could result in such MEMBER location being designated a "Special Merchant", provided LITLE or NPC has notified MEMBER in writing of such suspicion and the situation creating such suspicion has not been corrected to LITLE's and NPC's satisfaction within ten (10) calendar days following the date of such notice. LITLE or NPC may, without terminating the AGREEMENT, decline acceptance of SALES RECORDS for CARD SALES which are of a materially different nature than represented on MEMBER's APPLICATION.

## 10. TERMINATION.

This AGREEMENT shall have an initial term of one (1) year, commencing on the effective date hereof, and shall be automatically extended for successive one (1) year terms unless terminated by any party as provided herein. Effective upon the expiration of the initial term or any renewal term, any party may terminate this AGREEMENT upon at least ninety (90) calendar days prior advance written notice to the other parties. If any party shall default in the performance of any of its obligations hereunder and shall fail or refuse to remedy such default within ten (10) calendar days after written notice, or if any party shall breach any representation or warranty made herein, any other party may terminate this AGREEMENT immediately upon written notice to the other parties. If any party shall become insolvent, be placed in receivership, make an assignment for the benefit of creditors or seek relief or have a petition filed against it under any provision of the federal Bankruptcy Code, any other party may terminate this AGREEMENT immediately upon written notice to the other parties. No termination shall affect the rights or obligations of any party which may have arisen or accrued, or which relate to or derive from events which occurred prior to such termination including, but not limited to, MEMBER's and LITLE's obligations with respect to CHARGEBACKS and RETRIEVAL REQUESTS, MEMBER's obligation to pay all fees and charges for services provided hereunder, and all indemnity agreements contained herein. Upon termination, MEMBER shall return any materials or supplies issued by LITLE as part of this AGREEMENT.

## 11. ENTIRE AGREEMENT AND ASSIGNMENT.

This AGREEMENT, including all Schedules hereto, MCI's Rules and VISA's Operating Regulations, all as they may be amended from time to time, and operational letters, shall constitute the entire agreement of the parties. This AGREEMENT shall bind the parties, their respective successors, legal representatives and assigns. This AGREEMENT may not be assigned by any party hereto without the prior consent of each other party; provided, however, that performance of some or all of the services to be performed by NPC hereunder may be delegated by NPC to any other affiliate or subsidiary of National City Corporation.

## 12. NOTICES.

Any notices permitted or required hereunder shall be deemed given when delivered by hand, or when deposited in the United States Mail with postage prepaid or delivered prepaid to a recognized delivery service, addressed to the respective addresses shown at the end of this AGREEMENT. Any party may, by written notice to the other

parties, change from time to time the address to which notices to it are to be sent. Revisions to this AGREEMENT, including related Schedules, may from time to time be issued by LITLE on behalf of LITLE, NPC or FNBL. Such revisions shall be effective on the date so indicated thereon, except as hereinafter provided. Any adversely affected party may dispute such revisions by giving written notice thereof to LITLE within fifteen (15) days of the issuance of such revision. Should disputed revisions not be resolved to the disputing party's satisfaction within fifteen (15) days of LITLE's receipt of such notice, the disputing party may thereupon terminate this AGREEMENT upon thirty (30) days advance written notice to the other parties. In the event of such a termination, the disputed revision shall not take effect.

## 13. INDEMNITY AGREEMENTS.

a.   LITLE, NPC and FNBL shall each indemnify, defend and hold MEMBER harmless from and against any and all expenses, losses, damages, costs and liabilities incurred by MEMBER as a result of, arising from or in connection with any breach by such indemnitor of any of its respective duties or obligations under this AGREEMENT.

b.   MEMBER shall indemnify, defend and hold LITLE, NPC and FNBL, and all members and licensees of MCI and VISA, harmless from and against any and all expenses, losses, damages, costs and liabilities incurred as a result of any claim asserted because of credit disclosures on unapproved SALES RECORDs which are inconsistent with credit disclosures previously made by any ISSUING MEMBER;

c.   MEMBER shall indemnify, defend and hold LITLE, NPC and FNBL, and all members and licensees of MCI and VISA, harmless from and against any and all expenses, losses, damages, costs and liabilities arising out of or in connection with any claim, complaint or dispute asserted by cardholder with regard to PRODUCTS sold, or out of any violation by MEMBER of any applicable rule or regulation of any CARD ORGANIZATION or any federal, state or local law or regulation. Any dispute between MEMBER and cardholder shall be settled directly by MEMBER without liability to LITLE, NPC or FNBL;

d.   MEMBER shall indemnify, defend and hold LITLE, NPC and FNBL, and all members and licensees of MCI and VISA, harmless from and against any and all expenses, losses, damages, costs and liabilities incurred as a result of, arising from, or in connection with any MEMBER location engaging in any transaction which it knew or should have known to be fraudulent or not authorized by the CARDHOLDER including, but not limited to, fraudulent transactions involving the multiple imprinting of SALES RECORDs or REFUNDs or the use of counterfeit CHARGE CARDs.

## 14. FORCE MAJEURE.

Any party to this AGREEMENT shall be released from liability hereunder for failure to perform any of the obligations herein where such failure to perform occurs by reason of any act of God, fire, flood, storm, earthquake, tidal wave, sabotage, war, military operation, national emergency, mechanical or electrical breakdown, civil commotion, strike or other differences with workmen or unions, or the order, requisition, request or recommendation of any governmental agency or acting governmental authority, or any party's compliance therewith, or government provision, regulation or priority, or any other cause beyond such party's reasonable control, whether similar or dissimilar to such causes.

## 15. LOCATION LIST.

MEMBER shall provide LITLE, upon execution of this AGREEMENT, with a complete list of all its locations which MEMBER authorizes to honor CHARGE CARDS under this AGREEMENT, such list to include the correct and complete mailing addresses and complete telephone numbers in location number order. MEMBER shall provide LITLE with updates to said list promptly as changes occur.

## 16. AUDIT.

LITLE shall have the right to verify all transactions and to examine MEMBER's books, records, and other papers to the extent necessary to enable LITLE to perform its obligations and exercise its rights under this AGREEMENT. MEMBER shall furnish LITLE with such financial and other information as LITLE may request from time to time.

## 17. CONFIDENTIALITY.

a.   MEMBER shall not disclose a CARDHOLDER's account information nor other personal information to third parties other than to the MEMBER's agents for the purpose of assisting MEMBER in completing the transaction or as specifically required by law.

---

L007/015   TUE 16:24 FAX 214 849 2007                      90/52/20

07/18/2006 TUE 10:41  FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma    [Ø]008/015

b.  MEMBER, or any agent of MEMBER, shall store in an area limited to selected personnel and, prior to discarding, shall destroy in a manner rendering data unreadable, all material containing CARDHOLDER account numbers, card imprints, such as SALES RECORDs and REFUNDs, transaction agreements and carbons.

c.  Each party hereto agrees to hold in confidence, and to use only in connection with performance of its obligations hereunder, all confidential or proprietary information of any other party which it receives or gains access to in connection with this AGREEMENT and to use reasonable efforts to ensure such confidence by its employees with access to such information.

d.  The provisions of this Paragraph 17 shall survive the termination of this AGREEMENT.

## 18.    GOVERNING LAW.

This AGREEMENT shall be governed by and construed in accordance with the internal laws of the Commonwealth of Kentucky. If any provision of this AGREEMENT shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.  In any action to enforce any obligation under this AGREEMENT, the losing party shall pay all costs, expenses and reasonable attorneys' fees of the prevailing party.

## 19.    NO JOINT VENTURE

Nothing contained in this AGREEMENT shall be deemed or construed to create a co-partnership or joint venture between or among any of the parties hereto.

07/25/06  TUE 16:25 FAX 214 849 2087

07/18/2006 TUE 10:41  FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma                                   @009/015

## Schedule A

### Fees

**The pricing below makes the following assumptions:**

All CHARGE CARD transactions from all divisions and subsidiaries will be processed by LITLE's Payment Processing Division.

The average value of your DEPOSIT items will be $108.00.

MEMBER will process approximately 54,000 SALES RECORDs and REFUNDs with LITLE annually.

### PROCESSING FEES

| | |
|---|---|
| Per BANK CARD Transaction | $.40 |
| Per T&E CARD Transaction | .15 |
| Per CPU Authorization | .05 |
| Per Voice Authorization | .65 |
| Per Voice AVS | .90 |
| Per CHARGEBACK Processed/Represented | 2.50 |
| ACH Funds Transfer | 2.50 |
| Postage, Supplies, Equipment & Other Services | Charged as used |

### PASS THROUGH FEES

The current BANK CARD PASS THROUGH FEEs as of April, 1991 are as follows:

**For Direct Marketing DEPOSITs:**

| Classification | VISA | MasterCard |
|---|---|---|
| TIIF I/Merit 2 | 1.50% | 1.50% + $.07 |
| Standard/Standard | 1.91% + $.106 | 2.08% + $.08 |
| Dues & Assessments | .069% + $.0022 | .090% |

The criteria to qualify for these rates are:

TIIF I/Merit 2 - Authorized SALES RECORD deposited within 3 days of SALE DATE. This is the rate for which Direct Marketing DEPOSITs will most often qualify when LITLE receives a DEPOSIT file within one day of the SALE DATE.

