# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| ADVANCEME, INC.,<br>　　　　　Plaintiff,<br><br>v.<br><br>RAPIDPAY LLC, FIRST FUNDS LLC,<br>MERCHANT MONEY TREE, INC.,<br>REACH FINANCIAL LLC, and<br>FAST TRANSACT, INC. d/b/a<br>SIMPLE CASH,<br>　　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL CASE NO. 6:05-cv-424 (LED) |
| ADVANCEME, INC.,<br>　　　　　Plaintiff,<br><br>v.<br><br>AMERIMERCHANT LLC,<br>　　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL CASE NO. 6:06-cv-82 (LED)<br>JURY TRIAL DEMANDED<br><br>**Claim Construction**<br>Hearing Date:  October 19, 2006<br>Honorable John Love, Magistrate Judge<br>Trial Dates:<br>　　March 26, 2007 - RapidPay et al.<br>　　January 14, 2008 -AmeriMerchant |

## ADVANCEME, INC.'S OPENING CLAIM CONSTRUCTION BRIEF
### PURSUANT TO LOCAL PATENT RULE 4-5(a)

Dockets.Justia.com

## TABLE OF AUTHORITIES

Page

I.    INTRODUCTION ..................................................................................................1

II.   U.S. PATENT NO. 6,941,281 ..............................................................................2

      A.    Technology ..................................................................................................2

      B.    Prosecution History ....................................................................................4

III.  LEGAL STANDARD FOR CLAIM CONSTRUCTION .................................8

IV.   PROPOSED CONSTRUCTIONS........................................................................9

      A.    Customer Identifier (Recited In Claims 1-7 And 10-16).....................10

      B.    Payment card (Not recited in any claim)................................................11

      C.    Settling the payment (Recited in claims 1 and 10)...............................11

      D.    Obligation (Recited in claims 1, 10 and 19)..........................................12

      E.    Debit card (Recited in claims 3 and 12) ................................................15

      F.    Smart card (Recited in claims 4 and 13)................................................15

      G.    Accumulating the payments until a predetermined amount is reached ...............16

      H.    Periodically forwarding (Recited in claims 9 and 18)..........................17

      I.    Third party (Recited in claims 10, 17, 18, 19)......................................18

      J.    Means for accepting a customer identifier as payment from the customer ..........22

      K.    Means for electronically forwarding information related to the payment to
            a  computerized merchant processor ("electronically forwarding means") .........23

      L.    Means for receiving the information related to the payment from the ................24

      M.    Means for authorizing the payment ("authorizing means") (Recited in
            claim 10)...................................................................................................25

      N.    Means for...settling the payment ("settling means") (Recited in claim 10) ........27

      O.    Means for forwarding a portion of the payment to the third party ......................29

      P.    Specific accepting means of claims 11 through 14 ..............................29

      Q.    Means for accumulating the payments until a predetermined amount is .............31

      R.    Means for forwarding at least a portion of the accumulated payments to
            the ............................................................................................................32

      S.    Means for periodically forwarding at least a portion of the payment to the ........33

      T.    Means for forwarding to the third party an amount that is a percentage of .........34

V.    CONCLUSION .....................................................................................................35

# TABLE OF AUTHORITIES

## CASES

Asyst Techs. Inc. v. Empak, Inc.,
    268 F.3d 1364 (Fed. Cir. 2001) ....................................................................................9

Brainy Ideas, Inc. v. Media Group,
    169 F. Supp. 2d 361 (E.D. Pa. 2001) ........................................................................15

Elekta Instrument S.A. v. O.U.R. Scientific Intern., Inc.,
    214 F.3d 1302 (Fed. Cir. 2000) ................................................................................15

Good Sportsman Marketing LLC v. Testa Associates, LLC,
    F.2d, 2006 WL 1967013 at *1 (E.D. Tex. July 12, 2006) ..................................11

Micro Chemical, Inc. v. Great Plains Chemical Co., Inc.,
    194 F.3d 1250 (Fed. Cir. 2002) ...........................................................................9, 24

Vitronics Corp. v. Conceptronic, Inc.,
    90 F.3d 1576, 1584 n. 6 ...............................................................................................9

Phillips v. AWH Corp.,
    415 F.3d 1303 (Fed. Cir. 2005) ..............................................................8, 9, 10, 11, 12,
    15

## STATUTES

35 U.S.C. § 112, ¶ 6 ...........................................................................................................9

Pursuant to Patent Rule 4-5(a), Plaintiff AdvanceMe, Inc. ("AdvanceMe") submits this opening brief and evidence supporting its proposed claim constructions for U.S. Patent No. 6,941,281 ("the '281 Patent").

## I.      **INTRODUCTION**

The parties in this case have taken wholly different approaches to claim construction. AdvanceMe's approach, faithful to governing Federal Circuit law, has been to start with the ordinary meaning of the claim terms, and deviate from that meaning only where the specification and file history clearly so indicate. The Defendants, on the other hand, do not proceed from any principled approach but rather insist upon deviations from the ordinary meaning only when it is strategically advantageous for them to do so.

For example, AdvanceMe's proposed construction for the term "obligation" properly follows the Federal Circuit's required approach of construing terms so that they are consistent with the context of the claims, the specification and statements made to the United States Patent and Trademark Office ("USPTO") during prosecution. During prosecution, Applicant consistently made it clear that the loan or obligation recited in the claims was not just any obligation, but rather an obligation that is independent of and unrelated to: (1) the consummation of any particular purchase, and (2) the costs and fees associated with the typical transaction processing environment. The Applicant continued to make these distinctions when it successfully appealed the Examiner's rejections to the Board of Patent Appeals and Interferences ("BPAI"). Yet, the Defendants' proposed construction of this term ignores the '281 Patent's prosecution history altogether.

In short, AdvanceMe's proposed constructions follow the principles enunciated by the Federal Circuit, and are consistent with the context of the claims, the specification and

prosecution history.  Accordingly, AdvanceMe respectfully requests that its constructions be adopted.

## II.   U.S. PATENT NO. 6,941,281

### A.   Technology

The '281 Patent describes a system and method for paying an obligation owed by a merchant using a modified version of the typical environment used to process payment transactions involving customer identifiers.  Ex. A, '281 Patent.  Purchases made using credit cards, charge cards, debit cards and smart cards are examples of customer identifier-based payment transactions that can be carried out using the typical processing environment.  FIGS. 1A and 1B of the '281 Patent depict the typical transaction processing environment.



FIG. 1A                FIG. 1B

As shown in FIGS. 1A and 1B, the environment includes a merchant 20, a merchant processor 30 and a card issuer 50.  A customer (*e.g.*, cardholder 10) provides the merchant with a customer identifier in order to pay for goods and/or services.  The merchant then forwards information relating to the payment made by the customer to the merchant processor.  This information can be forwarded to the merchant processor electronically via, for example, a network or a telephone system.

The merchant processor communicates the payment-related information to the card issuer for authorizing and settling the payment. In one embodiment, the payment-related information can be communicated from the merchant processor to the card issuer over a network 40. Examples of the network 40 described in the '281 Patent include VisaNet, Cirrus, Novus and the American Express card network. If the card issuer authorizes the purchase, the payment for the purchase is sent from the card issuer to the merchant processor over the network. The merchant processor then forwards the payment to the merchant.

As disclosed in the '281 Patent, the amount of the payment actually received by the merchant from the merchant processor is some amount less than the original payment amount the merchant initially submitted to the merchant processor (*i.e.*, some amount less than the amount the merchant charged the customer for the goods and/or services). In the typical transaction processing environment shown in FIGS. 1A and 1B, various transaction costs are deducted from the original payment amount. These transaction costs can include fees levied by the card issuer (often referred to as an interchange fee), the network (*e.g.*, card service fees) and the merchant processor (*e.g.*, point-of-sale (POS) terminal rental fees and advertising fees).

