## EXHIBIT J

**TO AFFIDAVIT OF MICHAEL N. EDELMAN IN
SUPPORT OF ADVANCEME, INC.'S OPPOSITION TO MOTION
FOR LEAVE TO AMEND INVALIDITY CONTENTIONS**

Dockets.Justia.com

**EXHIBIT 5**

**EDS**

**INVALIDITY CLAIM CHART**

**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| 1. A method for automated payment, comprising: | The Credit Card Processing Agreement" ("Agreement") among Electronic Data Systems Corporation ("EDS"), Reno Air, Inc. ("Reno Air")[1], and First USA Merchant Services, Inc. ("First USA"), and the Reserve Account Agreement[2] between EDS and Reno Air, describe a method for automated payment. EDS, the merchant processor, as agent for First USA, provides card processing services to a merchant. The merchant repays obligations to EDS and/or First USA through future sales transactions. |
| at a merchant, | "WHEREAS, Carrier, a certificated air carrier engaged in the transportation of passengers by air, desires to make available to its customers a convenient means of purchasing air transportation, both on a current and time payment basis, through the use of Cards; and |
| accepting a customer identifier as payment from the customer | WHEREAS, EDS is a provider of Card-related services to financial institutions and merchants, and desires, as agent for FUSA, to manage the services to be provided by FUSA to Carrier and to process Carrier's Card transactions on behalf of FUSA under a separate agreement with FUSA. . . ." Agreement at 1. |
| and electronically forwarding information related to the payment to a computerized merchant processor; | "e.  Card – Any Card bearing the service mark of MasterCard International, Via, U.S.A., Inc. or Visa International." Agreement at 2.

"q.  Sales Slip – A form approved by EDS and FUSA which is used to evidence Travel costs incurred by Cardholder through the use of a Card. The standard airline industry form will be an approved form." Agreement at 4.

"5.2  Carrier or Agent shall submit to EDS for processing the paper, magnetic tape or electronic transmission of the Sales Slip and the Credit Slip, no later than thirty (30) calendar |

---

[1] The Credit Card Processing Agreement is being produced simultaneously with this invalidity claim chart and consists of Bates numbers EDSADV 00046 – EDSADV 00094.

[2] The Reserve Account Agreement is being produced simultaneously with this invalidity claim chart and consists of Bates numbers EDSADV 00095 – EDSADV 00095 – EDSADV 00103.

**EDS**

**INVALIDITY CLAIM CHART**

**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | days following the date of the Sales Slip, and seven (7) Business Days following the date of the Credit Slip, or such other period as complies with applicable law." Agreement at 10. |
| at the computerized merchant processor, | ". . . Carrier may honor Cards in connection with Carrier's sales of air transportation, and the method of receiving payment or credit from FUSA for the Sales Slips and Credit Slips which are generated as a result of such sales." Agreement at 1. |
| acquiring the information related to the payment from the merchant, authorizing and setting the payment, | "6.1   In lieu of sending Sales Slips and Credit Slips, Carrier may submit to EDS, as agent for FUSA, a summary of all Travel Costs recorded on machine readable magnetic tape or electronic transmission compatible with the computer system of EDS." Agreement at 12. |
| | ". . . EDS has agreed to assist FUSA in providing services to Carrier and to process Carrier's Card transactions on behalf of FUSA." Agreement at 1 (showing that EDS is acting as merchant processor). |
| and forwarding at least a portion of the payment to a computerized payment receiver as payment of at least a portion of an obligation made by the merchant; | "Carrier or Agent will contact an Authorization center to obtain Authorization in accordance with the standard Visa System and MasterCard Operating Rules and Regulations, as applicable, before completing the transaction. Carrier may elect the Authorization provider it will use, subject to approval by EDS and FUSA." Agreement at 6. |
| | "9.4    Carrier warrants and represents to FUSA and EDS that (i) when executed and delivered by Carrier, this Agreement shall constitute a valid and legal obligation of Carrier, binding in accordance with its terms." Agreement at 14. |
| | "o.    Reserve Account – The account constituting and containing collateral security for the due and punctual payment of all obligations of Carrier to EDS and/or FUSA under or in connection with this Agreement.  The Reserve Account shall be subject to the terms of a separate agreement between EDS and Carrier."  Agreement at 4; *see* Reserve Account Agreement. |
| | "m.    Net Daily Activity – An amount equal to the net daily total of Sales Slips, Credit Slips, |

2

## EDS
## INVALIDITY CLAIM CHART
## UNITED STATES PATENT NO. 6,941,281

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | Chargebacks, adjustments, reimbursements, and processing fees set out in Schedule B on a Monday through Friday processing schedule (except for banking holidays)." Agreement at 4. |
| | "If for any reason the Initial Base Reserve Amount is not raised within two (2) days to an amount acceptable to EDS, then Carrier shall be in default under this Agreement and EDS has the express right to hold back the amount of cash flow which is the amount of funds generated by Net Daily Activity that otherwise would be forwarded to Carrier, which EDS is entitled to add to the Reserve Account in accordance with the Reserve Account Agreement." Agreement at 15. |
| | "EDS may at any time, in its sole judgment . . . (ii) after demand to Carrier, may proceed by delivering a letter to request that FUSA withhold funds in the amount specified from funds which would otherwise be payable to Carrier under the terms of the Merchant Agreement, and to transfer such funds to the Reserve Account." Reserve Account Agreement at 5. |
| | "If the amount of Net Daily Activity or the exercise of any other rights under this Agreement (including, without limitation, recalculation of the amount of the Reserve Account in accordance with the separate agreement pertaining thereto) results in an amount due FUSA (or, in the case of the Reserve Account, EDS), FUSA may, at its option, offset the amount due FUSA against Carrier's subsequent days' Sales Slips provided that if the subsequent day's Sales Slips are, or are reasonably projected to be, insufficient, EDS or FUSA may request immediate federal wire transfer at FUSA's direction." Agreement at 10. |
| | "FUSA will offset the amount due FUSA for any Chargebacks against Carrier's Net Daily Activity." Agreement at 13. |
| | "I. To the extent that the annualized Net Daily Activity is less than $100,000,000.00 per year during each twelve month period following the Effective Date, Carrier shall pay EDS fifteen basis points (0.15%) of the amount of the deficiency. Such amount will be deducted from Net Daily Activity by FUSA upon written notice from EDS to Carrier within ten Business Days |

3

EDS
INVALIDITY CLAIM CHART
UNITED STATES PATENT NO. 6,941,281

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| and at the computerized payment receiver, receiving the portion of the payment forwarded by the computerized merchant processor, and applying that portion to the outstanding obligation made by the merchant to reduce such obligation. | after each anniversary of the Effective Date." Agreement at B-3.<br><br>"5.6    EDS, as agent for FUSA, will provide Carrier with daily transaction reports that correspond to Net Daily Activity in a mutually agreed format that will summarize sales, returns (refunds), Chargebacks, processing fees, and adjustments with adequate detail to allow Carrier to perform account reconciliation." Agreement at 11.<br><br>"5.6    EDS, as agent for FUSA, will provide Carrier with daily transaction reports that correspond to Net Daily Activity in a mutually agreed format that will summarize sales, returns (refunds), Chargebacks, processing fees, and adjustments with adequate detail to allow Carrier to perform account reconciliation." Agreement at 11.<br><br>"9.4    Carrier warrants and represents to FUSA and EDS that (i) when executed and delivered by Carrier, this Agreement shall constitute a valid and legal obligation of Carrier, binding in accordance with its terms." Agreement at 14.<br><br>"o.    Reserve Account – The account constituting and containing collateral security for the due and punctual payment of all obligations of Carrier to EDS and/or FUSA under or in connection with this Agreement. The Reserve Account shall be subject to the terms of a separate agreement between EDS and Carrier." Agreement at 4.<br><br>"m.    Net Daily Activity – An amount equal to the net daily total of Sales Slips, Credit Slips, Chargebacks, adjustments, reimbursements, and processing fees set out in Schedule B on a Monday through Friday processing schedule (except for banking holidays)." Agreement at 4.<br><br>"If for any reason the Initial Base Reserve Amount is not raised within two (2) days to an amount acceptable to EDS, then Carrier shall be in default under this Agreement and EDS has the express right to hold back the amount of cash flow which is the amount of funds generated by Net Daily Activity that otherwise would be forwarded to Carrier, which EDS is entitled to add to the Reserve Account in accordance with the Reserve Account Agreement." |

