# EXHIBIT A

Dockets.Justia.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **ADVANCEME, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **CAUSE NO. 6:05-CV-424 LED** |
| **RAPIDPAY, LLC, BUSINESS CAPITAL** | § | |
| **CORPORATION, FIRST FUNDS LLC,** | § | |
| **MERCHANT MONEY TREE, INC.,** | § | |
| **REACH FINANCIAL, LLC and** | § | |
| **FAST TRANSACT, INC. d/b/a** | § | |
| **SIMPLE CASH,** | § | |
| | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| **ADVANCEME, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **CAUSE NO. 6:06-CV-0082 LED** |
| **v.** | § | |
| | § | |
| **AMERIMERCHANT, LLC,** | § | |
| *Defendant.* | § | |

**RESPONSIVE CLAIM CONSTRUCTION BRIEF OF DEFENDANTS**
**FIRST FUNDS LLC, MERCHANT MONEY TREE, INC., REACH FINANCIAL, LLC,**
**AND AMERIMERCHANT, LLC, PURSUANT TO LOCAL PATENT RULE 4-5(b)**

## TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Table of Authorities ......................................................................................................... ii

Preliminary Statement ....................................................................................................1

Argument .........................................................................................................................3

I.      Customer identifier (Recited in independent Claim 1 and 10 and dependent
        Claims 2-7 and 11-16) ........................................................................................4

II.     Obligation (Recited in independent Claims 1 and 10 and dependent Claim 19)................5

III.    Debit card (Recited in dependent Claims 3 and 12) ..........................................12

IV.     Smart card (Recited in dependent Claims 4 and 13)..........................................12

V.      Accumulating the payments until a predetermined amount is reached (Recited in
        dependent Claims 8 and 17).............................................................................14

VI.     Periodically forwarding (Recited in dependent Claims 9 and 18)....................15

VII.    Third Party (Recited in independent Claim 10 and dependent Claims 17,
        18 and 19) .........................................................................................................16

        A.      The Ordinary Meaning is Ambiguous in the Context of the '281 Patent ..............17

        B.      The Intrinsic Record Dictates that "Third Party" be Construed as "Party
                Other Than the Merchant" ...................................................................19

VIII.   Means-Plus-Function Claims ............................................................................21

        A.      "Means For Forwarding" ......................................................................23

        B.      Means For Receiving the Information Related to the Payment  From the
                Merchant (Recited in independent Claim 10)........................................29

        C.      Means For Accepting (Recited in independent Claim 10 and dependent
                Claims 11, 12, 13, 14, 15 and 16) .........................................................31

        D.      Means For Accumulating the Payments Until a Predetermined Amount  is
                Reached (Recited in dependent Claim 17).............................................33

        E.      Means For Authorizing the Payment (Recited in independent Claim 10)............34

        F.      Means For Settling the Payment (Recited in independent Claim 10)...................34

Conclusion .....................................................................................................................36

# TABLE OF AUTHORITIES

## Cases

*Budde v. Harley-Davidson, Inc.*,
  250 F.3d 1369 (Fed. Cir. 2001) .................................................................................. 23

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002) .................................................................................... 2

*Charles E. Hill & Assocs.*,
  2005 WL 2483510 at *12 .............................................................................................. 25

*Finisar Corp., v. The DirecTV Group*,
  416 F. Supp. 2d 512 (E.D. Tex. 2006) ....................................................... 23, 29, 31

*Harris Corp. v. Ericsson Inc.*,
  417 F.3d 1241, 1253 (Fed. Cir. 2005) .................................................................. 23

*Johnson Worldwide Assocs. v. Zebco Corp.*,
  175 F.3d 985 (Fed. Cir. 1999) ............................................................................ 2, 9, 20

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
  344 F.3d 1205 (Fed. Cir. 2003) .......................................................................... 22, 30

*Medrad, Inc. v. MRI Devices Corp.*,
  401 F.3d 1313 (Fed. Cir. 2005) .................................................................................... 2

*O.I. Corp. v. Tekmar Co.*,
  115 F.3d 1576 (Fed. Cir. 1997) ................................................................................... 22

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) ......................................................................... passim

*Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*,
  161 F.3d 696, 704-05 (Fed. Cir. 1998) ................................................................. 23

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ........................................................... 1, 12, 17, 21

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
  299 F.3d 1313 (Fed. Cir. 2002) .............................................................................. 2, 18

*Touchcom v. Dresser*,
  427 F. Supp. 2d 730 (E.D. Tex. 2005) .............................................................. 23, 27

*Valmont Indus., Inc. v. Reinke Mfg. Co.*,
  983 F.2d 1039 (Fed. Cir. 1993) ................................................................................... 22

*Vitronics v. Conceptronics, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ................................................................................. 2

**Statutes**

35 U.S.C. § 112 .................................................................................... 1, 22, 24, 25

Defendants First Funds LLC, Merchant Money Tree, Inc., Reach Financial, LLC, and AmeriMerchant, LLC (collectively "Defendants") hereby submit this Responsive Claim Construction Brief in opposition to the Opening Claim Construction Brief of AdvanceMe, Inc. ("AdvanceMe" or "Plaintiff") ("Opening Brief"), pursuant to local Patent Rule 4-5(b) and respectfully request that the Court adopt the constructions of disputed terms set forth by Defendants below.

## PRELIMINARY STATEMENT

The Patent Act contains two paragraphs that frame the issue of claim construction for the parties and the Court. First, the Act mandates that the specification "shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same . . . ." 35 U.S.C. § 112, ¶ 1. The next paragraph of Section 112 continues on to require that the specification "shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." *Id.* at ¶ 2. These mandates are not a matter of abstract procedure; they serve as the bedrock principle justifying the Constitutional protection given patents, which is, to put the public on notice of precisely what invention is claimed, so that the inventor may be afforded his or her exclusive benefits for a period of time, while also ensuring that the public may be fully and accurately informed of the nature of the invention.

Federal courts interpreting the Act have consistently emphasized that claim terms should generally be given their ordinary and customary meaning, in the context of the claims and the specifications. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). Ordinary meaning is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention," and is informed by reading "the claim term not only in the

context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313. *See also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("[W]e must look at the ordinary meaning in the context of the written description and the prosecution history."). Construing claim terms in the context of the intrinsic record thus ensures that the public notice function of the Patent Act is served.

The Federal Circuit "indulge[s] a 'heavy presumption' that claim terms carry their full ordinary and customary meaning, unless the patentee unequivocally imparted a novel meaning to those terms or expressly relinquished claim scope during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (citing *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325-26 (Fed. Cir. 2002) and *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). If the patentee chooses to act as his or her own lexicographer, he or she must clearly state the special definition in the specification or file history of the patent. *See Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999); *Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The ordinary and customary meaning of a claim term is thus the point at which to begin the construction of a claim term, and the construction should deviate from that meaning only to the extent to which the patentee acted as her own lexicographer or relinquished claim scope during prosecution. *Id.*

Although Plaintiff pays lip service to these principles of claim construction, *see* Opening Brief at 9, it does not adhere to them in its proposed constructions of the disputed terms. Plaintiff's Opening Brief deviates from these well-established tenants in two equally problematic ways: alternatively ignoring or exaggerating the intrinsic record, depending on which technique suits its strategic goals. As an example of the former, Plaintiff urges the Court to ignore explicit statements in the prosecution history and specification of the '281 Patent regarding the meaning

of "third party."  *See* Section VII, *infra*.  Plaintiff then swiftly makes an about-face when analyzing "obligation," arguing not only that a patentee statement during prosecution regarding a different term should be relied upon, but going even a step further to argue that the statement should be expanded.  *See infra* Section II.  Plaintiff adds to these inappropriate, and inconsistent, approaches, several other problematic techniques:  relying on incomplete excerpts from the intrinsic record (*see infra* Section VI), offering constructions that are incompatible with the method and system claimed (*see e.g. infra* Sections I, III, IV) and making misstatements about Defendants' proposed constructions (*see infra* Section IV).

The only explanation for employing this arsenal of inappropriate and inconsistent techniques is that Plaintiff's approach to claim construction is founded not on a principled application of the law, but rather on an application of any argument that serves Plaintiff's strategic goals, e.g., trying to exclude some pieces of the prior art identified by Defendants, which was used extensively and commercially many years before the '281 Patent application was even filed.  These attempts must be rejected.

