# EXHIBIT H

Dockets.Justia.com

Page 1

1

2                    UNITED STATES DISTRICT COURT

3                    EASTERN DISTRICT OF TEXAS

4                           TYLER DIVISION

5

6    ADVANCEME, INC.,              )
                    Plaintiff,     )
7                                  )
                    vs.            )      No. 6:05-cv-00424
8                                  )
     RAPIDPAY LLC,                 )
9                   Defendant.     )
     ------------------------      )    ------------------
10   ADVANCEME, INC.,              )
                    Plaintiff,     )
11                                 )
                    vs.            )      No. 6:06-cv-00082
12                                 )
     AMERIMERCHANT, LLC,           )
13                  Defendant.     )
     ------------------------      )

14

15

16

17                        June 28, 2006

18                        9:06 a.m.

19

20          Deposition of BARBARA S. JOHNSON, held

21      at the offices of Vinson & Elkins, 666 Fifth

22      Avenue, New York, New York, before Laurie A.

23      Collins, a Registered Professional Reporter

24      and Notary Public of the State of New York.

25

1                          Johnson

2      A.    Yes.

3      Q.    Were you aware of that amendment made

4   in July '04 before today?

5            MR. LEMIEUX:  Objection.

6      A.    Am I aware of that amendment?  I -- I

7   didn't know what form it was in.  I was aware of

8   this change in language.  So I just don't know

9   exactly -- I didn't know it was an amendment -- I

10  didn't specifically know where it -- in what form

11  it was in, is the best way.

12     Q.    Are you saying you knew in July of 2004

13  that the language was being changed, or when did

14  you know?

15     A.    I'm not specifically sure when I knew,

16  but I'm aware of it.  Sorry.

17     Q.    Whose idea was it to change the

18  language?

19     A.    I believe it was the attorney's.

20     Q.    Who was --

21     A.    Again, I'm actually guessing.

22     Q.    But it wasn't your idea?

23     A.    No, no.

24     Q.    So you understand from this paragraph

25  common to pages 5 and 6 that applicant has

Johnson

 1

 2  replaced the term "loan" in the claims with the

 3  more generic term "obligation."  So you understand

 4  that "obligation" is a generic term that

 5  encompasses loan as a species?

 6      A.    Yes.

 7      Q.    Is that your understanding?

 8      A.    Yes.

 9      Q.    It goes on to say, Since many

10  obligations for payment that may use a system at

11  present are not necessarily loans.

12          Then it goes on to say, For example, if

13  a merchant assigns its receivables to a third

14  party, these could be collected by the third party

15  using the system of the invention.  As such the

16  term "lender" has been replaced by third party."

17          Do you see that?

18      A.    Yes.

19      Q.    So is it your understanding that "third

20  party" is a generic term that encompasses

21  "lender"?

22      A.    Yes.

23      Q.    Do you have any basis for -- do you

24  know -- do you have any knowledge as to why these

25  claims were changed in 2004?

1                         Johnson

2       A.    If I can go back a little bit.  I think

3   I used the word "loan" very often in the early

4   days of the concept, and I used that word I think

5   loosely, meaning obligation, leaning loan, just --

6   I used it as a nontechnical term.

7             And I think over time there -- the

8   advice from our legal people was that it needed

9   more of a -- more of a description, more of a

10  definition.

11      Q.    So this arose in 2004?

12            MR. LEMIEUX:  Objection.

13      A.    But I'm not positive on the date but...

14      Q.    Your original application was filed in

15  1997.  This is seven years later.

16      A.    So I think as the -- I don't

17  specifically know why this time was chosen to

18  change it or when the first concept of coming to

19  change the words or alter them was, but I was on

20  some level aware of a discussion about "loan" and

21  "obligation."

22      Q.    At what time were you aware of that

23  discussion?

24      A.    I really don't know.  I assume prior to

25  this, but I don't know.

Page 126

1                    Johnson

2        Q.    Who was that discussion with?

3        A.    It was with my husband coming from the

4    legal -- from the attorneys.

5        Q.    And who were the attorneys in 2004?

6        A.    I don't -- I don't know.

7        Q.    Did you know any of them?

8        A.    No, not permanently.  At this point the

9    company was handling...

10       Q.    So apart from Tosti that you

11   mentioned -- I think -- was it Tosti?

12       A.    Yeah.

13       Q.    Did you ever meet any other attorneys

14   or talk to any other attorneys?

15       A.    No.

16       Q.    In fact, you didn't talk to Tosti

17   either; you said you just spoke to Paula Campbell?