Standard - DEPOSITs which do not meet the above criteria.

07/18/2006 TUE 10:41  FAX 603 896 8652 CHASE PAYMENTECH →→→ legal-Emma                    ☑010/015

## Schedule B

## Operating Procedures

**Contract Administration:**

The Designees named below are the Contract Administrators and may be changed from time to time by notification to the other parties.

Robert George_____                    Doris Genest_____

MEMBER Contract Administrator                     LITLE Contract Administrator


Pegge Flaherty_____                    Pegge Flaherty_____

NPC Contract Administrator                         FNBL Contract Administrator


**CHARGE CARDs Processed:**

| CARD ORGANIZATION | Transaction Type |
|---|---|
| Visa | Authorized and PURCHASED |
| MasterCard | Authorized and PURCHASED |
| American Express | Authorized and CONVEYED |
| Discover | Authorized and CONVEYED |


**Order Transmission:**

LITLE will receive MEMBER authorization requests and LITLE will transmit authorization replies back to MEMBER. LITLE will receive MEMBER DEPOSIT and REFUND file transmissions which LITLE will present as DEPOSITs to the various CARD ORGANIZATIONs for settlement.

If via Point of Sale Data Capture Terminal, MEMBER will transmit authorization requests to AUTHORIZATION CENTER, who will then transmit authorization replies back. Upon MEMBER's settlement of the Terminal, MEMBER will transmit shipment confirmations and REFUNDS to AUTHORIZATION CENTER, which LITLE will receive the following day and convey as DEPOSITS to the various CARD ORGANIZATIONS for settlement.

07/18/2006 TUE 10:41  FAX 603 896 8652 CHASE PAYMENTECH →→→ legal-Emma                      ☑011/015

# Schedule  C

## Processing  Cycle

| Event | Business Day |
|---|---|
| LITLE receives MEMBER's authorization requests | Monday |
| MEMBER receives the authorization replies from LITLE | Monday |
| LITLE receives MEMBER DEPOSIT file following shipments | Monday |
| LITLE transmits DEPOSIT file to NPC | Monday |
| MEMBER receives NET PROCEEDS from FNBL | Wednesday |

The above is an example of an order keyed on a Monday.  Orders keyed on other days will follow the same schedule relative to that day.  Non-bank days (holidays and weekends) are not counted in the DEPOSIT schedule but authorizations may be obtained at any time.  Note:  If transmission is by Data Capture Terminal MEMBER will receive funds one day later than shown in the table above.

07/25/06 TUE 16:26 FAX 214 849 2067                                 PAYMENTECH

07/18/2006 TUE 10:41  FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma                    ☑012/015

## Schedule D

### Reserve

**PREPAYMENTs:**

No PREPAYMENTs will be required.

**CHARGEBACK DEPOSIT:**

No CHARGEBACK DEPOSIT will be required.

**NET CHARGEBACK RESERVE:**

Minimum NET CHARGEBACK RESERVE                                    $75,000.00

☑012          PAYMENTECH          07/25/06  TUE 16:26 FAX 214 849 2067

07/18/2006 TUB 10:41  FAX 603 896 8652 CHASE PAYMENTECH →→→ legal-Emma        ☒013/015

# MEMBER AGREEMENT

### (Member Copy)

This AGREEMENT shall take effect as of the date last signed below.

Agreed to by:

Museum Publications of America
MEMBER

306 Dartmouth Street, Boston, MA 02116
Address

By, Title (type or print) _Albert S. Gordon_

By (authorized signature)

Date _05/27/92_

Agreed to by:

Litle & Company, Inc.

54 Stiles Road, Salem, NH 03079

John E. Shirey, V.P. Finance, & Administration

Date _6/3/92_

Agreed to by:

National Processing Company

1231 Durrett Lane, Louisville, KY 40285

Norman M. Martin, Executive Vice President

Date JUN 0 9 1992

Agreed to by:

First National Bank of Louisville

Louisville, KY

Norman M. Martin, Senior Vice President

Date JUN 0 9 1992

07/18/2006 TUE 10:41  FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma                    Ø014/015

# MEMBER AGREEMENT

(Litle Copy)

This AGREEMENT shall take effect as of the date last signed below.

Agreed to by:                                          Agreed to by:

Museum Publications of America                         Litle & Company, Inc.
MEMBER

300 Dartmouth Street, Boston, MA 02116                 54 Stiles Road, Salem, NH 03079
Address

By (authorized signature), CEO                         John E. Shiley, V.P. Finance & Administration
                                                       6/3/92
By (authorized signature)                              Date
Robert S. borden

Date 05/18/92

                                                       Agreed to by:

                                                       National Processing Company

                                                       1231 Durrett Lane, Louisville, KY  40285

                                                       Norman M. Martin, Executive Vice President

                                                       Date  JUN 0 9 1992

                                                       Agreed to by:

                                                       First National Bank of Louisville

                                                       Louisville, KY

                                                       Norman M. Martin, Senior Vice President

                                                       Date  JUN 0 9 1992

07/18/2006 TUE 10:41  FAX 603 896 8652 CHASE PAYMENTECH +++ legal-Emma                    @015/015

# MEMBER AGREEMENT

### (FNBL/NPC Copy)

This AGREEMENT shall take effect as of the date last signed below.

Agreed to by:                                    Agreed to by:

Museum Publications of America                   Litle & Company, Inc.
MEMBER

306 Dartmouth Street, Boston, MA 02116           54 Stiles Road, Salem, NH 03079
Address

By, Title (type or print)                        JOHN E. SHILEY, V.P. Finance & Administration

By (signature)                                   Date        6/3/92

Date        5/19/91

                                                 Agreed to by:

                                                 National Processing Company

                                                 1231 Durrett Lane, Louisville, KY  40285

                                                 Norman M. Martin, Executive Vice President

                                                 Date        JUN 0 9 1992

                                                 Agreed to by:

                                                 First National Bank of Louisville

                                                 Louisville, KY

                                                 Norman M. Martin, Senior Vice President

                                                 Date        JUN 0 9 1992

---

07/18/2006 TUE 11:18  FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma                    ☑004/036

# Boston Publishing Company, Inc.

306 Dartmouth Street, Boston, Massachusetts 02116
Telephone: (617) 267-8800 Fax: (617) 267-8801

Robert J. George
*President*

February 17, 1994

Mr. Michael P. Duffy
Vice President
Litle & Co.
54 Stiles Road
Salem, New Hampshire  03079

First U.S.A. Merchant Services, Inc.
2001 Bryan Tower, 10th Floor
Dallas, Texas  75201

Re:  Boston Publishing Company, Inc.
Litle Agreement dated 6/8/90

Dear Michael:

As you know, for some time now we have been working to arrange a line of credit to assist us in financing inventory.  I am pleased to report that we have now established a $3 million line.  The lender is Hanover Finance Corporation (a subsidiary of Hanover Direct).

Under the terms of our agreement with Hanover, Boston Publishing will be able to borrow amounts equal to 50% of the value of our inventory and up to 80% of the value of our receivables.  Listed as one of our receivables, of course, is money we receive from Litle & Co. It is important that we be able to include this sum in our arrangements with Hanover so that we can make full use of the credit facility being made available to us.  Adding depth to our inventory will enable us to reduce backorders, increase sales and improve customer service.

As security for the obligations of Boston Publishing (the Borrower) under such financing agreements, Hanover Finance is being granted a security interest in our inventory, certain accounts and substantially all of the tangible and intangible personal property of Boston Publishing, including, without limitation, all rights of the Borrower to receive payments in respect of Card Sales from Litle & Co. As a condition to providing financing to Boston Publishing, Hanover Finance is requiring Boston Publishing to obtain your agreement to the provisions of this letter agreement.

Accordingly, we are requesting that you hereby agree with Boston Publishing and Hanover Finance as follows:

ـ

٣

1.    Upon written instruction from Hanover Finance or assignees of Hanover Finance, designated in writing by Hanover Finance, without further action by Boston Publishing, you will make all payments of Net Proceeds or any other credits, reserves, deposits, balances, refunds or other amounts now or hereafter due to Boston Publishing under the Member Agreement in respect of Card Sales directly by wire transfer, to such account or accounts as Hanover Finance may designate in writing (the "Accounts").