The claimed invention of the '281 Patent builds on the environment shown in FIGS. 1A and 1B in order to provide an automated process for enabling a merchant to pay an obligation using proceeds from purchases made by the merchant's customers. The claimed invention can be described with reference to FIG. 2 of the '281 Patent.



FIG. 2

As described in the '281 Patent, the obligation can be created between the merchant and a party outside the transaction processing environment of FIGS. 1A and 1B. For example, the merchant can receive a loan from a party such as the lender 60 shown in FIG. 2. After the obligation has been created, it is paid from payment transactions conducted using a modified version of the transaction processing environment. In the modified version, the merchant processor now diverts a portion of the amount that would have normally gone to the merchant to a payment receiver (*e.g.*, arrow 29 in FIG. 2). See Ex. A, '281 Patent, col. 5:16-25; col. 7:30-35; col. 8:19-20; Ex. B, '544 Patent File History, 06/03/99 Response after Final Under Rule 1.116, p. 3. Once the payment receiver receives this portion of the payment, the payment receiver applies the received portion to the merchant's outstanding obligation amount in order to reduce the obligation. See Ex. A, '281 Patent, col. 5:25-29; col. 7:30-35; Ex. B, '544 Patent File History, p. 3.

**B.    Prosecution History**

The '281 Patent is a continuation of U.S. Patent No. 6,826,544 ("the '544 Patent") that was filed on July 9, 1997. Therefore, the effective filing date for the '281 Patent is July 9, 1997.

-4-

Both the '281 and '544 Patents were examined by the same Examiner, James W. Myhre, and both of these patents contain inventions that are very similar. Throughout the prosecution of both the '281 and '544 Patents, the Examiner repeatedly relied on U.S. Patent No. 4,750,119 to Cohen ("Cohen") as the primary reference for rejecting the claims for obviousness under 35 U.S.C § 103(a). In distinguishing Cohen, the Applicant made several comments describing the invention in the '281 and '544 Patents.

On November 10, 1998, the USPTO issued its first Office Action of the '544 Patent application, citing Cohen and rejecting the inventions on the ground of obviousness. Cohen describes a purchasing system with a rebate feature that funds an annuity contract. Ex. C, '544 Patent File History, 11/10/98 Office Action. In this action, the Examiner alleged that Cohen disclosed forwarding a portion of a payment to a loan repayment receiver because a portion of the payment was forwarded to a "future benefit guarantor" or "an insurance company." Id., at p. 4. The Examiner took official notice that it was "old and well known within the finance art that automatic deductions can be made to pay outstanding debts," and that such deductions "are also made from transactions to cover sales taxes, credit card transaction charges, etc." Id.

In response to the November 10, 1998 Office Action, the Applicant distinguished the invention from Cohen. The Applicant explained that the Applicant's invention required the payment of an "outstanding" obligation, which is an obligation independent from and unrelated to any purchase by a customer:

> The loan recited in the amended claims differs from the annuity in Cohen. For example, the claims recite an "outstanding" loan, whereas the annuity of Cohen only comes into existence after the purchase. The existence of the loan in the present invention is *independent of* and *unrelated to* the consummation of any particular purchase, while the existence of the annuity in Cohen depends entirely on the consummation of the purchase.

Ex. D, '544 Patent File History, 1/20/99 Amendment and Response, p. 3 (emphasis added). In

other words, the "obligation" recited in the claims is not *any* obligation but rather a particular type of obligation arising in connection with a loan or cash advance that is unrelated to the consummation of any particular purchase.

In its June 3, 1999 Response after Final Under Rule 1.116, the Applicant reemphasized the portions of the specification that explicitly distinguished the obligation referred to in the claims from the costs and fees that were a part of credit card and other transaction processing systems. Specifically, in the typical merchant processing system:

> [T]he merchant processor generally receives card payment information from a card issuer, sends that authorization to the merchant, and then completes the transaction by paying the merchant, submitting the payment, and getting paid by the issuer. For this service, the merchant processor typically levies a *fee* on the merchant, and the *fee* typically is a percentage of the amount of the card payment transaction, such that the merchant receives from the merchant processor some amount less than the actual face-value of the amount the customer paid to the merchant with the card.

Ex. D, 1/20/99 Amendment and Response, pp. 2-3 (emphasis added). The Applicant also made it clear that the claimed invention did not encompass the payment of such processing fees or costs, but rather allowed the merchant processor "to make payment to both a merchant and a lender (or other loan repayment receiver), whereas previously the merchant processor simply paid the merchant." Id. (emphasis in original).

Notwithstanding these arguments, the Examiner continued to reject the claims based on Cohen. In response, the Applicant continued to clarify the scope of the claims. See Ex. E, '544 Patent File History, 7/16/99 Preliminary Amendment. As a result of the Examiner's continued refusal to recognize the distinction between the Applicant's invention and Cohen (see Ex. F, '544 Patent File History, 8/3/99 Office Action), the Applicant was forced to appeal to the Board of Patent Appeals and Interferences (the "BPAI"). Ex. G, '544 Patent File History, 06/07/2000 Applicant's Brief on Appeal to the Board of Patent Appeals and Interferences, pp. 3-4.

During the appeal, the Applicant reiterated the distinctions between the claims and the prior art relied upon by the Examiner, again emphasizing that Applicant's invention was a modification to the typical transaction processing environment. Ex. G, '544 Patent File History, pp. 3-4. "The claimed invention thus involves *modifying* the existing merchant processor system to allow repayment of a loan by a merchant via the processing by the modified merchant processor system of customers' card payments." Id., p. 4 (emphasis added). Further, the Applicant reiterated that the claims recite an "outstanding" obligation which is "*independent of and unrelated to* the consummation of any particular purchase," and, therefore, different than Cohen (which involved funds for an annuity contract arising from purchases instead of obligations arising out of an independent loan or cash advance). Id., p. 8. In response, the Examiner repeated the same argument made in previous Office Actions, i.e., that the claims were obvious in light of Cohen. See Ex. H, '544 Patent File History, 08/10/2000 Examiner's Answer.

On January 29, 2002, the BPAI issued a decision agreeing with AdvanceMe's arguments and reversing all of the Examiner's rejections. Ex. I, '544 Patent File History, 10/30/02 Decision on Appeal, pp. 3-9. In its ruling, the BPAI determined that the Examiner had failed to establish a prima facie case of obviousness and stated that "[i]n our opinion, the approach taken by Cohen is so fundamentally different from that of Applicant that any suggestion to modify Cohen to arrive at the invention set forth in the appealed claims could only come from Appellant's own disclosure." Id., p. 7-9. As a result of the BPAI's decision, the Examiner subsequently allowed the '544 Patent to issue. See Ex. J, '544 Patent File History, 07/13/04 Notice of Allowability, pp. 2-4.

Before the BPAI's decision, AdvanceMe filed the continuation application that ultimately issued as the '281 Patent. After the BPAI's decision issued, the Applicant's representatives and

-7-

the Examiner discussed the pending claims of the '281 Patent. In follow up to these discussions,

the Applicant amended the claims of the '281 Patent to "closely follow the language of the

claims that were on appeal in the '398 Application [(*i.e.*, the '544 Patent)], with several minor

changes in the independent claims." Ex. K, '281 Patent File History, 07/12/04 Request for

Extension-of-Time and Amendment, p. 5. The Applicant then elaborated on these minor

changes:

> Applicant has replaced the term "loan" in the claims with the more generic "obligation,"
> since many obligations for payment that may use the system of the present invention are
> not necessarily "loans." For example, if a merchant assigned its receivables to a third
> party, these could be collected by the third party using the system of the invention. As
> such, the term "lender" has also been replaced by "third party" to reflect that the
> obligation may be made to other than a 'lender,' although the obligation to make payment
> will remain. Applicant believes that the claims as amended are within the scope of the
> specification as filed, and that no new matter has been added."