**EDS**
**INVALIDITY CLAIM CHART**
**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | Agreement at 15. |
| | "EDS may at any time, in its sole judgment . . . (ii) after demand to Carrier, may proceed by delivering a letter to request that FUSA withhold funds in the amount specified from funds which would otherwise be payable to Carrier under the terms of the Merchant Agreement, and to transfer such funds to the Reserve Account." Reserve Account Agreement at 5. |
| | "If the amount of Net Daily Activity or the exercise of any other rights under this Agreement (including, without limitation, recalculation of the amount of the Reserve Account in accordance with the separate agreement pertaining thereto) results in an amount due FUSA (or, in the case of the Reserve Account, EDS), FUSA may, at its option, offset the amount due FUSA against Carrier's subsequent day's Sales Slips provided that if the subsequent day's Sales Slips are, or are reasonably projected to be, insufficient, EDS or FUSA may request immediate federal wire transfer at FUSA's direction." Agreement at 10. |
| | "FUSA will offset the amount due FUSA for any Chargebacks against Carrier's Net Daily Activity." Agreement at 13. |
| | "I. To the extent that the annualized Net Daily Activity is less than $100,000,000.00 per year during each twelve month period following the Effective Date, Carrier shall pay EDS fifteen basis points (0.15%) of the amount of the deficiency. Such amount will be deducted from Net Daily Activity by FUSA upon written notice from EDS to Carrier within ten Business Days after each anniversary of the Effective Date." Agreement at B-3. |
| 2. The method of claim 1 wherein the accepting step comprises accepting a credit card number as the customer identifier. | "WHEREAS, Carrier, a certificated air carrier engaged in the transportation of passengers by air, desires to make available to its customers a convenient means of purchasing air transportation, both on a current and time payment basis, through the use of Cards; and |
| | WHEREAS, EDS is a provider of Card-related services to financial institutions and merchants, and desires, as agent for FUSA, to manage the services to be provided by FUSA to Carrier and to process Carrier's Card transactions on behalf of FUSA under a separate agreement with |

**EDS**

**INVALIDITY CLAIM CHART**

**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| 3. The method of claim 1 wherein the accepting step comprises accepting a debit card number as the customer identifier. | "e.    Card – Any Card bearing the service mark of MasterCard International, Via, U.S.A., Inc. or Visa International." Agreement at 1.<br><br>It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, e.g., for debit cards as well as credit cards. The statements by the alleged inventor and by the Examiner, and the language of the patent-in-suit itself, make clear that a person of ordinary skill in the art would be motivated to make the EDS system and/or method work in the same way for any customer identifier, including debit cards.<br><br>"WHEREAS, Carrier, a certificated air carrier engaged in the transportation of passengers by air, desires to make available to its customers a convenient means of purchasing air transportation, both on a current and time payment basis, through the use of Cards; and<br><br>WHEREAS, EDS is a provider of Card-related services to financial institutions and merchants, and desires, as agent for FUSA, to manage the services to be provided by FUSA to Carrier and to process Carrier's Card transactions on behalf of FUSA under a separate agreement with FUSA. . . ." Agreement at 1.<br><br>"e.    Card – Any Card bearing the service mark of MasterCard International, Via, U.S.A., Inc. or Visa International." Agreement at 2. |
| 4. The method of claim 1 wherein the accepting step comprises accepting a smart card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, e.g., for smart cards as well as credit cards. The statements by the alleged inventor and by the Examiner, and the language of the patent-in-suit itself, make clear that a person of ordinary skill in the art would be motivated to make the EDS system and/or method work in the same way for any customer identifier, |

**EDS**
**INVALIDITY CLAIM CHART**
**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | including smart cards. |
| | "WHEREAS, Carrier, a certificated air carrier engaged in the transportation of passengers by air, desires to make available to its customers a convenient means of purchasing air transportation, both on a current and time payment basis, through the use of Cards; and |
| | WHEREAS, EDS is a provider of Card-related services to financial institutions and merchants, and desires, as agent for FUSA, to manage the services to be provided by FUSA to Carrier and to process Carrier's Card transactions on behalf of FUSA under a separate agreement with FUSA. . . ." Agreement at 1. |
| | "e.     Card – Any Card bearing the service mark of MasterCard International, Via, U.S.A., Inc. or Visa International." Agreement at 2. |
| 5. The method of claim 1 wherein the accepting step comprises accepting a charge card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, e.g., for charge cards as well as credit cards. The statements by the alleged inventor and by the Examiner, and the language of the patent-in-suit itself, make clear that a person of ordinary skill in the art would be motivated to make the EDS system and/or method work in the same way for any customer identifier, including charge cards. |
| | "WHEREAS, Carrier, a certificated air carrier engaged in the transportation of passengers by air, desires to make available to its customers a convenient means of purchasing air transportation, both on a current and time payment basis, through the use of Cards; and |
| | WHEREAS, EDS is a provider of Card-related services to financial institutions and merchants, and desires, as agent for FUSA, to manage the services to be provided by FUSA to Carrier and to process Carrier's Card transactions on behalf of FUSA under a separate agreement with FUSA. . . ." Agreement at 1. |

**EDS**
**INVALIDITY CLAIM CHART**
**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| 6. The method of claim 1 wherein the accepting step comprises accepting the customer identifier at a merchant location. | "e.    Card – Any Card bearing the service mark of MasterCard International, Via, U.S.A., Inc. or Visa International." Agreement at 2.<br><br>"q.    Sales Slip – A form approved by EDS and FUSA which is used to evidence Travel costs incurred by Cardholder through the use of a Card. The standard airline industry form will be an approved form." Agreement at 4.<br><br>"Each Sales Slip shall be electronically imprinted or imprinted with a Card." Agreement at 7 (implying that the Card is present at the Carrier's location).<br><br>"Any point of sale transaction with an authorization performed through a point of sale terminal that performs electronic draft capture is deemed to be an acceptable transaction." Agreement at 7 (implying that the Card is present at the Carrier's location).<br><br>"5.2    Carrier or Agent shall submit to EDS for processing the paper, magnetic tape or electronic transmission of the Sales Slip and the Credit Slip, no later than thirty (30) calendar days following the date of the Sales Slip, and seven (7) Business Days following the date of the Credit Slip, or such other period as complies with applicable law." Agreement at 10 (implying that the Card is present at the Carrier's location). |
| 7. The method of claim 1 wherein the accepting step comprises electronically accepting the customer identifier. | "q.    Sales Slip – A form approved by EDS and FUSA which is used to evidence Travel costs incurred by Cardholder through the use of a Card. The standard airline industry form will be an approved form." Agreement at 4.<br><br>"Each Sales Slip shall be electronically imprinted or imprinted with a Card." Agreement at 7.<br><br>"Any point of sale transaction with an authorization performed through a point of sale terminal that performs electronic draft capture is deemed to be an acceptable transaction." Agreement at 7.<br><br>"5.2    Carrier or Agent shall submit to EDS for processing the paper, magnetic tape or |

**EDS**
**INVALIDITY CLAIM CHART**
**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| 8. The method of claim 1 wherein the steps performed at the merchant processor further comprise accumulating the payments until a predetermined amount is reached and then forwarding at least a portion of the accumulated payments to the payment receiver. | electronic transmission of the Sales Slip and the Credit Slip, no later than thirty (30) calendar days following the date of the Sales Slip, and seven (7) Business Days following the date of the Credit Slip, or such other period as complies with applicable law." Agreement at 10.<br><br>"9.4    Carrier warrants and represents to FUSA and EDS that (i) when executed and delivered by Carrier, this Agreement shall constitute a valid and legal obligation of Carrier, binding in accordance with its terms." Agreement at 14.<br><br>"m.    Net Daily Activity – An amount equal to the net daily total of Sales Slips, Credit Slips, Chargebacks, adjustments, reimbursements, and processing fees set out in Schedule B on a Monday through Friday processing schedule (except for banking holidays)." Agreement at 4.<br><br>"Carrier agrees to pay FUSA charges according to the following fee schedule." Agreement at B-1.<br><br>"5.5 EDS will calculate the processing fees on the Net Daily Activity (excluding processing fees) and FUSA will charge the sum of said fees on a daily basis. The processing fees shall be as set forth in Schedule B which is attached hereto and incorporated herein." Agreement at 11 (showing that EDS periodically forwarded the sum of the processing fees to FUSA).<br><br>"1. To the extent that the annualized Net Daily Activity is less than $100,000,000.00 per year during each twelve month period following the Effective Date, Carrier shall pay EDS fifteen basis points (0.15%) of the amount of the deficiency. Such amount will be deducted from Net Daily Activity by FUSA upon written notice from EDS to Carrier within ten Business Days after each anniversary of the Effective Date." Agreement at B-3.[3] |
| 9. The method of claim 1 wherein | "9.4    Carrier warrants and represents to FUSA and EDS that (i) when executed and delivered |

---

[3] At this pre-claim construction stage of the action, Defendant takes no position as to the appropriateness of the claim construction applied in AdvanceMe's Preliminary Infringement Contentions for Defendant ("Infringement Contentions"), but note that under the approach in the Infringement Contentions, which equates periodic forwarding with accumulation to a predetermined amount, the system described in the Agreement anticipates this claim.