## ARGUMENT

The construction of terms agreed upon by the parties are set forth in the Joint Claim Construction and Pre-Hearing Statement Pursuant to Local Patent Rule 4-3, filed August 2, 2006 by the parties ("Joint Statement").  Defendants' proposed construction of the remaining terms in dispute are set forth below.[1]

---

[1]  For the convenience of the Court, Defendants attach three charts hereto: (1) one containing the text of the independent claims of the '281 Patent (Claims 1 and 10), with all of the disputed terms identified by bolded text, Exhibit A, Chart of Disputed Terms in Independent Claims; (2) one containing the text of the dependent Claims 2-9 (dependent on Claim 1) and Claims 11-19 (dependent on Claim 10), with the disputed terms identified by bolded text, Exhibit B, Chart of Disputed Terms in Dependent Claims; and (3) one outlining Defendants' proposed constructions of the remaining disputed terms, Exhibit C, Chart of Defendants' Proposed Constructions of Remaining Disputed Terms.

Defendants are not requesting construction of "payment card," which is discussed in the Opening Brief, Section IV.B, and are accepting Plaintiff's proposed construction of "settling," as set forth in the Opening Brief, Section IV.C.

## I.    Customer identifier (Recited in independent Claim 1 and 10 and dependent Claims 2-7 and 11-16)[2]

### Defendants' proposed construction:  unique identifying account number

The term "customer identifier" should be construed as "unique identifying account number."  This construction is consistent with both the specification of U.S. Patent No. 6,941,281 ("'281 Patent") and ("'281 Specification") and the claimed automated payment system and method.  The '281 Patent is attached hereto as Exhibit D.

The '281 Specification consistently explains that the invention is concerned with the use of unique identifying account numbers.  Indeed, the '281 Specification begins by providing several examples of "unique identifying account numbers" — "e.g., credit, debit, charge, payment, smart, etc. card numbers."  Ex. D, '281 Patent, 1:31-32.  The '281 Specification goes on to explain that the customer identifier "can be the *account number* associated with, for example, a debit card, a smart card, a credit card (e.g., a Visa or MasterCard card), a charge card (e.g., an American Express card), etc."  *Id.* at 1:59-61 (emphasis added).  It further explains that "the [consumer data input device] 316 can include a keyboard for use to enter a consumer's *account number*/identifier," further explaining that a "customer identifier" is the customer's account number.  *Id.* at 6:25-26 (emphasis added).  *See also id.* at Abstract, 1:17-19, 1:54-61, 2:2-7, 2:31-37, 2:44-48, 3:10-17, 3:27-30, 6:25-31. Defendants' construction reflects the

---

[2]    Independent Claims 1 and 10 are set out in Ex. A, and their respective dependent claims are set out in Ex. B.  Plaintiff discusses this term in its Opening Brief, Section IV.A.

common thread among the '281 Specification's examples, and use, of "customer identifiers" — that they are all account numbers.

In contrast, Plaintiff offers a construction — "any information submitted to a merchant or its designee for payment of goods and services" — that is so overbroad that it is actually incompatible with the environment in which the alleged invention operates. This construction could include methods of payment such as cash, checks, letters of credit, a handwritten IOU, or goods in a barter transaction. But none of these "customer identifiers" would require any involvement by a "merchant processor," much less by "a card issuer", both of which Plaintiff describes as necessary components in "the typical transaction processing environment" in which the alleged invention operates. *See* Opening Brief at 2.

Accordingly, Defendants respectfully request that their construction — which honors the description and use of "customer identifiers" in the '281 Specification and the context of the '281 Patent as a whole — be adopted by the Court and that the Court construe "customer identifier" to mean "unique identifying account number."

## II.  <u>Obligation (Recited in independent Claims 1 and 10 and dependent Claim 19)</u>[3]

**Defendants' proposed construction: amount owed by merchant other than processing fees, *i.e.*, discount rate, interchange fee, and network fee**

The issue presented for the Court with respect to the term "obligation" is whether (1) the Court should adhere to the relevant portions of the intrinsic record in assessing the patentee's deviation, if any, from the ordinary and customary meaning of this term, or (2) expand the patentee's limiting statement regarding a *different* claim term in a *different* patent application in construing "obligation" to exclude prior art identified in Defendants' Invalidity Contentions.

---

[3]  Independent Claims 1 and 10 are set out in Ex. A, and their respective dependent claims are set out in Ex. B. Plaintiff discusses this term in its Opening Brief, Section IV.D.

Federal Circuit precedent dictates the former. The Court should construe the term "obligation" to have its ordinary and customary meaning in light of the intrinsic record and adopt Defendants' proposed construction.

*Proper Construction*. The ordinary and customary meaning of obligation, as set forth by Plaintiff, must include any amount owed by a merchant. *See* Opening Brief at 12. "Any amount owed by a merchant" is thus the proper starting point for the Court's construction of the term. *See Omega Eng'g, Inc.*, 334 F.3d at 1323. The '281 Specification, however, sets forth an exhaustive list of the universe of processing fees, *i.e.*, discount rate, interchange fee, and network fee, that were present in the art at the time of the invention and were routinely charged to merchants. *See* Ex. D, '281 patent, 1:52-54, 4:19-5:3.

1.  *Discount Rate*. The specification explains that "[f]or [the processing] service, the merchant processor typically levies a fee on the merchant that is a percentage of the amount of the payment transaction." *Id*. at 1:52-54. This fee is "often referred to as a discount rate," and comprises a fee for the merchant processor (typically 0.5%) and the interchange fee described below (typically 1.4%), for a total of 1.9% of the purchase transaction amount. *Id*. at 4:21-22, 25, 52-56. The discount rate may also be called a "surcharge." *Id*. at 4:54.

2.  *Interchange Fee*. Included within the "discount rate" is the card issuer's fee for a particular transaction, often referred to as an "interchange fee." *Id*. at 4:38-40. The interchange fee may be, for example, 1.4% of the purchase transaction amount. *Id*. at 4:44-56.

3.  *Network Fee*. Finally, the merchant processor and the card issuer pay a small fee to the provider of the network when such a network is utilized between the merchant processor and the card issuer (the "network fee" or "card service fee" or "card service and transaction

fee"). *Id*. at 4:29-31, 61-66. The network fee may be, for example, .069% or .059% of the purchase transaction amount. *Id*. at 4:63-66.

While the '281 Specification's enumerated processing fees are clearly amounts owed by a merchant, *i.e.*, obligations, the specification explains that the merchant's obligation to repay them exists outside the context of the invention and existed before the invention. Therefore, construction of the term "obligation" should exclude only these specific fees, if anything. *See* '281 Patent, 1:52-54, 4:19-5:3. The '281 Specification describes no other costs or fees associated with a typical card transaction.

Nowhere else in the claims, specification, or prosecution history does the patentee purport to limit the scope of the claim term "obligation." Indeed, the '281 Specification nowhere mentions the term "obligation", and the <u>only</u> patentee statement regarding "obligation" in the prosecution history was that:

> Applicant has replaced the term "loan" in the claims with the more generic "obligation," since many obligations for payment that may use the system of the present invention are not necessarily "loans." For example, if a merchant assigned its receivables to a third party, these could be collected by the third party using the system of the invention.

Ex. E, '281 Patent File History, 07/12/04 Request for Extension of Time and Amendment at 5-6. In other words, the only statement the patentee made during prosecution relating to the term "obligation" was that it is "more generic" than U.S. Patent No. 6,826,544's (the "'544 Patent") claimed "loan."[4] Because there are no limiting statements in the prosecution history or specification regarding the scope of the claimed "obligation," and the only fees or costs enumerated in the specification outside the context of the invention are those processing fees

---

[4] A copy of the '544 Patent is attached hereto as Ex. I.

described above, the Court should construe the term "obligation" to mean "monetary obligation other than processing fees, *i.e.*, discount rate, interchange fee, and network fee."