18       A.    Yeah.

19       Q.    You didn't meet or talk to any of the

20   attorneys handling the application --

21       A.    No.

22       Q.    -- after you spoke to Paula Campbell?

23       A.    No, personally, no.

24       Q.    This document, if you turn to page 6,

25   it's signed by David Klein.  Did you ever know

1

2          A F T E R N O O N   S E S S I O N

3              (Time noted:  1:20 p.m.)

4              THE VIDEOGRAPHER:  We're now going on

5          the record approximately 1:20 p.m.

6    B A R B A R A   S.   J O H N S O N ,

7          resumed and testified further as follows:

8    EXAMINATION CONTINUED BY

9    MR. SCHUURMAN:

10         Q.    Mrs. Johnson, in your '281 patent,

11    there are no examples other than examples of loans

12    and lenders; is that correct?

13             MR. LEMIEUX:  Objection.

14         A.    I'm not totally aware of all that's

15    included in here.

16         Q.    Are you aware of any reference in your

17    patent to anything like an obligation or like an

18    obligation to a third party?

19             MR. LEMIEUX:  Objection.

20         A.    I'm not totally aware of what's written

21    throughout this whole document.

22         Q.    So do you know --

23             MR. LEMIEUX:  Other than claim

24         language, you're asking her?

25         Q.    You don't know?

1                         Johnson

2              MR. LEMIEUX:  Objection.

3       Q.    Is that what you're saying?

4       A.    I'm saying -- yes, I'm saying I don't

5  know where in the document.

6       Q.    Coming back to Column 1, we ended with

7  this just before the break, and you -- did you

8  think about it at lunchtime?

9       A.    While I'm not totally comfortable using

10  the language in the document, since it is prepared

11  by an attorney and I'm not that familiar with all

12  the language, I think the simple question you're

13  asking me out of all of that, if I'm correct, is

14  that could the processor be separate entities,

15  could they be the same or separate entities.  Is

16  that what you're asking me?

17      Q.    No, my question is in Column 1 your

18  patent says the merchant processor and the lender

19  can be the same.

20      A.    So I guess what I'm saying is I -- that

21  is part of the patent claim.

22      Q.    Okay.  So my follow-up question was can

23  the merchant processor and the third party be the

24  same.

25      A.    I think that's all part of what's in

1                          Johnson

2    the patent, yes.

3         Q.    I'm sorry?

4         A.    I think, yes, that's all part of what's

5    in the patent.

6         Q.    What is your basis for saying that's

7    what's in the patent?

8         A.    I think -- it's language from the

9    patent that you're reading to me, so yes.

10        Q.    No, I'm not reading language from the

11   patent.  Can you look at Column 1?

12             MR. LEMIEUX:  Yes, you were.

13        Q.    Can you look at Column 1 of your '281

14   patent?

15        A.    Yes.

16        Q.    I'm referring you to Column 1, lines 35

17   through 42.

18             MR. LEMIEUX:  But we're not reading

19        language from the patent, which was the

20        premise of your question.

21        Q.    Can you read that to yourself.

22             (Pause.)

23        Q.    Okay.  You've read that.

24        A.    Uh-huh.

25        Q.    The patent says the merchant processor

1                    Johnson

2    may be the same entity as the lender.  Do you see

3    that?

4         A.    Yes.

5         Q.    So my question is can the merchant

6    processor be the same entity as the third party as

7    well.

8         A.    Say it one more time for me.

9         Q.    Can you substitute "third party" for

10   "lender" in that passage?

11              MR. LEMIEUX:  Objection.

12        A.    I don't know what the ramifications of

13   substituting that word would be from a legal

14   standpoint.

15        Q.    Well, you're the inventor.  You tell

16   me, and I'm asking you.  What does your patent

17   mean?

18        A.    I am, but I didn't write this.  This is

19   written by a professional attorney.  So I can -- I

20   can't defend each word and fully understand the

21   ramifications of substituting words in a

22   contract -- in a patent, what that would do.

23        Q.    Did the attorney make the decision that

24   the merchant processor and the lender could be the

25   same entity or did you make that decision?

285

C E R T I F I C A T E

STATE OF NEW YORK        )

                        : ss.

COUNTY OF NEW YORK       )


          I, LAURIE A. COLLINS, a Registered

Professional Reporter and Notary Public

within and for the State of New York, do

hereby certify:

          That BARBARA S. JOHNSON, the witness

whose deposition is hereinbefore set forth,

was duly sworn by me and that such deposition

is a true record of the testimony given by

the witness.

          I further certify that I am not related

to any of the parties to this action by blood

or marriage, and that I am in no way

interested in the outcome of this matter.

          IN WITNESS WHEREOF, I have hereunto set

my hand this 12th day of July 2006.


                    LAURIE A. COLLINS, RPR