2.    Hanover Finance acknowledges that its security interest in the rights of the Borrower to payment pursuant to the Agreement is subject to your rights to set off certain amounts for fees and other amounts due to you under the Agreement to the extent provided therein, and is further subject to the rights of Litle & Co. to payment under a demand promissory note, dated January 21, 1994, the principal amount of which outstanding at the date hereof is $179,220.28, and a demand promissory note, dated January 28, 1994, the principal amount of which outstanding at the date hereof is $112,551.59, and to interest thereunder (the "Promissory Note Obligations"). ~~You may not make debits to or claims against the Accounts.~~ ◊◊◊

3.    Each of you acknowledges and agrees that you have no security interest in or lien on the Net Proceeds or any other property of Boston Publishing, notwithstanding any provision of the Member Agreement to the contrary, except in respect of the Promissory Note Obligations and as limited in the promissory notes related thereto.

4.    The provisions of this letter agreement cannot be modified or rescinded without our prior written consent. Our rights hereunder are assignable, upon written notice to the parties hereto at the addresses specified herein or such other addresses as shall be designated in writing. The signature of the Borrower set forth below indicates its consent to the terms hereof.

If the foregoing is acceptable to you, please acknowledge your agreement to acceptance of this letter agreement by duly signing and returning a copy of this letter, it being agreed that this letter agreement may be executed in counterparts.

Very truly yours,

BOSTON PUBLISHING COMPANY, INC.

By: _____
Title: _____President_____

Acknowledged and agreed to this
23 day of February, 1994.

LITLE & CO.

By: _____
Title: ____VP Finance_____

(↻)

Acknowledged and agreed to this
___ day of February, 1994.

FIRST U.S.A. MERCHANT SERVICES, INC.

By: _____
Title: _____

07/18/2006 TUE 11:22  FAX 603 896 8652 CHASE PAYMENTECH →→→ legal-Emma                    ☒006/036



*2/24/94*

*FAXED to*
*BoB George 617-267-8801*
*+*
*michael Riccio*
*617-951-1295*

54 Stiles Road, Salem, NH 03079 • Tel: 603/893-9333 • Fax: 603/894-5357

February 24, 1994

Mr. Michael Riccio
Hutchins & Wheeler
101 Federal Street, 30th Floor
Boston, Ma. 02110

Dear Mr. Riccio

Based on the established relationship between Boston Publishing Company, Inc. and Hanover Finance Corporation , Litle & Co. agrees to release certain UCC filings as follows.

Litle & Co. will release a UCC filing dated 2/2/94, 9:32 am , filing number 213656 which is secured by a note between Litle & Co. and Museum Publications of America, signed 1/20/94 on the date that the debt is paid in full. The scheduled date of last payment is 3/4/94.

Litle & Co. will release a UCC filing dated 2/7/94, 10:06 am , filing number 214470 which is secured by a note between Litle & Co. and Museum Publications of America, signed 1/31/94 on the date that the debt is paid in full. The scheduled date of last payment is 3/11/94.

Litle & Co will release these UCC accordingly through the Secretary of State, Commonwealth of Massachusetts.

If I can be of further service or should you have any concerns please feel free to contact me at 603-893-9333 ext. 357.

Very Truly Yours,

Michael P. Duffy
Vice President

07/18/2006 TUB 11:23  FAX 603 896 8652 CHA5B PAYMENTECH  →→→ legal-Emma                    ☒007/036

## Schedule E-1

## Demand Promissory Note for Postage Advances

| | |
|---|---|
| Principle Amount of Advance is: | $204,224.48 |
| Management Fee: | $9190.52 |
| Advance is Payable to: | United States Postmaster |
| | Saratoga Springs, NY |
| Advance will be made on: | September 17, 1993 |
| First repayment will be made on: | October 4, 1993 |
| Daily Repayment: | See repayment schedule |
| Last repayment will be made on: | November 19, 1993 |

In consideration of Litle & Co. making advances for the account of MEMBER to United States Postal Service, MEMBER agrees to pay on demand the Principal Amount of Advance plus management fee to Litle & Co., or order. MEMBER further agrees that all CHARGE CARD transactions from all divisions and subsidiaries will be processed by Litle & Co. while any amount owed under this note is still outstanding. Notwithstanding that such amounts are otherwise payable on demand, MEMBER agrees that (i) the Principal Amount of Advance, plus management fee shall be paid in full on or before November 19, 1993, (ii) the Daily Repayments shall be deducted from daily NET PROCEEDS and (iii) the repayments will be applied to the Management Fee first then to the outstanding Principal amount.

Until such time as demand is made MEMBER shall make payments in accordance with the schedule above. The rights and remedies of Litle & Co. under this Schedule are cumulative of, in addition to, and not in limitation of, any right or remedies otherwise available to Secured Party including without limitation such other rights and remedies as may be available under the MASTER MEMBER AGREEMENT. MEMBER shall pay reasonable costs of collection incurred by Secured Party, including reasonable fees of attorney.

No delay or omission on the part of Secured Party in exercising any right hereunder shall operate as a waiver of such right or any other right. MEMBER waives presentment, demand, protest and notices of every kind and assents to any one or more extensions of time or other indulgences, to any substitutions, exchanges or releases of collateral (if any), and to the addition or release of any person primarily or secondarily liable.

Guaranteed personally by:

Museum Publications of America
MEMBER

Robert J George
Individual (type or print)

306 Dartmouth Street, Boston, MA 02116
Address

138 FARM Rd SHerborn MA 01770
Address

Robert J George, President
By (type or print name & title)

By (signature)

By (authorized signature)

9-27-93
Date

9-27-93
Date

PPDMA-13

413906 – Museum Publications of America MEMBER AGREEMENT                    September 17, 1993- Page 14 of 15

07/18/2006 TUE 11:24   FAX 603 896 8652 CHASE PAYMENTECH   →→→ legal-Emma                    @008/036

## Schedule  F-1

## Security Agreement

To secure the prompt and full payment of any and all obligations, whether due or to become due, now existing or hereafter arising, of MEMBER to Litle & Co., Inc. ("Secured Party"), including without limitation those obligations arising under Schedule E-1 of the MEMBER AGREEMENT for Postage Advances, MEMBER grants Secured Party a continuing security interest in all accounts, inventory, equipment, customer lists, furniture, fixtures, CARD SALES, and all other tangible and intangible property of MEMBER, wherever located, now owned or hereafter acquired or arising and any and all additions, substitutions, proceeds and products thereof and thereof. All cash, deposits, instruments, sums due MEMBER from Secured Party, or other property of MEMBER in possession of Secured Party (whether for safekeeping or otherwise) shall constitute security for the obligations and may be applied or set off by Secured Party against the obligations at any time and whether or not any of the obligations are then due or other collateral is available to Secured Party.

MEMBER agrees that a copy of this security agreement may be filed as a financing statement and MEMBER agrees to take such additional acts and deliver such additional documents as Secured Party may reasonably request in order to protect, preserve and perfect the rights of Secured Party.

Upon a default in payment of any of the obligations secured hereby or performance of any obligation of MEMBER under this Schedule, Secured Party may, upon 48 hours notice, at its option, declare all obligations immediately due and payable and exercise all rights and remedies available to a secured party under applicable law. All rights and remedies of Secured Party under this Schedule are cumulative of, in addition to, and not in limitation of, any rights or remedies otherwise available to Secured Party including without limitation such other rights and remedies as may be available under the MASTER MEMBER AGREEMENT. MEMBER shall pay reasonable costs of collection incurred by Secured Party, including reasonable fees of attorney.

No delay or omission on the part of Secured Party in exercising any right hereunder shall operate as a waiver of such right or any other rights. MEMBER waives presentment, demand, protest and notices of every kind an assents to one or more extensions of time or other indulgences, to any substitutions, exchanges or releases of collateral (if any), and to the addition or release of any other person, primarily or secondarily liable.