Id. at pp. 5-6. In response to these amendments to the claims of the '281 Patent, the Examiner

issued a Notice of Allowance. See Ex. L, '281 Patent File History, 03/17/05 Notice of

Allowability and Response to Amendment, p. 2.

As the above discussion indicates, the Applicant made a series of representations to the

USPTO clarifying the scope of the claims recited in the '281 Patent: (1) the loans or other

obligations according to the claims are not *any* loans or obligations, but rather are those loans or

obligations which are independent of and unrelated to the consummation of any particular

purchase, and (2) the loans or obligations according to the claims are *not* the fees and costs

associated with the normal merchant processing system that was already known in the prior art

(such as transaction fees or network fees). Any construction of the patent claims should take into

account these representations of claim scope made repeatedly by the Applicant.

## III.    LEGAL STANDARD FOR CLAIM CONSTRUCTION

The Federal Circuit's en banc decision in Phillips v. AWH Corp., 415 F.3d 1303 (Fed.

Cir. 2005) reaffirms that the basic principle of claim construction is to focus on the claim language, the written description, and the prosecution history (collectively referred to as "intrinsic evidence"). Id. at 1312–17. Extrinsic evidence, such as dictionary definitions, should be employed sparingly and only to confirm the meaning of the intrinsic evidence. However, judges are free to consult dictionaries and technical treatises at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents. Id. at 1319, 1322-1323 (affirming Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1584 n. 6)

While recognizing the importance of the specification in giving life to the claims, the Federal Circuit has distinguished between construing terms in light of the specification and importing limitations from the specification into the claims. Phillips, 415 F.3d 1303, 1323 (Fed. Cir. 2005). Therefore, the focus in claim construction should be on how one of ordinary skill in the art would read the claims.

Under 35 U.S.C. § 112, ¶ 6, means-plus-function claim terms are construed differently than ordinary claim terms. Specifically, the function of the term is determined and then the structure disclosed in the specification for performing that function is identified. Asyst Techs. Inc. v. Empak, Inc., 268 F.3d 1364, 1374–76 (Fed. Cir. 2001). Even with means plus function terms, however, the function must be construed to include only those limitations that are recited in the claim language. Micro Chemical, Inc. v. Great Plains Chemical Co., Inc., 194 F.3d 1250, 1257–58 (Fed. Cir. 2002). Aspects of the structure that are not related to the claimed function are not "corresponding" and, therefore, are not a proper part of the construction. Id. at 1258.

## IV.    PROPOSED CONSTRUCTIONS

The constructions of terms agreed upon by the parties are set forth in the August 2, 2006

P.R. 4-3 Joint Claims Construction Statement.  Ex. M, 08/02/06 Joint Claims Construction and Prehearing Statement Pursuant to Local Patent Rule 4-3 ("P.R. 4-3 Joint Claims Construction Statement").  AdvanceMe's proposed constructions for the terms still in dispute are as follows:

### A.    Customer Identifier (Recited In Claims 1-7 And 10-16)

The term "customer identifier" as recited in the claims would be understood by one of ordinary skill in the art to mean "any information submitted to a merchant or its designee for payment of goods and services."  This construction is consistent with the specification of the '281 Patent ("'281 Specification") which states that a customer identifier is "submitted to the merchant as payment for some good(s) and/or service(s)..." Ex. A, '281 Patent, col. 1:56-57.

Defendants' proposed construction defining a "customer identifier" as "any unique identifying card account number of a type that was available in July 1997" improperly seeks to limit this term to a single specific embodiment disclosed in the '281 Specification and impose an unnecessary temporal limitation.  The '281 Specification describes a "unique identifying account number" as merely a typical example of a customer identifier that can be used in the claimed invention. Ex. A, '281 Patent, col. 3:11-15.  The claims of a patent are not necessarily limited to specific examples described in the specification.  See Phillips, 415 F. 3d at 1323 (Fed. Cir. 2005) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.")

While an account number may serve as a customer identifier, one of ordinary skill in the art would clearly understand from reading the claims and the specification of the '281 Patent that an account number is only one kind of identifying information that can be submitted to a merchant as payment for goods and services as recited in claims 1 and 10.  See Phillips, 415 F. 3d at 1323 (Fed. Cir. 2005) ("Much of the time, upon reading the specification in that context, it will become clear whether the patentee is setting out specific examples of the invention to

accomplish those goals, or whether the patentee instead intends for the claims and the

embodiments in the specification to be strictly coextensive.")  Therefore, AdvanceMe

respectfully requests that the Court adopt the following construction for the term "customer

identifier":

> **Any information submitted to a merchant or its**
> **designee for payment of goods and services**

**B.**    **Payment card** (Not recited in any claim)

Defendants unnecessarily and improperly seek to construe the term "payment card" as

being indefinite.  However, the term payment card is not recited in any of the claims of the '281

Patent and, therefore, this term should not be construed by the Court.  See, e.g., Good Sportsman

Marketing LLC v. Testa Associates, LLC, -- F.2d --, 2006 WL 1967013 at *1 (E.D. Tex. July 12,

2006) (stating "Courts give claim terms their ordinary and accustomed meaning as understood by

one of ordinary skill in the art at the time of invention in the context of the entire patent.").

**C.**    **Settling the payment** (Recited in claims 1 and 10)

The phrase "settling the payment" should be construed as "the part of a transaction when

an amount is transferred or credited to the merchant processor."  The parties agree the

construction of "settling the payment" should begin as: "the part of a transaction when an

amount is transferred or credited…"  However, the Defendants assert that the construction of this

phrase should indicate that the amount is transferred or credited "by the card issuer" rather than

"to the merchant processor."

A "card issuer" is never recited in any of the claims of the '281 Patent.  Ex. A, '281

Patent, col. 7:24, col. 8:15.  Defendants' inclusion of the "card issuer" in its proposed

construction for "settling the payment" is incorrect because it improperly seeks to import a

limitation not recited in the claims.  Phillips, 415 F.3d at 1323 (recognizing "the distinction

between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim....").

Furthermore, claims 1 and 10 of the '281 Patent only require that "settling the payment" take place "at the computerized merchant processor." The context in which a term is used in an asserted claim can be highly instructive to the meaning of the claim. See, e.g., <u>Phillips,</u> 415 F.3d at 1313 (stating "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."). If "card issuer" was improperly included in the construction of this phrase, the "settling [of] the payment" would no longer take place "at the merchant processor" as recited in claims 1 and 10 of the '281 Patent. Accordingly, the phrase "settling the payment" should be construed as:

| The part of a transaction when an amount is transferred or credited to the merchant processor |
| --- |

**D.    Obligation** (Recited in claims 1, 10 and 19)

The term "obligation" as recited in the claims of the '281 Patent should be construed as "an amount owed by a merchant that is independent of any costs or fees arising out of the use of customer identifiers as payment."

Defendants argue that the term "obligation" should be given its ordinary meaning. Defendants' construction is incorrect, however, because it is inconsistent with the use of the term "obligation" in the claims, specification and file history of the '281 Patent. <u>Phillips</u>, 415 F.3d at 1313.