## EDS
## INVALIDITY CLAIM CHART
## UNITED STATES PATENT NO. 6,941,281

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| the steps performed at the merchant processor comprise periodically forwarding at least a portion of the payment to the payment receiver. | by Carrier, this Agreement shall constitute a valid and legal obligation of Carrier, binding in accordance with its terms." Agreement at 14.<br><br>"m. Net Daily Activity – An amount equal to the net daily total of Sales Slips, Credit Slips, Chargebacks, adjustments, reimbursements, and processing fees set out in Schedule B on a Monday through Friday processing schedule (except for banking holidays)." Agreement at 4.<br><br>"Carrier agrees to pay FUSA charges according to the following fee schedule." Agreement at B-1.<br><br>"5.5 EDS will calculate the processing fees on the Net Daily Activity (excluding processing fees) and FUSA will charge the sum of said fees on a daily basis. The processing fees shall be as set forth in Schedule B which is attached hereto and incorporated herein." Agreement at 11 (showing that EDS periodically forwarded the sum of the processing fees to FUSA).<br><br>"J. To the extent that the annualized Net Daily Activity is less than $100,000,000.00 per year during each twelve month period following the Effective Date, Carrier shall pay EDS fifteen basis points (0.15%) of the amount of the deficiency. Such amount will be deducted from Net Daily Activity by FUSA upon written notice from EDS to Carrier within ten Business Days after each anniversary of the Effective Date." Agreement at B-3. |
| 10. A system for automated payment of an obligation made by a merchant, comprising:<br><br>at a merchant,<br><br>means for accepting a customer identifier as payment from the customer and for electronically | The Agreement and the Reserve Account Agreement describe a system for automated payment. EDS, the merchant processor, as agent for First USA, provides card processing services to a merchant. The merchant repays obligations to EDS and/or First USA through future sales transactions.<br><br>In the system described in the Agreement, the merchant accepts the customer identifier, and information related to the payment is forwarded by the merchant via, e.g., the merchant's terminal connected by a network to EDS/First USA.<br><br>"WHEREAS, Carrier, a certificated air carrier engaged in the transportation of passengers by |

# EDS
## INVALIDITY CLAIM CHART
## UNITED STATES PATENT NO. 6,941,281

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| forwarding information related to the payment to a computerized merchant processor, <br><br> wherein the merchant associated with the payment has an outstanding obligation to a third party; | air, desires to make available to its customers a convenient means of purchasing air transportation, both on a current and time payment basis, through the use of Cards; and <br><br> WHEREAS, EDS is a provider of Card-related services to financial institutions and merchants, and desires, as agent for FUSA, to manage the services to be provided by FUSA to Carrier and to process Carrier's Card transactions on behalf of FUSA under a separate agreement with FUSA . . . ." Agreement at 1. <br><br> "e.    Card – Any Card bearing the service mark of MasterCard International, Via, U.S.A., Inc. or Visa International." Agreement at 2. <br><br> "q.    Sales Slip – A form approved by EDS and FUSA which is used to evidence Travel costs incurred by Cardholder through the use of a Card. The standard airline industry form will be an approved form." Agreement at 4. <br><br> "Each Sales Slip shall be electronically imprinted or imprinted with a Card." Agreement at 7. <br><br> "Any point of sale transaction with an authorization performed through a point of sale terminal that performs electronic draft capture is deemed to be an acceptable transaction." Agreement at 7. <br><br> "5.2    Carrier or Agent shall submit to EDS for processing the paper, magnetic tape or electronic transmission of the Sales Slip and the Credit Slip, no later than thirty (30) calendar days following the date of the Sales Slip, and seven (7) Business Days following the date of the Credit Slip, or such other period as complies with applicable law." Agreement at 10. <br><br> "6.1    In lieu of sending Sales Slips and Credit Slips, Carrier may submit to EDS, as agent for FUSA, a summary of all Travel Costs recorded on machine readable magnetic tape or electronic transmission compatible with the computer system of EDS." Agreement at 12. <br><br> "9.4    Carrier warrants and represents to FUSA and EDS that (i) when executed and delivered |

**EDS**
**INVALIDITY CLAIM CHART**
**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | by Carrier, this Agreement shall constitute a valid and legal obligation of Carrier, binding in accordance with its terms." Agreement at 14. |
| | "o.    Reserve Account – The account constituting and containing collateral security for the due and punctual payment of all obligations of Carrier to EDS and/or FUSA under or in connection with this Agreement. The Reserve Account shall be subject to the terms of a separate agreement between EDS and Carrier." Agreement at 4; *see* Reserve Account Agreement. |
| | "m.    Net Daily Activity – An amount equal to the net daily total of Sales Slips, Credit Slips, Chargebacks, adjustments, reimbursements, and processing fees set out in Schedule B on a Monday through Friday processing schedule (except for banking holidays)." Agreement at 4. |
| | "If for any reason the Initial Base Reserve Amount is not raised within two (2) days to an amount acceptable to EDS, then Carrier shall be in default under this Agreement and EDS has the express right to hold back the amount of cash flow which is the amount of funds generated by Net Daily Activity that otherwise would be forwarded to Carrier, which EDS is entitled to add to the Reserve Account in accordance with the Reserve Account Agreement." Agreement at 15. |
| | "EDS may at any time, in its sole judgment . . . (ii) after demand to Carrier, may proceed by delivering a letter to request that FUSA withhold funds in the amount specified from funds which would otherwise be payable to Carrier under the terms of the Merchant Agreement, and to transfer such funds to the Reserve Account." Reserve Account Agreement at 5. |
| | "If the amount of Net Daily Activity or the exercise of any other rights under this Agreement (including, without limitation, recalculation of the amount of the Reserve Account in accordance with the separate agreement pertaining thereto) results in an amount due FUSA (or, in the case of the Reserve Account, EDS), FUSA may, at its option, offset the amount due FUSA against Carrier's subsequent days' Sales Slips provided that if the subsequent day's Sales Slips are, or are reasonably projected to be, insufficient, EDS or FUSA may request |

12

**EDS**
**INVALIDITY CLAIM CHART**
**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | immediate federal wire transfer at FUSA's direction." Agreement at 10. |
| | "FUSA will offset the amount due FUSA for any Chargebacks against Carrier's Net Daily Activity." Agreement at 13. |
| | "J. To the extent that the annualized Net Daily Activity is less than $100,000,000.00 per year during each twelve month period following the Effective Date, Carrier shall pay EDS fifteen basis points (0.15%) of the amount of the deficiency. Such amount will be deducted from Net Daily Activity by FUSA upon written notice from EDS to Carrier within ten Business Days after each anniversary of the Effective Date." Agreement at B-3. |
| | "5.6    EDS, as agent for FUSA, will provide Carrier with daily transaction reports that correspond to Net Daily Activity in a mutually agreed format that will summarize sales, returns (refunds), Chargebacks, processing fees, and adjustments with adequate detail to allow Carrier to perform account reconciliation." Agreement at 11. |
| and    at    the    computerized    merchant processor, | Under the Agreement, EDS agrees to act as Carrier's merchant processor, wherein the Carrier provides payment information to EDS (e.g., via the merchant's terminal) and EDS provides to Carrier the Net Daily Activity. EDS forwards processing fees to First USA to reduce Carrier's obligations under the Agreement. On information and belief, these acts are implemented, at least in part, by a computer running appropriate software program(s). |
| means for receiving the information related to the payment from the merchant, | |
| means for authorizing and setting the payment, | "FUSA will pay carrier an amount equal to the Net Daily Activity (subject to the provisions of the separate agreement regarding the Reserve Account)." Agreement at 10. |
| and means for forwarding a portion of the payment to the third party to reduce the obligation. | "Carrier    agrees    to    pay    FUSA    charges    according    to    the    following    fee    schedule." Agreement at B-1. |
| | ". . . EDS has agreed to assist FUSA in providing services to Carrier and to process Carrier's Card transactions on behalf of FUSA." Agreement at 1 (showing that EDS is acting as |