*Improper Application and Expansion by Plaintiff.*  Despite the patentee's only slight, if any, deviation from the ordinary and customary meaning of the term "obligation" in the intrinsic record, as explained above, Plaintiff proposes a construction that significantly deviates from this ordinary meaning — "an amount owed by a merchant that is independent of any costs or fees arising out of the use of customer identifiers as payment."  *See* Opening Brief at 12.  There are several fundamental, and fatal, flaws with this proposed construction:  (1) it is founded on a vague and ambiguous statement by the patentee, during prosecution of the '544 Patent, purporting to limit the scope of a *different term* in a *different claim* in a *different patent*, i.e., the '544 claim term "loan"; (2) it requires the Court to *expand* the patentee's ambiguous relinquishment of claim scope; and (3) it purports to rely on the patentee's ambiguous statement as support for the *even broader* ambiguous phrase "arising out of the use of customer identifiers."

*First*, Plaintiff's entire argument for carving out of the ordinary meaning any obligation "arising out of the use of customer identifiers" is premised on a vague statement made during prosecution of a different patent and with respect to a *different term* in a different claim.  *See* Opening Brief at 4-8.  In response to the Examiner's rejection based on the Cohen patent,[5] the patentee stated that "[t]he existence of the *loan* in the present invention is independent of and unrelated to the consummation of any particular purchase."  Ex. F, '544 Patent File History, 01/20/99 Amendment and Response at 3 (emphasis added).  With this ambiguous statement, the

---

[5] Cohen describes an invention where a merchant processor can redirect a portion of the payment amount ordinarily owed to the merchant for a given transaction to an insurance company.  The insurance company would then use this money to fund an annuity for the benefit of the merchant's customer.  *See* Ex. G, U.S. Patent No. 4,750,119 (the "Cohen patent").

patentee purports to relinquish some claim scope to exclude "loans" that are dependent on or related to the consummation of any particular purchase, although the patentee did not specifically explain this statement or clarify the scope of any relinquishment.  *See Omega Eng'g, Inc.*, 334 F.3d at 1328.  The scope of "loan," for purposes of the '544 patent, would thus be construed to deviate from the ordinary meaning of "loan" (a) if a court found that the patentee's statement constituted a clear and unmistakable disclaimer and (b) only to the extent that certain loans fall within the precise scope of the patentee's disclaimer.  *Id*.

However, the term "loan" does not appear in the claims of the '281 patent because, as explained by the patentee, the term "loan" was replaced with the "more generic" "obligation" in the claims of the '281 Patent.  *See* Ex. E, '281 Patent File History, 07/12/04 Request for Extension of Time and Amendment at 5-6.  Plaintiff fails to explain why it believes the Court should apply this arguably limiting statement regarding the '544 Patent claim term "loan" to the '281 Patent claim term "obligation," when the only reference to the term "obligation" in the prosecution history of the '281 Patent specifies that "loan" is a species of the more generic "obligation."  *See* Opening Brief at 12-14.[6]  Such an application is glaringly improper.  Indeed, the patentee's statements during prosecution inform the public that the scope of the claimed

---

[6] The alleged inventor's testimony additionally confirms Defendants' proposed construction of "obligation." During her deposition, Barbara Johnson testified regarding the scope of the term:

> Q.  So you understand from this paragraph common to pages 5 and 6 that applicant has replaced the term "loan" in the claims with the more generic term "obligation."  So you understand that "obligation" is a generic term that encompasses loan as a species?
> A.  Yes.
> Q.  Is that your understanding?
> A.  Yes.

Ex. H, Barbara Johnson Deposition Transcript at 123-24.  The alleged inventor never testified to the term's exclusion of the broad category proposed by Plaintiff or any exclusion of a category of "obligations" from the claimed "obligation."

"obligation" encompasses any obligation under the ordinary meaning of the term.  *See* Ex. E,

'281 Patent File History, 07/12/04 Request for Extension of Time and Amendment at 5-6.

     *Second*, Plaintiff's proposed construction fails to adhere even to the scope of the

patentee's alleged relinquishment of scope, by generalizing the patentee's statement (that "the

existence of the loan in the present invention is independent of and unrelated to the

consummation of any particular purchase") to exclude "any costs or fees *arising out of the use of*

*customer identifiers as payment*."  *See* Opening Brief at 14 (emphasis added); Ex. F, '544 Patent

File History, 01/20/99 Amendment and Response at 3.  There is no support for such an

expansion.  Even if the Court were to apply the patentee's relinquishment of the scope of the

'544 Patent's "loan" to the '281 Patent's claim term "obligation," it is improper to *expand* the

scope of relinquishment to exclude the amorphous "costs or fees arising out of the use of

customer identifiers as payment."  *See Omega Eng'g Inc.*, 334 F.3d at 1328 ("[W]e must give the

claim language its presumptive full ordinary meaning, limited solely by the patentee's clear and

unmistakable disclaimer.").  Plaintiff's proposed construction is in no way congruent with, or

limited by, the patentee's statement during prosecution.

     *Third*, "costs or fees arising out of the use of customer identifiers as payment" is so vague

and ambiguous that it necessitates a battle on summary judgment, or at trial, about what does and

does not "arise out of the use of customer identifiers as payment."  Such a construction

potentially excludes from the term "obligation" (a) costs or fees that are *not* "dependent on or

related to a particular transaction" and (b) costs or fees *other* than those specifically identified in

the '281 Specification outside the context of the invention.  Such a drastic deviation from

ordinary meaning, which does not even clarify which "obligations" are excluded from the scope

of the claim, is unwarranted and improper.  As the Federal Circuit has made clear that the

ordinary meaning of a claim term must be limited *solely* by the patentee's clear and unmistakable disclaimer, *see id.*, Plaintiff's failure to acknowledge this canon of claim construction is improper as a matter of law.

The only plausible explanation for Plaintiff's expansion of the patentee's purported relinquishment of scope for a different term is an attempt to avoid the prior art cited in Defendants' Invalidity Contentions. For example, Defendants have included in their Invalidity Contentions a prior art system and method utilized commercially and routinely by First USA since at least 1993 that anticipates relevant claims of the '281 patent. A company called Electronic Processing would rent or sell credit card swipe machines to merchants, for a predetermined monthly fee or predetermined amount, and Electronic Processing's monthly rental fee or sales price would be repaid by the merchant processor, in monthly installments, from a portion of the merchant's future card transactions. Plaintiff has misapplied and expanded a disclaimer relating to a different term in a different patent in an attempt to persuade the Court to adopt an ambiguous limiting construction of the term "obligation" — apparently in the hopes that further construction of the scope of the phrase "costs or fees arising out of the use of customer identifiers as payment" will be needed before summary judgment of invalidity can be granted on the First USA prior art. Plaintiff's proposed application and expansion is clearly erroneous. Defendants therefore respectfully request that the Court construe obligation to mean "amount owed by merchant other than processing fees, *i.e.*, discount rate, interchange fee, and network fee."

III.    **Debit card (Recited in dependent Claims 3 and 12)**[7]

  **Defendants' proposed construction: card linked to a deposit account that can be used to make purchases**

   The term "debit card" should be construed to mean "card linked to a deposit account that can be used to make purchases." Plaintiff and Defendants disagree only on the inclusion of the phrase "that can be used to make purchases." *See* Opening Brief at 15. This limitation appears in independent Claims 1 and 10 as an express qualification of customer identifier and therefore obviously applies to the "debit card" species in dependent Claims 3 and 12. Without this phrase, "debit card" could be read illogically to include such things as ATM cards that are linked to deposit accounts but can only be used to withdraw cash from those linked deposit accounts, and not to make purchases at a merchant that are processed using the system and method of the invention. Plaintiff's request that the context of the patent be ignored during claim construction should be denied. *See Phillips*, 415 F.3d at 1313. Defendants thus respectfully request that the Court adopt Defendants' proposed construction.

IV.    **Smart card (Recited in dependent Claims 4 and 13)**[8]

  **Defendants' proposed construction: card containing an integrated circuit, such as a microprocessor or a memory, that can be used to make purchases**

   As an initial matter, Defendants must correct Plaintiff's statement in its Opening Brief that "Defendants incorrectly argue that the term 'smart card' is indefinite and, therefore, they fail to provide a construction for this term." *See* Opening Brief at 16. This statement is inaccurate; the Joint Statement clearly includes proposed constructions for smart card from both Plaintiff

---

[7] The text of the dependent claims is set forth in Exhibit B.
 Plaintiff discusses this term in its Opening Brief, Section IV.E.