Museum Publications of America
MEMBER

306 Dartmouth Street, Boston, MA  02116
Address

Robert J George, President
By (type or print name & title)

By (authorized signature)

9-27-93
Date

07/25/06 TUE 16:30 FAX 214 849 2067   PAYMENTECH

07/18/2006 TUB 11:26  FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma              ☒009/036

REPAYMENT SCHEDULE

Repayment Schedule for Museum Publications of America - 413906

| Week Of | % of Volume | Weekly Pymt. | Daily Payment |
|---|---|---|---|
| 4-Oct | 22.26% | 47515.65 | 9503.13 |
| 11-Oct | 24.14% | 51515.48 | 10303.10 |
| 18-Oct | 14.92% | 31847.51 | 6369.50 |
| 25-Oct | 13.19% | 28148.64 | 5629.73 |
| 1-Nov | 9.84% | 21006.51 | 4201.30 |
| 8-Nov | 8.74% | 18645.34 | 3729.07 |
| 15-Nov | 6.90% | 14735.86 | 2947.17 |
| | 100.00% | $213,415 | |

Daily payment amounts are for all five days of the week.
Litle management fee taken out of first payment

07/25/06 TUE 16:31 FAX 214 849 2061

07/18/2006 TUE 11:27  FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma          ☒010/036

**Schedule E-2**

## Demand Promissory Note for Postage Advances

| | |
|---|---|
| Principle Amount of Advance is: | $140,946.13 |
| Management Fee: | $6,342.87 |
| Advance is Payable to: | United States Postmaster |
| | Saratoga Springs, NY |
| Advance will be made on: | October 5, 1993 |
| First repayment will be made on: | October 18, 1993 |
| Daily Repayment: | See repayment schedule |
| Last repayment will be made on: | December 3, 1993 |

In consideration of Litle & Co. making advances for the account of MEMBER to United States Postal Service, MEMBER agrees to pay on demand the Principal Amount of Advance plus management fee to Litle & Co., or order. MEMBER further agrees that all CHARGE CARD transactions from all divisions and subsidiaries will be processed by Litle & Co. while any amount owed under this note is still outstanding. Notwithstanding that such amounts are otherwise payable on demand, MEMBER agrees that (i) the Principal Amount of Advance, plus management fee  shall be paid in full on or before December 3, 1993, (ii) the Daily Repayments shall be deducted from daily NET PROCEEDS and (iii) the repayments will be applied to the Management Fee first then to the outstanding Principal amount.

Until such time as demand is made MEMBER shall make payments in accordance with the schedule above. The rights and remedies of Litle & Co. under this Schedule are cumulative of, in addition to, and not in limitation of, any right or remedies otherwise available to Secured Party including without limitation such other rights and remedies as may be available under the MASTER MEMBER AGREEMENT. MEMBER shall pay reasonable costs of collection incurred by Secured Party, including reasonable fees of attorney.

No delay or omission on the part of Secured Party in exercising any right hereunder shall operate as a waiver of such right or any other right. MEMBER waives presentment, demand, protest and notices of every kind and assents to any one or more extensions of time or other indulgences, to any substitutions, exchanges or releases of collateral (if any), and to the addition or release of any person primarily or secondarily liable.

Guaranteed personally by:

Museum Publications of America
MEMBER

306 Dartmouth Street, Boston, MA  02116
Address

Robert J George, President
By (type or print name & title)

By (authorized signature)

Date  10-20-93

Individual (type or print)  Robert George

Address  138 Farm Rd  Sherborn MA 01770

By (signature)

Date  10-20-93

☒022          PAYMENTECH          07/25/06 TUE 16:31 FAX 214 849 2067

07/18/2006 TUE 11:28  FAX 603 896 8652 CHASE PAYMENTECH  --- legal-Emma                           ☑011/036

## Schedule F-2

## Security Agreement

To secure the prompt and full payment of any and all obligations, whether due or to become due, now existing or hereafter arising, of MEMBER to Litle & Co., Inc. ("Secured Party"), including without limitation those obligations arising under Schedule E-2 of the MEMBER AGREEMENT for Postage Advances, MEMBER grants Secured Party a continuing security interest in all accounts, inventory, equipment, customer lists, furniture, fixtures, CARD SALES and all other tangible and intangible property of MEMBER, wherever located, now owned or hereafter acquired or arising and any and all additions, substitutions, proceeds and products thereto and thereof. All cash, deposits, instruments, sums due MEMBER from Secured Party, or other property of MEMBER in possession of Secured Party (whether for safekeeping or otherwise) shall constitute security for the obligations and may be applied or set off by Secured Party against the obligations at any time and whether or not any of the obligations are then due or other collateral is available to Secured Party.

MEMBER agrees that a copy of this security agreement may be filed as a financing statement and MEMBER agrees to take such additional acts and deliver such additional documents as Secured Party may reasonably request in order to protect, preserve and perfect the rights of Secured Party.

Upon a default in payment of any of the obligations secured hereby or performance of any obligation of MEMBER under this Schedule, Secured Party may, upon 48 hours notice, at its option, declare all obligations immediately due and payable and exercise all rights and remedies available to a secured party under applicable law. All rights and remedies of Secured Party under this Schedule are cumulative of, in addition to, and not in limitation of, any rights or remedies otherwise available to Secured Party including without limitation such other rights and remedies as may be available under the MASTER MEMBER AGREEMENT. MEMBER shall pay reasonable costs of collection incurred by Secured Party, including reasonable fees of attorney.

No delay or omission on the part of Secured Party in exercising any right hereunder shall operate as a waiver of such right or any other rights. MEMBER waives presentment, demand, protest and notices of every kind an assents to one or more extensions of time or other indulgences, to any substitutions, exchanges or releases of collateral (if any), and to the addition or release of any other person, primarily or secondarily liable.

Museum Publications of America
MEMBER

306 Dartmouth Street, Boston, MA  02116
Address

Robert J George, President
By (type or print name & title)

By (authorized signature)

10 - 20 - 97
Date

PPDMA-13
07/25/06 TUE 16:32 FAX 214 849 2067

07/18/2006 TUE 11:30  FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma                     ☒012/036

Repayment II

## REPAYMENT SCHEDULE II

Repayment Schedule for Finishing Touches - 413906 ( Museum Publications of America)

| Week Of | % of Volume | Weekly Payment | Daily Payment |
|---------|-------------|----------------|---------------|
| 18-Oct  | 13.65%      | $20,098        | $4,019.52     |
| 25-Oct  | 15.82%      | $23,304        | $4,660.75     |
| 1-Nov   | 18.31%      | $26,962        | $5,392.35     |
| 8-Nov   | 19.72%      | $29,049        | $5,809.79     |
| 15-Nov  | 13.15%      | $19,366        | $3,873.18     |
| 22-Nov  | 9.86%       | $14,524        | $2,904.90     |
| 29-Nov  | 9.50%       | $13,987        | $2,797.31     |
|         |             | $147,289       |               |

☒024                                PAYMENTECH              07/25/06 TUE 16:32 FAX 214 849 2067

07/18/2006 TUB 11:31  FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma                    ☑013/036

| 4. ☐ Filed for record in the real estate records. | | 5. ☐ Debtor is a Transmitting Utility. | 6. No. of Additional Sheets Presented: |
|---|---|---|---|
| 1. Debtor(s) (Last Name First) and address(es)<br><br>**Museum Publications<br>of America<br>306 Dartmouth Street<br>Boston, MA  02116.** | 2. Secured Party(ies) and address(es)<br><br>**Litle & Company, Inc.<br>54 Stiles Road<br>Salem, NH  03079** | | 3. For Filing Officer (Date, Time, Number, and Filing Office)<br><br>**213656** |

7. This financing statement covers the following types (or items) of property:

## SEE ATTACHED SECURITY AGREEMENT

## E3 & F3



☐ Products of Collateral are also covered.

**TERMINATION STATEMENT**

This statement of termination of financing is presented to a filing officer for filing pursuant to the Uniform Commercial Code. The Secured Party certifies that the Secured Party no longer claims a security interest under the financing statement bearing the file number shown above.

Dated: . . . . . . . . . . . . . . . . . . . . . . . , 19 . . .         By: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                                                                              Signature(s) of Secured Party (Or Assignee)

Filing Officer Copy — Acknowledgment — Filing officer make sure filing information is in Box 3 before returning this copy to filer.

07/25/06 TUE 16:33 FAX 214 949 2607

07/18/2006 TUE 11:32   FAX 603 896 8652 CHASE PAYMENTECH   →→→ legal-Emma                    ☑014/036

## Schedule E-3

## Demand Promissory Note for Postage Advances

| | |
|---|---|
| Principle Amount of Advance is: | $179,220.28 |
| Management Fee: | $8,064.91 |
| Advance is Payable to: | United States Postmaster |
| | Saratoga Springs, NY |
| Advance will be made on: | January 21, 1994 |
| First repayment will be made on: | January 31, 1994 |
| Daily Repayment: | See repayment schedule |
| Last repayment will be made on: | March 4, 1994 |

In consideration of Litle & Co. making advances for the account of MEMBER to United States Postal Service, MEMBER agrees to pay on demand the Principal Amount of Advance plus management fee to Litle & Co., or order. MEMBER further agrees that all CHARGE CARD transactions from all divisions and subsidiaries will be processed by Litle & Co. while any amount owed under this note is still outstanding. Notwithstanding that such amounts are otherwise payable on demand, MEMBER agrees that (i) the Principal Amount of Advance, plus management fee shall be paid in full on or before March 4, 1994, (ii) the Daily Repayments shall be deducted from daily NET PROCEEDS and (iii) the repayments will be applied to the Management Fee first then to the outstanding Principal amount.