The proper construction of the term "obligation" includes "an amount owed by a merchant." As recited in claims 1 and 10 of the '281 Patent, the "obligation" is undertaken by the merchant, for example, in exchange for a loan, a cash advance or a sale or assignment of

-12-

receivables.  Ex. K, '281 Patent File History, 07/12/04 Request of Extension-Of-Time and
Amendment, p. 5.

    However, the term "obligation" as used in the context of the '281 Patent is not just any
obligation.  Rather, as explained at length above in Section II.B, it is an obligation owed by the
merchant that is independent of any particular purchase and that is created outside of any of the
fees and/or costs that are normally imposed on the merchant for using the typical transaction
processing environment shown in FIGS. 1A and 1B.  As reiterated by the Applicant during
prosecution of the '281 Patent, "[t]he existence of the loan in the present invention is
*independent of* and *unrelated to* the consummation of any particular purchase [by a customer]"
Ex. D, '544 Patent File History, 01/20/99 Amendment and Response, p. 3.

    As described in the '281 Specification, there are a number of fees and costs that are
incurred by any merchant using the typical transaction processing environment shown in FIGS.
1A and 1B.  Some examples of these fees and costs as set forth in the '281 specification are
merchant processor fees, discount rates or surcharges, interchange fees, network fees, card
service fees, transaction fees, and card issuer fees.  Ex. A, '281 Patent, col. 4:21- 5:3.

    The '281 Specification even provides an illustrative example of a typical transaction that
incurs these kinds of fees and costs:

> For example, with an original customer purchase of $100, and with an interchange fee of
> 1.4%, the merchant processor 30 is paid $98.60 (i.e., $100 less the 1.4% interchange fee)
> by the card issuer 50.  This amount is further reduced by the merchant processor's fee.
> Thus, in this $100 original customer purchase example, the merchant 20 is paid $98.10
> by the merchant processor 30, the merchant processor 30 makes $0.50, and the card
> issuer makes $1.40.  Stated another way, the merchant 20 pays 1.9% for the ability to
> offer customers the convenience of paying by card, and that 1.9% fee or surcharge is
> allocated to the merchant processor 30 (0.5%) and the card issuer (1.4%) for providing
> the merchant 20 with that ability.... Also, when the network 40 is used, both the
> merchant processor 30 and the card issuer 50 generally pay a fee to the provider of the
> network 40.  For example, in the case of VisaNet, the merchant processor might pay
> $0.069 to VisaNet as a card service fee, and the card issuer 50 might pay VisaNet $0.059

as a card service and transaction fee.

Ex. A, '281 Patent, col. 4:21-5:3. According to this example, all transactions carried out using the typical transaction processing environment impose transactional fee and cost obligations to the merchant. Therefore, the "obligation" recited in the claims of the '281 Patent has to be some other obligation created outside of and in addition to these regular transactional costs.

To contrast the invention recited in the claims with the typical transaction processing environment, the '281 Specification includes another illustration that distinguishes these transactional costs and fees from the claimed "obligation":

> The merchant processor 300 thus pays the merchant 20 some amount less than what the merchant 20 would receive in the [typical transaction processing environment described in relation to FIGS. 1A and 1B].... For example, carrying on with the example introduced above with reference to FIGS. 1A and 1B, instead of paying $98.10 to the merchant 20 on a $100 original card purchase, the merchant processor 300 might send $88.10 to the merchant 20 and the other $10.00 to the [payment receiver or third party].

Ex. A, '281 Patent, col. 5:29-37. In this illustration describing the claimed invention, the $98.10 is the amount that the merchant would have normally received after all the usual transaction costs of the transaction processing environment of FIGS. 1A and 1B had been deducted. Thus, it is clear from these illustrations that the "obligation" recited in the claims of the '281 Patent cannot include any of the fees or costs deducted for using the typical transaction processing environment and, therefore, the "obligation" must be outside of and independent of these transactional fees and costs.

For these reasons, the term "obligation" should be construed in a manner consistent with the context of the claims, specification and file history of the '281 Patent as:

---

**An amount owed by a merchant that is independent of any costs or fees arising out of the use of customer identifiers as payment**

---

**E.    Debit card** (Recited in claims 3 and 12)

The term "debit card" should be construed as "a card linked to a deposit account." Defendants proposes a construction that improperly extends this construction to "a card linked to a deposit account that can be used to make purchases." Claims 1 and 10 of the '281 Patent already state that acceptance of the customer identifier is used as payment. Including the phrase "that can be used to make purchases" to the construction of "debit card" would make the "as payment" portion of claims 1 and 10 superfluous. It is improper to construe one term such that it renders other claim terms superfluous. Elekta Instrument S.A. v. O.U.R. Scientific Intern., Inc., 214 F.3d 1302, 1307 (Fed. Cir. 2000); Brainy Ideas, Inc. v. Media Group, 169 F. Supp.2d 361, 363 n.2 (E.D. Pa. 2001). Therefore, the Court should adopt AdvanceMe's proposed construction and construe "debit card" as:

| A card linked to a deposit account |
| --- |

**F.    Smart card** (Recited in claims 4 and 13)

One of ordinary skill in the art would understand that "smart card" should be construed according to its ordinary meaning as: "a card that contains an integrated circuit such as a microprocessor or a memory."

As recited in claims 4 and 13, a smart card number can be accepted as the customer identifier. Ex. A, '281 Patent, col. 7:41-43, col. 8:27-29. According to a 1997 computer dictionary, smart card is defined as "a credit card that contains an integrated circuit that gives it a limited amount of 'intelligence' and memory." Ex. N, Microsoft Press Computer Dictionary, Third Edition 1997, p. 439. Judges may rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents. Phillips, 415 F.3d at 1322-1323. One of ordinary skill in the art would understand that a smart card as defined in the 1997 computer

dictionary would be capable of being used as a customer identifier and, thus, is consistent with the use of this term in the '281 Patent.

Defendants incorrectly argue that the term "smart card" is indefinite and, therefore, they fail to provide a construction for this term. Defendants' position is incorrect because Defendants fail to consider the available evidence that a "smart card" had meaning to one of ordinary skill in the art in light of a contemporaneous dictionary definition for "smart card" that is consistent with the use of that term in claims 4 and 13. Accordingly, AdvanceMe respectfully requests that the term "smart card" be construed as:

| A card that contains an integrated circuit such as a microprocessor or a memory |
| --- |

### G.    Accumulating the payments until a predetermined amount is reached
(Recited in claims 8 and 17)

The phrase "accumulating the payments until a predetermined amount is reached" should be construed as "holding a payment or payments until a predetermined monetary amount is reached." Defendants agree with the ending of this construction "...until a predetermined monetary amount is reached." Defendants incorrectly assert, however, that the construction should start with "accumulating the payments..." rather than "holding a payment or payments..." as proposed by AdvanceMe. Defendants proposed construction is incorrect because it improperly divorces the beginning of the phrase "accumulating the payments" from the ending of the phrase, "until a predetermined amount is reached."

The phrase "accumulating the payments until a predetermined amount is reached" needs to be interpreted in its entirety because it is possible that a single payment can equal or exceed the predetermined amount. For example, if the predetermined amount is set for $100.00, then it could be exceeded by a single purchase for more than that amount. Therefore, the construction of this phrase must take this eventuality into account. Accordingly, the phrase "accumulating the

payments until a predetermined amount is reached" should be construed as:

| Holding a payment or payments until a predetermined monetary amount is reached |
|---|

**H.    Periodically forwarding** (Recited in claims 9 and 18)

The term "periodically forwarding" should be construed as "forwarding at intervals

defined by time or predetermined amount."