# EDS
## INVALIDITY CLAIM CHART
## UNITED STATES PATENT NO. 6,941,281

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | merchant processor). |
| | "Carrier or Agent will contact an Authorization center to obtain Authorization in accordance with the standard Visa System and MasterCard Operating Rules and Regulations, as applicable, before completing the transaction. Carrier may elect the Authorization provider it will use, subject to approval by EDS and FUSA." Agreement at 6. |
| | "6.1    In lieu of sending Sales Slips and Credit Slips, Carrier may submit to EDS, as agent for FUSA, a summary of all Travel Costs recorded on machine readable magnetic tape or electronic transmission compatible with the computer system of EDS." Agreement at 12 (implying that EDS maintains means for receiving information related to the payment from Carrier, e.g., a computer running appropriate software programs). |
| | "5.2    Carrier or Agent shall submit to EDS for processing the paper, magnetic tape or electronic transmission of the Sales Slip and the Credit Slip, no later than thirty (30) calendar days following the date of the Sales Slip, and seven (7) Business Days following the date of the Credit Slip, or such other period as complies with applicable law." Agreement at 10 (implying that EDS maintains means for receiving information related to the payment from Carrier, e.g., a computer running appropriate software programs). |
| 11. The system of claim 10 wherein the accepting means comprises means for accepting a credit card number as the customer identifier. | A merchant entering into the Agreement with EDS and First USA can accept credit card numbers as customer identifiers. Credit card numbers may be accepted, for example, using the merchant's terminal. |
| | "WHEREAS, Carrier, a certificated air carrier engaged in the transportation of passengers by air, desires to make available to its customers a convenient means of purchasing air transportation, both on a current and time payment basis, through the use of Cards; and |
| | WHEREAS, EDS is a provider of Card-related services to financial institutions and merchants, and desires, as agent for FUSA, to manage the services to be provided by FUSA to Carrier and to process Carrier's Card transactions on behalf of FUSA under a separate agreement with |

EDS
INVALIDITY CLAIM CHART
UNITED STATES PATENT NO. 6,941,281

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | FUSA. . . ." Agreement at 1. |
| | "e.     Card – Any Card bearing the service mark of MasterCard International, Via, U.S.A., Inc. or Visa International." Agreement at 2. |
| | "Any point of sale transaction with an authorization performed through a point of sale terminal that performs electronic draft capture is deemed to be an acceptable transaction." Agreement at 7. |
| 12. The system of claim 10 wherein the accepting means comprises means for accepting a debit card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, e.g., for debit cards as well as credit cards. The statements by the alleged inventor and by the Examiner, and the language of the patent-in-suit itself, make clear that a person of ordinary skill in the art would be motivated to make the EDS system and/or method work in the same way for any customer identifier, including debit cards. |
| | Credit card numbers may be accepted, for example, using the merchant's terminal. |
| | "WHEREAS, Carrier, a certificated air carrier engaged in the transportation of passengers by air, desires to make available to its customers a convenient means of purchasing air transportation, both on a current and time payment basis, through the use of Cards; and |
| | WHEREAS, EDS is a provider of Card-related services to financial institutions and merchants, and desires, as agent for FUSA, to manage the services to be provided by FUSA to Carrier and to process Carrier's Card transactions on behalf of FUSA under a separate agreement with FUSA. . . ." Agreement at 1. |
| | "e.     Card – Any Card bearing the service mark of MasterCard International, Via, U.S.A., Inc. or Visa International." Agreement at 2. |

Invalidity Claim Chart - Reno Air Agreements.DOC

# EDS
## INVALIDITY CLAIM CHART
### UNITED STATES PATENT NO. 6,941,281

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | "Any point of sale transaction with an authorization performed through a point of sale terminal that performs electronic draft capture is deemed to be an acceptable transaction." Agreement at 7. |
| 13. The system of claim 10 wherein the accepting means comprises means for accepting a smart card as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, e.g., for smart cards as well as credit cards. The statements by the alleged inventor and by the Examiner, and the language of the patent-in-suit itself, make clear that a person of ordinary skill in the art would be motivated to make the EDS system and/or method work in the same way for any customer identifier, including smart cards. |
| | Credit card numbers may be accepted, for example, using the merchant's terminal. |
| | "WHEREAS, Carrier, a certificated air carrier engaged in the transportation of passengers by air, desires to make available to its customers a convenient means of purchasing air transportation, both on a current and time payment basis, through the use of Cards; and |
| | WHEREAS, EDS is a provider of Card-related services to financial institutions and merchants, and desires, as agent for FUSA, to manage the services to be provided by FUSA to Carrier and to process Carrier's Card transactions on behalf of FUSA under a separate agreement with FUSA. . . ." Agreement at 1. |
| | "e.    Card – Any Card bearing the service mark of MasterCard International, Visa, U.S.A., Inc. or Visa International." Agreement at 2. |
| | "Any point of sale transaction with an authorization performed through a point of sale terminal that performs electronic draft capture is deemed to be an acceptable transaction." Agreement at 7. |
| 14. The system of claim 10 wherein | It would have been obvious to a person of ordinary skill in the art at the time of the alleged |

## EDS
### INVALIDITY CLAIM CHART
### UNITED STATES PATENT NO. 6,941,281

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| the accepting means comprises means for accepting a charge card number as the customer identifier. | invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, e.g., for charge cards as well as credit cards. The statements by the alleged inventor and by the Examiner, and the language of the patent-in-suit itself, make clear that a person of ordinary skill in the art would be motivated to make the EDS system and/or method work in the same way for any customer identifier, including charge cards. |
| | Credit card numbers may be accepted, for example, using the merchant's terminal. |
| | "WHEREAS, Carrier, a certificated air carrier engaged in the transportation of passengers by air, desires to make available to its customers a convenient means of purchasing air transportation, both on a current and time payment basis, through the use of Cards; and |
| | WHEREAS, EDS is a provider of Card-related services to financial institutions and merchants, and desires, as agent for FUSA, to manage the services to be provided by FUSA to Carrier and to process Carrier's Card transactions on behalf of FUSA under a separate agreement with FUSA. . . ." Agreement at 1. |
| | "e. Card – Any Card bearing the service mark of MasterCard International, Via, U.S.A., Inc. or Visa International." Agreement at 2. |
| | "Any point of sale transaction with an authorization performed through a point of sale terminal that performs electronic draft capture is deemed to be an acceptable transaction." Agreement at 7. |
| 15. The system of claim 10 wherein the accepting means comprises means for accepting the customer identifier at a merchant location. | Under the Agreement, a merchant can accept a customer identifier using a terminal at a location associated with the merchant such as, for example, a retail sales site of the merchant. "q. Sales Slip – A form approved by EDS and FUSA which is used to evidence Travel costs incurred by Cardholder through the use of a Card. The standard airline industry form |

**EDS**

**INVALIDITY CLAIM CHART**

**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | will be an approved form." Agreement at 4. |
| | "Each Sales Slip shall be electronically imprinted or imprinted with a Card." Agreement at 7 (implying that the Card is present at the Carrier's location). |
| | "Any point of sale transaction with an authorization performed through a point of sale terminal that performs electronic draft capture is deemed to be an acceptable transaction." Agreement at 7 (implying that the Card is present at the Carrier's location). |
| | "5.2 Carrier or Agent shall submit to EDS for processing the paper, magnetic tape or electronic transmission of the Sales Slip and the Credit Slip, and seven (7) Business Days following the date of days following the date of the Sales Slip, or such other period as complies with applicable law." Agreement at 10 the Credit Slip, or such other period as complies with applicable law." Agreement at 10 (implying that the Card is present at the Carrier's location). |
| 16. The system of claim 10 wherein the accepting means comprises means for electronically accepting the customer identifier. | Under the Agreement, a merchant can accept a customer identifier electronically, for example, via a terminal. |
| | "q.    Sales Slip – A form approved by EDS and FUSA which is used to evidence Travel costs incurred by Cardholder through the use of a Card. The standard airline industry form will be an approved form." Agreement at 4. |
| | "Each Sales Slip shall be electronically imprinted or imprinted with a Card." Agreement at 7. |
| | "Any point of sale transaction with an authorization performed through a point of sale terminal that performs electronic draft capture is deemed to be an acceptable transaction." Agreement at 7. |
| | "5.2 Carrier or Agent shall submit to EDS for processing the paper, magnetic tape or electronic transmission of the Sales Slip and the Credit Slip, no later than thirty (30) calendar days transmission of the Sales Slip and the Credit Slip, and seven (7) Business Days following the date of the following the date of the Sales Slip, and seven (7) Business Days following the date of the |

## EDS
## INVALIDITY CLAIM CHART
## UNITED STATES PATENT NO. 6,941,281

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| 17. The system of claim 10 wherein the means at the merchant processor further comprise means for accumulating the payments until a predetermined amount is reached and means for forwarding at least a portion of the accumulated payments to the third party. | Credit Slip, or such other period as complies with applicable law." Agreement at 10.<br><br>"9.4    Carrier warrants and represents to FUSA and EDS that (i) when executed and delivered by Carrier, this Agreement shall constitute a valid and legal obligation of Carrier, binding in accordance with its terms." Agreement at 14.<br><br>"m.    Net Daily Activity – An amount equal to the net daily total of Sales Slips, Credit Slips, Chargebacks, adjustments, reimbursements, and processing fees set out in Schedule B on a Monday through Friday processing schedule (except for banking holidays)." Agreement at 4.<br><br>"Carrier agrees to pay FUSA charges according to the following fee schedule." Agreement at B-1.<br><br>"5.5 EDS will calculate the processing fees on the Net Daily Activity (excluding processing fees) and FUSA will charge the sum of said fees on a daily basis. The processing fees shall be as set forth in Schedule B which is attached hereto and incorporated herein." Agreement at 11 (showing that EDS periodically forwarded the sum of the processing fees to FUSA).<br><br>"l. To the extent that the annualized Net Daily Activity is less than $100,000,000.00 per year during each twelve month period following the Effective Date, Carrier shall pay EDS fifteen basis points (0.15%) of the amount of the deficiency. Such amount will be deducted from Net Daily Activity by FUSA upon written notice from EDS to Carrier within ten Business Days after each anniversary of the Effective Date." Agreement at B-3.[4]<br><br>On information and belief, these acts are implement using, at least in part, a computer running appropriate software program(s). |

---

[4] At this pre-claim construction stage of the action, Defendant takes no position as to the appropriateness of the claim construction applied in AdvanceMe's Preliminary Infringement Contentions for Defendants ("Infringement Contentions"), but note that under the approach in the Infringement Contentions, which equates periodic forwarding with accumulation to a predetermined amount, the system described in the Agreement anticipates this claim.