[8] The text of the dependent claims is set forth in Exhibit B.
 Plaintiff discusses this term in its Opening Brief, Section IV.F.

and Defendants. *See* Joint Statement at 9 (showing that Defendants propose construing "smart card" as "a card containing an integrated circuit, such as a microprocessor or a memory, that can be used to make purchases"). In contrast to Plaintiff's misstatement, Defendants have proposed a construction of "smart card" that, like Defendants' proposed construction of "debit card," is consistent with the method and system described by the '281 Patent.

Plaintiff has proposed that the phrase "smart card" be interpreted as "a card that contains an integrated circuit such as a microprocessor or a memory." *See* Opening Brief at 15. Defendants' construction differs from Plaintiff's only in that it adds the phrase "that can be used to make purchases." This express qualification of customer identifier in independent Claims 1 and 10 obviously applies to the "smart card" species in dependent Claims 4 and 13, which Defendants' proposed construction makes clear. Plaintiff's construction, by contrast, could include any number of cards that cannot be used to make purchases and will not be processed by a computerized merchant processor, as the claims require. For example, phone card "smart cards" — which are not processed by a computerized merchant processor — would fall within Plaintiff's construction.

In support of Plaintiff's proposed construction, Plaintiff relies on the definition of "smart card" recited in the Third Edition of the Microsoft Press Computer Dictionary (1997) ("Microsoft Dictionary"). *See* Opening Brief at 15. However, Plaintiff's construction omits a key word from that dictionary definition. The full text of the definition of "smart card" from the Microsoft Dictionary also states "2. *In banking and finance*, a *credit* card that contains an integrated circuit that gives it a limited amount of 'intelligence' and memory." Microsoft Dictionary at 439 (emphasis added), attached to Opening Brief at Ex. N. Accordingly, even

relying on the extrinsic evidence relied upon by Plaintiff, it is clear that a smart card is akin to a "credit card" and should be capable of being used to make purchases.

Accordingly, Defendants respectfully request that the Court construe "smart card" to mean "card containing an integrated circuit, such as a microprocessor or a memory, that can be used to make purchases."

## V.    Accumulating the payments until a predetermined amount is reached (Recited in dependent Claims 8 and 17)[9]

### Defendants proposed construction:  accumulating the payments until a predetermined monetary amount is reached

The parties' proposed constructions of this phrase differ in only one way:  whether the "accumulating the payments" portion should be read as the ordinary and customary meaning of "accumulating the payments" (as proposed by Defendants) or as "holding a payment or payments" (as proposed by Plaintiff).[10]  To resolve this dispute, the Court need look no further than the claim itself, which demonstrates that Plaintiff's construction is flatly contrary to the ordinary meaning.  Plaintiff ignores that the claim term expressly uses "payments" in the plural. This requires that there must be more than one payment, and that more than one payment, i.e. at least two payments, have to be accumulated.

Defendants respectfully request that the Court reject Plaintiff's construction that is contrary to the ordinary meaning and instead adopt Defendants' proposed construction.

---

[9]  The text of the dependent claims is set forth in Exhibit B.

Plaintiff discusses this term in its Opening Brief, Section IV.G.

[10]  The parties agree that the second half of this phrase, "until a predetermined amount is reached," should be construed as "until a predetermined monetary amount is reached."  *See* Joint Statement at 10.

## VI.  Periodically forwarding (Recited in dependent Claims 9 and 18)[11]

### Defendants' proposed construction: forwarding at an interval other than upon every payment

The term "periodically forwarding" should be construed as "forwarding at an interval other than upon every payment," according to its ordinary and customary meaning and as confirmed by the '281 Specification.  Throughout the specification, the patentee used "periodically forwarding" according to its ordinary meaning and unambiguously did *not* attempt to impart the novel, counterintuitive meaning reflected in Plaintiff's proposed construction. Plaintiff's proposed construction — "forwarding at intervals defined by time or predetermined amount," *see* Opening Brief at 17 — suffers from two fatal flaws: it violates the principle of claim differentiation; and it is premised on an incomplete, and potentially misleading, excerpt from the '281 Specification.

*First*, dependent Claims 8 and 17 refer to accumulation (or "holding" under Plaintiff's construction) to a predetermined amount, as construed above.  *See supra* Section V.  Thus according to the well-established principle of claim differentiation, dependent Claims 9 and 18 should be directed to a different species.  But under Plaintiff's construction of "periodically forwarding," which includes "forwarding at intervals defined by . . . predetermined amount," Claims 9 and 18 will improperly include the scope of Claims 8 and 17.  This alone is a sufficient reason to reject Plaintiff's proposed construction.

*Second*, Plaintiff excludes the complete text of the first relevant paragraph of the '281 Specification, which, when read in full, makes clear that Plaintiff's insertion of "predetermined

---

[11]  The text of the dependent claims is set forth in Exhibit B.

Plaintiff discusses this term in its Opening Brief, Section IV.H.

amount" into this construction is unfounded.  The full text describing how portions of payments may be forwarded states:

> The loan payments alternatively may be accumulated until a predetermined amount is reached, and then at least a portion of the accumulated payments is forwarded to the lender (or its designee). In another embodiment, the merchant processor may periodically forward at least a portion at least a portion of the payment to the lender or designee.  For example, the merchant processor may forward payment amounts [1] every month, or [2] based on an amount such as after each one thousand dollars ($1000) worth of transactions.

*See* Ex. D, '281 Patent, 2:16-25.  *Compare* Opening Brief at 17 (omitting the first sentence of the above excerpt) *with id*.  From this complete quotation it is clear that two *alternative* embodiments are being described:  [1] periodically forwarding, which is reflected in claims 9 and 18; and [2] accumulating until a predetermined amount is reached, which is reflected in claims 8 and 17.  Plaintiff improperly attempts to conflate the two.

In contrast, Defendants' construction respects the principle of claim differentiation and is consistent with the '281 Specification's specific examples of this term, "upon every other payment," Ex. D, '281 Patent, 5:45-48, and "every month," Ex. D, '281 Patent, 2:20-25. Accordingly, Defendants respectfully request that the Court construe "periodically forwarding" to mean "forwarding at an interval other than upon every payment."

## VII.   Third Party (Recited in independent Claim 10 and dependent Claims 17, 18 and 19)[12]

### Defendants' proposed construction: party other than the merchant

The claim term "third party" first appears in independent Claim 10 in the phrase "wherein the merchant associated with the payment has an outstanding obligation to a third party."  Ex. D,

---

[12]   Independent Claim 10 is set forth in Ex. A, and dependent claims 17, 18 and 19 are set forth in Ex. B. Plaintiff discusses this term in its Opening Brief, Section IV.I.

'281 patent, 8:19-20.  Accordingly, the third party is the party to whom the merchant owes an "obligation."  As demonstrated below, the intrinsic record makes clear that the party to whom the merchant owes an "obligation," in the context of the claims, may be *any* party other than the merchant itself.  Thus, the Court should construe "third party" to mean "party other than the merchant."

The only distinction between Defendants' and Plaintiff's proposed construction is that Plaintiff seeks to exclude merchant processors from the definition of "third party."  As support for Plaintiff's proposed limitation for this term, Plaintiff inexplicably relies on the phrase "payment receiver," which does not appear in independent Claim 10 or its dependent Claims 11-19, and is not associated with the term "third party" anywhere in the intrinsic record.  *See* Opening Brief at 18.  The unidentified phrase "payment receiver" is thus irrelevant in construing the claim term "third party."