Until such time as demand is made MEMBER shall make payments in accordance with the schedule above. The rights and remedies of Litle & Co. under this Schedule are cumulative of, in addition to, and not in limitation of, any right or remedies otherwise available to Secured Party including without limitation such other rights and remedies as may be available under the MASTER MEMBER AGREEMENT. MEMBER shall pay reasonable costs of collection incurred by Secured Party, including reasonable fees of attorney.

No delay or omission on the part of Secured Party in exercising any right hereunder shall operate as a waiver of such right or any other right. MEMBER waives presentment, demand, protest and notices of every kind and assents to any one or more extensions of time or other indulgences, to any substitutions, exchanges or releases of collateral (if any), and to the addition or release of any person primarily or secondarily liable.

Guaranteed personally by:

| | |
|---|---|
| Museum Publications of America | ROBERT   J.   GEORGE |
| MEMBER | Individual (type or print) |
| | |
| 306 Dartmouth Street, Boston, MA 02116 | 138  FARM  Rd,  SHERBORN  MA |
| Address | Address          01770 |
| | |
| Robert J George, President | |
| By (type or print name & title) | By (signature) |
| | |
| By (authorized signature) | 1-20-94 |
| | Date |
| 1/20/94 | |
| Date | |

07/25/06  TUE 16:33 FAX 214 849 2007

## Schedule F-3

## Security Agreement

To secure the prompt and full payment of any and all obligations, whether due or to become due, now existing or hereafter arising, of MEMBER to Litle & Co., Inc. ("Secured Party"), including without limitation those obligations arising under Schedule E-3 of the MEMBER AGREEMENT for Postage Advances, MEMBER grants Secured Party a continuing security interest in all accounts, inventory, equipment, customer lists, furniture, fixtures, CARD SALES and all other tangible and intangible property of MEMBER, wherever located, now owned or hereafter acquired or arising and any and all additions, substitutions, proceeds and products thereto and thereof. All cash, deposits, instruments, sums due MEMBER from Secured Party, or other property of MEMBER in possession of Secured Party (whether for safekeeping or otherwise) shall constitute security for the obligations and may be applied or set off by Secured Party against the obligations at any time and whether or not any of the obligations are then due or other collateral is available to Secured Party.

MEMBER agrees that a copy of this security agreement may be filed as a financing statement and MEMBER agrees to take such additional acts and deliver such additional documents as Secured Party may reasonably request in order to protect, preserve and perfect the rights of Secured Party.

Upon a default in payment of any of the obligations secured hereby or performance of any obligation of MEMBER under this Schedule, Secured Party may, upon 48 hours notice, at its option, declare all obligations immediately due and payable and exercise all rights and remedies available to a secured party under applicable law. All rights and remedies of Secured Party under this Schedule are cumulative of, in addition to, and not in limitation of, any rights or remedies otherwise available to Secured Party including without limitation such other rights and remedies as may be available under the MASTER MEMBER AGREEMENT. MEMBER shall pay reasonable costs of collection incurred by Secured Party, including reasonable fees of attorney.

No delay or omission on the part of Secured Party in exercising any right hereunder shall operate as a waiver of such right or any other rights. MEMBER waives presentment, demand, protest and notices of every kind an assents to one or more extensions of time or other indulgences, to any substitutions, exchanges or releases of collateral (if any), and to the addition or release of any other person, primarily or secondarily liable.

Museum Publications of America
**MEMBER**

306 Dartmouth Street, Boston, MA  02116
**Address**

Robert J George, President
**By (type or print name & title)**

**By (authorized signature)**

1-20-97
**Date**

PPDMA-13

07/18/2006 TUE 11:35  FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma                      Ø016/036

## REPAYMENT

Repayment Schedule forMuseum Collections

| Week Of | % of Volume | Weekly Payment | Daily Payment |
|---------|-------------|----------------|---------------|
| 31-Jan  | 9.61%       | $17,998        | $3,599.62     |
| 7-Feb   | 24.95%      | $46,728        | $9,345.52     |
| 14-Feb  | 30.24%      | $56,635        | $11,327.00    |
| 21-Feb  | 21.76%      | $40,753        | $8,150.64     |
| 28-Feb  | 13.44%      | $25,171        | $5,034.22     |
|         | 100.00%     | $187,285       |               |

Daily payment amounts are for all five days of the week
Litle Management fee are taken out of first payments

07/18/2006 TUE 11:35  FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma                    ☑017/036



54 Stiles Road, Salem, NH 03079 • Tel: 603/893-9333 • Fax: 603/894-5357

January 19, 1994

Mr. Robert J. George
Museum Publications of America
306 Dartmouth Street
Boston, MA 02116

Dear Mr. George:

Enclosed are the original copies of your contract Schedules E-3 and F-3.  Please sign both pages and fax them to us as soon as possible.  Once the faxed copies are received, a check will be issued.  In order to keep Museum Publications' contract file complete, we ask that you mail the original signature pages to us at your earliest convenience.

Also enclosed, is a copy of Museum Publications' repayment schedule.  If you have any questions, please contact Lynda Fiala at (603) 893-9333 extension 402.  Thank you for your anticipated co-operation.

Sincerely,


Michael P. Duffy
Vice President of Finance and Administration

MPD/mgp

Enclosures

07/18/2006 TUE 11:36  FAX 603 896 8652 CHASE PAYMENTECH →→→ legal-Emma    ☑010/036

JAN 19 '94 16:13 MUSEUM PUBLICATIONSA    P.1/1

# THIRD CLASS POSTAL ESTIMATE

**SITE: LONDON COLLECTIONS**

| | | | |
|---|---|---|---|
| JOB NUMBER: 93-8692 | | ISSUE: ISSUE 1 | DROP DATE: 1/25-28/94 |
| PRINCE # 58 | | | |
| VERSION: 1,2,3,4 | | TYPE OF PARTICLES: letter | |
| ESTIMATED WEIGHT: .2250 | | DATE RECEIVED: 1/14/94 | |
| | | (OVER .2867 LBS./3.3067 OBS.) | |

| POUND RATE | | BOOK WEIGHT | TOTAL WEIGHT |
|---|---|---|---|
| TOTAL PIECES | 1,139,858 | .2250 | 255,500.55 |

| | | RATE | POSTAGE |
|---|---|---|---|
| WEIGHT | 255,500.55 | | 153,354.33 |
| CARRIER ROUTE | 458,200 | .018 | 8,247.60 |
| 3/5 BARCODED | 637,312 | .046 | 29,316.35 |
| 3/5 DIGIT | 40,075 | .063 | 2,524.73 |
| BASIC BARCODE | 287 | .084 | 24.11 |
| BASIC | 84 | .109 | 9.16 |
| TOTAL PIECES | 1,139,958 | TOTAL POSTAGE | $193,476.28 |

| DISTRIBUTION ENTRY | WEIGHT | DISCOUNT RATE | |
|---|---|---|---|
| BMC ENTRY | 162,000 | .056 | 9,396.00 |
| SCF ENTRY | 60,000 | .081 | 4,860.00 |
| DDU ENTRY | | .104 | 0.00 |
| NUMBER OF POUNDS | 222,000 | TOTAL ESTIMATED DISCOUNT | $14,256.00 |
| DROP SHIPPING | | | 0.00 |

| POSTAL BALANCE AS OF | 1/21/94 | TOTAL INFO | PAGE # OF |
|---|---|---|---|
| | | | FROM: Chris Chubb |
| POSTAGE DUE | 1/18/94 | $0 | CO: QUAD GRAPHICS, INC |
| | | | PHONE: 518-581-4649 |

| CALCULATOR TAPE: MASTER | TOTAL ESTIMATED POSTAGE = $500.00 ADDED TO | |
|---|---|---|
| | **TOTAL ESTIMATED POSTAGE** | $300.00 |
| | $ **179,220.28** | |

*Handwritten fax cover:*

TO: Miss Duffy
OF: Little
FAX 603-894-9333
TEL 603-894-5357

From: Marie Tormaine
OF: Bastion Pub. Co
FAX 617-267-8801
TEL 617-267-8800
RE: Revision To MC
Postage