"Periodically forwarding" is described in two paragraphs of the '281 Specification:

> "In another embodiment, the merchant processor may periodically forward at least a portion of the payment to the lender or designee. For example, the merchant processor may forward payment amounts every month, or based on an amount such as after each one thousand dollars ($1000) worth of transactions." Ex. A, '281 Patent, col. 2:20-25;

> "Also, as another example, the merchant processor 300 can periodically forward payment to the lender 60, such as upon every other payment received from the card issuer 50." Id. at col. 5:45-48.

According to these two statements, "periodically forwarding" occurs either: (1) after a period of

time has elapsed (*e.g.*, every month) or (2) after an event has occurred (*e.g.*, after an amount has

been reached or after a certain number of payments have been received). The proper

construction of the term "periodically forwarding" must, therefore, encompass both of these

scenarios.

Defendants improperly seek to limit "periodically forwarding" to "forwarding at an

interval other than upon every payment." Defendants' proposed construction for "periodically

forwarding" is incorrect because it expressly excludes situations that arise following the above

examples from the '281 Specification. More specifically, Defendants' proposed construction

only encompasses the situation where more than two payments have been received by the

merchant processor, but fails to account for the above-mentioned scenarios involving the

elapsing of a period of time or the reaching of a certain monetary amount. Defendants' proposed

construction is also incorrect because the requirement of "an interval other then upon every

-17-

payment" implicitly involves more than one payment even though claims 9 and 18 each require only a single payment. Accordingly, AdvanceMe requests that "periodically forwarding" be construed as:

| Forwarding at intervals defined by time or predetermined amount |
| --- |

**I.      Third party** (Recited in claims 10, 17, 18, 19)

The term "third party" as recited in the claims of the '281 Patent should be construed as "a payment receiver, i.e., a party that is neither the merchant or merchant processor." As discussed below, this construction is dictated by the ordinary meaning of the claim term and the explicit language in the '281 Specification.

The construction of the term "third party" is straightforward in this case. This term  is explicitly recited in the second element of claim 10 as follows: "means for forwarding a portion of the payment to the third party to reduce the obligation." Ex. A, '281 Patent, col. 8:19-20.  As this claim language indicates, the "third party" is that party which receives the portion of the payment that is forwarded by the merchant processor.  In other words, the third party is the payment receiver.

The payment receiver is referred to as a "*third* party" in claim 10 because the payment receiver is, by definition, a separate entity from the merchant and the merchant processor.  This is clear from the language of claim 10 itself.  The first element of claim 10 identifies the merchant as the "first" party in the recited system. Ex. A, '281 Patent, col. 8:9 ("at the merchant").  The second element of the claim identifies the "second" party as the merchant processor.  Id. at col. 8:15 ("at the computerized merchant processor").  Accordingly, when the final element of claim 10 refers to a "third" party, it is referring to a party *other* than the merchant or merchant processor.

This interpretation also comports with the ordinary meaning of the term "third party." In ordinary parlance, a "third party" is "one *other than* the principals involved in a transaction." Ex. O, American Heritage College Dictionary, Third Edition 1997, p. 1409 (emphasis added). Here, the "principals" identified in the transaction set forth in claim 10 are the merchant and the merchant processor, and, as recited in claim 10, the portion of a payment that would otherwise go to the merchant is instead sent to a separate party that is the payment receiver, i.e., the "third party." Since AdvanceMe's construction is consistent with the ordinary meaning of "third party," it is clearly appropriate.

The ordinary meaning of "third party" is also consistent with the '281 Specification. Indeed, the '281 Specification goes out of its way to make clear that the applicant is using the term "third party" consistent with its ordinary meaning. In the "Summary of the Invention," "third party" is explicitly defined to mean an entity separate from the principals in a two-party transaction:

> The invention utilizes a merchant processor in the loan repayment process. The merchant processor may be, for example, a third party entity (i.e., *an entity other than the borrower or the lender*), the same entity as the lender, or an entity affiliated in some way with the lender. As an example, with some credit cards, the merchant processor can be a third party. As another example, with some cards such as the American Express charge card, the merchant processor can be the same as (or at least closely affiliated with) the lender.

Ex. A, '281 Patent, col. 1:29-42 (emphasis added). In other words, the '281 Patent describes a "third party" as being a party separate from the principals in the transaction (in this example, the borrower and the lender). In this example, the borrower and lender are the "first" and "second" parties and the merchant processor is a separate "third party." On the other hand, if the merchant processor is the same party as one of the principals, it is *not* a third party. The '281

Specification, therefore, uses the term "third party" precisely in accordance with its ordinary meaning.

It is important to emphasize that the '281 Specification addresses the term "third party" from the perspective of the borrower and the lender, *i.e.*, it addresses the existence of a third party to a loan transaction. In this context, if the merchant processor is not the same entity as the lender, then the merchant processor is clearly a "third party" to the transaction. Claim 10, however, is drafted from the *reverse* perspective, i.e., from the perspective of a merchant transaction rather than a loan transaction. Whereas the principals in a loan transaction are the lender and borrower, the principals in a merchant transaction are the merchant and the merchant processor. Accordingly, although a merchant processor may be a "third party" to a loan transaction, it obviously cannot be a "third party" to the merchant transaction recited in claim 10.

In short, the plain language of claim 10 dictates that a third party is simply a payment receiver, i.e., a entity that is neither the merchant or the merchant processor. This definition comports with the ordinary meaning of the term and is the only definition that makes any sense in the context of the language of the claim and the '281 Specification.

The Defendants' proposed construction of "third party" is "an entity other than the customer or the merchant." In other words, it is the Defendants' position that the "third party" in claim 10 can be the merchant processor itself. For numerous reasons, this construction is clearly erroneous.

First, the Defendants' proposed construction is totally inconsistent with the plain language in claim 10, because it leaves open the possibility that the merchant processor itself is a "third party." This cannot possibly be correct. Before introducing the term "third party," claim 10 explicitly identifies both the merchant and the merchant processor as the "first" and "second"

parties. Since the merchant processor is itself identified as a principal, it cannot also be a third party to the same transaction. The only possible way to read the plain language of claim 10 is that the merchant processor is forwarding a payment to a *separate* party that is neither the merchant or the merchant processor itself.

Second, the Defendants' proposed construction is contrary to the ordinary meaning of a "third party" as "one *other than* the principals involved in a transaction." Ex. O, American Heritage College Dictionary, Third Edition 1997, p. 1409. Claim 10 involves transactions between the merchant and the merchant processor; it makes no sense whatsoever to describe the merchant processor as being a "third party" to the very transaction that it is participating in. Rather, the ordinary meaning of "third party" clearly means that the merchant processor is forwarding the payment to an entity that is *separate* from itself.

Third, the Defendants' proposed construction is entirely contradicted by the '281 Specification. The '281 Specification explicitly describes a "third party" as an entity that is *separate* from the principals of the transaction being described. As a result, a merchant processor is described as a "third party" with respect to a loan transaction between a lender and borrower. Ex. A, '281 Patent, col. 1:34-42. In the context of claim 10, it is the merchant and merchant processor that are the principals, and therefore the third party must be a party *separate* from either of them.

It appears that the Defendants' proposed construction attempts to rely on the statement in the '281 Specification that a merchant processor "can be a third party." Ex. A, '281 Patent, col. 1:38-39. This statement, however, means precisely the *opposite* of Defendants' proposed construction. This statement merely means that, *with respect to a loan transaction between the borrower and the lender*, a merchant processor may be a "third party." Claim 10, however, is

-21-

not drafted from the perspective of a loan transaction, but rather is drafted from the perspective of a merchant transaction between the merchant and the merchant processor. In this context specified in claim 10, the merchant processor is itself a principal, and therefore the merchant processor could not possibly be a "third party."