# EDS
## INVALIDITY CLAIM CHART
### UNITED STATES PATENT NO. 6,941,281

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| 18. The system of claim 10 wherein the forwarding means at the merchant processor comprises means for periodically forwarding at least a portion of the payment to the third party. | "9.4    Carrier warrants and represents to FUSA and EDS that (i) when executed and delivered by Carrier, this Agreement shall constitute a valid and legal obligation of Carrier, binding in accordance with its terms." Agreement at 14.<br><br>"m.    Net Daily Activity – An amount equal to the net daily total of Sales Slips, Credit Slips, Chargebacks, adjustments, reimbursements, and processing fees set out in Schedule B on a Monday through Friday processing schedule (except for banking holidays)." Agreement at 4.<br><br>"Carrier agrees to pay FUSA charges according to the following fee schedule." Agreement at B-1.<br><br>"5.5 EDS will calculate the processing fees on the Net Daily Activity (excluding processing fees) and FUSA will charge the sum of said fees on a daily basis. The processing fees shall be as set forth in Schedule B which is attached hereto and incorporated herein." Agreement at 11 (showing that EDS periodically forwarded the sum of the processing fees to FUSA).<br><br>"J. To the extent that the annualized Net Daily Activity is less than $100,000,000.00 per year during each twelve month period following the Effective Date, Carrier shall pay EDS fifteen basis points (0.15%) of the amount of the deficiency. Such amount will be deducted from Net Daily Activity by FUSA upon written notice from EDS to Carrier within ten Business Days after each anniversary of the Effective Date." Agreement at B-3.<br><br>On information and belief, these acts are implemented using, at least in part, a computer running appropriate software program(s). |
| 19. The system of claim 10 wherein the forwarding means at the merchant processor comprises means for forwarding to the third party an amount that is a percentage | The portion of the payment forwarded by EDS is a percentage of the merchant's obligation(s). On information and belief, these acts are implemented using, at least in part, a computer running appropriate software program(s).<br><br>"9.4    Carrier warrants and represents to FUSA and EDS that (i) when executed and delivered by Carrier, this Agreement shall constitute a valid and legal obligation of Carrier, binding in |

## EDS
### INVALIDITY CLAIM CHART
### UNITED STATES PATENT NO. 6,941,281

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| of the obligation. | accordance with its terms." Agreement at 14. |
|  | "o.    Reserve Account – The account constituting and containing collateral security for the due and punctual payment of all obligations of Carrier to EDS and/or FUSA under or in connection with this Agreement.   The Reserve Account shall be subject to the terms of a separate agreement between EDS and Carrier."   Agreement at 4; *see* Reserve Account Agreement. |
|  | "m.    Net Daily Activity – An amount equal to the net daily total of Sales Slips, Credit Slips, Chargebacks, adjustments, reimbursements, and processing fees set out in Schedule B on a Monday through Friday processing schedule (except for banking holidays)." Agreement at 4. |
|  | "If for any reason the Initial Base Reserve Amount is not raised within two (2) days to an amount acceptable to EDS, then Carrier shall be in default under this Agreement and EDS has the express right to hold back the amount of cash flow which is the amount of funds generated by Net Daily Activity that otherwise would be forwarded to Carrier, which EDS is entitled to add to the Reserve Account in accordance with the Reserve Account Agreement." Agreement at 15. |
|  | "EDS may at any time, in its sole judgment . . . . (ii) after demand to Carrier, may proceed by delivering a letter to request that FUSA withhold funds in the amount specified from funds which would otherwise be payable to Carrier under the terms of the Merchant Agreement, and to transfer such funds to the Reserve Account." Reserve Account Agreement at 5. |
|  | "If the amount of Net Daily Activity or the exercise of any other rights under this Agreement (including, without limitation, recalculation of the amount of the Reserve Account in accordance with the separate agreement pertaining thereto) results in an amount due FUSA (or, in the case of the Reserve Account, EDS), FUSA may, at its option, offset the amount due FUSA against Carrier's subsequent days' Sales Slips provided that if the subsequent day's Sales Slips are, or are reasonably projected to be, insufficient, EDS or FUSA may request |

21

# EDS
## INVALIDITY CLAIM CHART
## UNITED STATES PATENT NO. 6,941,281

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | immediate federal wire transfer at FUSA's direction." Agreement at 10.<br><br>"FUSA will offset the amount due FUSA for any Chargebacks against Carrier's Net Daily Activity." Agreement at 13.<br><br>"J. To the extent that the annualized Net Daily Activity is less than $100,000,000.00 per year during each twelve month period following the Effective Date, Carrier shall pay EDS fifteen basis points (0.15%) of the amount of the deficiency. Such amount will be deducted from Net Daily Activity by FUSA upon written notice from EDS to Carrier within ten Business Days after each anniversary of the Effective Date." Agreement at B-3. |

Invalidity Claim Chart - Reno Air Agreements.DOC
Austin 725770v.1

**EXHIBIT K**

**TO AFFIDAVIT OF MICHAEL N. EDELMAN IN
SUPPORT OF ADVANCEME, INC.'S OPPOSITION TO MOTION
FOR LEAVE TO AMEND INVALIDITY CONTENTIONS**

**EXHIBIT 6**
**LITTLE & CO.**
**INVALIDITY CLAIM CHART**
**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| 1. A method for automated payment, comprising: | Little & Co. ("Little") utilized a method for automated payments as repayment of obligations owed by merchants arising out of Little's advance of cash or postage costs to merchants. *See* M. Kriplani, T. Pouschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article"); *See* Promissory Note for Postage Advances between Exposures, Inc. and Little & Co., dated June 22, 1990 ("Promissory Note"). |
| at a merchant, | The merchant, either directly or via its agent, |
| accepting a customer identifier as payment from the customer, | accepted credit cards as a customer identifier from customers for payment. *See* Forbes Article (referring to Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment). |
| and electronically forwarding information related to the payment to a computerized merchant processor, | The merchant, either directly or via its agent, forwarded information related to payment electronically to Little, the computerized merchant processor. *See also* Forbes Article (referring to Little as the "credit card processor"). |
| at the computerized merchant processor, | Little acted as the computerized merchant processor, *see* Forbes Article (referring to Little as the "credit card processor"), and language of the patent makes clear that merchant processors acquire payment information and authorize and settle the payment. |
| acquiring the information related to the payment from the merchant, authorizing and settling the payment, | "Little agreed to finance [Exposures'] postage by discounting his [Exposures'] credit card receivables." *See* Forbes Article (showing that a portion of the payment from credit card companies was forwarded as payment on Exposures' |
| and forwarding at least a portion of the payment to a computerized payment receiver as payment of at least a portion of an obligation made by the | obligation to Little, as a computerized payment receiver, for financing postage costs, with the remainder, the discounted credit card receivables, being forwarded |