### A.    The Ordinary Meaning is Ambiguous in the Context of the '281 Patent

As explained above, the ordinary and customary meaning of a claim term is the point at which to begin the construction of a claim term.  *See Phillips*, 415 F.3d at 1312.  The ordinary and customary meaning of "third party" set forth by Plaintiff is "one other than the principals involved in a transaction."  Opening Brief at 19.  The '281 Specification, however, never identifies which of the six parties involved in the system and process of the invention, as identified in FIG. 2, are the "principals" involved in the transaction.  *See* Ex. D, '281 Patent, FIG. 2.  Nor does the intrinsic record identify a particular "transaction" for which to identify the principals.  The precise sentence in Claim 10 that introduces the claim term "third party" is "wherein the merchant associated with the payment [from the customer] has an outstanding obligation to a third party." Ex. D, '281 patent, 8:12-14.  Because this introductory sentence references the "merchant" and the "payment" transaction, the relevant transaction is most

logically the payment transaction (making the principals the customer and merchant, and the "third party" any entity other than the customer and merchant, pursuant to the ordinary and customary meaning of "third party").  But the '281 Patent also includes references to at least four other "transactions":  (1) a loan transaction (making the principals the lender and the borrower), *see* Ex. D, '281 Patent, 1:35-37; (2) a processing transaction (making the principals the merchant processor, network, and card issuer), *see id*. at 8:7-20, FIGS. 1B and 2; (3) a card account repayment transaction (making the principals the card issuer and cardholder), *see id*. at 4:57-61; and (4) a forwarding transaction (making the principals the merchant processor and third party), *see id*. at 8:15-19.

Additionally, contrary to Plaintiff's strained assertion that the elements of Claim 10 identify certain parties as the "first party" and "second party" such that the ordinary meaning of "third party" is sufficient to reveal the principals to an unidentified transaction, Claim 10 of the '281 patent (a) refers to no fewer than four entities: the customer (who presents the customer identifier as payment); the merchant (who accepts the customer identifier as payment); the computerized merchant processor (who processes authorizes, settles and forwards the payment); and the third party (who receives the payment), and (b) references multiple "transactions," including at least transactions (2) and (4) identified in the paragraph above.  *See* Opening Brief at 18; Ex. D, '281 Patent, 8:7-20.

The ordinary and customary meaning set forth by Plaintiff is thus ambiguous and insufficient to construe the term.  The Court must, therefore, turn to the specification and prosecution history to determine whether there is any basis to support the novel meaning imparted to "third party" by Plaintiff.  *See Teleflex*, 299 F.3d at 1325-26.

**B.**    **The Intrinsic Record Dictates that "Third Party" be Construed as "Party Other Than the Merchant"**

*Prosecution History.*  The '281 Patent is a continuation of the '544 Patent, and the specification of the '281 Patent is identical to that of the '544 Patent.[13]  When the patentee, during prosecution of the '281 Patent, amended her proposed claims to closely follow those appearing in the '544 Patent, she explained:

> By the present amendment, Applicant has amended the claims to closely follow the language of the claims that were on appeal in the ['544 patent], with several minor changes in the independent claims. . . . [T]he term "lender" has [] been replaced by "third party" to reflect that the obligation may be made to other than a "lender," although the obligation to make payment will remain.

Ex. E, '281 Patent File History, 07/12/04 Request for Extension of Time and Amendment at 5-6. In other words, the patentee replaced "lender" with the term "third party" (*i.e.*, a generic term that includes the lender as one species of the term).  As the '281 Specification uses "lender" as the only example of the broader "third party," its inclusive description of the nature of the "lender" must necessarily also be a description of the nature of the broader "third party."

*Specification.*  Plaintiff correctly focuses on the '281 Specification excerpt below as informing the proper construction of "third party":

> The invention utilizes a merchant processor in the loan repayment process.  The merchant processor may be, for example, a third party entity (i.e., an entity other than the borrower or the lender), the same entity as the lender, or an entity affiliated in some way with the lender.  As an example, with some credit cards, the merchant processor can be a third party.  As another example, with some cards such as the American Express charge card, the merchant processor can be the same as (or at least closely affiliated with) the lender.

---

[13]  *See* MPEP 201.07 ("A continuation is a second application for the same invention claimed in a prior nonprovisional application and filed before the original prior application becomes abandoned or patented. . . . The disclosure presented in the continuation must be the same as that of the original application; i.e., the continuation should not include anything which would constitute new matter if inserted in the original application.").

Ex. D, '281 Patent, 1:29-42; Opening Brief at 19.  But, instead of supporting Plaintiff's construction, this paragraph actually demonstrates unequivocally why Plaintiff's construction is incorrect.

As shown above, the '281 Specification expressly states that "the merchant processor may be . . . the same entity as the lender."  *Id.*  Since the patentee expressly stated that a merchant processor may be a lender, and also then specifically replaced "lender" with the broader "third party" in the claims, the term "third party" must necessarily include merchant processors.[14]  Indeed, the very next sentence in the '281 Specification explicitly states:  "[T]he merchant processor can be a third party."  *Id.*  But Plaintiff's proposed construction inexplicably *prohibits* this possibility and is directly contradicted by the '281 Specification.

*     *     *

The specification and prosecution history expressly allow for the merchant processor and "third party" to be the same entity, *see*, *e.g.*, Ex. D, '281 Patent, 1:34-42, and also for the card issuer and merchant processor (*e.g.*, American Express) to be the same entity, *id*. at 3:51-58.  Thus, of the six parties identified as involved in the method and system of the patent — *i.e.*, the cardholder (or customer), the merchant, the merchant processor, the network, the card issuer, and the lender, *see id*. FIG. 2 — the intrinsic record expressly includes no less than three of these as potential "third parties" (the card issuer, the merchant processor, and the lender).  Indeed, the only entity explicitly or implicitly excluded from the definition of "third party" is the merchant,

---

[14]  The alleged inventor additionally confirmed that the merchant processor could be the same entity as the "third party."  *See* Ex. H, Barbara Johnson Deposition Transcript at 146-47:

**Q**. Okay. So my follow-up question was can the merchant processor and the third party be the same.
**A**. I think that's all part of what's in the patent, yes.
**Q**. I'm sorry?
**A**. I think, yes, that's all part of what's in the patent.

because the merchant actually owes the obligation to this third party. *See* Ex. D, '281 Patent, 8:12-14. Accordingly, the intrinsic record dictates that the term "third party" should be construed to mean "party other than the merchant."

As with the term "obligation," the only plausible explanation for Plaintiff's proposed construction of "third party" is an attempt to avoid invalidating prior art identified in Defendants' Invalidity Contentions. For example, one business method employed commercially and extensively by Litle & Company (a prior art reference identified in Defendants' Invalidity Contentions) several years prior to the priority date of the '281 Patent employed the combined merchant processor/third party model contemplated in the specification and explained above. Litle & Company would advance funds for postage to a catalog company (merchant), and the merchant would repay its obligation to Litle & Company through future card transactions. Litle & Company would act as both the third party who advanced funds on behalf of the merchant and as the merchant processor, who processed the merchant's card transactions and forwarded a portion of the merchant's payments to a designated postage advance repayment account as repayment of the merchant's postage advance obligation. In an attempt to avoid this prior art through erroneous claim construction, Plaintiff's proposed construction ignores the patentee's explicit lexicography and should be rejected. *See Phillips*, 415 F.3d at 1309.

Defendants thus respectfully request that the Court construe the term "third party" to mean "party other than the merchant."

## VIII.  **Means-Plus-Function Claims**

A patentee may express

> An element in a claim for a combination . . . as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and *such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.*

35 U.S.C. § 112, ¶ 6 (emphasis added).  By claiming in means-plus-function form, a patentee is allowed to claim a function without expressing all of the possible means of accomplishing that function.  *See O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1583 (Fed. Cir. 1997).  "The price that must be paid for use of that convenience is limitation of the claim to the means specified in the written description and equivalents thereof."  *Id.*; *Med. Instrumentation. & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003) ("The duty . . . to clearly link or associate structure with the claimed function is the quid pro quo for allowing the patentee to express the claim in terms of function under section 112, paragraph 6.").  A claim expressed in means-plus-function form thus constitutes an exception to the rule that prohibits reading limitations from the specification into the claims.  *See Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993).  Indeed, construction of a means-plus-function claim *requires* limiting the scope of the claim to only those structures disclosed in the specification that are clearly linked to the claimed function, and the structural equivalents thereof.  *Id.*

In construing a means-plus-function claim element, the Court must undertake a two-step analysis.  *Omega Eng'g, Inc.*, 334 F.3d at 1321.  First, the Court must determine the function as recited in the claim that is performed by the means-plus-function element.[15]  *Id.*  Second, the Court must identify the corresponding structure disclosed in the specification that the patentee has clearly linked or associated with the claimed function.  *Id.*; *Med. Instrumentation & Diagnostics Corp.*, 344 F.3d at 1211.  If the specification has not disclosed corresponding structure for performing the claimed function, and clearly linked the structure to the claimed function, then the claim is indefinite.  *Id.*

---

[15] The parties have agreed both that the remaining terms for construction invoke the requirements of 35 U.S.C. § 112, ¶ 6 and as to the functions performed by these means-plus-function terms.  *See* Joint Statement at 12-22. The parties dispute, however, the construction of the individual terms contained in each means-plus-function term as described *supra* and identified in the parties' Joint Statement at 12-22.