DROP 1

| | |
|---|---|
| QTY | 1,135,689 |
| % PULL | 1.17% |
| AOV | 135.00 |
| ORD | 13,258 |
| SALES | $1,789,897 |
| MAIL DATE: | 01/25/94 |

| WEEK # | | WKLY SALES | CUM SALES | % WKLY | % CUM |
|---|---|---|---|---|---|
| 1 | Feb 5 | $102,382 | $102,382 | 6.72% | 5.72% |
| 2 | Feb 12 | $256,800 | $368,182 | 14.88% | 20.57% |
| 3 | Feb 19 | $322,181 | $690,363 | 18.00% | 38.57% |
| 4 | Feb 26 | $231,792 | $922,155 | 12.95% | 51.52% |
| 5 | Mar 5 | $143,192 | $1,065,347 | 8.00% | 59.52% |
| 6 | Mar 12 | $96,296 | $1,161,643 | 5.38% | 64.90% |
| 7 | Mar 19 | $74,281 | $1,235,924 | 4.15% | 69.05% |
| 8 | Mar 26 | $56,382 | $1,292,306 | 3.15% | 72.20% |
| 9 | Apr 2 | $51,370 | $1,343,676 | 2.87% | 75.07% |
| 10 | Apr 9 | $42,956 | $1,386,633 | 2.40% | 77.47% |
| 11 | Apr 16 | $35,798 | $1,422,431 | 2.00% | 79.47% |
| 12 | Apr 23 | $32,215 | $1,454,645 | 1.80% | 81.27% |
| 13 | Apr 30 | $29,533 | $1,484,183 | 1.65% | 82.92% |
| 14 | May 7 | $26,848 | $1,511,031 | 1.50% | 84.42% |
| 15 | May 14 | $22,374 | $1,533,405 | 1.25% | 85.67% |
| 16 | May 21 | $19,689 | $1,553,094 | 1.10% | 86.77% |
| 17 | May 28 | $17,004 | $1,570,096 | 0.95% | 87.72% |
| 18 | June 4 | $15,214 | $1,585,312 | 0.85% | 88.57% |
| 19 | June 11 | $13,424 | $1,598,736 | 0.75% | 89.32% |
| 20 | June 18 | $9,844 | $1,608,581 | 0.55% | 89.87% |
| 21 | June 25 | $8,055 | $1,616,635 | 0.45% | 90.32% |
| 22 | July 2 | $5,370 | $1,622,005 | 0.30% | 90.62% |
| 23 | July 9 | $4,475 | $1,626,479 | 0.25% | 90.87% |
| | AT COMPLETION | | $1,789,897 | | 100.00% |

POSTAGE CHECK DUE AT QUAD GRAPHICS ON JAN 21ST
SEE COVER SHEET FOR DETAILS

TO: MIKE DUFFY
OF LITLE + Co
FAX 603-894-5357
TEL 603-893-9333

FROM: MARIE TURMAINE
OF Boston Pub. Co
FAX 617-267-8801
TEL 617-267-8800

MC
Please File
Timmins

07/18/2006 TUE 11:39  FAX 603 896 9652 CHASE PAYMENTECH  →→→ legal-Emma  ☒020/036

JAN 14 '94 18:22 MUSEUM PUBLICATIONSA                              P.2/2
01/14/94  12:15  ☎201 870 7088      COMMERCE REG INC              ☒002

*mc Drop #1*

******* POSTAL REPORT *********

| | | | | 3/3-Digit Qualified | | Residual | |
|---|---|---|---|---|---|---|---|
| Panel Description | Stock | Qty | Car-Rte | 5D | 5D | 5D | 9D |
| 1) Drop #1 | Web Tape | 1135998 | 4582200 | 40075 | 637312 | 84 | 287 |
| | 3c AAR PLT rates: | | $ $ 0.018 | $ 0.043 | $ 0.046 | $ 0.109 | $ 0.086 |
| | | | $ 8247.60 + | 2526.72 + | 29316.33 + | 9.16 + | 24.11 = |
| | | | | | | | $ 40,121.94 |

plus: weight surcharges
$ 0.600/lb x 1135998 pcs x 0.2231 lbs/pc = 153,422.48                   153,422.48

less: destination entry discounts (gross)
    SCF  $ 0.031/lb x  375998 pcs x 0.2231 lbs/pc = ( 4,859.43)
    BMC  $ 0.058/lb x  750503 pcs x 0.2231 lbs/pc = ( 9,799.46)
    LOC  $ 0.000/lb x    3307 pcs x 0.2231 lbs/pc = ( 0.00)
                                                    ( 16,654.89)        ( 16,654.89)

equals: NET POSTAGE                              ⟶  $ 176,889.53
                                                   $ 0.1557/pc

07/25/06 TUE 16:36 FAX 214 849 2007

January 20, 1994


Mr. Chris Chubb
Quad Graphics
56 Duplainville Road
Saratoga Springs, NY  12866

Dear Mr. Chubb:

Enclosed please find check number 2585 in the amount of $179,220.28 made payable to
United States Postmaster, Saratoga, NY.  This check is for postage for Museum
Publications of America, located at 306 Dartmouth Street, Boston, MA  02116.

If you have any questions regarding this payment, please contact Mr. Robert George,
president of Museum Publications at (617) 267-8800 or you may contact me at (603)
893-9333 extention 402.

Sincerely,


Lynda Fiala
Controller

LF/mgp

Enclosure

07/18/2006 TUE 11:40  FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma      ☑022/036

JAN 17 '94 10:35 MUSEUM PUBLICATIONSA                                      P.1/3

                                    **FAX MESSAGE**

TO:     Mike Duffy
OF:     Litle & Co.
FAX:    (603) 894 - 5357
TEL:    (603) 893 - 9333 ext 357

FROM:   Marie Turmaine
OF:     Boston Publishing Company
FAX:    (617) 267 - 8801
TEL:    (617) 267 - 8800
DATE:   January 17, 1994

Mike,

While I did fax the Museum Collections orderline to you last
Friday, I had problems with my printer so I am sending you a
clearer copy now. As you know, we want to take advantage of the
Litle postage advance program.

The Museum Collections catalog mails Tuesday, January 25th but the
postal check of $176,889.53 (see enclosed postal report) needs to
be at Quad Graphics by Friday, January 21st. The check should be
made out to Postmaster Saratoga Springs, NY and should reference
Museum Collections with our permit #58.

The check should be mailed to our Mailing Service Representative:

          Chris Chubb
          Quad Graphics
          100 Duplaineville Road
          Saratoga Springs, NY 12866

Should you need any additional information, feel free to call me.

Regards,

*Marie Turmaine*
Marie Turmaine
Circulation Manager

**MUSEUM COLLECTIONS 9410**
**DROP 1**

| | |
|---|---|
| QTY | 1,135,689 |
| % PULL | 1.17% |
| AOV | 135.00 |
| ORD | 13,258 |
| SALES | $1,789,897 |
| MAIL DATE: | 01/25/94 |

| WEEK # | | WKLY SALES | CUM SALES | % WKLY | % CUM |
|---|---|---|---|---|---|
| 1 | Feb 5 | $102,382 | $102,382 | 5.72% | 5.72% |
| 2 | Feb 12 | $265,800 | $368,182 | 14.85% | 20.57% |
| 3 | Feb 19 | $322,181 | $690,363 | 18.00% | 38.57% |
| 4 | Feb 26 | $231,792 | $922,155 | 12.95% | 51.52% |
| 5 | Mar 5 | $143,192 | $1,065,347 | 8.00% | 59.52% |
| 6 | Mar 12 | $96,298 | $1,161,643 | 5.38% | 64.90% |
| 7 | Mar 19 | $74,281 | $1,235,924 | 4.15% | 69.05% |
| 8 | Mar 26 | $56,382 | $1,292,306 | 3.15% | 72.20% |
| 9 | Apr 2 | $51,370 | $1,343,676 | 2.87% | 75.07% |
| 10 | Apr 9 | $42,958 | $1,386,633 | 2.40% | 77.47% |
| 11 | Apr 16 | $35,798 | $1,422,431 | 2.00% | 79.47% |
| 12 | Apr 23 | $32,218 | $1,454,649 | 1.80% | 81.27% |
| 13 | Apr 30 | $29,533 | $1,484,183 | 1.65% | 82.92% |
| 14 | May 7 | $26,848 | $1,511,031 | 1.50% | 84.42% |
| 15 | May 14 | $22,374 | $1,533,405 | 1.25% | 85.67% |
| 16 | May 21 | $19,689 | $1,553,094 | 1.10% | 86.77% |
| 17 | May 28 | $17,004 | $1,570,098 | 0.95% | 87.72% |
| 18 | June 4 | $15,214 | $1,585,312 | 0.85% | 88.57% |
| 19 | June 11 | $13,424 | $1,598,736 | 0.75% | 89.32% |
| 20 | June 18 | $9,844 | $1,608,581 | 0.55% | 89.87% |
| 21 | June 25 | $8,055 | $1,616,635 | 0.45% | 90.32% |
| 22 | July 2 | $5,370 | $1,622,005 | 0.30% | 90.62% |
| 23 | July 9 | $4,475 | $1,626,479 | 0.25% | 90.87% |
| | AT COMPLETION | | $1,789,897 | | 100.00% |