Fourth, the Defendants' proposed construction fails to recognize that claim 10 is a means plus function claim. As recited in claim 10, the payment portion forwarding means is "at the computerized merchant processor." Ex. A, '218 Patent, col. 8:19-20. Since this is a means plus function element, the third party cannot be the merchant processor because the structure for performing this element must be able to *forward* the portion of the payment *from* a merchant processor *to* the third party. If the third party and the merchant processor were the same party, then the payment portion forwarding means would not exist because the merchant processor would be forwarding the portion of the payment to itself. Thus, it is clear that the Defendants' construction contradicts the ordinary meaning of the claims and the '281 Specification.

Accordingly, the term "third party" should be construed as:

| A payment receiver, *i.e.*, a party that is neither the merchant or the merchant processor |
| --- |

J.    **Means for accepting a customer identifier as payment from the customer**
      ("accepting means") (Recited in claim 10)

The parties agree that the function for the "accepting means" in claim 10 is: "accepting a customer identifier as payment from the customer." The parties dispute the construction of "customer identifier" in this function as discussed above. The parties also dispute the corresponding structure for the function of the "accepting means."

The '281 Specification sets forth several alternative structures for accepting a customer identifier as payment from a customer. For example, the '281 Specification discloses that the consumer data input device 316 can be used to accept a customer identifier. See Ex. A, '281

Patent, FIG. 3B, col. 6:23-34. The '281 Patent also indicates that acceptance of a customer identifier as payment "can be done…over the telephone." Id. at col. 2:7-10; col. 3:20-22. The '281 Patent also discloses that the a customer can provide the customer identifier to a merchant via the World Wide Web page. Id. at col. 2:10-11. The '281 Patent further discloses that the customer identifier can also be presented to a merchant "electronically by computer." Id. at col. 3:21-23. As alternatives, any one of these structures independently can serve as the corresponding structure for the "accepting means."

Defendants' proposed structure of "a magnetic card reader or keyboard or telephone" is improper because it is too limited in view of the '281 Specification. First of all, Defendants' inclusion of the "magnetic card reader" or "keyboard" fails to recognize that these structures are merely examples of the customer data input device 316 shown in Fig. 3B. Secondly, Defendants' proposed structure fails to recognize that a computer or the World Wide Web page are also alternative structures capable of carrying out the function of the accepting means.

Accordingly, AdvanceMe respectfully requests that the "accepting means" be construed:

---

**Function**
**Accepting a customer identifier as payment from the customer**

**Corresponding Structure**
**Consumer data input device 316 or telephone or computer or World Wide Web page**

---

### K.    Means for electronically forwarding information related to the payment to a computerized merchant processor ("electronically forwarding means") (Recited in claim 10)

The parties agree that the function for the "electronically forwarding means" recited in claim 10 is: "electronically forwarding information related to the payment to a computerized merchant processor." The parties disagree, however, on the corresponding structure for performing this function.

The corresponding structure for the "electronically forwarding means" is "input/output device 322." FIG. 3B shows the input/output (I/O) device 322 in the merchant 20. The I/O device 322 allows the merchant to communicate with the merchant processor. Ex. A, '281 Patent, col. 6:60-62.

Defendants' proposed structure of a "modem and public and/or private network" for the "electronically forwarding means" is incorrect. Under this proposed structure, Defendants' improperly narrows the definition of the I/O device 322 to a modem even though the '281 Specification clearly indicates that a modem is merely an example of a suitable I/O device. Further, the inclusion of a "pubic and/or private network" to the structure of the "electronically forwarding means" is improper because claim 10 recites that the "electronic forwarding means" is located "at the merchant." Nowhere in the '281 Patent is a "public or private network" described as being "at the merchant processor" as required by claim 10. It is improper to include structure that is not directed to performing the claimed function of a means-plus-function term. Micro Chemical, Inc. v. Great Plains Chemical Co., Inc., 194 F.3d 1250, 1257–58 (Fed. Cir. 2002). Therefore, a "public or private network" cannot be included as part of the structure for the "electronic forwarding means."

For these reasons, "electronically forwarding means" should be construed as:

| **Function**<br>**Electronically forwarding information related to the**<br>**payment to a computerized merchant processor**<br><br>**Corresponding Structure**<br>**Input/output device 322** |
| --- |

L.    **Means for receiving the information related to the payment from the merchant** ("receiving means") (Recited in claim 10)

The parties agree that the function for the "receiving means" is: "receiving the

information related to the payment from the merchant."

The corresponding structure for the "receiving means" is: "input/output device 306 or telephone." The '281 Patent discloses at least two alternative structures for the receiving means. First, FIG. 3A shows input/output (I/O) device 306 in the merchant processor 300. The merchant processor 300 can communicate with the merchant 20 using the I/O device 306. Ex. A, '281 Patent, col. 5:53-56; col. 6:60-62. Second, the '281 Specification also discloses that the communications between the merchant and the merchant processor in FIGS. 1A and 1B (including information relating to the payment) can possibly be accomplished by telephone. Id. at col. 4:8-15. As alternatives, either of these structures can independently serve as the corresponding structure for the "receiving means."

Defendants' proposed structure of a "modem" for the "receiving means" is incorrect. Under this proposed structure, Defendants improperly narrows the definition of the I/O device 306 to a modem even though the '281 Specification clearly indicates that a modem is merely an example of a suitable I/O device. Ex. A, '281 Patent, col. 6:60-63 ("These devices 306 and 322 can be modems, for example"). In addition, Defendants' proposed structure for the "receiving means" fails to even account for the alternative structure of a telephone for the "receiving means."

Accordingly, the "receiving means" should be construed as:

| **Function** |
| --- |
| **Receiving the information related to the payment from the merchant** |
| |
| **Corresponding Structure** |
| **Input/output device 306 or telephone** |

**M.     Means for authorizing the payment** ("authorizing means") (Recited in claim 10)

The parties agree that the function of the "authorizing means" is "authorizing the

-25-

payment" and that this function should be interpreted as "obtaining permission for using the customer identifier for the transaction between the customer and the merchant." In spite of ample evidence in the '281 Specification for identifying the structure for carrying out the "authorizing means," Defendants offer no structure for the "authorizing means."

As recited in claim 10, the "authorizing means" is "at the merchant processor." Ex. A, '281 Patent, col. 8:15-18. Therefore, the structure for carrying out the "authorizing means" must be at the merchant processor. According to the '281 Specification, "[t]he merchant processor 300 can be an appropriately programmed computer...or it can include a plurality of such computers cooperating to perform the functionality described herein." Id. at col. 6:7-11. Thus, one structure for the "authorizing means" can be "one or more computers."

The '281 Specification also indicates that "[i]n an alternative embodiment, some or all of the functionality [of the merchant processor] described herein can be accomplished with dedicated electronics hard-wired to perform the described functions." Ex. A, '281 Patent, col. 5:63-66. Therefore, some or all of the structure for the "authorizing means" can also be dedicated electronics.