1

EXHIBIT 6
LITTLE & CO.
INVALIDITY CLAIM CHART
UNITED STATES PATENT NO. 6,941,281

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| merchant; | to Exposures). |
| | "In consideration of Little & Co. making advances for the account of [Exposures] to Postmaster, Atlanta, GA, [Exposures] agrees to pay on demand the Principal Amount of Advance plus accrued interest at 10%. . . . Notwithstanding that such amounts are otherwise payable on demand, [Exposures] agrees that . . . Daily Repayments shall be deducted from daily NET PROCEEDS" *See* Promissory Note (showing that a portion of payments ("Net Proceeds") are forwarded to Little, as a computerized payment receiver, in satisfaction of the obligation that arose when Little advance postage costs ("Principal Amount of Advance") to merchant). |
| and at the computerized payment receiver, | "Little agreed to finance his [Exposures'] postage by discounting his [Exposures'] credit card receivables." *See* Forbes Article (showing that a portion of the payment from credit card companies was diverted by the merchant processor as payment on Exposures' obligation to Little for financing postage costs). |
| receiving the portion of the payment forwarded by the computerized merchant processor and applying that portion to the outstanding obligation made by the merchant to reduce such obligation. | "In consideration of Little & Co. making advances for the account of [Exposures] to Postmaster, Atlanta, GA, [Exposures] agrees to pay on demand the Principal Amount of Advance plus accrued interest at 10% . . . Notwithstanding that such amounts are otherwise payable on demand, [Exposures] agrees that . . . Daily Repayments shall be deducted from daily NET PROCEEDS." *See* Promissory Note (showing that portion of payments ("Net Proceeds") are received by Little as repayment of obligation that arose when Little advanced postage costs ("Principal Amount of Advance") to merchant). |
| 2. The method of claim 1 wherein the accepting step comprises accepting a credit card number as | The merchant, Exposures, Inc., accepted credit cards from customers for payment. *See* M. Kripalani, T. Peuschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article") (referring to |

2

EXHIBIT 6
LITTLE & CO.
INVALIDITY CLAIM CHART
UNITED STATES PATENT NO. 6,941,281

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| the customer identifier. | Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment). |
| 3. The method of claim 1 wherein the accepting step comprises accepting a debit card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, e.g. for debit cards as well as credit cards. And the statements by the alleged inventor and by the examiner, and the language of the patent itself makes clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including debit cards.

The merchant, Exposures, Inc., accepted credit cards from customers for payment. *See* M. Kripalani, T. Pouschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article") (referring to Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment). |
| 4. The method of claim 1 wherein the accepting step comprises accepting a smart card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, e.g. for smart cards as well as credit cards. And the statements by the alleged inventor and by the examiner, and the language of the patent itself makes clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including smart cards.

The merchant, Exposures, Inc., accepted credit cards from customers for payment. *See* M. Kripalani, T. Pouschine, "People thought I was nuts", FORBES, |

**EXHIBIT 6**
**LITTLE & CO.**
**INVALIDITY CLAIM CHART**
**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| 5. The method of claim 1 wherein the accepting step comprises accepting a charge card number as the customer identifier. | June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article") (referring to Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment). It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, e.g. for charge cards as well as credit cards. And the statements by the alleged inventor and by the examiner, and the language of the patent itself makes clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including charge cards. |
| 6. The method of claim 1 wherein the accepting step comprises accepting the customer identifier at a merchant location. | On information and belief, customer identifiers were accepted at a the location of a merchant or merchant's agent. The merchant, Exposures, Inc., accepted credit cards from customers for payment. See M. Kripalani, T. Pouschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article") (referring to Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment). |
| 7. The method of claim 1 wherein the accepting step comprises electronically accepting the customer identifier. | On information and belief, customer identifiers were accepted electronically. |
| 8. The method of claim 1 wherein the steps performed at the merchant processor further | "In consideration of Little & Co. making advances for the account of [Exposures] to Postmaster, Atlanta, GA, [Exposures] agrees to pay on demand the Principal |

4

EXHIBIT 6
LITLE & CO.
INVALIDITY CLAIM CHART
UNITED STATES PATENT NO. 6,941,281

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| comprise accumulating the payments until a predetermined amount is reached and then forwarding at least a portion of the accumulated payments to the payment receiver. | Amount of Advance plus accrued interest at 10% . . . Notwithstanding that such amounts are otherwise payable on demand, [Exposures] agrees that . . . Daily Repayments shall be deducted from daily NET PROCEEDS." See Promissory Note (showing that payments were forwarded on a periodic basis).[1] |
| 9. The method of claim 1 wherein the steps performed at the merchant processor comprise periodically forwarding at least a portion of the payment to the payment receiver. | "In consideration of Litle & Co. making advances for the account of [Exposures] to Postmaster, Atlanta, GA, [Exposures] agrees to pay on demand the Principal Amount of Advance plus accrued interest at 10% . . . Notwithstanding that such amounts are otherwise payable on demand, [Exposures] agrees that . . . Daily Repayments shall be deducted from daily NET PROCEEDS." See Promissory Note (showing that payments were forwarded on a periodic basis). |
| 10. A system for automated payment of an obligation made by a merchant, comprising: | Litle utilizes a system for automated payments to Litle as repayment of obligations owed by merchants either for postage or cash advances. See Promissory Note and Forbes Article. The merchant, Exposures, Inc., |
| at a merchant, | accepted credit cards from customers for payment and means for accepting a customer identifier as payment existed, including, on information and belief, a merchant terminal or point-of-sale device. See M. Kripalani, T. Pouschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article") (referring to Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment). |
| means for accepting a customer identifier as payment from the customer and | "Litle agreed to finance [Exposures'] postage by discounting his [Exposures'] |

[1] At this pre-claim construction stage of the action, Defendant takes no position as to the appropriateness of the claim construction applied in AdvanceMe's Preliminary Infringement Contentions for Defendants ("Infringement Contentions") but note that under the approach in the Infringement Contentions, which equates periodic forwarding with accumulation to a pre-determined amount, the Litle method anticipates this claim.

EXHIBIT 6
LITLE & CO.
INVALIDITY CLAIM CHART
UNITED STATES PATENT NO. 6,941,281

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| for electronically forwarding information related to the payment to a computerized merchant processor, <br><br> wherein the merchant associated with the payment has an outstanding obligation to a third party; | credit card receivables." *See* Forbes Article (showing implicitly that means exist in the Litle system for electronically forwarding a portion of the payment from credit card companies to Litle, including, on information and belief, a computer running appropriate software). <br><br> "In consideration of Litle & Co. making advances for the account of [Exposures] to Postmaster, Atlanta, GA, [Exposures] agrees to pay on demand the Principal Amount of Advance plus accrued interest at 10% . . ." *See* Promissory Note (showing obligation from the merchant to Litle). |
| and at the computerized merchant processor, <br><br> means for receiving the information related to the payment from the merchant, | "Litle agreed to finance his [Exposures'] postage by discounting his [Exposures'] credit card receivables." *See* Forbes Article (showing implicitly that means exist in the Litle system for Litle, as the merchant processor, to receive the payment information, including, on information and belief, a computer running appropriate software). |
| means for authorizing and settling the payment, | The language of the patent makes clear that merchant processors acquire payment information and authorize and settle the payment. On information and belief, the means for performing this function is a computer running appropriate software. |
| and means for forwarding a portion of the payment to the third party to reduce the obligation. | "In consideration of Litle & Co. making advances for the account of [Exposures] to Postmaster, Atlanta, GA, [Exposures] agrees to pay on demand the Principal Amount of Advance plus accrued interest at 10% . . . Notwithstanding that such amounts are otherwise payable on demand, [Exposures] agrees that . . . Daily Repayments shall be deducted from daily NET PROCEEDS." *See* Promissory Note (showing that means exist for forwarding a portion of payments ("Net Proceeds") to Litle as repayment of obligation that arose when Litle advanced postage costs ("Principal Amount of Advance") to merchant, including, on |

EXHIBIT 6
LITTLE & CO.
INVALIDITY CLAIM CHART
UNITED STATES PATENT NO. 6,941,281

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| | information and belief, a computer running appropriate software). |
| 11. The system of claim 10 wherein the accepting means comprises means for accepting a credit card number as the customer identifier. | The merchant, Exposures, Inc., accepted credit cards from customers for payment. *See* M. Kripalani, T. Ponschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article") (referring to Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment and that means for accepting a credit card exist, including, on information and belief, a terminal, computer, or other point of sale device). |
| 12. The system of claim 10 wherein the accepting means comprises means for accepting a debit card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply systems and means in use for one type of customer identifier to another type of customer identifier, *e.g.* for debit cards as well as credit cards. And the statements by the alleged inventor and by the examiner, and the language of the patent itself makes clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including debit cards. Debit card numbers may be accepted, for example, using the merchant's terminal or computer input. |
| | The merchant, Exposures, Inc., accepted credit cards from customers for payment. *See* M. Kripalani, T. Ponschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article") (referring to Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment and that means for accepting a credit card exist, including, on information and belief, a terminal, computer, or other point of sale device). |

7

EXHIBIT 6
LITLE & CO.
INVALIDITY CLAIM CHART
UNITED STATES PATENT NO. 6,941,281

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| 13. The system of claim 10 wherein the accepting means comprises means for accepting a smart card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply systems and means in use for one type of customer identifier to another type of customer identifier, e.g. for smart cards as well as credit cards. And the statements by the alleged inventor and by the examiner, and the language of the patent itself makes clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including smart cards. Smart card numbers may be accepted, for example, using the merchant's terminal or computer input.