Furthermore, a corresponding structure for performing the claimed function must be defined more clearly than in mere generic structural terms. *See Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 704-05 (Fed. Cir. 1998) (analyzing whether "detector" is a generic structural term, such as "means,", "element", or "<u>device</u>") (emphasis added). Plaintiff's proposed inclusion of generic structural "devices" as corresponding structures, as explained below, is thus improper as a matter of law.

In the case of a computer-implemented means-plus-function term, the claim is limited to *the algorithm* performed by the computer to accomplish the function. *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005) ("A computer-implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof, and the corresponding structure is the algorithm."). Disclosure of an algorithm does not require source code, but it "must be sufficiently disclosed so that one of ordinary skill in the art can determine the limitation on what is claimed." *Finisar Corp., v. The DirecTV Group*, 416 F. Supp. 2d 512, 518 (E.D. Tex. 2006) (citing *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1381-82 (Fed. Cir. 2001)). Although claims are viewed through the eyes of one of ordinary skill in the art, this knowledge cannot be used to supply structure that is absent from the specification. *Touchcom, Inc. v. Dresser, Inc.*, 427 F. Supp. 2d 730, 736 (E.D. Tex. 2005) ("That one of skill in the art could create structure sufficient to perform a function is not the inquiry.").

A.    <u>**"Means For Forwarding"**</u>

**Defendants' proposed structure for each of the five "means for forwarding" terms: None disclosed**

The '281 Patent claims, in means-plus-function form, five functions involving the forwarding of particular information or payment:

- "Means . . . for electronically forwarding information related to the payment to a computerized merchant processor" (independent Claim 10) (Opening Brief at 23-24)

- "Means for forwarding a portion of the payment to the third party" (independent Claim 10) (Opening Brief at 29)

- "Means for forwarding at least a portion of the accumulated payments to the third party" (dependent Claim 17) (Opening Brief at 32-33)

- "Means for periodically forwarding at least a portion of the payment to the third party" (dependent Claim 18) (Opening Brief at 33-34)

- "Means for forwarding to the third party an amount that is a percentage of the obligation" (dependent Claim 19) (Opening Brief at 34-35)

Although the parties agree on the claimed functions performed by these means, the parties disagree on the disclosed structure that performs these claimed functions.[16]  For all five "means for forwarding" terms, Plaintiff has identified the corresponding structure as the generic structural term "input/output device."[17]  Opening Brief at 23-24, 29, 32-35 (§§ IV(K), (O), (R), (S) and (T)).  However, the claims and the specification make clear that a computer, properly configured software, and a modem[18] are necessary to perform the act of forwarding information or payment from one location to another.  Not only does Plaintiff fail to identify *any* specific structure sufficient to satisfy the requirements of 35 U.S.C. § 112, ¶ 6, *see Personalized Media Commc'n,* 161 F.3d at 704-05, but Plaintiff identifies only *one* component of the *combination* of structures necessary to perform the claim function of "forwarding."

     1.   "Forwarding" is a Computer-Implemented Means-Plus-Function
          Claim Term in the Context of the '281 Patent

---

[16] The parties also disagree on the construction of certain individual terms within the claimed functions.  *See* Joint Statement at 13, 15, 21-22; *see supra* Sections II, VI, and VII.

[17] *See* Ex. J, Microsoft Dictionary at 252 ("Input/output device:  A piece of hardware that can be used both for providing data to a computer and for receiving data from it, depending on the current situation.  A <u>disk drive</u> is an example of an input/output device. . . .  <u>Most devices require installation of software routines called device drivers to enable the computer to transmit and receive data to and from them</u>.") (emphasis added).

[18] *See* Ex. K, Microsoft Dictionary at 311 ("modem . . . A communications device that enables a computer to transmit information over a standard telephone line. . . . <u>Without appropriate communications software, however, modems cannot perform any useful work</u>.") (emphasis added).

In construing a nearly identical means-plus-function claim term – "means for transmitting [information]" – this Court followed a claim construction ruling by the United States District Court for the Southern District of Indiana holding that the corresponding structure for performing the "transmitting" function was the combination of a computer, software, and one of the specifically disclosed communications devices.[19]  *Charles E. Hill & Assocs.*, 2005 WL 2483510 at *12.  That case involved an electronic cataloging system wherein data stored on a centralized server would be transmitted to a customer to provide the customer with updated catalog information.[20]  *Id.*  The Court found that the patent specification identified a generally available software program as a component of the structure necessary to perform the "transmitting" function, thus satisfying the burden under 35 U.S.C. § 112, ¶ 6 for the computer-implemented function.  *Id.* at *35.  The parties disputed the breadth of the software description – and not its necessity in performing the claimed function.  *Id.*  Accordingly, the Court held that the scope of the computer-implemented means-plus-function term was limited to include the specifically disclosed software package and structural equivalents thereof.  *Id.* at *38.

Forwarding information or payment according to the '281 Patent's claimed system likewise requires a computer, software, and a physical communications device.  Indeed, the '281 Specification explains that multiple components are necessary to "forward" payment or information – thus the function cannot be accomplished with simply an "input/output device," as

---

[19]  The corresponding structure for the function of "transmitting [information]" was held to be: "a modem, telephone lines, wide area networks, local area networks, satellite communications, land lines, or optic lines, associated with the customer's computer that is configured to operate under the control of a copyrighted communications software module available from CADDCENTERS in Indianapolis, Indiana, or its equivalent."  *Charles E. Hill & Assocs., Inc. v. CompuServe, Inc.,* 2003 U.S. Dist. LEXIS 19218, *38 (S.D. Ind. 2003) (IP 97-0434-C-M/S) (Order on Claim Construction) (unpublished) (followed by this Court in *Charles E. Hill & Assocs., Inc. v. Amazon.com*, 2005 WL 2483510, *12 (E.D. Tex. 2005) ("The court therefore adopts Judge McKinney's claim construction with respect to the means plus function terms contained in the [] patent.").

[20]  The text of the claim language was "means for transmitting the remote revision status from the remote computer to the main computer."  *Charles E. Hill & Assocs.*, 2005 WL 2483510 at *12.

proposed by Plaintiff.  *See* Ex. D, '281 Patent, 5:58-60 ("The processor 302 and the memory 304

cooperate with each other and with the other components of the merchant processor 300 to

perform all of the functionality described herein."), 6:43-45 ("The memory 320 also may include

merchant data along with software to direct operation of the computer 312.").  The '281

Specification additionally describes information contained in the "merchants account database"

or "memory" – and *not* the "input/output device" – which may be referenced when forwarding

information or payment.  *Id.* at 5:67-6:7 ("[The merchant accounts database] also can include

information about which lender 60 is associated with each authorized merchant 20 and how . . .

payments are to be made to the lenders by the merchant processor 300."); *id.* at 6:41-43 ("The

consumer and transaction data may be temporarily stored in the memory 320.").  The '281

Specification thus acknowledges the necessity of a computer, software and some sort of

"input/output device."

    The '281 Specification's unequivocal statements regarding the structure required to

perform these "forwarding" functions thus demonstrate that "means for forwarding information"

and "means for forwarding payment," as recited in Claims 10, 17, 18 and 19, are computer-

implemented means-plus-function claims, necessitating the disclosure of the algorithm according

to which software performs the claimed "forwarding" functions.  *See  Harris*, 417 F.3d 1253.