POSTAGE CHECK DUE AT QUAD GRAPHICS ON JAN 21ST
SEE COVER SHEET FOR DETAILS

POSTAL REPORT

MC Drop #1

| Panel Description | Stock | Qty | Car-Rte | 3/5-Digit Qualified 5D | 3/5-Digit Qualified 9D | Residual 5D | Residual 9D |
|---|---|---|---|---|---|---|---|
| 1) Drop #1 | Neg Tape | 1135950 | 450209 | 40075 | 637312 | 84 | 287 |
| | 3C BAR FLT rates: | x $ 0.015 | | $ 0.063 | $ 0.046 | $ 0.109 | $ 0.084 |
| | | $ | 6767.60 + | 2524.72 + | 29316.33 + | 9.16 + | 24.11 = |

$ 60,121.94

plus: weight surcharges
$ 0.600/lb x 1135958 pcs x 0.2251 lbs/pc = 153,422.40 — 153,422.40

less: destination entry discounts (gross)
SCF $ 0.081/lb x 375988 pcs x 0.2251 lbs/pc = (6,855.45)
BMC $ 0.058/lb x 750583 pcs x 0.2251 lbs/pc = (9,799.40)
LOC $ 0.000/lb x 3397 pcs x 0.2251 lbs/pc = 0.00)

(16,654.89) — ( 16,654.89)

equals: NET POSTAGE — $ 176,889.53
$ 0.1557/pp

07/18/2006 TUE 11:43  FAX 603 896 8652 CHASE PAYMENTECH →→→ legal-Emma                     ☑025/036

# Uniform Commercial Code — FINANCING STATEMENT — Form UCC-1  *mailed 1-31-?*

## IMPORTANT — Read instructions on back before filling out form

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

| 4. ☐ Filed for record in the real estate records. | 5. ☐ Debtor is a Transmitting Utility. | 6. No. of Additional Sheets Presented: |
|---|---|---|
| 1. Debtor(s) (Last Name First) and address(es)<br><br>**Museum Publications<br>of America<br>306 Dartmouth Street<br>Boston, MA  02116** | 2. Secured Party(ies) and address(es)<br><br>**Litle & Company, Inc.<br>54 Stiles Road<br>Salem, NH  03079** | 3. For Filing Officer (Date, Time, Number, and Filing Office) |

7. This financing statement covers the following types (or items) of property:

### SEE ATTACHED SECURITY AGREEMENT

### E3 & F3

☐ Products of Collateral are also covered.

| Whichever is<br>Applicable<br>(See Instruction<br>Number 9) | | *[signature]* |
|---|---|---|
| | Signature(s) of Debtor (Or Assignor) | Signature(s) of Secured Party (Or Assignee) |

Secured Party Copy
STANDARD FORM — UNIFORM COMMERCIAL CODE — FORM UCC-1      Rev. Jan. 1980   *Forms may be purchased from Hobbs & Warren, Inc., Boston, Mass. 02101*

07/25/06  TUE 16:38 FAX 214 849 2067    PAYMENTECH    ☑038

116399

## LITLE & COMPANY

| OUR REF. NUMBER | YOUR INVOICE NUMBER | INVOICE DATE | INVOICE AMOUNT | AMOUNT PAID | DISCOUNT TAKEN | NET CHECK AMOUNT |
|---|---|---|---|---|---|---|
| 018661 | SS 1/94 | 01/21/94 | 10.00 | 10.00 | 0.00 | 10.00 |

SHAWMUT BANK, N.A.
BOSTON, MA 02211

5-20/110    116399

| CHECK DATE | CONTROL NUMBER | CHECK AMOUNT |
|---|---|---|
| 01/28/94 | 116399 | $*******10.00 |

Litle & Co
54 Stiles Road, Salem, N.H. 03079

PAY  Ten and 00/100 -------------------------------------- dollars

TO THE ORDER OF

SECRETARY OF STATE
UCC- ROOM 1711
1 ASHBURN PLACE
BOSTON        MA 02108

LITLE & COMPANY

AUTHORIZED SIGNATURE

"116399"  011000206:  50 033705 3"

07/18/2006 TUE 11:45  FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma                    ☒027/036

## LITLE & COMPANY
## CHECK REQUEST

Requester's Name:  MARY Gail PiNKham

A check is needed (date)  1-28-94          to be made payable    Mail/Hold (Circle One)

To:  Secretary of State                         Give TO.
     UCC  Room 1711                             MGP
     1 Ashburn Place
     Boston, MA 02108

| | Ex. Category | Cost Center | Amount | Mgr. Approval |
|---|---|---|---|---|
| 1 | 6480 7100 | — | $10.00 | MGP |
| 2 | | | | |
| 3 | | | | |
| | | TOTAL | | |

Corp. Approval: _____

Comments:  filing fee for security agreement - Missouri Pub
                                              Postage Financing
          (Mary Gail Pinkham)

---

### FOR ACCOUNTING USE ONLY

Vender ID#     _____    Invoice #:    _____
Invoice Date:  _____    Due Date:     _____
Batch #: APO   _____    Date Paid:    _____
Reference #:   _____    Check #:      _____

Date Entered Into Cashflow Report  _____

Comments:      _____
               _____

07/25/06 TUE 16:38 FAX 214 849 2067           PAYMENTECH

07/18/2006 TUB 11:46   FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma                    ☒028/036

| 4. ☐ Filed for record in the real estate records. | 5. ☐ Debtor is a Transmitting Utility. | 8. No. of Additional Sheets Presented: |
|---|---|---|
| 1. Debtor(s) (Last Name First) and address(es)<br><br>**Museum Publications<br>of America<br>306 Dartmouth Street<br>Boston, MA  02116** | 2. Secured Party(ies) and address(es)<br><br>**Litle & Company, Inc.<br>54 Stiles Road<br>Salem, NH  03079** | 3. For Filing Officer (Date, Time, Number, and Filing Office)<br><br>214470 |

7. This financing statement covers the following types (or items) of property:

### SEE ATTACHED SECURITY AGREEMENT

### E4 & F4

OVERSIZE - ON FILM

☐ Products of Collateral are also covered.

**TERMINATION STATEMENT**

This statement of termination of financing is presented to a filing officer for filing pursuant to the Uniform Commercial Code. The Secured Party certifies that the Secured Party no longer claims a security interest under the financing statement bearing the file number shown above.

Dated: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19 . . .       By: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Signature(s) of Secured Party (Or Assignee)

Filing Officer Copy — Acknowledgment — Filing officer make sure filing information is in Box 3 before returning this copy to filer.

07/18/2006 TUE 11:46  FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma          Ø029/036

## Schedule E-4

## Demand Promissory Note for Postage Advances

| | |
|---|---|
| Principle Amount of Advance is: | $112,551.59 |
| Management Fee: | $5,064.82 |
| Advance is Payable to: | United States Postmaster |
| | Saratoga Springs, NY |
| Advance will be made on: | January 28, 1994 |
| First repayment will be made on: | February 7, 1994 |
| Daily Repayment: | See repayment schedule |
| Last repayment will be made on: | March 11, 1994 |

In consideration of Litle & Co. making advances for the account of MEMBER to United States Postal Service, MEMBER agrees to pay on demand the Principal Amount of Advance plus management fee to Litle & Co., or order. MEMBER further agrees that all CHARGE CARD transactions from all divisions and subsidiaries will be processed by Litle & Co. while any amount owed under this note is still outstanding. Notwithstanding that such amounts are otherwise payable on demand, MEMBER agrees that (i) the Principal Amount of Advance, plus management fee shall be paid in full on or before March 7 1994, (ii) the Daily Repayments shall be deducted from daily NET PROCEEDS and (iii) the repayments will be applied to the Management Fee first then to the outstanding Principal amount.

Until such time as demand is made MEMBER shall make payments in accordance with the schedule above. The rights and remedies of Litle & Co. under this Schedule are cumulative of, in addition to, and not in limitation of, any right or remedies otherwise available to Secured Party including without limitation such other rights and remedies as may be available under the MASTER MEMBER AGREEMENT. MEMBER shall pay reasonable costs of collection incurred by Secured Party, including reasonable fees of attorney.

No delay or omission on the part of Secured Party in exercising any right hereunder shall operate as a waiver of such right or any other right. MEMBER waives presentment, demand, protest and notices of every kind and assents to any one or more extensions of time or other indulgences, to any substitutions, exchanges or releases of collateral (if any), and to the addition or release of any person primarily or secondarily liable.