According to the '281 Specification, authorization is depicted in FIG. 1A. Ex. A, '281 Patent, col. 2:65-67 - 3:30. However, Fig. 1A shows the entire authorization process - from start to finish - and not only the portion performed by the merchant processor. According to the '281 Specification, the specific portion of Fig. 1A carried out at the merchant processor for the agreed function of the "authorizing means" (i.e., "obtaining permission for using the customer identifier for the transaction between the customer and the merchant") is routing an authorization request to a card issuer and receiving approval of the authorization from the card issuer. Id. at col. 3:35-40 ("The merchant processor 30 (also known as an acquirer because it acquires merchant

transactions) then routes the authorization request to a card issuer 50 via a network 40, as indicated by arrows 32 and 40") and col. 3:66- 4:2 ("Assuming the request is approved, the card issuer 50 sends approval of the authorization to the merchant processor 30 via the network 40, as indicated by arrows 44 and 34").   Thus, based on the structure disclosed in the '281 Specification, "authorizing means" should be construed as:

| **Function** |
| --- |
| **Authorizing the payment ("Obtaining permission for using the customer identifier for the transaction between the customer and the merchant")** |
| **Corresponding Structure** |
| **One or more computers and/or dedicated electronics programmed or configured to route an authorization request to a card issuer and receive approval of the authorization from the card issuer** |

N.    **Means for...settling the payment** ("settling means") (Recited in claim 10)

The parties agree that the function of the "settling means" is "settling the payment." While the parties dispute the construction of this function, both parties agree that "settling the payment" is "the part of a transaction where an amount is transferred or credited" either "to a merchant processor" (as proposed by AdvanceMe) or "by the card issuer" (as proposed by Defendants).

With respect to the corresponding structure for the function of the "settling means," Defendants assert that there is no structure provided for this term.  Defendants' position is incorrect because the '281 Specification clearly discloses sufficient structure for one of ordinary skill in the art to carry out the "settling means."

As recited in claim 10, the "settling means" is "at the merchant processor." Ex. A, '281 Patent, col. 8:15-18.  Therefore, the structure for carrying out the "settling means" is at the

merchant processor like the "authorizing means." For the same reasons provided for the "authorizing means," the structure for the "settling means" includes "one or more computers and/or dedicated electronics." Id. at col. 6:7-11 ("The merchant processor 300 can be an appropriately programmed computer…or it can include a plurality of such computers cooperating to perform the functionality described herein."); col. 5:63-66 ("In an alternative embodiment, some or all of the functionality [of the merchant processor] described herein can be accomplished with dedicated electronics hard-wired to perform the described functions.").

FIG. 1B shows the entire settlement process of a payment transaction. Ex. A, '281 Patent, col. 2:65-67. In this process, the merchant processor submits the amount of the customer's purchase to the card issuer and receives or is credited some amount for that purchase. Id. at col. 4:27-29 ("The merchant processor 30 submits the entire amount of the customer's purchase to the card issuer 50 via the network 40, as indicated by arrows 36 and 46"); col. 4:31-39 ("In the case where the network 40 is included and the merchant processor and card issuer functions are separate, the card issuer 50, via the network 40, pays the merchant processor 30 some amount less than the amount submitted to the card issuer 50 by the merchant processor 30, as indicated by arrows 48 and 38. This reduced amount reflects another fee levied on the transaction by the card issuer 50, often referred to as an interchange fee"). Accordingly, the "settling means" should be construed as:

---

**Function**
**Settling the payment**

**Corresponding Structure**
**One or more computers and/or dedicated electronics**
**programmed or configured to submit the amount of the customer's purchase**
**to the card issuer and receive or be credited some amount by the card issuer**

---

**O.**    <u>Means for forwarding a portion of the payment to the third party</u>
("portion forwarding means") (Recited in claim 10)

The parties agree that the function of the "portion forwarding means" recited in claim 10

of the '281 Patent is: "forwarding a portion of the payment to the third party." In the recited

function, the parties dispute the construction of the term "third party" which is discussed above.

The corresponding structure for the "portion forwarding means" is input/output (I/O)

device 306. I/O device 306 is shown in the diagram of the merchant processor 300 in FIG. 3A.

Ex. A, '281 Patent, col. 3:4-5. The I/O device 306 allows the merchant processor 300 to

communicate electronically with the other entities in the payment system, including the third

party. <u>Id.</u> at col. 5:53-57. Therefore, the I/O device 306 is the structure at the merchant

processor used to forward a portion of the payment to the third party.

In spite of this clear description of the structure for carrying out the "portion forwarding

means," the Defendants propose no structure for this term. With the Defendants failing to

identify any structure for the "portion forwarding means," AdvanceMe respectfully requests that

the following construction be adopted for this term:

| <u>Function</u><br>Forwarding a portion of the payment to the third party<br><br><u>Corresponding Structure</u><br>Input/output device 306 |
| :---: |

**P.**    <u>Specific accepting means of claims 11 through 14</u>

     **1.**     **Means for accepting a credit card number as the customer identifier**
             ("credit card accepting means") (Recited in claim 11)

     **2.**     **Means for accepting a debit card number as the customer identifier**
             ("debit card accepting means") (Recited in claim 12)

     **3.**     **Means for accepting a smart card number as the customer identifier**
             ("smart card accepting means") (Recited in claim 13)

     **4.**     **Means for accepting a charge card number as the customer identifier**
             ("charge card accepting means") (Recited in claim 14)

     **5.**     **Means for accepting the customer identifier at a merchant location**

("merchant location accepting means") (Recited in claim 15)

**6.    Means for electronically accepting the customer identifier**
("electronic accepting means") (Recited in claim 13)

The parties agree on the functions for each of the means plus function terms (collectively, the "specific accepting means terms") recited in claims 11 through 16 of the '281 Patent although the parties dispute certain terms in the agreed upon functions.[1]

For each of these terms, the parties propose the same corresponding structures that they propose for the "accepting means" recited in claim 10 (see above). Since credit card numbers (claim 11), debit card numbers (claim 12), smart card numbers (claim 13), and a charge card numbers (claim 14) are all exemplary customer identifiers, the same structures corresponding to the "accepting means" of claim 10 can be used to accept these identifiers as well (i.e., consumer data input devices 316 or telephones or computers or World Wide Web pages). As clearly indicated above under the "accepting means," all of these alternative structures are electronic and, therefore, are the appropriate structure for the "electronic accepting means" of claim 16. In addition, the '281 Specification indicates that these structures may be provided at a merchant location (See, e.g., Ex. A, '281 Patent, col. 2:7-11; col. 6:18-41; 49-52) and, therefore, are the appropriate structures for the "merchant location accepting means" of claim 15.

For these reasons, AdvanceMe respectfully requests adoption of the following constructions for the specific accepting means terms:

---

[1] The parties dispute the construction of "customer identifier" which is recited in claims 11-16, "debit card" recited in claim 12, and "smart card" recited in claim 13.

> **1. Means for accepting a credit card number as the customer identifier**
> **Function**
> Accepting a credit card number as the customer identifier
>
> **2. Means for accepting a debit card number as the customer identifier**
> **Function**
> Accepting a debit card number as the customer identifier
>
> **3. Means for accepting a smart card number as the customer identifier**
> **Function**
> Accepting a smart card number as the customer identifier
>
> **4. Means for accepting a charge card number as the customer identifier**
> **Function**
> Accepting a charge card number as the customer identifier
>
> **5. Means for accepting the customer identifier at a merchant location**
> **Function**
> Accepting the customer identifier at a merchant location
>
> **6. Means for electronically accepting the customer identifier**
> **Function**
> Accepting the customer identifier at a merchant location
>
> **Corresponding Structure for Each of the Specific Accepting Means Nos. 1-6:**
> Consumer data input device 316 or telephone or computer or World Wide Web page

    **Q.**    **Means for accumulating the payments until a predetermined amount is reached** ("accumulating means") (Recited in claim 17)

    The parties agree that the function of the "accumulating means" is "accumulating the payments until a predetermined amount is reached" although the construction of this function is in dispute as previously discussed. Defendants, however, offer no corresponding structure for the "accumulating means."