The merchant, Exposures, Inc., accepted credit cards from customers for payment. *See* M. Kripalani, T. Pouschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article") (referring to Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment and that means for accepting a credit card exist, including, on information and belief, a terminal, computer, or other point of sale device). |
| 14. The system of claim 10 wherein the accepting means comprises means for accepting a charge card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply systems and means in use for one type of customer identifier to another type of customer identifier, e.g. for charge cards as well as credit cards. And the statements by the alleged inventor and by the examiner, and the language of the patent itself makes clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including charge cards. Charge card numbers may be accepted, for example, using the merchant's terminal or computer input.

The merchant, Exposures, Inc., accepted credit cards from customers for |

8

**EXHIBIT 6**

**LITLE & CO.**

**INVALIDITY CLAIM CHART**

**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| | payment. *See* M. Kripalani, T. Pouschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article") (referring to Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment and that means for accepting a credit card exist, including, on information and belief, a terminal, computer or other point of sale device). |
| 15. The system of claim 10 wherein the accepting means comprises means for accepting the customer identifier at a merchant location. | On information and belief, means for accepting customer identifiers exist at a location of a merchant or merchant's agent, including, on information and belief, a terminal, computer or other point of sale device. |
| 16. The system of claim 10 wherein the accepting means comprises means for electronically accepting the customer identifier. | On information and belief, means for accepting customer identifiers electronically exist, including, on information and belief, a terminal, computer or other electronic point of sale device. |
| 17. The system of claim 10 wherein the means at the merchant processor further comprise means for accumulating the payments until a predetermined amount is reached and means for forwarding at least a portion of the accumulated payments to the third party. | "In consideration of Litle & Co. making advances for the account of [Exposures] to Postmaster, Atlanta, GA, [Exposures] agrees to pay on demand the Principal Amount of Advance plus accrued interest at 10% . . . Notwithstanding that such amounts are otherwise payable on demand, [Exposures] agrees that . . . Daily Repayments shall be deducted from daily NET PROCEEDS." *See* Promissory Note (showing that means for periodically forwarding payments exist in the Litle system, including, on information and belief, a computer running appropriate software).[2] |
| 18. The system of claim 10 wherein the forwarding means at the merchant processor | "In consideration of Litle & Co. making advances for the account of [Exposures] to Postmaster, Atlanta, GA, [Exposures] agrees to pay on demand the Principal |

---

[2] At this pre-claim construction stage of the action, Defendant takes no position as to the appropriateness of the claim construction applied in AdvanceMe's Preliminary Infringement Contentions for Defendants ("Infringement Contentions") but note that under the approach in the Infringement Contentions, which equates periodic forwarding with accumulation to a pre-determined amount, the Litle system anticipates this claim.

**EXHIBIT 6**
**LITTLE & CO.**
**INVALIDITY CLAIM CHART**
**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| comprises means for periodically forwarding at least a portion of the payment to the third party. | Amount of Advance plus accrued interest at 10%. . . . Notwithstanding that such amounts are otherwise payable on demand, [Exposures] agrees that . . . Daily Repayments shall be deducted from daily NET PROCEEDS." *See* Promissory Note (showing that means for periodically forwarding payments exist in the Little system, including, on information and belief, a computer running appropriate software). |
| 19. The system of claim 10 wherein the forwarding means at the merchant processor comprises means for forwarding to the third party an amount that is a percentage of the obligation. | "In consideration of Little & Co. making advances for the account of [Exposures] to Postmaster, Atlanta, GA, [Exposures] agrees to pay on demand the Principal Amount of Advance plus accrued interest at 10% . . . Notwithstanding that such amounts are otherwise payable on demand, [Exposures] agrees that . . . Daily Repayments shall be deducted from daily NET PROCEEDS." *See* Promissory Note (showing that means for forwarding an amount that is a percentage of the obligation exist in the Little system, including, on information and belief, a computer running appropriate software). |

10

**EXHIBIT L**

**TO AFFIDAVIT OF MICHAEL N. EDELMAN IN
SUPPORT OF ADVANCEME, INC.'S OPPOSITION TO MOTION
FOR LEAVE TO AMEND INVALIDITY CONTENTIONS**

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

ADVANCEME, INC.,

        Plaintiff

           v.

RAPIDPAY LLC, BUSINESS CAPITAL
CORPORATION, FIRST FUNDS LLC,
MERCHANT MONEY TREE, INC., REACH
FINANCIAL LLC, and FAST TRANSACT, INC.
dba SIMPLE CASH,

        Defendants

CASE NO. 6:05-CV-424 LED

## DEFENDANTS' SECOND AMENDED P.R. 3-3 PRELIMINARY INVALIDITY CONTENTIONS

Pursuant to the Court's Amended Docket Control Order and Patent Rules ("P.R.") 3-3 and 3-4 of the Rules of Practice for Patent Cases before the Eastern District of Texas, Defendants First Funds LLC, Merchant Money Tree, Inc., and Reach Financial LLC ("Defendants") submit the following second amended preliminary invalidity contentions.

These contentions pertain to Claims 1-19 of U.S. Patent No. 6,941,281 (the '281 Patent). Defendants submit, however, that AdvanceMe has not fully complied with its obligation to submit specific Preliminary Infringement Contentions relating to the means-plus-function claims of the '281 patent, in that AdvanceMe's Contentions for Claims 10-19, relating to means-plus-function claim elements, provide only conclusory accusations of Accused Instrumentalities and do not identify structure with specificity. *See* AdvanceMe's Preliminary Infringement Contentions; P.R. 3-1. Further, Defendants submit that AdvanceMe has not fully complied with its obligation to submit specific Preliminary Infringement Contentions relating to Claims 8 and

17, in that AdvanceMe's Contentions do not identify any ability of the Accused Instrumentalities to "accumulate payments until a predetermined amount is reached." *See* AdvanceMe's Preliminary Infringement Contentions; P.R. 3-1.

Defendants have based these Preliminary Invalidity Contentions in part on AdvanceMe's proffered claim interpretations, as best understood by Defendants. Defendants do not accept AdvanceMe's proffered claim interpretation, and Defendants' application of AdvanceMe's claim interpretations for purposes of these Preliminary Invalidity Contentions shall not be deemed an acceptance of AdvanceMe's constructions or a waiver of Defendants' right to proffer alternative constructions.

Because AdvanceMe has not yet provided Defendants with reasonably specific Preliminary Infringement Contentions, the Court has not yet ruled on claim construction, and discovery and fact investigations are ongoing, Defendants reserve the right to supplement these Preliminary Invalidity Contentions.

1.    **PRIOR ART – 35 U.S.C. § 102(B)**

Attached as Exhibits 1-6 are claim charts respectively indicating how prior art items 1-6 anticipate every limitation of at least certain of Claims 1-19 of the '281 Patent, based on Defendants' present understanding of how AdvanceMe is construing those claims. To the extent any limitation is deemed not to be exactly met by an item of prior art, Defendants submit that the difference would have been obvious to one skilled in the art at the time of the alleged invention in view of the state of the art and knowledge of those skilled in the art, and that the item of prior art therefore renders the claims invalid for obviousness. As evidenced at the deposition of the inventor, Barbara Johnson, and based on her testimony, prior art items 1-6 individually and collectively anticipate or render obvious all of Claims 1-19 of the '281 Patent.

2

| | Publication Title | Item offered for sale or publicly used or known |
|---|---|---|
| 1. | Clever Ideas – LeCard dining program documents[1] (1992-1996) | Clever Ideas - LeCard, Inc. offered a product known as LeCard that utilized a system and method of automated payment wherein LeCard would advance a sum of money or an amount of advertising to restaurants in exchange for the restaurant providing food and beverage credit for LeCard cardholders. The restaurant's contractual obligation to repay the credit amount would be reduced as customers used LeCard to pay for food and beverages. Diners Club, the merchant processor, would acquire, authorize and settle the LeCard transaction and would electronically forward some portion of the payment to LeCard in satisfaction of the restaurant's obligation to LeCard. LeCard thus publicly used the method and system as claimed in the '281 patent, and LeCard's method and system were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 1.[2] |
| 2. | SEC Form 10-K for Transmedia Network, Inc. (December 29, 1995) | Transmedia Network Inc. ("Transmedia") offered a product known as the Transmedia card that utilized a system and method of automated payment wherein Transmedia advanced a sum of money to a restaurant or other merchant, via a purchase at a discount of "Rights-to-Receive" (*i.e.*, the right to receive goods and services). After acquiring, authorizing and settling the transaction, Transmedia would withhold or otherwise electronically forward some portion of the payment to a computerized payment receiver in satisfaction of the restaurant's (or other merchant's) contractual obligation to Transmedia. Transmedia thus publicly used the method and system as claimed in the '281 patent, and Transmedia's method and system were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 2.[3] |