    2.    The '281 Patent Does Not Disclose an Algorithm
          for "Forwarding" Information or Payment

    Though required to define the scope of the claimed "forwarding" function, as explained

above, the '281 Specification does not describe any software or algorithm for performing this

function; instead, it simply states that the invention may utilize "appropriate software to perform

all of the functionality described herein."  Ex. D, '281 Patent, 5:62-63.  Such a description is

legally insufficient to identify corresponding structure under 35 U.S.C. § 112, ¶ 6.  *See*

*Touchcom*, 427 F. Supp. 2d 730 (holding that failure to specifically identify a touchpad driver that was well known in the art and freely available rendered the means-plus-function claim term indefinite for failing to disclose structure).[21]

Rather than identify structure for performing the claimed function, the '281 Specification hints at pieces of information that may need to be incorporated into any software created to perform the function. For example, the '281 Specification states that "[t]he merchant processor 30 then in turn pays the merchant 20 (e.g., by forwarding payment to a bank having an account maintained by the merchant 20) some amount less than the customer's original purchase amount. . . ." Ex. D, '281 Patent, 4:40-44. However, the specification does not provide an algorithm for performing the steps required in identifying that bank account maintained by a particular merchant. Additionally, forwarding information or payment as described in the specification would likely require several pieces of information, and several steps, not described in the '281 Specification. For example: (1) forwarding payment might require identifying the account or entity to which the merchant authorizes the merchant processor to forward a portion of the merchant's payment, identifying both the merchant's bank account and the other bank account to which the payment will be forwarded, identifying the percentage of the payment to be forwarded to each account, etc.; and (2) forwarding information might require identifying particular pieces of collected information to be forwarded, identifying precisely where or to which account the information should be forwarded, etc. The '281 Specification simply does not disclose an algorithm describing the steps required to perform these "forwarding" computer-implemented means-plus-function claims.

---

[21] *Compare Touchcom*, 427 F. Supp. 2d 730 *with* Ex. J, Microsoft Dictionary at 252 ("Input/output device . . . Most devices require installation of software routines called device drivers to enable the computer to transmit and receive data to and from them.").

Even if a person of ordinary skill in the art could determine how to "forward" information or payment according to the invention, that person's knowledge cannot supply structure that is lacking in the specification. *See Touchcom*, 427 F. Supp. 2d at 736 ("That one of skill in the art could create structure sufficient to perform a function is not the inquiry."). Because the '281 Specification does not identify the algorithm for the computer-implemented claimed functions of "forwarding" payment and information, it has failed to disclose corresponding structure for these claims. *See id.*

3.  The Only Disclosed "Input/Output Device" is a Modem

In addition to its failure to recognize that "means for forwarding" is a computer-implemented means-plus-function claim, Plaintiff fails to recognize that a generic structural term does not constitute corresponding structure for a means-plus-function claim. *See Personalized Media Commc'ns*, 161 F.3d at 704-05; Opening Brief at 24 (identifying "input/output device 322" as corresponding structure for "means for electronically forwarding"). Because modem is the only specific example of the generic "input/output device" discussed in the '281 Specification, this component of the necessary structure for performing the "forwarding" function (which, as explained above, includes a computer, software *and* modem) must be limited to that specific structure. *See* Ex. D, '281 Patent, 6:60-63.

The '281 Specification specifies that "[T]hese [I/O] devices can be modems, for example." *Id*. Throughout the remainder of the specification, "input/output device" simply refers to a device that performs the described functions – in other words, *any* "device" that works in conjunction with a computer and software to perform the "forwarding" function.

In *Finisar*, this Court has specifically stated that such language does not provide corresponding structure:

The language in these parts of the specification simply repeats the function described in the claim. Such a description of the structure is so broad as to read on any and every means for performing the recited function. The court finds that this claim term is indefinite because no structure is disclosed for performing the recited function.

416 F.Supp.2d 512, 519 (E.D. Tex. 2006). Plaintiff's attempt to functionally claim every conceivable "device" that performs the claimed function is improper as a matter of law. *See Finisar Corp.*, 416 F. Supp. 2d at 519.

Because "means for forwarding" is a computer-implemented means-plus-function claim and the '281 Specification does not identify corresponding structure to perform this function, Defendants respectfully request that the Court find that no structure is disclosed to support the "means for forwarding" means-plus-function Claims 10, 17, 18, and 19.

**B.    Means For Receiving the Information Related to the Payment
From the Merchant (Recited in independent Claim 10)**

**Defendants' proposed structure for "means for receiving information related to the payment from the merchant": None disclosed**

Similar to the function of "forwarding" information or payment, the function of "receiving the information related to the payment from the merchant" is performed by a computer, software and a modem. *See* Ex. J, Microsoft Dictionary at 252, ("Input/output device . . . [m]ost devices require installation of software routines called device drivers to enable the computer to transmit and *receive* data to and from them."), 311 ("[m]odem . . . Without appropriate communications software, however, modems cannot perform any useful work."). Accordingly, "means for receiving" is a computer-implemented means-plus-function claim and one component of the corresponding structure is the algorithm according to which the software operates to perform the claimed function. *Touchcom*, 427 F. Supp. 2d at 735; *Harris*, 417 F.3d at 1253. Similar to the '281 Specification's failure to disclose an algorithm for performing the "forwarding" function, the '281 Specification does not disclose the steps for performing the

- 29 -

claimed "receiving" function.  *See* Ex. D, '281 Patent at 5:49-6:17 ("In one embodiment, the merchant processor 300 executes appropriate software to perform all of the functionality described herein.").  Likewise, Plaintiff does not identify any disclosed algorithm in its proposed identification of structure for this claimed function.  *See* Opening Brief at 24-25 (Section IV.L). Accordingly, the Court should find that no corresponding structure is disclosed for performing the "receiving" function recited in Claim 10.

Plaintiff again improperly attempts to construe this means-plus-function term to encompass any "device" capable of performing the claimed function, by proposing that "input/output device 306" is an identified structure.  *See* Opening Brief at 25; *see Finisar*, 416 F.Supp.2d at 519.  Plaintiff goes even one step further for this term by proposing that the Court identify "telephone" as an additional corresponding structure that performs the "receiving" function.  Plaintiff fails to explain how a telephone, alone, performs the function of "receiving information related to the payment," and also fails to identify where the '281 Specification clearly links a telephone, alone, to the claimed "receiving" function.  *See Med. Instrumentation & Diagnostics Corp.*, 344 F.3d at 1211.

Plaintiff's proposed identification of "input/output device 306 or telephone" as corresponding structure for the "means for receiving" claim thus suffers from similar fatal flaws as its proposed identification for the "means for forwarding" claims:  (1) it fails to recognize that "means for receiving" is a computer-implemented means-plus-function claim, as described above, (2) it recites a generic structural term ("input/output device 306"), which is not limited to any particular structure and thus does not constitute even one component of the necessary corresponding structure; and (3) it identifies a structure (telephone) that is not clearly linked to performing the claimed function.  *See Harris*, 417 F.3d at 1253; *Finisar*, 416 F.Supp.2d at 519.

Defendants thus respectfully request that the Court find that no corresponding structure is disclosed in the specification for the '281 Patent's "means for receiving" claims.

### C. Means For Accepting (Recited in independent Claim 10 and dependent Claims 11, 12, 13, 14, 15 and 16)

**Defendants' proposed structure for "means for accepting customer identifiers as payment": Keyboard, magnetic card reader, telephone, World Wide Web page, physical delivery and U.S. Postal Service (or other carrier)**

The claim term "means for accepting" appears in seven claims of the '281 Patent:

- Means for accepting a customer identifier as payment (independent Claim 10)
- Means for accepting a credit card number as the customer identifier (dependent Claim 11)
- Means for accepting a debit card number as the customer identifier (dependent Claim 12)
- Means for accepting a smart card number as the customer identifier (dependent Claim 13)
- Means for accepting a charge card number as the customer identifier (dependent Claim 14)
- Means for accepting the customer identifier at a merchant location (dependent Claim 15)
- Means for electronically accepting the customer identifier (dependent Claim 16)

The structures disclosed in the '281 Specification as means for accepting customer identifiers as payment include a magnetic card reader, keyboard, telephone, World Wide Web page, physical delivery and U.S. Postal Service (or other carrier). Plaintiff, however, proposes the following identification of structures for performing the "accepting" function: "Consumer data input device 316 or telephone or computer or World Wide Web page." Opening Brief at 23. Rather than identify only those structures specifically disclosed and clearly linked to the claimed function, Plaintiff – as with its proposed constructions of "means for forwarding" and "means for receiving" – improperly identifies the generic structural "consumer data input device 316" as corresponding structure. *Id*.; *Finisar*, 416 F. Supp. 2d at 512. Plaintiff also inexplicably includes "computer" as a disclosed structure for performing this function, although fails to

acknowledge *Harris*' requirement that the *algorithm* is the corresponding structure for computer-implemented means-plus-function claims, not merely the "computer" itself. *See* Opening Brief at 23; *Harris*, 417 F.3d at 1253.[22]

The specification states that "the [consumer data input device] can include a keyboard . . . or alternatively it can include a magnetic card reader" Ex. D, '281 Patent, 6:23-29. Therefore, as disclosed in the '281 Specification, a keyboard and magnetic card reader are corresponding structures that may perform the function of accepting customer identifiers as payment. The '281 Specification also discusses the possibility of accepting "a customer-identifying account number . . . at a merchant location (e.g., a retail establishment), over the telephone, or electronically via, for example, the World Wide Web." Ex. D, '281 Patent, 2:4-11. Finally, the specification explains that accepting "may involve other types of transmission such as physical delivery (e.g., a card handed over by the cardholder/customer 10) or post (e.g., a bill sent to the cardholder 10 via the U.S. Postal Service or other carrier) or by telephone." Ex. D, '281 Patent, 4:11-15.