Guaranteed personally by:

Museum Publications of America
MEMBER

                                        Robert J. George
                                        Individual (type or print)

306 Dartmouth Street, Boston, MA 02116           138 Farm Rd  Sherborn MA 01770
Address                                          Address

Robert J. George, President
By (type or print name & title)                  By (signature)

By (authorized signature)

1/31/94                                          1/31/94
Date                                             Date

Ø041                          PAYMENTECH          07/25/06 TUE 16:39 FAX 214 849 2067

07/18/2006 TUE 11:48  FAX 603 896 8652 CHASE PAYMENTECH --- legal-Emma                    @030/036

## Schedule F-4

## Security Agreement

To secure the prompt and full payment of any and all obligations, whether due or to become due, now existing or hereafter arising, of MEMBER to Litle & Co., Inc. ("Secured Party"), including without limitation those obligations arising under Schedule E-4 of the MEMBER AGREEMENT for Postage Advances, MEMBER grants Secured Party a continuing security interest in all accounts, inventory, equipment, customer lists, furniture, fixtures, CARD SALES and all other tangible and intangible property of MEMBER, wherever located, now owned or hereafter acquired or arising and any and all additions, substitutions, proceeds and products thereto and thereof. All cash, deposits, instruments, sums due MEMBER from Secured Party, or other property of MEMBER in possession of Secured Party (whether for safekeeping or otherwise) shall constitute security for the obligations and may be applied or set off by Secured Party against the obligations at any time and whether or not any of the obligations are then due or other collateral is available to Secured Party.

MEMBER agrees that a copy of this security agreement may be filed as a financing statement and MEMBER agrees to take such additional acts and deliver such additional documents as Secured Party may reasonably request in order to protect, preserve and perfect the rights of Secured Party.

Upon a default in payment of any of the obligations secured hereby or performance of any obligation of MEMBER under this Schedule, Secured Party may, upon 48 hours notice, at its option, declare all obligations immediately due and payable and exercise all rights and remedies available to a secured party under applicable law. All rights and remedies of Secured Party under this Schedule are cumulative of, in addition to, and not in limitation of, any rights or remedies otherwise available to Secured Party including without limitation such other rights and remedies as may be available under the MASTER MEMBER AGREEMENT. MEMBER shall pay reasonable costs of collection incurred by Secured Party, including reasonable fees of attorney.

No delay or omission on the part of Secured Party in exercising any right hereunder shall operate as a waiver of such right or any other rights. MEMBER waives presentment, demand, protest and notices of every kind an assents to one or more extensions of time or other indulgences, to any substitutions, exchanges or releases of collateral (if any), and to the addition or release of any other person, primarily or secondarily liable.

Museum Publications of America
MEMBER

306 Dartmouth Street, Boston, MA  02116
Address

Robert J. George, President
By (type or print name & title)

By (authorized signature)

1/31/97
Date

@042                              PAYMENTECH              07/25/06 TUE 16:39 FAX 214 849 2067

## REPAYMENT

Repayment Schedule for Finishing Touches

| Week Of | % of Volume | Weekly Payment | Daily Payment |
|---------|-------------|----------------|---------------|
| 7-Feb   | 8.44%       | $9,927         | $1,985.36     |
| 14-Feb  | 23.15%      | $27,228        | $5,445.62     |
| 21-Feb  | 30.88%      | $36,320        | $7,263.96     |
| 28-Feb  | 21.56%      | $25,358        | $5,071.60     |
| 7-Mar   | 15.97%      | $18,783        | $3,756.66     |
|         | 100.00%     | $117,616       |               |

Daily payment amounts are for all five days of the week
Litle Management fee are taken out of first payments

07/18/2006 TUB 11:50   FAX 603 896 8652 CHASE PAYMENTECH  →→→ legal-Emma                    ☑032/036

**Uniform Commercial Code — FINANCING STATEMENT — Form UCC-1** *mailed 2/4/9*

**IMPORTANT — Read instructions on back before filling out form**

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

| 4. ☐ Filed for record in the real estate records. | 5. ☐ Debtor is a Transmitting Utility. | 6. No. of Additional Sheets Presented: |
|---|---|---|
| 1. Debtor(s) (Last Name First) and address(es) | 2. Secured Party(ies) and address(es) | 3. For Filing Officer (Date, Time, Number, and Filing Office) |
| **Museum Publications of America 306 Dartmouth Street Boston, MA 02116** | **Litle & Company, Inc. 54 Stiles Road Salem, NH 03079** | |

7. This financing statement covers the following types (or items) of property:

### SEE ATTACHED SECURITY AGREEMENT

### E4 & F4

☐ Products of Collateral are also covered.

| Whichever is Applicable (See Instruction Number 9) | | **Litle & Company, Inc.** |
|---|---|---|
| ............................... Signature(s) of Debtor (Or Assignor) | | ............................... Signature(s) of Secured Party (Or Assignee) |

Secured Party Copy

STANDARD FORM — UNIFORM COMMERCIAL CODE — FORM UCC-1    Rev. Jan. 1980   *Forms may be purchased from Hobbs & Warren, Inc., Boston, Mass. 02101*

# THIRD CLASS POSTAL ESTIMATE

| | |
|---|---|
| TITLE:MUSEUM ~~COLLECTIONS~~ FINISHING TOUCHES | DROP DATE:2/1-4/94 |
| JOB NUMBER:93-5693 | ISSUE:DROP 1 |
| PERMIT # 88 | TYPE OF LABELS:Inkjet |
| VERSION: 1,2,3 | DATE RECEIVED:1/14/94 |
| ESTIMATED WEIGHT:.2250 | (OVER .2067 LBS./3.3067 OZS.) |

| POUND RATE | | BOOK WEIGHT | TOTAL WEIGHT |
|---|---|---|---|
| TOTAL PIECES | ✓719,605 | .2250 | 161,911.13 |
| | | RATE | POSTAGE |
| WEIGHT | 161,911.13 | .60 | 97,146.68 |
| CARRIER ROUTE | 253,562 | .018 | 4,564.12 |
| 3/5 BARCODED | 435,363 | .046 | 20,026.70 |
| 3/5 DIGIT | 30,346 | .063 | 1,911.80 |
| BASIC BARCODE | 266 | .084 | 22.34 |
| BASIC | 68 | .109 | 7.41 |
| TOTAL PIECES | 719,605 | TOTAL POSTAGE | $123,679.05 |
| DESTINATION ENTRY | WEIGHT | DISCOUNT RATE | |
| BMC ENTRY | 90,000 | .058 | 5,220.00 |
| SCF ENTRY | 40,000 | .081 | 3,240.00 |
| DDU ENTRY | | .104 | 0.00 |
| NUMBER OF POUNDS DROP SHIPPING | 130,000 | TOTAL ESTIMATED DISCOUNT | $8,460.00 |
| 94 | | IS | $3,167.46 |
| 94 | | TOTAL ESTIMATED POSTAGE | $ 112,551.59 |
| | O SARATOGA POSTMASTER. $500.00 ADDED TO | | |
| TAL INFO | | PAGE # OF | |
| | | FROM: Chris Chubb | |
| | | CO: QUAD GRAPHICS, INC | |

TO: MIKE DUFFY
OF LITLE
FAX 603-894-5357
TEL 603-893-9333

FROM: MARIE TURMAINE
OF: BOSTON PUBLISHING CO
FAX 617-267-8801
TEL 617-267-8800
DATE JANUARY 26, '94
REVISION TO FINISHING TOUCHES POSTAGE DUE AT QUAD FRIDAY JAN 28

[redacted]

JAN 17 '94 17:26 MUSEUM PUBLICATIONSA P.3/3

01/14/94 12:18 201 070 7666 COMMERCE REG INC 003

******** POSTAL REPORT ********

FT Drop #1

| Panel Description | Stock | Qty | Car-Rte | 3/5-Digit Qualified 50 | 3/5-Digit Qualified 90 | Residual 50 | Residual 90 |
|---|---|---|---|---|---|---|---|
| 1) Drop #1 | Mag Tape | 719605 | 233542 | 30744 | 438143 | 44 | 246 |
| | 3C BAR FLT rates | | x $ 0.016 | $ 0.063 | $ 0.046 | $ 0.109 | $ 0.084 |
| | | | $ 4564.12 + | 1911.80 + | 20026.70 + | 7.41 + | 22.36 = |

$ 26,532.37

plus: weight surcharge

$ 0.600/lb x 719605 pcs x 0.2251 lbs/pc = 97,189.85   97,189.85

less: destination entry discounts (gross)

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| BCF | $ 0.081/lb | x | 166591 pcs | x | 0.2251 lbs/pc | = | ( 3,037.47) | |
| SMC | $ 0.058/lb | x | 541640 pcs | x | 0.2251 lbs/pc | = | ( 7,071.87) | |
| LOC | $ 0.000/lb | x | 5293 pcs | x | 0.2251 lbs/pc | = | ( 0.00) | |
| | | | | | | | ( 10,109.34) | ( 10,109.34) |

equals: NET POSTAGE → $ 113,612.88

$ 0.1579/pc