    AdvanceMe proposes the that corresponding structure for the "accumulating means" is: "one or more computers and/or dedicated electronics programmed or configured to accumulate

payments it receives until a predetermined amount is reached." As recited in claim 17, the accumulating means is "at the merchant processor." Ex. A, '281 Patent, col. 8:39-42. Therefore, the structure for carrying out the "accumulating means" is at the merchant processor.

According to the '281 Specification, "[t]he merchant processor 300 can be an appropriately programmed computer…or it can include a plurality of such computers cooperating to perform the functionality described herein." Ex. A, '281 Patent, col. 6:7-11. "In an alternative embodiment, some or all of the functionality [of the merchant processor] described herein can be accomplished with dedicated electronics hard-wired to perform the described functions." Id. at col. 5:63-66. Therefore, the structure of the accumulating means includes "one or more computers and/or dedicated electronics."

According to the '281 Specification, "the merchant 300 can accumulate the payments received from the card issuer 50 (via arrows 48 and 38 [of FIG. 2]) until a predetermined dollar amount is reached…" Ex. A, '281 Patent, col. 5:40-43. Thus, the disclosed algorithm for the "accumulating means" is to accumulate payments the merchant processor receives until a predetermined amount is reached. Therefore, AdvanceMe respectfully requests adoption of the following construction for the "accumulating means:"

---

**Function**
**Accumulating the payments until a predetermined amount is reached**

**Corresponding Structure**
**one or more computers and/or dedicated electronics**
**programmed or configured to accumulate payments it receives**
**until a predetermined amount is reached**

---

**R.**  **Means for forwarding at least a portion of the accumulated payments to the third party ("accumulated payment forwarding means") (Recited in claim 17)**

The parties agree that the function of the "accumulated payment forwarding means" is "forwarding at least a portion of the accumulated payments to the third party," although the

parties dispute the construction of "third party" as previously discussed.

The corresponding structure for the "accumulated payment forwarding means" should be input/output (I/O) device 306. As recited in claim 17, the "accumulated payment forwarding means" is the means plus function term that forwards a portion of the amount accumulated by the "accumulating means." According to the '281 Specification, the I/O device 306 is the structure at the merchant processor 300 shown in FIG. 3A that allows the merchant processor 300 to communicate electronically with the other entities in the payment system, including the third party. Ex. A, '281 Patent, col. 5:53-57. Therefore, the I/O device 306 is the structure used to forward a portion of the accumulated payments to the third party.

Defendants propose no structure for the "accumulated payment forwarding means" in spite of the clear description of the purpose of the I/O device 306. For these reasons, the "periodically forwarding means" should be construed as:

| **Function** |
| :---: |
| **Forwarding at least a portion of the accumulated payments to the third party** |
| |
| **Corresponding Structure** |
| **Input/output device 306** |

**S.**  **Means for periodically forwarding at least a portion of the payment to the third party** ("periodically forwarding means") (Recited in claim 18)

The parties agree that the function of the "periodically forwarding means" recited in claim 18 of the '281 Patent is: "periodically forwarding at least a portion of the payment to the third party" although the parties dispute the meanings of the terms "periodically forwarding" and "third party" as discussed above.

The proposed structure for "periodically forwarding a portion of the payment to the third party" should be that structure in the merchant processor which is used to forward amounts to the third party, namely, input/output (I/O) device 306 shown in Fig. 3A. According to the '281

Specification, I/O device 306 allows the merchant processor 300 to communicate electronically with the other entities in the payment system, including the third party. Ex. A, '281 Patent, col. 5:53-57. Therefore, the I/O device 306 is the structure at the merchant processor used to periodically forward a portion of the payment to the third party.

Defendants propose no structure for the "periodically forwarding means" even though the '281 Specification clearly establishes that the I/O device 306 is the structure that is used to forward amounts to the third party. Accordingly, the "periodically forwarding means" should be construed as:

| **Function** |
| --- |
| **Periodically forwarding at least a portion of the payment to the third party** |
| |
| **Corresponding Structure** |
| **Input/output device 306** |

T.    **Means for forwarding to the third party an amount that is a percentage of the obligation** ("percentage forwarding means") (Recited in claim 19)

The parties agree that the function of the "percentage forwarding means" recited in claim 19 of the '281 Patent is: "forwarding to the third party an amount that is a percentage of the obligation." In the recited function, the parties agree that the term "percentage of the obligation" should be construed as "any percentage of the obligation" but dispute the meaning of the terms "obligation" and "third party" as previously discussed.

AdvanceMe proposes the "input/output device 306" as the corresponding structure for the "percentage forwarding means." Defendants, on the other hand, assert that no structure is disclosed for this term in spite of the clear description of the corresponding structure in the '281 Specification. Input/output (I/O) device 306 is shown as part of the merchant processor 300 in FIG. 3A. Ex. A, '281 Patent, col. 3:4-5. The I/O device 306 allows the merchant processor 300 to communicate electronically with the other entities in the payment system, including the third

-34-

party. Id. at col. 5:53-57. Thus, the I/O device 306 is the structure at the merchant processor used to forward a portion of the payment to the third party. The portion of a payment that is forwarded to the third party by the merchant processor to reduce the obligation is inherently some percentage of the obligation. Therefore, I/O device 306 is clearly the structure for carrying out the "percentage forwarding means." Accordingly, the "percentage forwarding means" should be construed as:

| **Function** |
|:---:|
| **Forwarding to the third party an amount that is a percentage of the obligation** |
| **Corresponding Structure**<br>**Input/output device 306** |

## V.    **CONCLUSION**

Therefore, AdvanceMe respectfully requests that the Court adopt its proposed claim constructions for the '281 Patent.

Date:  September 13, 2006

Respectfully submitted,

By: _____ /s/ Ronald S. Lemieux _____
PAUL, HASTINGS, JANOFSKY & WALKER LLP
Ronald S. Lemieux
(CA Bar No. 120822) (Admitted Pro Hac Vice)
Vidya R. Bhakar
(CA Bar No. 220210) (Admitted Pro Hac Vice)
Robert C. Matz
(CA Bar No. 217822) (Admitted Pro Hac Vice)
Five Palo Alto Square, Sixth Floor
Palo Alto, CA  94306-2155
Telephone: (650) 320-1800
Telecopier: (650) 320-1900
Email:  ronlemieux@paulhastings.com

IRELAND, CARROLL & KELLEY, P.C.
Otis W. Carroll, Attorney-in-Charge
State Bar No. 03895700
Deborah Race
State Bar No. 16448700
6101 South Broadway, Suite 500
Tyler, TX  75703
Telephone:  903-561-1600
Facsimile:  903-581-1071
Email:  fedserv@icklaw.com
ATTORNEYS FOR PLAINTIFF ADVANCEME, INC.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **ADVANCEME, INC.,** | § | **CIVIL CASE NO. 6:05-cv-424 (LED)** |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| **RAPIDPAY LLC, FIRST FUNDS LLC,** | § | |
| **MERCHANT MONEY TREE, INC.,** | § | |
| **REACH FINANCIAL, LLC, and** | § | |
| **FAST TRANSACT, INC. d/b/a** | § | |
| **SIMPLE CASH,** | § | |
| **Defendants.** | § | |
| | § | |

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served a copy of this document via the court's CM/ECF system per Local Rule CV-5(a)(3) on this the 13th day of September, 2006.  Any other counsel of record will be served by first class mail on this same date.

_____/s/ Ronald S. Lemieux_____
Ronald S. Lemieux

LEGAL_US_W # 54386761.1