---

[1] These documents include Clever Ideas-LeCARD Cash and/or Advertising Advance Agreements; Restaurant Statements; Letters from LeCard to Participating Restaurants; and other related correspondence.
[2] Clever Ideas-LeCard anticipates Claims 1, 5-10 and 14-19. Clever Ideas-LeCard renders obvious Claims 2-4 and 11-13. *See* Exhibit 1.
[3] Transmedia anticipates Claims 1, 5-10 and 14-19. Transmedia renders obvious Claims 2-4 and 11-13. *See* Exhibit 2.

| 3. | First USA Merchant Services, Inc. Merchant Credit Card Agreement<br><br>(July 1, 1993) | First USA Merchant Services, Inc. ("First USA") offered to provide credit card processing services to merchants that incorporated a system and method of automated payment as claimed in the '281 patent. First USA, the merchant processor, would acquire, authorize and settle the transaction. First USA would withhold or otherwise electronically forward some portion of the payment to a computerized payment receivers as payment of at least a portion of an obligation made by the merchant. First USA thus publicly used the method and system as claimed in the '281 patent, and First USA's system and method were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 3.[4] |
| --- | --- | --- |
| 4. | Bank of America Merchant Services Card Processing Service Agreement Terms and Conditions<br><br>(November 1994 (Reprinted August 1995)) | Bank of America NT&SA offered to provide credit card processing services to merchants which incorporated a system and method of automated payment as claimed in the '281 patent. Bank of America, the merchant processor, would acquire, authorize and settle the transaction. Bank of America would withhold or otherwise electronically forward some portion of the payment to a computerized payment receiver as payment of at least a portion of an obligation made by the merchant. First USA thus publicly used the method and system as claimed in the '281 patent, and First USA's system and method were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 4.[5] |

---

[4] First USA anticipates Claims 1-2, 6-11 and 15-19. First USA renders obvious Claims 3-5 and 12-14. *See* Exhibit 3.
[5] Bank of America anticipates Claims 1-2, 6-11 and 15-19. Bank of America renders obvious Claims 3-5 and 12-14. *See* Exhibit 4.

4

| 5. | Credit Card Processing Agreement; Reserve Account Agreement (among Reno Air, Inc., Electronic Data Systems Corportation and First USA Merchant Services, Inc.)  (June 1995) | Electronic Data Systems Corporation ("EDS"), as agent for First USA Merchant Services, Inc. ("First USA"), offered to provide credit card processing services to merchants that incorporated a system and method of automated payment as claimed in the '281 patent.  EDS, the merchant processor, would receive payment information from the merchant and provide the merchant with the payment amount less processing fees and other obligations of the merchant.  EDS would electronically forward some portion of the payment to a computerized payment receiver as payment of some portion of an obligation made by the merchant.  EDS, as agent for First USA, thus publicly used the method and system as claimed in the '281 patent, and First USA's system and method were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art.  A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 5.[6] |
| --- | --- | --- |
| 6. | Litle & Co. documents[7]  (1990-1992) | Litle & Co. ("Litle") utilized a system and method of automated payment wherein an entity would advance a sum of money or an amount of postage costs to catalog or other companies.  Litle, the merchant processor, would acquire, authorize and settle the transaction and would electronically forward some portion of the payment to a computerized payment receiver in satisfaction of the company's obligation that arose from the advance of cash or postage costs.  Litle, alone or in combination with other entities, thus publicly used the method and system as claimed in the '281 patent, and Litle's method and system were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art.  A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 6.[8] |

Defendants' investigation of these products and services is ongoing, and Defendants

reserve the right to supplement these contentions to include additional details regarding these

products and services as discovery in this case continues.

---

[6] EDS anticipates Claims 1-2, 6-11 and 15-19.  EDS renders obvious Claims 3-5 and 12-14.  *See* Exhibit 5.
[7] These documents include the Litle & Co. Member Agreement; Demand Promissory Note for Postage Advances (between Museum Publications of America and Litle & Co.); "People Thought I was Nuts" Forbes Article (6/8/92); Promissory Note Repayment Schedule; and related correspondence.
[8] Litle & Co. anticipates Claims 1-2, 5-11 and 14-19.  Litle & Co. renders obvious Claims 3-4 and 12-13.  *See* Exhibit 6.

2.    **INVENTORSHIP – 35 U.S.C. § 102(f)**

The '281 patent is invalid because the alleged inventor did not herself invent the subject matter sought to be patented. As evidenced during the deposition of the alleged inventor, Barbara Johnson, she lacks knowledge of card processing and familiarity with, or knowledge of, the meaning of many, if not all, features of the '281 patent.

| Name of person from whom the invention or any part was derived | Circumstances |
|---|---|
| Gary Johnson | Gary Johnson is the husband of the inventor. On information and belief, he was knowledgeable of the card processing industry at the time of the alleged inventor's invention. Barbara Johnson testified that she did not directly correspond with the prosecuting attorneys, but instead indirectly corresponded with the prosecuting attorneys through Gary Johnson. On knowledge and belief, the invention or some part of the invention was derived from Gary Johnson. |
| Les Falk, Glen Goldman, Tom Burnside and/or other employees of Media Works Funding Corporation, Countrywide Business Alliance, Inc. and/or AdvanceMe, Inc. | On information and belief, Les Falk is the former CEO of the assignee of the '281 patent. Glen Goldman is the current CEO of AdvanceMe, and Tom Burnside is the current President and Chief Operating Officer of AdvanceMe. On information and belief, the invention or some part of the invention was derived from Les Falk, Glen Goldman, Tom Burnside and/or other employees of the assignee (which underwent multiple name changes). |
| Paula Campbell, Robert Tosti, John Forcier and/or other attorneys of the law firm Testa, Hurwitz & Thiebeault LLP involved in the prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. | Attorneys from Testa, Hurwitz & Thiebeault LLP were involved in the prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. On information and belief, the invention or some part of the invention was derived from Paula Campbell, Robert Tosti, John Forcier and/or other attorneys of the law firm Testa, Hurwitz & Thiebeault LLP. |
| David Klein and/or other attorneys of the law firm Shearman & Sterling LLP involved in the prosecution of the U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. | Attorneys from Shearman & Sterling LLP were involved in the prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. On information and belief, the invention or some part of the invention was derived from David Klein and/or other attorneys of the law firm Shearman & Sterling LLP. |

Defendants' investigation of these individuals and the circumstances surrounding their contribution to the alleged invention is ongoing, and Defendants reserve the right to supplement these contentions to include additional details regarding these individuals and circumstances as discovery in this case continues.

3.    **P.R. 3-4 DOCUMENT PRODUCTION**

Defendants produced prior art items 1-4 on July 7, 2006 with service of their Preliminary Invalidity Contentions. Defendants produced prior art item 5 and portion of 6 on July 21, 2006 with service of their Amended Preliminary Invalidity Contentions., and the remainder of item 6 on July 28, 2006. At the present time, Defendants have made every effort to produce all relevant, non-privileged documents in their possession, custody or control that may evidence the information required under P.R. 3-4(a). Defendants' search for documents is ongoing, and Defendants reserve the right to supplement its document production as additional relevant, non-privileged documents in their possession, custody or control are identified.

7

Dated: August 30, 2006

Respectfully submitted,

By: _Hilary Preston_  w/ permission
_____  a Kelley

Willem G. Schuurman
Texas State Bar No. 17855200
Joseph D. Gray
Texas State Bar No. 24045970
VINSON & ELKINS L.L.P.
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Phone: (512) 542-8400 –
Fax: (512) 236-3476

- and -

Hilary L. Preston
VINSON & ELKINS L.L.P.
666 Fifth Avenue – 26th Floor
New York, New York 10103
Phone: (212) 237-0000
Fax: (212) 237-0100

- and -

Douglas McSwane
Texas State Bar No. 13861300
POTTER MINTON, P.C.
110 North College
500 Plaza Tower
Tyler, Texas 75702
Phone: (903) 597-8311
Fax: (903) 593-0846

*ATTORNEYS FOR DEFENDANTS*
*FIRST FUNDS LLC, MERCHANT*
*MONEY TREE, INC. AND REACH*
*FINANCIAL LLC*

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument has been served upon all counsel of record on this the 30th day of August, 2006 as indicated:

*Via Electronic Mail and U.S. Mail*
Ronald S. Lemieux
PAUL, HASTINGS, JANOFSKY & WALKER LLP
Five Palo Alto Square, Sixth Floor
Palo Alto, CA 94306-2155
ronlemieux@paulhastings.com

Otis Carroll
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
fedserv@icklaw.com

*Via U.S. Mail*
Stephanie Nimberg, President
Lawrence Morrison, General Counsel
17 Battery Place Suite 1330
New York, New York 10004

9

Austin 738492v.1