Therefore, identification of corresponding structures for the function of "accepting a customer identifier" does not include the generic structural term "consumer data input device 316" or "computer", but rather only those specific structures described and clearly linked to the claimed function in the specification, namely, a keyboard, magnetic card reader, telephone, World Wide Web page, physical delivery and U.S. Postal service (or other carrier).

The disclosed structures for each of the variations on "means for accepting," with the exception of "means for electronically accepting," are identical. Defendants thus respectfully request that the Court identify "keyboard, magnetic card reader, telephone, World Wide Web

---

[22] The '281 Specification discloses a keyboard, which may be attached to the computer, as the "means for accepting;" however, it does not clearly link the function of "accepting" to a *computer* running appropriate software, nor does it identify the algorithm by which the software would operate to perform the claimed function. *See id.*; *see* Ex. D, '281 Patent, 6:23-29.

page, physical delivery and U.S. Postal Service (or other carrier)" as the corresponding structure for each of the '281 Patent's "means for accepting" claims (independent Claim 10 and dependent Claims 11, 12, 14, 14, 15 and 16), excluding "means for electronically accepting" (dependent Claim 16). Defendants respectfully request that the Court identify "keyboard, magnetic card reader, telephone and World Wide Web page as the corresponding structure for "means for electronically accepting" (dependent Claim 16).

### D.    Means For Accumulating the Payments Until a Predetermined Amount is Reached (Recited in dependent Claim 17)

Defendants agree with Plaintiff's proposed identification of structure for this computer-implemented means-plus-function claim. The algorithm for the function of accumulating payments until a predetermined monetary amount is reached is seemingly included in the description of the function: the software program must accumulate payments until a predetermined monetary amount is reached, because the claimed function does not involve "receiving," "forwarding," or otherwise manipulating the accumulated payments.

Additionally, the term "dedicated electronics" is referenced in the '281 Specification as "hard-wired"[23] electronics, *i.e.*, a special purpose computer. The '281 Specification explains that "In an alternative embodiment, some or all of the functionality described herein can be accomplished with dedicated electronics hard-wired to perform the described functions." Ex. D, '281 Patent, 5:63-66. The term "dedicated electronics" thus invokes *Harris*' algorithm rule – as implicitly agreed by Plaintiff in its identification of an algorithm for performing the claimed function for both computer(s) and dedicated electronics.

---

[23] *See* Ex. L, Microsoft Dictionary at 228 ("Hardwired: Built into a system using hardware such as logic circuits, rather than accomplished through programming.").

Defendants thus respectfully request that the Court identify the corresponding structure for this term as "one or more computers and/or dedicated electronics programmed or configured to accumulate payments it receives until a predetermined amount is reached."

### E.    Means For Authorizing the Payment (Recited in independent Claim 10)

Similar to "means for accumulating," Defendants agree with Plaintiff's proposed identification of structure for this computer-implemented means-plus-function claim.  The '281 Specification describes in detail the steps that must be performed in authorizing a payment.  *See* '281 Patent, 3:31-4:15, FIG. 1A.  The described steps for authorizing the payment reasonably describe the algorithm according to which the software utilized in "authorizing the payment" operates to perform the claimed function.  Furthermore, as set forth *supra* Section VIII.D, the '281 Specification identifies "dedicated electronics" as "hard-wired electronics" that perform the claimed function according to the same disclosed algorithm.  Defendants thus respectfully request that the Court identify the corresponding structure for "means for authorizing the payment" as "one or more computers and/or dedicated electronics programmed or configured to route an authorization request to a card issuer and receive approval of the authorization from the card issuer."

### F.    Means For Settling the Payment (Recited in independent Claim 10)

Similar to "means for accumulating" and "means for authorizing," Defendants agree with Plaintiff's proposed identification of structure for this computer-implemented means-plus-function claim.  The '281 Specification describes in detail the steps that must be performed in settling a payment.  *See* '281 Patent, 4:16-5:3, FIG. 1B.  The described steps for settling the payment reasonably describe the algorithm according to which the software utilized in "settling the payment" operates to perform the claimed function.  Furthermore, as set forth *supra* Section VIII.D, the '281 Specification identifies "dedicated electronics" as "hard-wired electronics" that

- 34 -

perform the claimed function according to the same disclosed algorithm.  Defendants thus respectfully request that the Court identify the corresponding structure for "means for settling the payment" as "one or more computers and/or dedicated electronics programmed or configured to submit the amount of the customer's purchase to the card issuer and receive or be credited some amount by the card issuer."

**<u>CONCLUSION</u>**

For the reasons set forth above, Defendants respectfully request that the Court adopt their proposed claim constructions for the '281 Patent.

September 27, 2006                                  Respectfully submitted,

                                    By:   /s/ Joseph D. Gray
                                          William G. Schuurman
                                          Texas State Bar No. 17855200
                                          bschuurman@velaw.com
                                          Joseph D. Gray
                                          Texas State Bar No. 24045970
                                          jgray@velaw.com
                                          **VINSON & ELKINS L.L.P.**
                                          2801 Via Fortuna, Suite 100
                                          Austin, Texas 78746
                                          Telephone: 512.542.8400
                                          Facsimile: 512.236.3476

                                             -and-

                                          Hilary L. Preston
                                          hpreston@velaw.com
                                          **VINSON & ELKINS L.L.P.**
                                          666 Fifth Avenue – 26th Floor
                                          New York, NY 10103
                                          Telephone: 212.237.0000
                                          Facsimile: 212.237.0100

                                             -and-

                                          Douglas R. McSwane, Jr.
                                          State Bar No. 13861300
                                          **POTTER MINTON**
                                          A Professional Corporation
                                          110 N. College
                                          500 Plaza Tower (75702)
                                          P.O. Box 359
                                          Tyler, Texas 75710
                                          Telephone: 903.597.8311
                                          Facsimile: 903.593.0846
                                          E-mail: dougmcswane@potterminton.com

                                          *Counsel for Defendants First Funds LLC,*
                                          *Merchant Money Tree, Inc., Reach Financial,*
                                          *LLC, and AmeriMerchant, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **ADVANCEME, INC.** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **CAUSE NO. 6:05CV424 LED** |
| **RAPIDPAY, LLC, BUSINESS CAPITAL** | § | |
| **CORPORATION, FIRST FUNDS LLC,** | § | |
| **MERCHANT MONEY TREE, INC.,** | § | |
| **REACH FINANCIAL, LLC and** | § | |
| **FAST TRANSACT, INC. d/b/a** | § | |
| **SIMPLE CASH** | § | |
| | § | |
| *Defendants.* | § | |
| | | |
| **ADVANCEME, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **CAUSE NO. 6:06cv0082 LED** |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **AMERIMERCHANT, LLC,** | § | |
| *Defendant.* | § | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that all counsel of record who have consented to electronic service are being served a copy of this document via the court's CM/ECF system per Local Rule CV-5(a)(3) on this the 27th day of September, 2006.  Any other counsel of record will be served by first class mail on this same date.

By:  /s/ Joseph D. Gray
Joseph D. Gray