# EXHIBIT K

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ADVANCEME, INC.,<br><br>Plaintiff<br><br>v.<br><br>RAPIDPAY LLC, BUSINESS CAPITAL CORPORATION, FIRST FUNDS LLC, MERCHANT MONEY TREE, INC., REACH FINANCIAL LLC, and FAST TRANSACT, INC. dba SIMPLE CASH,<br><br>Defendants | CASE NO. 6:05-CV-424 LED |

## DEFENDANTS' SECOND AMENDED P.R. 3-3 PRELIMINARY INVALIDITY CONTENTIONS

Pursuant to the Court's Amended Docket Control Order and Patent Rules ("P.R.") 3-3 and 3-4 of the Rules of Practice for Patent Cases before the Eastern District of Texas, Defendants First Funds LLC, Merchant Money Tree, Inc., and Reach Financial LLC ("Defendants") submit the following second amended preliminary invalidity contentions.

These contentions pertain to Claims 1-19 of U.S. Patent No. 6,941,281 (the '281 Patent). Defendants submit, however, that AdvanceMe has not fully complied with its obligation to submit specific Preliminary Infringement Contentions relating to the means-plus-function claims of the '281 patent, in that AdvanceMe's Contentions for Claims 10-19, relating to means-plus-function claim elements, provide only conclusory accusations of Accused Instrumentalities and do not identify structure with specificity. *See* AdvanceMe's Preliminary Infringement Contentions; P.R. 3-1. Further, Defendants submit that AdvanceMe has not fully complied with its obligation to submit specific Preliminary Infringement Contentions relating to Claims 8 and

17, in that AdvanceMe's Contentions do not identify any ability of the Accused Instrumentalities to "accumulate payments until a predetermined amount is reached." *See* AdvanceMe's Preliminary Infringement Contentions; P.R. 3-1.

Defendants have based these Preliminary Invalidity Contentions in part on AdvanceMe's proffered claim interpretations, as best understood by Defendants. Defendants do not accept AdvanceMe's proffered claim interpretation, and Defendants' application of AdvanceMe's claim interpretations for purposes of these Preliminary Invalidity Contentions shall not be deemed an acceptance of AdvanceMe's constructions or a waiver of Defendants' right to proffer alternative constructions.

Because AdvanceMe has not yet provided Defendants with reasonably specific Preliminary Infringement Contentions, the Court has not yet ruled on claim construction, and discovery and fact investigations are ongoing, Defendants reserve the right to supplement these Preliminary Invalidity Contentions.

1.    **PRIOR ART – 35 U.S.C. § 102(B)**

Attached as Exhibits 1-6 are claim charts respectively indicating how prior art items 1-6 anticipate every limitation of at least certain of Claims 1-19 of the '281 Patent, based on Defendants' present understanding of how AdvanceMe is construing those claims. To the extent any limitation is deemed not to be exactly met by an item of prior art, Defendants submit that the difference would have been obvious to one skilled in the art at the time of the alleged invention in view of the state of the art and knowledge of those skilled in the art, and that the item of prior art therefore renders the claims invalid for obviousness. As evidenced at the deposition of the inventor, Barbara Johnson, and based on her testimony, prior art items 1-6 individually and collectively anticipate or render obvious all of Claims 1-19 of the '281 Patent.

| | Publication Title | Item offered for sale or publicly used or known |
|---|---|---|
| 1. | Clever Ideas – LeCard dining program documents[1]<br><br>(1992-1996) | Clever Ideas - LeCard, Inc. offered a product known as LeCard that utilized a system and method of automated payment wherein LeCard would advance a sum of money or an amount of advertising to restaurants in exchange for the restaurant providing food and beverage credit for LeCard cardholders. The restaurant's contractual obligation to repay the credit amount would be reduced as customers used LeCard to pay for food and beverages. Diners Club, the merchant processor, would acquire, authorize and settle the LeCard transaction and would electronically forward some portion of the payment to LeCard in satisfaction of the restaurant's obligation to LeCard. LeCard thus publicly used the method and system as claimed in the '281 patent, and LeCard's method and system were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 1.[2] |
| 2. | SEC Form 10-K for Transmedia Network, Inc.<br><br>(December 29, 1995) | Transmedia Network Inc. ("Transmedia") offered a product known as the Transmedia card that utilized a system and method of automated payment wherein Transmedia advanced a sum of money to a restaurant or other merchant, via a purchase at a discount of "Rights-to-Receive" (*i.e.*, the right to receive goods and services). After acquiring, authorizing and settling the transaction, Transmedia would withhold or otherwise electronically forward some portion of the payment to a computerized payment receiver in satisfaction of the restaurant's (or other merchant's) contractual obligation to Transmedia. Transmedia thus publicly used the method and system as claimed in the '281 patent, and Transmedia's method and system were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 2.[3] |

---

[1] These documents include Clever Ideas-LeCARD Cash and/or Advertising Advance Agreements; Restaurant Statements; Letters from LeCard to Participating Restaurants; and other related correspondence.
[2] Clever Ideas-LeCard anticipates Claims 1, 5-10 and 14-19. Clever Ideas-LeCard renders obvious Claims 2-4 and 11-13. *See* Exhibit 1.
[3] Transmedia anticipates Claims 1, 5-10 and 14-19. Transmedia renders obvious Claims 2-4 and 11-13. *See* Exhibit 2.

| 3. | First USA Merchant Services, Inc. Merchant Credit Card Agreement<br><br>(July 1, 1993) | First USA Merchant Services, Inc. ("First USA") offered to provide credit card processing services to merchants that incorporated a system and method of automated payment as claimed in the '281 patent. First USA, the merchant processor, would acquire, authorize and settle the transaction. First USA would withhold or otherwise electronically forward some portion of the payment to a computerized payment receivers as payment of at least a portion of an obligation made by the merchant. First USA thus publicly used the method and system as claimed in the '281 patent, and First USA's system and method were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 3.[4] |
| --- | --- | --- |
| 4. | Bank of America Merchant Services Card Processing Service Agreement Terms and Conditions<br><br>(November 1994 (Reprinted August 1995)) | Bank of America NT&SA offered to provide credit card processing services to merchants which incorporated a system and method of automated payment as claimed in the '281 patent. Bank of America, the merchant processor, would acquire, authorize and settle the transaction. Bank of America would withhold or otherwise electronically forward some portion of the payment to a computerized payment receiver as payment of at least a portion of an obligation made by the merchant. First USA thus publicly used the method and system as claimed in the '281 patent, and First USA's system and method were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 4.[5] |

---

[4] First USA anticipates Claims 1-2, 6-11 and 15-19. First USA renders obvious Claims 3-5 and 12-14. *See* Exhibit 3.

[5] Bank of America anticipates Claims 1-2, 6-11 and 15-19. Bank of America renders obvious Claims 3-5 and 12-14. *See* Exhibit 4.

| 5. | Credit Card Processing Agreement; Reserve Account Agreement (among Reno Air, Inc., Electronic Data Systems Corportation and First USA Merchant Services, Inc.)<br><br>(June 1995) | Electronic Data Systems Corporation ("EDS"), as agent for First USA Merchant Services, Inc. ("First USA"), offered to provide credit card processing services to merchants that incorporated a system and method of automated payment as claimed in the '281 patent. EDS, the merchant processor, would receive payment information from the merchant and provide the merchant with the payment amount less processing fees and other obligations of the merchant. EDS would electronically forward some portion of the payment to a computerized payment receiver as payment of some portion of an obligation made by the merchant. EDS, as agent for First USA, thus publicly used the method and system as claimed in the '281 patent, and First USA's system and method were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 5.[6] |
|----|----|----|
| 6. | Litle & Co. documents[7]<br><br>(1990-1992) | Litle & Co. ("Litle") utilized a system and method of automated payment wherein an entity would advance a sum of money or an amount of postage costs to catalog or other companies. Litle, the merchant processor, would acquire, authorize and settle the transaction and would electronically forward some portion of the payment to a computerized payment receiver in satisfaction of the company's obligation that arose from the advance of cash or postage costs. Litle, alone or in combination with other entities, thus publicly used the method and system as claimed in the '281 patent, and Litle's method and system were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 6.[8] |

Defendants' investigation of these products and services is ongoing, and Defendants reserve the right to supplement these contentions to include additional details regarding these products and services as discovery in this case continues.

---

[6] EDS anticipates Claims 1-2, 6-11 and 15-19. EDS renders obvious Claims 3-5 and 12-14. *See* Exhibit 5.
[7] These documents include the Litle & Co. Member Agreement; Demand Promissory Note for Postage Advances (between Museum Publications of America and Litle & Co.); "People Thought I was Nuts" Forbes Article (6/8/92); Promissory Note Repayment Schedule; and related correspondence.
[8] Litle & Co. anticipates Claims 1-2, 5-11 and 14-19. Litle & Co. renders obvious Claims 3-4 and 12-13. *See* Exhibit 6.

2.      INVENTORSHIP – 35 U.S.C. § 102(f)

The '281 patent is invalid because the alleged inventor did not herself invent the subject

matter sought to be patented.  As evidenced during the deposition of the alleged inventor,

Barbara Johnson, she lacks knowledge of card processing and familiarity with, or knowledge of,

the meaning of many, if not all, features of the '281 patent.

| Name of person from whom the invention or any part was derived | Circumstances |
|---|---|
| Gary Johnson | Gary Johnson is the husband of the inventor.  On information and belief, he was knowledgeable of the card processing industry at the time of the alleged inventor's invention.  Barbara Johnson testified that she did not directly correspond with the prosecuting attorneys, but instead indirectly corresponded with the prosecuting attorneys through Gary Johnson.  On knowledge and belief, the invention or some part of the invention was derived from Gary Johnson. |
| Les Falk, Glen Goldman, Tom Burnside and/or other employees of Media Works Funding Corporation, Countrywide Business Alliance, Inc. and/or AdvanceMe, Inc. | On information and belief, Les Falk is the former CEO of the assignee of the '281 patent.  Glen Goldman is the current CEO of AdvanceMe, and Tom Burnside is the current President and Chief Operating Officer of AdvanceMe.  On information and belief, the invention or some part of the invention was derived from Les Falk, Glen Goldman, Tom Burnside and/or other employees of the assignee (which underwent multiple name changes). |
| Paula Campbell, Robert Tosti, John Forcier and/or other attorneys of the law firm Testa, Hurwitz & Thiebeault LLP involved in the prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. | Attorneys from Testa, Hurwitz & Thiebeault LLP were involved in the prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544.  On information and belief, the invention or some part of the invention was derived from Paula Campbell, Robert Tosti, John Forcier and/or other attorneys of the law firm Testa, Hurwitz & Thiebeault LLP. |
| David Klein and/or other attorneys of the law firm Shearman & Sterling LLP involved in the prosecution of the U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. | Attorneys from Shearman & Sterling LLP were involved in the prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544.  On information and belief, the invention or some part of the invention was derived from David Klein and/or other attorneys of the law firm Shearman & Sterling LLP. |

Defendants' investigation of these individuals and the circumstances surrounding their contribution to the alleged invention is ongoing, and Defendants reserve the right to supplement these contentions to include additional details regarding these individuals and circumstances as discovery in this case continues.

3.    **P.R. 3-4 DOCUMENT PRODUCTION**

Defendants produced prior art items 1-4 on July 7, 2006 with service of their Preliminary Invalidity Contentions.  Defendants produced prior art item 5 and portion of 6 on July 21, 2006 with service of their Amended Preliminary Invalidity Contentions., and the remainder of item 6 on July 28, 2006.  At the present time, Defendants have made every effort to produce all relevant, non-privileged documents in their possession, custody or control that may evidence the information required under P.R. 3-4(a).  Defendants' search for documents is ongoing, and Defendants reserve the right to supplement its document production as additional relevant, non-privileged documents in their possession, custody or control are identified.

Dated: August 30, 2006                    Respectfully submitted,

                              By: *Hilary Preston*   w/ permission
                                  Willem G. Schuurman   a/cc/lry
                                  Texas State Bar No. 17855200
                                  Joseph D. Gray
                                  Texas State Bar No. 24045970
                                  VINSON & ELKINS L.L.P.
                                  2801 Via Fortuna, Suite 100
                                  Austin, Texas 78746
                                  Phone: (512) 542-8400 –
                                  Fax: (512) 236-3476

                                          - and -

                                  Hilary L. Preston
                                  VINSON & ELKINS L.L.P.
                                  666 Fifth Avenue – 26th Floor
                                  New York, New York 10103
                                  Phone: (212) 237-0000
                                  Fax: (212) 237-0100

                                          - and -

                                  Douglas McSwane
                                  Texas State Bar No. 13861300
                                  POTTER MINTON, P.C.
                                  110 North College
                                  500 Plaza Tower
                                  Tyler, Texas 75702
                                  Phone: (903) 597-8311
                                  Fax: (903) 593-0846

                                  *ATTORNEYS FOR DEFENDANTS*
                                  *FIRST FUNDS LLC, MERCHANT*
                                  *MONEY TREE, INC. AND REACH*
                                  *FINANCIAL LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument has been served upon all counsel of record on this the 30th day of August, 2006 as indicated:

*Via Electronic Mail and U.S. Mail*
Ronald S. Lemieux
PAUL, HASTINGS, JANOFSKY & WALKER LLP
Five Palo Alto Square, Sixth Floor
Palo Alto, CA 94306-2155
ronlemieux@paulhastings.com

Otis Carroll
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
fedserv@icklaw.com

*Via U.S. Mail*
Stephanie Nimberg, President
Lawrence Morrison, General Counsel
17 Battery Place Suite 1330
New York, New York 10004

*Amy Reiley*

Austin 738492v.1

| CLAIMS | PRIOR PUBLICATION REFERENCES & PRIOR USE REFERENCES |
|---|---|
| 1. A method for automated payment, comprising: | LeCARD utilizes a method of automated payments to LeCARD by restaurants as repayment of obligations owed either for advertising or cash advances. *See* October 29, 1992 Letter and Enclosed Chicago Chop House examples (showing automated payments to LeCARD by Diners Club). |
| at a merchant, <br><br> accepting a customer identifier as payment from the customer <br><br> and electronically forwarding information related to the payment to a computerized merchant processor; | "[T]he separate LeCARD plastic is being replaced by a new Diners Club Card with a LeCARD logo on the reverse side of the card." October 29, 1992 Suckow letter at ¶ 2. <br><br> "Beginning September 18th, 1992, you will be able to capture your LeCARD transactions electronically." July 23, 1992 Suckow letter at ¶ 2. <br><br> "Electronic Draft Capture of LeCARD transactions is now a reality. The system has been tested this past month and has been working well for both the restaurants and Cardmembers." October 29, 1992 Suckow letter at ¶ 2. <br><br> "Electronic Draft Capture of LeCARD transactions is available only to those restaurants that are processing directly to Diners Club and are receiving payment from Diners Club." October 29, 2992 Suckow Letter at ¶ 3. |
| at the computerized merchant processor, <br><br> acquiring the information related to the payment from the merchant, authorizing and settling the payment, <br><br> and forwarding at least a portion of the payment to a computerized payment receiver as payment of at | Diner's Club was the merchant processor for LeCARD transactions, see October 29, 1992 Suckow Letter at ¶ 3 (noting that participating restaurants are "processing directly to Diners Club"), and the language of the patent makes clear that merchant processors acquire payment information and authorize and settle the payment. <br><br> "The enclosed examples from the Chicago Chop House indicate that $600 worth of Diners Club and Diners Club/LeCARD transactions were submitted. Of the $600 total, $500 were regular Diners Club transactions which were paid in the normal manner. A LeCARD charge of $100 completes the $600 total and a letter of change was generated to indicate that this transaction was forwarded to LeCARD. Of this $100 transaction, 20% ($20) was reimbursed to cover the tax and tip portion of the charge. The remaining 80% was credited to reduce the |

| CLAIMS | PRIOR PUBLICATION REFERENCES & PRIOR USE REFERENCES |
|---|---|
| least a portion of an obligation made by the merchant; | outstanding advertising balance." October 29, 1992 Suckow letter at ¶ 6 (showing that a portion of the payment was forwarded to LeCARD, the computerized payment receiver, as payment on an obligation owed by the merchant, "the outstanding advertising balance").<br><br>"This letter shall serve as notice to you to no longer pay LeCARD for all of my Diners Club and Carte Blanche charges. Effective immediately please pay me for my Diners Club and Carte Blanche charges and pay LeCARD for only my LeCARD charges." Jan. 10, 1995 Letter from Bossa Nova (restaurant) to Diners Club (showing that the merchant processor, Diners Club, would be forwarding a portion of the restaurant customer payments to LeCARD and a portion to the restaurant).<br><br>The restaurant owed an obligation to LeCARD, either for cash advances given to the restaurant or for advertising advances given to the restaurant. *See, e.g.* Agreement between CLI (Clever Ideas — LeCARD, Inc.) and Bravo Cucina, dated March 20, 1995 (demonstrating contractual obligation by Bravo Cucina, restaurant, to CLI, to repay cash advances "by providing food and beverage credits . . . in goods and services to Diners Club members"); Agreement between CLI and Mangia, Inc. and Calamari, Inc., dated April 28, 1994 (demonstrating contractual obligation by Mangia and Calamari, restaurants, to CLI, to repay advertising advances "by providing . . . goods and services to Diners Club Cardmembers.") |
| and at the computerized payment receiver,<br><br><br><br>receiving the portion of the payment forwarded by the computerized merchant processor and applying that portion to the | "A LeCARD charge of $100 completes the $600 total and a letter of change was generated to indicate that this transaction was forwarded to LeCARD. Of this $100 transaction, 20% ($20) was reimbursed to cover the tax and tip portion of the charge. The remaining 80% ($80) was credited to reduce the outstanding advertising balance." October 29, 1992 Suckow letter at ¶ 6 (showing that a portion of the payment was forwarded to LeCARD, the payment receiver, as payment on an obligation owed by the merchant, "the outstanding advertising balance" and showing that the balance was thereafter reduced).<br><br>LeCARD reduced the balance owed by the restaurant as it received the payment information from Diners Club. *See, e.g.* June 1996 Statement from LeCARD to Club Lucky (showing |

| CLAIMS | PRIOR PUBLICATION REFERENCES & PRIOR USE REFERENCES |
|---|---|
| outstanding obligation made by the merchant to reduce such obligation. | portion of each batch of LeCARD transactions being applied to Club Lucky's, the restaurant's, outstanding balance). |
| 2. The method of claim 1 wherein the accepting step comprises accepting a credit card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, *e.g.*, for credit cards as well as charge cards. And the statements by the alleged inventor and by the Examiner, and the language of the patent itself, make clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including credit cards.<br><br>"[T]he separate LeCARD plastic is being replaced by a new Diners Club Card with a LeCARD logo on the reverse side of the card . . ." October 29, 1992 Suckow letter at ¶ 2.<br><br>"New Diners Club/LeCARD charge cards were issued to all existing LeCARD Cardmembers on October 26th and you can expect to see these new cards in your restaurant right away." October 29, 1992 Suckow letter at ¶ 8 (showing that the Diners Club/LeCARD card is accepted at the restaurant and is a charge card). |
| 3. The method of claim 1 wherein the accepting step comprises accepting a debit card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, *e.g.*, for debit cards as well as charge cards. And the statements by the alleged inventor and by the Examiner, and the language of the patent itself, make clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including debit cards.<br><br>"[T]he separate LeCARD plastic is being replaced by a new Diners Club Card with a LeCARD logo on the reverse side of the card . . ." October 29, 1992 Suckow letter at ¶ 2.<br><br>"New Diners Club/LeCARD charge cards were issued to all existing LeCARD Cardmembers |

| CLAIMS | PRIOR PUBLICATION REFERENCES & PRIOR USE REFERENCES |
|---|---|
| | on October 26th and you can expect to see these new cards in your restaurant right away." October 29, 1992 Suckow letter at ¶ 8 (showing that the Diners Club/LeCARD card is accepted at the restaurant and is a charge card). |
| 4. The method of claim 1 wherein the accepting step comprises accepting a smart card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, *e.g.*, for smart cards as well as charge cards. And the statements by the alleged inventor and by the Examiner, and the language of the patent itself, make clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including smart cards.

"[T]he separate LeCARD plastic is being replaced by a new Diners Club Card with a LeCARD logo on the reverse side of the card . . ." October 29, 1992 Suckow letter at ¶ 2.

"New Diners Club/LeCARD charge cards were issued to all existing LeCARD Cardmembers on October 26th and you can expect to see these new cards in your restaurant right away." October 29, 1992 Suckow letter at ¶ 8 (showing that the Diners Club/LeCARD card is accepted at the restaurant and is a charge card). |
| 5. The method of claim 1 wherein the accepting step comprises accepting a charge card number as the customer identifier. | "[T]he separate LeCARD plastic is being replaced by a new Diners Club Card with a LeCARD logo on the reverse side of the card . . ." October 29, 1992 Suckow letter at ¶ 2.

"New Diners Club/LeCARD charge cards were issued to all existing LeCARD Cardmembers on October 26th and you can expect to see these new cards in your restaurant right away." October 29, 1992 Suckow letter at ¶ 8 (showing that the Diners Club/LeCARD card is accepted at the restaurant and is a charge card). |
| 6. The method of claim 1 wherein the accepting step comprises accepting the customer identifier at | "New Diners Club/LeCARD charge cards were issued to all existing LeCARD Cardmembers on October 26th and you can expect to see these new cards in your restaurant right away." |

| CLAIMS | PRIOR PUBLICATION REFERENCES & PRIOR USE REFERENCES |
|---|---|
| a merchant location. | Suckow Letter at ¶ 8. |
| 7. The method of claim 1 wherein the accepting step comprises electronically accepting the customer identifier. | "Electronic Draft Capture of LeCARD transactions is now a reality." Suckow Letter at ¶ 2. "Now that LeCARD transactions can be captured electronically . . ." *Id.* at ¶ 7. |
| 8. The method of claim 1 wherein the steps performed at the merchant processor further comprise accumulating the payments until a predetermined amount is reached and then forwarding at least a portion of the accumulated payments to the payment receiver. | The payment information was forwarded by Diners Club to LeCARD periodically. *See, e.g.,* Club Lucky Statement (showing that LeCARD received payment information periodically, for example, up to four days after the transaction was completed).[1] |
| 9. The method of claim 1 wherein the steps performed at the merchant processor comprise periodically forwarding at least a portion of the payment to the payment receiver. | The payment information was forwarded by Diners Club to LeCARD periodically. *See, e.g.,* Club Lucky Statement (showing that LeCARD received payment information periodically, for example, up to four days after the transaction was completed). |
| 10. A system for automated payment of an obligation made by a merchant, comprising: | LeCARD utilizes a system for automated payments to LeCARD via Diners Club (the merchant processor) as repayment of obligations owed by restaurants either for advertising or cash advances. *See* October 29, 1992 Letter and Enclosed Chicago Chop House examples (showing automated payments to LeCARD by Diners Club). |

---

[1] At this pre-claim construction stage of the action, Defendants take no position as to the appropriateness of the claim construction applied in AdvanceMe's Preliminary Infringement Contentions for Defendants ("Infringement Contentions"), but note that under the approach in the Infringement Contentions, which equates periodic forwarding with accumulation to a predetermined amount, the LeCARD method anticipates this claim.

| CLAIMS | PRIOR PUBLICATION REFERENCES & PRIOR USE REFERENCES |
|---|---|
| at a merchant,<br><br>means for accepting a customer identifier as payment from the customer | "[T]he separate LeCARD plastic is being replaced by a new Diners Club Card with a LeCARD logo on the reverse side of the card. . . . New Diners Club/LeCARD charge cards were issued to all existing LeCARD Cardmembers on October 26th and you can expect to see these new cards in your restaurant right away."  October 29, 1992 Suckow letter at ¶¶ 2, 8 (showing that means for accepting a customer identifier as payment exist, including, on information and belief, a merchant terminal or point-of-sale terminal). |
| and for electronically forwarding information related to the payment to a computerized merchant processor, | "Electronic Draft Capture of LeCARD transactions is now a reality.  The system has been tested this past month and has been working well for both the restaurants and Cardmembers." October 29, 1992 Suckow letter at ¶ 2.<br><br>"Electronic Draft Capture of LeCARD transactions is available only to those restaurants that are processing directly to Diners Club . . . ."  October 29, 1992 Suckow Letter at ¶ 3 (showing implicitly that means exist in the LeCARD system for electronically forwarding payment information to Diners Club, including, on information and belief, a computer running appropriate software). |
| wherein the merchant associated with the payment has an outstanding obligation to a third party; | The restaurant owed an obligation to LeCARD, either for cash advances given to the restaurant or for advertising advances given to the restaurant.  *See, e.g.* Agreement between CLI (Clever Ideas — LeCARD, Inc.) and Bravo Cucina, dated March 20, 1995 (demonstrating contractual obligation by Bravo Cucina, restaurant, to CLI, to repay cash advances "by providing food and beverage credits . . . in goods and services to Diners Club members"); Agreement between CLI and Mangia, Inc. and Calamari, Inc., dated April 28, 1994 (demonstrating contractual obligation by Mangia and Calamari, restaurants, to CLI, to repay advertising advances" by providing . . . goods and services to Diners Club Cardmembers.") |
| and at the computerized merchant processor,<br><br>means for receiving the information | "Electronic Draft Capture of LeCARD transactions is available only to those restaurants that are processing directly to Diners Club . . . ."  October 29, 1992 Suckow Letter at ¶ 3 (showing implicitly that means exist in the LeCARD system for Diners Club, the merchant processor, to receive the payment information, including, on information and belief, a computer running |

| CLAIMS | PRIOR PUBLICATION REFERENCES & PRIOR USE REFERENCES |
|---|---|
| related to the payment from the merchant,<br><br>means for authorizing and settling the payment, | appropriate software).<br><br>The language of the patent makes clear that merchant processors acquire payment information and authorize and settle the payment. On information and belief, the means for performing this function is a computer running appropriate software. |
| and means for forwarding a portion of the payment to the third party to reduce the obligation. | "The enclosed examples from the Chicago Chop House indicate that $600 worth of Diners Club and Diners Club/LeCARD transactions were submitted. Of the $600 total, $500 were regular Diners Club transactions which were paid in the normal manner. A LeCARD charge of $100 completes the $600 total and a letter of change was generated to indicate that this transaction was forwarded to LeCARD. Of this $100 transaction, 20% ($20) was reimbursed to cover the tax and tip portion of the charge. The remaining 80% was credited to reduce the outstanding advertising balance." October 29, 1992 Suckow letter at ¶ 6 (showing that means exist for forwarding a portion of the payment was forwarded to LeCARD, the payment receiver, as payment on an obligation owed by the merchant, "the outstanding advertising balance", including, on information and belief, a computer running appropriate software).<br><br>"This letter shall serve as notice to you to no longer pay LeCARD for all of my Diners Club and Carte Blanche charges. Effective immediately please pay me for my Diners Club and Carte Blanche charges and pay LeCARD for only my LeCARD charges." Jan. 10, 1995 Letter from Bossa Nova (restaurant) to Diners Club (showing that means exist for forwarding a portion of the restaurant customer payments to LeCARD and a portion to the restaurant, including, on information and belief, a computer running appropriate software). |
| 11. The system of claim 10 wherein the accepting means comprises means for accepting a credit card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply systems and means in use for acceptance of one type of customer identifier to another type of customer identifier, *e.g.*, for credit cards as well as charge cards. And the statements by the alleged inventor and by the Examiner, and the language of the patent itself, make clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, |

| CLAIMS | PRIOR PUBLICATION REFERENCES & PRIOR USE REFERENCES |
|---|---|
| | including credit cards.  Credit card numbers may be accepted, for example, using the merchant's terminal.<br><br>"[T]he separate LeCARD plastic is being replaced by a new Diners Club Card with a LeCARD logo on the reverse side of the card . . . New Diners Club/LeCARD charge cards were issued to all existing LeCARD Cardmembers on October 26th and you can expect to see these new cards in your restaurant right away."  October 29, 1992 Suckow letter at ¶¶ 2, 8 (showing that means for accepting a customer identifier as payment exist, including, on information and belief, a merchant terminal). |
| 12. The system of claim 10 wherein the accepting means comprises means for accepting a debit card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply systems and means in use for acceptance of one type of customer identifier to another type of customer identifier, *e.g*., for debit cards as well as charge cards.  And the statements by the alleged inventor and by the Examiner, and the language of the patent itself, make clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including debit cards.  Debit card numbers may be accepted, for example, using the merchant's terminal.<br><br>"[T]he separate LeCARD plastic is being replaced by a new Diners Club Card with a LeCARD logo on the reverse side of the card . . . New Diners Club/LeCARD charge cards were issued to all existing LeCARD Cardmembers on October 26th and you can expect to see these new cards in your restaurant right away."  October 29, 1992 Suckow letter at ¶¶ 2, 8 (showing that means for accepting a customer identifier as payment exist, including, on information and belief, a merchant terminal). |
| 13. The system of claim 10 wherein the accepting means comprises means for accepting a smart card | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply systems and means in use for acceptance of one type of customer identifier to another type of customer identifier, *e.g*., for smart cards as well as charge cards.  And the statements by the alleged inventor and by the Examiner, and the |

| CLAIMS | PRIOR PUBLICATION REFERENCES & PRIOR USE REFERENCES |
|---|---|
| number as the customer identifier. | language of the patent itself, make clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including smart cards. Smart card numbers may be accepted, for example, using the merchant's terminal.<br><br>"[T]he separate LeCARD plastic is being replaced by a new Diners Club Card with a LeCARD logo on the reverse side of the card . . . New Diners Club/LeCARD charge cards were issued to all existing LeCARD Cardmembers on October 26th and you can expect to see these new cards in your restaurant right away." October 29, 1992 Suckow letter at ¶¶ 2, 8 (showing that means for accepting a customer identifier as payment exist, including, on information and belief, a merchant terminal). |
| 14. The system of claim 10 wherein the accepting means comprises means for accepting a charge card number as the customer identifier. | "[T]he separate LeCARD plastic is being replaced by a new Diners Club Card with a LeCARD logo on the reverse side of the card . . . New Diners Club/LeCARD charge cards were issued to all existing LeCARD Cardmembers on October 26th and you can expect to see these new cards in your restaurant right away." October 29, 1992 Suckow letter at ¶¶ 2, 8 (showing that means for accepting a customer identifier as payment exist, including, on information and belief, a merchant terminal). |
| 15. The system of claim 10 wherein the accepting means comprises means for accepting the customer identifier at a merchant location. | "New Diners Club/LeCARD charge cards were issued to all existing LeCARD Cardmembers on October 26th and you can expect to see these new cards in your restaurant right away." Suckow Letter at ¶ 8 (showing that means for accepting a customer identifier as payment exist at a merchant location, including, on information and belief, a terminal or other point of sale device). |
| 16. The system of claim 10 wherein the accepting means comprises means for electronically accepting the customer identifier. | "Electronic Draft Capture of LeCARD transactions is now a reality." Suckow Letter at ¶ 2. "Now that LeCARD transactions can be captured electronically . . ." *Id.* at ¶ 7 (showing that means for electronically accepting a customer identifier as payment exist, including, on information and belief, via a terminal). |

| CLAIMS | PRIOR PUBLICATION REFERENCES & PRIOR USE REFERENCES |
|---|---|
| 17. The system of claim 10 wherein the means at the merchant processor further comprise means for accumulating the payments until a predetermined amount is reached and means for forwarding at least a portion of the accumulated payments to the third party. | Means existed for Diners Club to forward payment information to LeCARD periodically, including, on information and belief, a computer running appropriate software. *See, e.g.*, Club Lucky Statement (showing that means exist for forwarding to LeCARD payment information periodically, for example, up to four days after the transaction was completed).[2] |
| 18. The system of claim 10 wherein the forwarding means at the merchant processor comprises means for periodically forwarding at least a portion of the payment to the third party. | Means existed for Diners Club to forward payment information to LeCARD periodically, including, on information and belief, a computer running appropriate software. *See, e.g.*, Club Lucky Statement (showing that means exist for forwarding to LeCARD payment information periodically, for example, up to four days after the transaction was completed). |
| 19. The system of claim 10 wherein the forwarding means at the merchant processor comprises means for forwarding to the third party an amount that is a percentage of the obligation. | The portion of the payment forwarded by Diners Club is a percentage of the merchant's obligation.<br><br>"This letter shall serve as notice to you to no longer pay LeCARD for all of my Diners Club and Carte Blanche charges. Effective immediately please pay me for my Diners Club and Carte Blanche charges and pay LeCARD for only my LeCARD charges." Jan. 10, 1995 Letter from Bossa Nova (restaurant) to Diners Club (showing that means exist for forwarding a |

---

[2] At this pre-claim construction stage of the action, Defendants take no position as to the appropriateness of the claim construction applied in AdvanceMe's Preliminary Infringement Contentions for Defendants ("Infringement Contentions"), but note that under the approach in the Infringement Contentions, which equates periodic forwarding with accumulation to a predetermined amount, the LeCARD method anticipates this claim.

[3] At this pre-claim construction stage of the action, Defendants take no position as to the appropriateness of the claim construction applied by the alleged inventor, but note that under the approach stated during the alleged inventor's deposition, which equates forwarding any amount with forwarding a percentage of the obligation, the LeCARD method anticipates this claim.

| CLAIMS | PRIOR PUBLICATION REFERENCES & PRIOR USE REFERENCES |
|---|---|
| | portion of the restaurant customer payments to LeCARD and a portion to the restaurant, including, on information and belief, a computer running appropriate software).[3] <br><br> Means existed for Diners Club to forward payment to LeCARD, including, on information and belief, a computer running appropriate software. *See*, *e.g*., Club Lucky Statement (showing that means exist for forwarding payment to LeCARD). |

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| 1. A method for automated payment, comprising: | First USA Merchant Services, Inc. Merchant Credit Card Agreement ("Agreement") describes a method for automated payment. First USA, the merchant processor, provides card processing services to a merchant. The merchant repays obligations to First USA and/or other third parties through future sales transactions. |
| at a merchant,<br><br>accepting a customer identifier as payment from the customer<br><br>and electronically forwarding information related to the payment to a computerized merchant processor; | "Under the terms of this Agreement, Merchant will honor certain valid credit cards ('Cards') when presented as payment for good or services, and Company will provide certain credit card processing services to Merchant." Agreement at ¶ 1.<br><br>"Honoring Cards. Merchant will honor without discrimination valid Cards properly tendered for use in accordance with this Agreement and the bylaws, rules and regulations, as they exist from time to time, of VISA, MasterCard and other applicable credit card associations . . . ." Agreement § 1(A).<br><br>"Sales Data. Merchant shall evidence all sales and leases made through the use of Electronic Data Capture ("EDC") services involving the honoring of Cards through the use of magnetic strip reading terminals and execution of data on forms provided by Company (all such resulting sales data and electronic records being collectively referred to as 'Sales Data')." Agreement § 2(A).<br><br>"Credit to Merchant. Merchant's electronic submission of Sales Data shall be made pursuant to formats, rules and procedures established by Company for EDC services." Agreement § 2(C). |
| at the computerized merchant processor,<br><br>acquiring the information related to the payment from the merchant, authorizing and settling the | "Under the terms of this Agreement, Merchant will honor certain valid credit cards ("Cards") when presented as payment for good or services, and Company will provide certain credit card processing services to Merchant." Agreement at ¶ 1.<br><br>"Exclusivity. Merchant agrees that throughout the terms of this Agreement it will not use the services of any bank, corporation, entity or person other than Company . . . (ii) for obtaining |

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| payment, | Card transaction authorizations."  Agreement § 1(C). |
| and forwarding at least a portion of the payment to a computerized payment receiver as payment of at least a portion of an obligation made by the merchant; | "Upon receipt by Company of Sales Data in accordance with the formats, rules and procedures of Company and the terms of this Agreement, Company will process the Sales Data in the applicable interbank clearing systems.  After receipt by company of credit for such Sales Data, Company will credit the Account with an amount equal to such credits, subject to the fees, charges, discount and obligations of Merchant hereunder."  Agreement § 2(C).<br><br>"Merchant shall maintain an account (the 'Account') at a bank approved by Company. Merchant may not close the Account or reduce it below the minimum balances required by this Agreement. . . . If Company ever reasonably believes that the Account contains insufficient funds to cover debits to the Account, Merchant's obligations hereunder and/or any required minimum balance, then Company may do one or more of the following: . . . (ii) deduct or withhold from credits to Merchant such amounts as are necessary to cover the debits, obligations and minimum balance . . . ."  Agreement § 2(B).<br><br>"Debits to Merchants.  Company is hereby authorized to decrease the credits above or debit the Account from time to time in payment for Merchant's obligations pursuant to this Agreement. Such decreases or debits shall include the applicable fees, charges and discounts set forth in Schedule A attached hereto, as well as adjustments and chargebacks, equipment charges (installation or purchase), Cardholder credits, and any fees, charges, fines, assessment, penalties, or other liabilities that may be imposed from time to time by applicable credit card associations.  Monthly fees shall be due and payable on the first day of the following calendar month to which they are applicable, and Company may debit the Account or decrease credits for such fees on such date."  Agreement § 2(D).<br><br>Under the Agreement, the merchant has obligations due, *e.g.*, periodically.  *See*, *e.g.*, Schedule A to Agreement, Plan A (Monthly Statement $9.00) and Plan B (Monthly Statement $6.00); Agreement § 2(D) (listing "equipment charges (installation or purchase)" as an example of a merchant obligation for which Company is authorized under the Agreement to periodically |

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | decrease merchant credits). "Chargebacks. . . . If in any one month . . . then Company may take one or more of the following actions: (1) withhold from settlements to Merchant an amount reasonably determined by Company to be sufficient to cover anticipated chargebacks . . . ." Agreement § 2(F). |
| and at the computerized payment receiver, receiving the portion of the payment forwarded by the computerized merchant processor and applying that portion to the outstanding obligation made by the merchant to reduce such obligation. | "Merchant shall maintain an account (the 'Account') at a bank approved by Company. Merchant may not close the Account or reduce it below the minimum balances required by this Agreement. . . . If Company ever reasonably believes that the Account contains insufficient funds to cover debits to the Account, Merchant's obligations hereunder and/or any required minimum balance, then Company may do one or more of the following: . . . (ii) deduct or withhold from credits to Merchant such amounts as are necessary to cover the debits, obligations and minimum balance . . . ." Agreement § 2(B). "Debits to Merchants. Company is hereby authorized to decrease the credits above or debit the Account from time to time in payment for Merchant's obligations pursuant to this Agreement. Such decreases or debits shall include the applicable fees, charges and discounts set forth in Schedule A attached hereto, as well as adjustments and chargebacks, equipment charges (installation or purchase), Cardholder credits, and any fees, charges, fines, assessment, penalties, or other liabilities that may be imposed from time to time by applicable credit card associations. Monthly fees shall be due and payable on the first day of the following calendar month to which they are applicable, and Company may debit the Account or decrease credits for such fees on such date." Agreement § 2(D). Under the Agreement, the merchant has obligations due, *e.g.*, periodically. *See*, *e.g.*, Schedule A to Agreement, Plan A (Monthly Statement $9.00) and Plan B (Monthly Statement $6.00); Agreement § 2(D) (listing "equipment charges (installation or purchase)" as an example of a merchant obligation for which Company is authorized under the Agreement to periodically |

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | decrease merchant credits).<br><br>"Chargebacks. . . . If in any one month . . . then Company may take one or more of the following actions: (1) withhold from settlements to Merchant an amount reasonably determined by Company to be sufficient to cover anticipated chargebacks . . . ." Agreement § 2(F). |
| 2. The method of claim 1 wherein the accepting step comprises accepting a credit card number as the customer identifier. | "Honoring Cards. Merchant will honor without discrimination valid Cards properly tendered for use in accordance with this Agreement and the bylaws, rules and regulations, as they exist from time to time, of VISA, MasterCard and other applicable credit card associations . . . ." Agreement § 1(A). |
| 3. The method of claim 1 wherein the accepting step comprises accepting a debit card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, *e.g.*, for debit cards as well as credit cards. The statements by the alleged inventor and by the Examiner, and the language of the patent-in-suit itself, make clear that a person of ordinary skill in the art would be motivated to make the First USA system and/or method work in the same way for any customer identifier, including debit cards.<br><br>"Honoring Cards. Merchant will honor without discrimination valid Cards properly tendered for use in accordance with this Agreement and the bylaws, rules and regulations, as they exist from time to time, of VISA, MasterCard and other applicable credit card associations . . . ." Agreement § 1(A). |
| 4. The method of claim 1 wherein the accepting step comprises accepting a smart card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, *e.g.*, for smart cards as well as credit cards. The statements by the alleged inventor and by the Examiner, and the language of the patent-in-suit itself, make clear that a person of ordinary skill in the art would be motivated |

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | to make the First USA system and/or method work in the same way for any customer identifier, including smart cards.<br><br>"Honoring Cards.  Merchant will honor without discrimination valid Cards properly tendered for use in accordance with this Agreement and the bylaws, rules and regulations, as they exist from time to time, of VISA, MasterCard and other applicable credit card associations . . . ." Agreement § 1(A). |
| 5. The method of claim 1 wherein the accepting step comprises accepting a charge card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, *e.g.*, for charge cards as well as credit cards.  The statements by the alleged inventor and by the Examiner, and the language of the patent-in-suit itself, make clear that a person of ordinary skill in the art would be motivated to make the First USA system and/or method work in the same way for any customer identifier, including charge cards.<br><br>"Honoring Cards.  Merchant will honor without discrimination valid Cards properly tendered for use in accordance with this Agreement and the bylaws, rules and regulations, as they exist from time to time, of VISA, MasterCard and other applicable credit card associations . . . ." Agreement § 1(A). |
| 6. The method of claim 1 wherein the accepting step comprises accepting the customer identifier at a merchant location. | "Honoring Cards.  Merchant will honor without discrimination valid Cards properly tendered for use in accordance with this Agreement and the bylaws, rules and regulations, as they exist from time to time, of VISA, MasterCard and other applicable credit card associations . . . ." Agreement § 1(A).<br><br>"Sales Data.  Merchant shall evidence all sales and leases made through the use of Electronic Data Capture ("EDC") services involving the honoring of Cards through the use of magnetic strip reading terminals and execution of data on forms provided by Company (all such resulting sales data and electronic records being collectively referred to as 'Sales Data')." |

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | Agreement § 2(A) (implying that the Card is physically present in order to read the magnetic strip). |
| 7. The method of claim 1 wherein the accepting step comprises electronically accepting the customer identifier. | "Sales Data. Merchant shall evidence all sales and leases made through the use of Electronic Data Capture ("EDC") services involving the honoring of Cards through the use of magnetic strip reading terminals and execution of data on forms provided by Company (all such resulting sales data and electronic records being collectively referred to as 'Sales Data')." Agreement § 2(A). |
| 8. The method of claim 1 wherein the steps performed at the merchant processor further comprise accumulating the payments until a predetermined amount is reached and then forwarding at least a portion of the accumulated payments to the payment receiver. | Certain fees or charges, for example, are recurring and would be periodically deducted from credits due the merchant and forwarded to a computerized payment receiver of the party to whom the obligation is owed. *See, e.g.*, Schedule A to Agreement, Plan A (Monthly Statement $9.00) and Plan B (Monthly Statement $6.00); Agreement § 2(D) (listing "equipment charges (installation or purchase)" as an example of a merchant obligation for which Company is authorized under the Agreement to periodically decrease merchant credits).[1] <br><br> "Debits to Merchants. Company is hereby authorized to decrease the credits above or debit the Account from time to time in payment for Merchant's obligations pursuant to this Agreement. Such decreases or debits shall include the applicable fees, charges and discounts set forth in Schedule A attached hereto, as well as adjustments and chargebacks, equipment charges (installation or purchase), Cardholder credits, and any fees, charges, fines, assessment, penalties, or other liabilities that may be imposed from time to time by applicable credit card associations. Monthly fees shall be due and payable on the first day of the following calendar month to which they are applicable, and Company may debit the Account or decrease credits for such fees on such date." Agreement § 2(D). |

---

[1] At this pre-claim construction stage of the action, Defendants take no position as to the appropriateness of the claim construction applied in AdvanceMe's Preliminary Infringement Contentions for Defendants ("Infringement Contentions"), but note that under the approach in the Infringement Contentions, which equates "periodically forwarding" with "accumulating the payments until a predetermined amount is reached," the method described in the Agreement anticipates this claim.

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| 9. The method of claim 1 wherein the steps performed at the merchant processor comprise periodically forwarding at least a portion of the payment to the payment receiver. | Certain fees or charges, for example, are recurring and would be periodically deducted from credits due the merchant and forwarded to a computerized payment receiver of the party to whom the obligation is owed. *See, e.g.*, Schedule A to Agreement, Plan A (Monthly Statement $9.00) and Plan B (Monthly Statement $6.00); Agreement § 2(D) (listing "equipment charges (installation or purchase)" as an example of a merchant obligation for which Company is authorized under the Agreement to periodically decrease merchant credits).<br><br>"Debits to Merchants. Company is hereby authorized to decrease the credits above or debit the Account from time to time in payment for Merchant's obligations pursuant to this Agreement. Such decreases or debits shall include the applicable fees, charges and discounts set forth in Schedule A attached hereto, as well as adjustments and chargebacks, equipment charges (installation or purchase), Cardholder credits, and any fees, charges, fines, assessment, penalties, or other liabilities that may be imposed from time to time by applicable credit card associations. Monthly fees shall be due and payable on the first day of the following calendar month to which they are applicable, and Company may debit the Account or decrease credits for such fees on such date." Agreement § 2(D). |
| 10. A system for automated payment of an obligation made by a merchant, comprising: | The Agreement describes a system for automated payment. First USA, the merchant processor, provides card processing services to a merchant. The merchant repays obligations to First USA and/or other third parties through future sales transactions. |
| at a merchant,<br><br>means for accepting a customer identifier as payment from the customer and for electronically forwarding information related to the payment to a computerized merchant processor, | In the system described in the Agreement, the customer identifier can be accepted and forwarded by the merchant via the merchant's terminal connected by a network to First USA.<br><br>"Under the terms of this Agreement, Merchant will honor certain valid credit cards ('Cards') when presented as payment for good or services, and Company will provide certain credit card processing services to Merchant." Agreement at ¶ 1.<br><br>"Honoring Cards. Merchant will honor without discrimination valid Cards properly tendered for use in accordance with this Agreement and the bylaws, rules and regulations, as they exist |

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| wherein the merchant associated with the payment has an outstanding obligation to a third party; | from time to time, of VISA, MasterCard and other applicable credit card associations . . . ." Agreement § 1(A).<br><br>"Sales Data.  Merchant shall evidence all sales and leases made through the use of Electronic Data Capture ("EDC") services involving the honoring of Cards through the use of magnetic strip reading terminals and execution of data on forms provided by Company (all such resulting sales data and electronic records being collectively referred to as 'Sales Data')." Agreement § 2(A).<br><br>"Merchant shall maintain an account (the 'Account') at a bank approved by Company. Merchant may not close the Account or reduce it below the minimum balances required by this Agreement. . . . If Company ever reasonably believes that the Account contains insufficient funds to cover debits to the Account, Merchant's obligations hereunder and/or any required minimum balance, then Company may do one or more of the following: . . . (ii) deduct or withhold from credits to Merchant such amounts as are necessary to cover the debits, obligations and minimum balance . . . ."  Agreement § 2(B).<br><br>"Credit to Merchant.  Merchant's electronic submission of Sales Data shall be made pursuant to formats, rules and procedures established by Company for EDC services."  Agreement § 2(C).<br><br>"Debits to Merchants.  Company is hereby authorized to decrease the credits above or debit the Account from time to time in payment for Merchant's obligations pursuant to this Agreement. Such decreases or debits shall include the applicable fees, charges and discounts set forth in Schedule A attached hereto, as well as adjustments and chargebacks, equipment charges (installation or purchase), Cardholder credits, and any fees, charges, fines, assessment, penalties, or other liabilities that may be imposed from time to time by applicable credit card associations.  Monthly fees shall be due and payable on the first day of the following calendar month to which they are applicable, and Company may debit the Account or decrease credits for such fees on such date."  Agreement § 2(D). |

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | Under the Agreement, the merchant has obligations due, *e.g.*, to a third party periodically. *See*, *e.g.*, Schedule A to Agreement, Plan A (Monthly Statement $9.00) and Plan B (Monthly Statement $6.00); Agreement § 2(D) (listing "equipment charges (installation or purchase)" as an example of a merchant obligation for which Company is authorized under the Agreement to periodically decrease merchant credits).<br><br>"Chargebacks. . . . If in any one month . . . then Company may take one or more of the following actions: (1) withhold from settlements to Merchant an amount reasonably determined by Company to be sufficient to cover anticipated chargebacks . . . ." Agreement § 2(F). |
| and at the computerized merchant processor,<br><br>means for receiving the information related to the payment from the merchant,<br><br>means for authorizing and settling the payment,<br><br>and means for forwarding a portion of the payment to the third party to reduce the obligation. | Under the Agreement, First USA acquires the information related to the payment forwarded from the merchant (*e.g.*, from the merchant's terminal), and authorizes and settles the payment. On information and belief, these acts are implemented, at least in part, by a computer running appropriate software program(s).<br><br>"Exclusivity. Merchant agrees that throughout the terms of this Agreement it will not use the services of any bank, corporation, entity or person other than Company . . . (ii) for obtaining Card transaction authorizations." Agreement § 1(C).<br><br>"Upon receipt by Company of Sales Data in accordance with the formats, rules and procedures of Company and the terms of this Agreement, Company will process the Sales Data in the applicable interbank clearing systems. After receipt by company of credit for such Sales Data, Company will credit the Account with an amount equal to such credits, subject to the fees, charges, discount and obligations of Merchant hereunder." Agreement § 2(C).<br><br>"Merchant shall maintain an account (the 'Account') at a bank approved by Company. Merchant may not close the Account or reduce it below the minimum balances required by this Agreement. . . . If Company ever reasonably believes that the Account contains insufficient funds to cover debits to the Account, Merchant's obligations hereunder and/or any required |

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | minimum balance, then Company may do one or more of the following: . . . (ii) deduct or withhold from credits to Merchant such amounts as are necessary to cover the debits, obligations and minimum balance. . . ." Agreement § 2(B).<br><br>"Debits to Merchants. Company is hereby authorized to decrease the credits above or debit the Account from time to time in payment for Merchant's obligations pursuant to this Agreement. Such decreases or debits shall include the applicable fees, charges and discounts set forth in Schedule A attached hereto, as well as adjustments and chargebacks, equipment charges (installation or purchase), Cardholder credits, and any fees, charges, fines, assessment, penalties, or other liabilities that may be imposed from time to time by applicable credit card associations. Monthly fees shall be due and payable on the first day of the following calendar month to which they are applicable, and Company may debit the Account or decrease credits for such fees on such date." Agreement § 2(D).<br><br>Under the Agreement, the merchant has obligations due, *e.g.*, to a third party periodically. *See*, *e.g.*, Schedule A to Agreement, Plan A (Monthly Statement $9.00) and Plan B (Monthly Statement $6.00); Agreement § 2(D) (listing "equipment charges (installation or purchase)" as an example of a merchant obligation for which Company is authorized under the Agreement to periodically decrease merchant credits).<br><br>"Chargebacks. . . . If in any one month . . . then Company may take one or more of the following actions: (1) withhold from settlements to Merchant an amount reasonably determined by Company to be sufficient to cover anticipated chargebacks . . . ." Agreement § 2(F). |
| 11. The system of claim 10 wherein the accepting means comprises means for accepting a credit card number as the customer identifier. | A merchant entering into the Agreement with First USA can accept credit card numbers as customer identifiers. Credit card numbers may be accepted, for example, using the merchant's terminal.<br><br>"Honoring Cards. Merchant will honor without discrimination valid Cards properly tendered |

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
|  | for use in accordance with this Agreement and the bylaws, rules and regulations, as they exist from time to time, of VISA, MasterCard and other applicable credit card associations . . . ." Agreement § 1(A).<br><br>"Sales Data. Merchant shall evidence all sales and leases made through the use of Electronic Data Capture ("EDC") services involving the honoring of Cards through the use of magnetic strip reading terminals and execution of data on forms provided by Company (all such resulting sales data and electronic records being collectively referred to as 'Sales Data')." Agreement § 2(A). |
| 12. The system of claim 10 wherein the accepting means comprises means for accepting a debit card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, *e.g.*, for debit cards as well as credit cards. The statements by the alleged inventor and by the Examiner, and the language of the patent-in-suit itself, make clear that a person of ordinary skill in the art would be motivated to make the First USA system and/or method work in the same way for any customer identifier, including debit cards.<br><br>Credit card numbers may be accepted, for example, using the merchant's terminal.<br><br>"Honoring Cards. Merchant will honor without discrimination valid Cards properly tendered for use in accordance with this Agreement and the bylaws, rules and regulations, as they exist from time to time, of VISA, MasterCard and other applicable credit card associations . . . ." Agreement § 1(A).<br><br>"Sales Data. Merchant shall evidence all sales and leases made through the use of Electronic Data Capture ("EDC") services involving the honoring of Cards through the use of magnetic strip reading terminals and execution of data on forms provided by Company (all such resulting sales data and electronic records being collectively referred to as 'Sales Data')." Agreement § 2(A). |

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| 13. The system of claim 10 wherein the accepting means comprises means for accepting a smart card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, *e.g*., for smart cards as well as credit cards. The statements by the alleged inventor and by the Examiner, and the language of the patent-in-suit itself, make clear that a person of ordinary skill in the art would be motivated to make the First USA system and/or method work in the same way for any customer identifier, including smart cards.<br><br>Credit card numbers may be accepted, for example, using the merchant's terminal.<br><br>"Honoring Cards. Merchant will honor without discrimination valid Cards properly tendered for use in accordance with this Agreement and the bylaws, rules and regulations, as they exist from time to time, of VISA, MasterCard and other applicable credit card associations . . . ." Agreement § 1(A).<br><br>"Sales Data. Merchant shall evidence all sales and leases made through the use of Electronic Data Capture ("EDC") services involving the honoring of Cards through the use of magnetic strip reading terminals and execution of data on forms provided by Company (all such resulting sales data and electronic records being collectively referred to as 'Sales Data')." Agreement § 2(A). |
| 14. The system of claim 10 wherein the accepting means comprises means for accepting a charge card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, *e.g*., for charge cards as well as credit cards. The statements by the alleged inventor and by the Examiner, and the language of the patent-in-suit itself, make clear that a person of ordinary skill in the art would be motivated to make the First USA system and/or method work in the same way for any customer identifier, including charge cards.<br><br>Credit card numbers may be accepted, for example, using the merchant's terminal. |

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | "Honoring Cards.  Merchant will honor without discrimination valid Cards properly tendered for use in accordance with this Agreement and the bylaws, rules and regulations, as they exist from time to time, of VISA, MasterCard and other applicable credit card associations . . . ."  Agreement § 1(A).<br><br>"Sales Data.  Merchant shall evidence all sales and leases made through the use of Electronic Data Capture ("EDC") services involving the honoring of Cards through the use of magnetic strip reading terminals and execution of data on forms provided by Company (all such resulting sales data and electronic records being collectively referred to as 'Sales Data')."  Agreement § 2(A). |
| 15. The system of claim 10 wherein the accepting means comprises means for accepting the customer identifier at a merchant location. | Under the Agreement, a merchant can accept a customer identifier using a terminal at a location associated with the merchant such as, for example, a retail sales site of the merchant.<br><br>"Honoring Cards.  Merchant will honor without discrimination valid Cards properly tendered for use in accordance with this Agreement and the bylaws, rules and regulations, as they exist from time to time, of VISA, MasterCard and other applicable credit card associations . . . ."  Agreement § 1(A).<br><br>"Sales Data.  Merchant shall evidence all sales and leases made through the use of Electronic Data Capture ("EDC") services involving the honoring of Cards through the use of magnetic strip reading terminals and execution of data on forms provided by Company (all such resulting sales data and electronic records being collectively referred to as 'Sales Data')."  Agreement § 2(A) (implying that the Card is physically present in order to read the magnetic strip). |
| 16. The system of claim 10 wherein the accepting means comprises means for electronically accepting the customer identifier. | Under the Agreement, a merchant can accept a customer identifier electronically, for example, via a terminal.<br><br>"Sales Data.  Merchant shall evidence all sales and leases made through the use of Electronic Data Capture ("EDC") services involving the honoring of Cards through the use of magnetic |

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| | strip reading terminals and execution of data on forms provided by Company (all such resulting sales data and electronic records being collectively referred to as 'Sales Data')." Agreement § 2(A). |
| 17. The system of claim 10 wherein the means at the merchant processor further comprise means for accumulating the payments until a predetermined amount is reached and means for forwarding at least a portion of the accumulated payments to the third party. | Certain fees or charges, for example, are recurring and would be periodically deducted from credits due the merchant and forwarded to a computerized payment receiver of the party to whom the obligation is owed. *See*, *e.g.*, Schedule A to Agreement, Plan A (Monthly Statement $9.00) and Plan B (Monthly Statement $6.00); Agreement § 2(D) (listing "equipment charges (installation or purchase)" as an example of a merchant obligation for which Company is authorized under the Agreement to periodically decrease merchant credits).[2]<br><br>"Debits to Merchants. Company is hereby authorized to decrease the credits above or debit the Account from time to time in payment for Merchant's obligations pursuant to this Agreement. Such decreases or debits shall include the applicable fees, charges and discounts set forth in Schedule A attached hereto, as well as adjustments and chargebacks, equipment charges (installation or purchase), Cardholder credits, and any fees, charges, fines, assessment, penalties, or other liabilities that may be imposed from time to time by applicable credit card associations. Monthly fees shall be due and payable on the first day of the following calendar month to which they are applicable, and Company may debit the Account or decrease credits for such fees on such date." Agreement § 2(D).<br><br>On information and belief, these acts are implement using, at least in part, a computer running appropriate software program(s). |
| 18. The system of claim 10 wherein the forwarding means at the merchant processor comprises | Certain fees or charges, for example, are recurring and would be periodically deducted from credits due the merchant and forwarded to a computerized payment receiver of the party to whom the obligation is owed. *See*, *e.g.*, Schedule A to Agreement, Plan A (Monthly Statement |

---

[2] At this pre-claim construction stage of the action, Defendants take no position as to the appropriateness of the claim construction applied in AdvanceMe's Preliminary Infringement Contentions for Defendants ("Infringement Contentions"), but note that under the approach in the Infringement Contentions, which equates periodic forwarding with accumulation to a predetermined amount, the system described in the Agreement anticipates this claim.

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| means for periodically forwarding at least a portion of the payment to the third party. | $9.00) and Plan B (Monthly Statement $6.00); Agreement § 2(D) (listing "equipment charges (installation or purchase)" as an example of a merchant obligation for which Company is authorized under the Agreement to periodically decrease merchant credits).<br><br>"Debits to Merchants. Company is hereby authorized to decrease the credits above or debit the Account from time to time in payment for Merchant's obligations pursuant to this Agreement. Such decreases or debits shall include the applicable fees, charges and discounts set forth in Schedule A attached hereto, as well as adjustments and chargebacks, equipment charges (installation or purchase), Cardholder credits, and any fees, charges, fines, assessment, penalties, or other liabilities that may be imposed from time to time by applicable credit card associations. Monthly fees shall be due and payable on the first day of the following calendar month to which they are applicable, and Company may debit the Account or decrease credits for such fees on such date." Agreement § 2(D).<br><br>On information and belief, the acts described in § 2(D) of the Agreement are implemented using, at least in part, a computer running appropriate software program(s). |
| 19. The system of claim 10 wherein the forwarding means at the merchant processor comprises means for forwarding to the third party an amount that is a percentage of the obligation. | The portion of the payment forwarded by First USA is a percentage of the merchant's obligation(s). On information and belief, these acts are implemented using, at least in part, a computer running appropriate software program(s).<br><br>"Merchant shall maintain an account (the 'Account') at a bank approved by Company. Merchant may not close the Account or reduce it below the minimum balances required by this Agreement. . . . If Company ever reasonably believes that the Account contains insufficient funds to cover debits to the Account, Merchant's obligations hereunder and/or any required minimum balance, then Company may do one or more of the following: . . . (ii) deduct or withhold from credits to Merchant such amounts as are necessary to cover the debits, obligations and minimum balance . . . ." Agreement § 2(B).<br><br>"Debits to Merchants. Company is hereby authorized to decrease the credits above or debit the |

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
|  | Account from time to time in payment for Merchant's obligations pursuant to this Agreement. Such decreases or debits shall include the applicable fees, charges and discounts set forth in Schedule A attached hereto, as well as adjustments and chargebacks, equipment charges (installation or purchase), Cardholder credits, and any fees, charges, fines, assessment, penalties, or other liabilities that may be imposed from time to time by applicable credit card associations. Monthly fees shall be due and payable on the first day of the following calendar month to which they are applicable, and Company may debit the Account or decrease credits for such fees on such date." Agreement § 2(D).<br><br>Certain fees or charges, for example, are recurring and would be periodically deducted from credits due the merchant and forwarded to a computerized payment receiver of the party to whom the obligation is owed. *See*, *e.g.*, Schedule A to Agreement, Plan A (Monthly Statement $9.00) and Plan B (Monthly Statement $6.00); Agreement § 2(D) (listing "equipment charges (installation or purchase)" as an example of a merchant obligation for which Company is authorized under the Agreement to periodically decrease merchant credits).<br><br>"Chargebacks. . . . If in any one month . . . then Company may take one or more of the following actions: (1) withhold from settlements to Merchant an amount reasonably determined by Company to be sufficient to cover anticipated chargebacks . . . ." Agreement § 2(F). |

| CLAIMS | PRIOR PUBLICATION REFERENCES |
|---|---|
| 1. A method for automated payment, comprising: | Litle & Co. ("Litle") utilized a method for automated payments to Litle as repayment of obligations owed by merchants either for postage or cash advances. *See*, *e.g.*, Litle & Co. Member Agreement, LI_00017-29 (hereafter "Member Agreement"); *see*, *e.g.*, Demand Promissory Note for Postage Advances between Museum Publications of America and Litle & Co., dated September 27, 1993, LI_00033-35 (hereafter "Promissory Note"); *see*, *e.g.*, February 17, 1994 Letter from Robert George to Michael Duffy, LI_00030-31; *see* M. Kripalani, T. Pouschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2), LI_00001-03 (hereafter "Forbes Article"). |
| at a merchant,<br><br>accepting a customer identifier as payment from the customer, | The merchant, either directly or via its agent, would accept a customer identifier, *e.g.*, a card, as payment from the customer. *See* Member Agreement, LI_00017-29.<br><br>"WHEREAS, LITLE and NPC are engaged in the business of processing paper-based and electronic data representing transactions conducted through the use of CHARGE CARDS, and<br>WHEREAS, MEMBER desires to honor CHARGE CARDS in connection with the retail sale of PRODUCTS to MEMBER's customers, to submit SALES RECORDs and REFUNDs representing such transactions to LITLE for processing and to sell to FNBL the SALES RECORDs generated with BANK CARDs and the indebtednesses represented thereby."<br><br>Member Agreement at LI_00018.<br><br>"CHARGE CARD is the plastic BANK CARD or T&E CARD issued by a CARD ORGANIZATION to the CARDHOLDER and the charge account number designated on the card, either of which MEMBER accepts from customers as payment for their purchases from MEMBER." *Id.* |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| | "BANK CARD means a valid and unexpired CHARGE CARD issued by an ISSUING MEMBER of MCI or VISA which contains the MasterCard service mark or Visa's Blue, White and Gold Bands Design service mark. A BANK CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id.* |
| | "CARD ORGANIZATION is VISA, MCI or the issuer of a T&E CARD." *Id.* |
| | "T&E CARD is a valid and unexpired Travel and Entertainment CHARGE CARD issued by American Express, Carte Blanche, Diner's Club or Discover. A T&E CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id.* at LI_00019. |
| and electronically forwarding information related to the payment to a computerized merchant processor; | The merchant, either directly or via its agent, electronically forwarded information related to the payment to Litle, the computerized merchant processor. |
| | "WHEREAS, LITLE and NPC are engaged in the business of processing paper-based and electronic data representing transactions conducted through the use of CHARGE CARDS, and |
| | WHEREAS, MEMBER desires to honor CHARGE CARDS in connection with the retail sale of PRODUCTS to MEMBER's customers, to submit SALES RECORDs and REFUNDs representing such transactions to LITLE for processing and to sell to FNBL the SALES RECORDs generated with BANK CARDs and the indebtednesses represented thereby." |
| | Member Agreement at LI_00018 (showing that the merchant electronically forwarded information related to the payment to Litle, a computerized merchant processor). |
| | "SALES RECORD means all documents or data presented to LITLE as evidence of a CARD SALE." *Id.* at LI_00019 (showing that the merchant electronically accepts the customer identifier). |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
|  | "c. MEMBER shall complete each SALES RECORD to include a notation in the space provided for the CARDHOLDERS's signature that the sale was initiated by mail order (MO), telephone order (TO) or pre-authorized order (PO) (except for sales made in person, for which the CARDHOLDER's signature shall be obtained). . . ." *Id*. at LI_00019 (showing that the merchant electronically forwarded information related to the payment to Litle, a computerized merchant processor).<br><br>"SALES RECORD means all documents or data presented to LITLE as evidence of a CARD SALE." *Id*. at LI_00019.<br><br>"Litle & Co. continues to be your credit card processor and will continue to work directly with you to provide a high level of customer and technical service." February 28, 1992 letter from Tim Litle to Robert George, LI_00016. |
| at the computerized merchant processor,<br><br>acquiring the information related to the payment from the merchant, authorizing and settling the payment,<br><br>and forwarding at least a portion of the payment to a computerized payment receiver as payment of at least a portion of an obligation made by the merchant; | "Litle & Co. continues to be your credit card processor and will continue to work directly with you to provide a high level of customer and technical service." February 28, 1992 letter from Tim Litle to Robert George, LI_00016.<br><br>"WHEREAS, LITLE and NPC are engaged in the business of processing paper-based and electronic data representing transactions conducted through the use of CHARGE CARDS . . . ." Member Agreement at LI_00018.<br><br>"In consideration of Litle & Co. making advances for the account of [Museum Publications of America] to United States Postal Service, [Museum Publications of America] agrees to pay on demand the Principal Amount of Advance plus management fee to Litle & Co., or order. MEMBER further agrees that all CHARGE CARD transactions from all divisions and subsidiaries will be processed by Litle & Co. while any amount owed under this note is still outstanding. Notwithstanding that such amounts are otherwise payable on demand, MEMBER agrees that . . . (ii) the Daily Repayments shall be deducted from daily NET PROCEEDS. . . ." |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| | Promissory Note at LI_00033 (showing that a portion of the card payments were forwarded to Litle, as a computerized payment receiver, as payment of at least a portion of an obligation that arose when Litle advanced postage costs ("Principal Amount of Advance") to merchant).

"NET PROCEEDS is an amount equal to: The GROSS PROCEEDS, Less LITLE FEES, Less RELEASED CHARGEBACKS (if no RESERVE exists), Less any other amounts due from MEMBER to LITLE, Less any PREPAYMENTS."

Member Agreement at LI_00018.

"Litle agreed to finance [Exposures, Inc.'s ("Exposures")] postage by discounting his [Exposures'] credit card receivables." *See* Forbes Article at LI_00003 (describing how a portion of the payment from credit card companies was forwarded as payment on Exposures' obligation to Litle, as a computerized payment receiver, for financing postage costs, with the remainder, the discounted credit card receivables, being forwarded to Exposures).

"As security for the obligations of Boston Publishing (the Borrower) under such financing agreements, Hanover Finance is being granted a security interest in our inventory, certain accounts and substantially all of the tangible and intangible personal property of Boston Publishing, including, without limitation, all rights of the Borrower to receive payments in respect of Card Sales from Litle & Co. . . . 1. Upon written instruction from Hanover Finance or assignees of Hanover Finance, designated in writing by Hanover Finance, without further action by Boston Publishing, you will make all payments of Net Proceeds or any other credits, reserves, deposits, balances, refunds or other amounts now or hereafter due to Boston Publishing under the Member Agreement in respect of Card Sales directly by wire transfer, to such account or accounts as Hanover Finance may designate in writing (the "Accounts")."

February 17, 1994 Letter from Robert George to Michael Duffy at LI_00030-31 (showing that Litle forwarded a portion of the payment to the loan payment |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| | receiver, *e.g.*, Hanover Finance, as payment of at least a portion of an obligation made by the merchant, *e.g.*, Boston Publishing). |
| and at the computerized payment receiver,<br><br><br>receiving the portion of the payment forwarded by the computerized merchant processor and applying that portion to the outstanding obligation made by the merchant to reduce such obligation. | "In consideration of Litle & Co. making advances for the account of [Museum Publications of America] to United States Postal Service, [Museum Publications of America] agrees to pay on demand the Principal Amount of Advance plus management fee to Litle & Co., or order. MEMBER further agrees that all CHARGE CARD transactions from all divisions and subsidiaries will be processed by Litle & Co. while any amount owed under this note is still outstanding. Notwithstanding that such amounts are otherwise payable on demand, MEMBER agrees that . . . (ii) the Daily Repayments shall be deducted from daily NET PROCEEDS. . . ."<br><br>Promissory Note at LI_00033 (showing that a portion of the payment is received by Litle as repayment of an obligation that arose when Litle advanced postage costs ("Principal Amount of Advance") to merchant); *see* Promissory Note Repayment Schedule at LI_00035 (showing that Litle received and applied the forwarded portion of the payment to Museum Publication of America's outstanding obligation to Litle).<br><br>"NET PROCEEDS is an amount equal to: The GROSS PROCEEDS, Less LITLE FEES, Less RELEASED CHARGEBACKS (if no RESERVE exists), Less any other amounts due from MEMBER to LITLE, Less any PREPAYMENTS."<br><br>Member Agreement at LI_00018. |
| 2. The method of claim 1 wherein the accepting step comprises accepting a credit card number as the customer identifier. | "WHEREAS, LITLE and NPC are engaged in the business of processing paper-based and electronic data representing transactions conducted through the use of CHARGE CARDS, and<br>WHEREAS, MEMBER desires to honor CHARGE CARDS in connection with the retail sale of PRODUCTS to MEMBER's customers, to submit SALES RECORDs and REFUNDs representing such transactions to LITLE for processing and to sell to FNBL the SALES RECORDs generated with BANK |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| | CARDs and the indebtednesses represented thereby." <br><br> Member Agreement at LI_00018. <br><br> "CHARGE CARD is the plastic BANK CARD or T&E CARD issued by a CARD ORGANIZATION to the CARDHOLDER and the charge account number designated on the card, either of which MEMBER accepts from customers as payment for their purchases from MEMBER." *Id.* <br><br> "BANK CARD means a valid and unexpired CHARGE CARD issued by an ISSUING MEMBER of MCI or VISA which contains the MasterCard service mark or Visa's Blue, White and Gold Bands Design service mark. A BANK CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id.* <br><br> "CARD ORGANIZATION is VISA, MCI or the issuer of a T&E CARD." *Id.* <br><br> "T&E CARD is a valid and unexpired Travel and Entertainment CHARGE CARD issued by American Express, Carte Blanche, Diner's Club or Discover. A T&E CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id.* at LI_00019. |
| 3. The method of claim 1 wherein the accepting step comprises accepting a debit card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, *e.g.* for debit cards as well as credit cards. And the statements by the alleged inventor and by the examiner, and the language of the patent itself makes clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including debit cards. <br><br> "WHEREAS, LITLE and NPC are engaged in the business of processing paper-based and electronic data representing transactions conducted through the use of |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| | CHARGE CARDS, and<br>WHEREAS, MEMBER desires to honor CHARGE CARDS in connection with the retail sale of PRODUCTS to MEMBER's customers, to submit SALES RECORDs and REFUNDs representing such transactions to LITLE for processing and to sell to FNBL the SALES RECORDs generated with BANK CARDs and the indebtednesses represented thereby."<br><br>Member Agreement at LI_00018.<br><br>"CHARGE CARD is the plastic BANK CARD or T&E CARD issued by a CARD ORGANIZATION to the CARDHOLDER and the charge account number designated on the card, either of which MEMBER accepts from customers as payment for their purchases from MEMBER." *Id.*<br><br>"BANK CARD means a valid and unexpired CHARGE CARD issued by an ISSUING MEMBER of MCI or VISA which contains the MasterCard service mark or Visa's Blue, White and Gold Bands Design service mark. A BANK CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id.*<br><br>"CARD ORGANIZATION is VISA, MCI or the issuer of a T&E CARD." *Id.*<br><br>"T&E CARD is a valid and unexpired Travel and Entertainment CHARGE CARD issued by American Express, Carte Blanche, Diner's Club or Discover. A T&E CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id.* at LI_00019. |
| 4. The method of claim 1 wherein the accepting step comprises accepting a smart card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, *e.g.* for smart cards as well as credit cards. And the statements by the alleged inventor and by the examiner, and the language of the patent itself makes clear that a person of ordinary skill in the art would be motivated to make the |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| | method or system work in the same way for any customer identifier, including smart cards.

"WHEREAS, LITLE and NPC are engaged in the business of processing paper-based and electronic data representing transactions conducted through the use of CHARGE CARDS, and
WHEREAS, MEMBER desires to honor CHARGE CARDS in connection with the retail sale of PRODUCTS to MEMBER's customers, to submit SALES RECORDs and REFUNDs representing such transactions to LITLE for processing and to sell to FNBL the SALES RECORDs generated with BANK CARDs and the indebtednesses represented thereby."

Member Agreement at LI_00018.

"CHARGE CARD is the plastic BANK CARD or T&E CARD issued by a CARD ORGANIZATION to the CARDHOLDER and the charge account number designated on the card, either of which MEMBER accepts from customers as payment for their purchases from MEMBER." *Id.*

"BANK CARD means a valid and unexpired CHARGE CARD issued by an ISSUING MEMBER of MCI or VISA which contains the MasterCard service mark or Visa's Blue, White and Gold Bands Design service mark. A BANK CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id.*

"CARD ORGANIZATION is VISA, MCI or the issuer of a T&E CARD." *Id.*

"T&E CARD is a valid and unexpired Travel and Entertainment CHARGE CARD issued by American Express, Carte Blanche, Diner's Club or Discover. A T&E CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id.* at LI_00019. |
| 5. The method of claim 1 wherein the accepting | "WHEREAS, LITLE and NPC are engaged in the business of processing paper- |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| step comprises accepting a charge card number as the customer identifier. | based and electronic data representing transactions conducted through the use of CHARGE CARDS, and<br>WHEREAS, MEMBER desires to honor CHARGE CARDS in connection with the retail sale of PRODUCTS to MEMBER's customers, to submit SALES RECORDs and REFUNDs representing such transactions to LITLE for processing and to sell to FNBL the SALES RECORDs generated with BANK CARDs and the indebtednesses represented thereby."<br><br>Member Agreement at LI_00018.<br><br>"CHARGE CARD is the plastic BANK CARD or T&E CARD issued by a CARD ORGANIZATION to the CARDHOLDER and the charge account number designated on the card, either of which MEMBER accepts from customers as payment for their purchases from MEMBER." *Id.*<br><br>"BANK CARD means a valid and unexpired CHARGE CARD issued by an ISSUING MEMBER of MCI or VISA which contains the MasterCard service mark or Visa's Blue, White and Gold Bands Design service mark. A BANK CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id.*<br><br>"CARD ORGANIZATION is VISA, MCI or the issuer of a T&E CARD." *Id.*<br><br>"T&E CARD is a valid and unexpired Travel and Entertainment CHARGE CARD issued by American Express, Carte Blanche, Diner's Club or Discover. A T&E CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id.* at LI_00019. |
| 6. The method of claim 1 wherein the accepting step comprises accepting the customer identifier at a merchant location. | "c. MEMBER shall complete each SALES RECORD to include a notation in the space provided for the CARDHOLDER's signature that the sale was initiated by mail order (MO), telephone order (TO) or pre-authorized order (PO) (except for sales made in person, for which the CARDHOLDER's signature shall be |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| | obtained). . . .” Member Agreement at LI_00019. |
| 7. The method of claim 1 wherein the accepting step comprises electronically accepting the customer identifier. | “c. MEMBER shall complete each SALES RECORD to include a notation in the space provided for the CARDHOLDER's signature that the sale was initiated by mail order (MO), telephone order (TO) or pre-authorized order (PO) (except for sales made in person, for which the CARDHOLDER's signature shall be obtained) . . . .” Member Agreement at LI_00019.<br><br>“WHEREAS, LITLE and NPC are engaged in the business of processing paper-based and electronic data representing transactions conducted through the use of CHARGE CARDS . . . .” Member Agreement at LI_00018 (showing that the merchant electronically accepts the customer identifier).<br><br>“SALES RECORD means all documents or data presented to LITLE as evidence of a CARD SALE.” *Id*. at LI_00019 (showing that the merchant electronically accepts the customer identifier). |
| 8. The method of claim 1 wherein the steps performed at the merchant processor further comprise accumulating the payments until a predetermined amount is reached and then forwarding at least a portion of the accumulated payments to the payment receiver. | Litle would accumulate the payments until a predetermined amount was reached and then forward at least a portion of the accumulated payments to the payment receiver. *See, e.g.*, Promissory Note Repayment Schedule at LI_00035 (outlining specified daily and weekly payment amount). |
| 9. The method of claim 1 wherein the steps performed at the merchant processor comprise periodically forwarding at least a portion of the payment to the payment receiver. | Litle would periodically forward at least a portion of the payment to the payment receiver. *See, e.g.*, Promissory Note Repayment Schedule at LI_00035 (outlining daily and weekly payment schedules).<br><br>“In consideration of Litle & Co. making advances for the account of [Museum Publications of America] to United States Postal Service, [Museum Publications of America] agrees to pay on demand the Principal Amount of Advance plus management fee to Litle & Co., or order. MEMBER further agrees that all CHARGE CARD transactions from all divisions and subsidiaries will be |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| | processed by Litle & Co. while any amount owed under this note is still outstanding. Notwithstanding that such amounts are otherwise payable on demand, MEMBER agrees that . . . (ii) the Daily Repayments shall be deducted from daily NET PROCEEDS. . . ." Promissory Note at LI_00033 (showing that payments were periodically forwarded). |
| 10. A system for automated payment of an obligation made by a merchant, comprising: | Litle utilized a system for automated payments to Litle as repayment of obligations owed by merchants either for postage or cash advances. *See* Member Agreement; Promissory Note; February 17, 1994 Letter from Robert George to Michael Duffy; Forbes Article. |
| at a merchant,<br><br>means for accepting a customer identifier as payment from the customer and<br><br><br><br><br><br><br><br><br>for electronically forwarding information related to the payment to a computerized merchant processor,<br><br>wherein the merchant associated with the payment has an outstanding obligation to a third party; | The merchant, either directly or via its agent, would accept a customer identifier as payment from the customer. Means for accepting a customer identifier as payment existed, including, on information and belief, a magnetic card reader, keyboard input and/or telephone.<br><br>"WHEREAS, LITLE and NPC are engaged in the business of processing paper-based and electronic data representing transactions conducted through the use of CHARGE CARDS, and<br>WHEREAS, MEMBER desires to honor CHARGE CARDS in connection with the retail sale of PRODUCTS to MEMBER's customers, to submit SALES RECORDs and REFUNDs representing such transactions to LITLE for processing and to sell to FNBL the SALES RECORDs generated with BANK CARDs and the indebtednesses represented thereby."<br><br>Member Agreement at LI_00018 (showing that the merchant maintained a magnetic card reader and/or keyboard input and/or telephone for accepting a customer identifier and electronically forwarded information related to the payment to Litle, a computerized merchant processor).<br><br>"c. MEMBER shall complete each SALES RECORD to include a notation in the space provided for the CARDHOLDERS's signature that the sale was initiated by mail order (MO), telephone order (TO) or pre-authorized order (PO) (except for |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| | sales made in person, for which the CARDHOLDER's signature shall be obtained). . . ." *Id*. at LI_00019 (showing that the merchant maintained a magnetic card reader and/or keyboard input and/or telephone for accepting a customer identifier and electronically forwarded information related to the payment to Litle, a computerized merchant processor). |
| | "CHARGE CARD is the plastic BANK CARD or T&E CARD issued by a CARD ORGANIZATION to the CARDHOLDER and the charge account number designated on the card, either of which MEMBER accepts from customers as payment for their purchases from MEMBER." *Id*. |
| | "BANK CARD means a valid and unexpired CHARGE CARD issued by an ISSUING MEMBER of MCI or VISA which contains the MasterCard service mark or Visa's Blue, White and Gold Bands Design service mark. A BANK CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id*. at LI_00018. |
| | "CARD ORGANIZATION is VISA, MCI or the issuer of a T&E CARD." *Id*. |
| | "T&E CARD is a valid and unexpired Travel and Entertainment CHARGE CARD issued by American Express, Carte Blanche, Diner's Club or Discover. A T&E CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id*. at LI_00019. |
| | "In consideration of Litle & Co. making advances for the account of [Museum Publications of America] to United States Postal Service, [Museum Publications of America] agrees to pay on demand the Principal Amount of Advance plus management fee to Litle & Co., or order. MEMBER further agrees that all CHARGE CARD transactions from all divisions and subsidiaries will be processed by Litle & Co. while any amount owed under this note is still outstanding. Notwithstanding that such amounts are otherwise payable on demand, MEMBER agrees that . . . (ii) the Daily Repayments shall be deducted |

| CLAIMS | SPECIFICATION REFERENCES |
|--------|--------------------------|
| | from daily NET PROCEEDS. . . ." |
| | Promissory Note at LI_00033 (showing that Litle acted as the merchant processor and that the merchant had an outstanding obligation that arose when Litle advanced postage costs ("Principal Amount of Advance") to merchant). |
| | "As security for the obligations of Boston Publishing (the Borrower) under such financing agreements, Hanover Finance is being granted a security interest in our inventory, certain accounts and substantially all of the tangible and intangible personal property of Boston Publishing, including, without limitation, all rights of the Borrower to receive payments in respect of Card Sales from Litle & Co. . . . 1. Upon written instruction from Hanover Finance or assignees of Hanover Finance, designated in writing by Hanover Finance, without further action by Boston Publishing, you will make all payments of Net Proceeds or any other credits, reserves, deposits, balances, refunds or other amounts now or hereafter due to Boston Publishing under the Member Agreement in respect of Card Sales directly by wire transfer, to such account or accounts as Hanover Finance may designate in writing (the "Accounts")." |
| | February 17, 1994 Letter from Robert George to Michael Duffy at LI_00030-31 (showing that the merchant, *e.g.*, Boston Publishing, had an outstanding obligation to a third party, *e.g.*, Hanover Finance). |
| and at the computerized merchant processor, means for receiving the information related to the payment from the merchant, means for authorizing and settling the payment, | The language of the patent makes clear that a merchant processor acquires payment information and authorizes and settles the payment. On information and belief, the means for performing these functions and for forwarding a portion of the payment to the third party to reduce the obligation is a modem and computer running appropriate software. "Litle & Co. continues to be your credit card processor and will continue to work directly with you to provide a high level of customer and technical service." February 28, 1992 letter from Tim Litle to Robert George at LI_00016. |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| and means for forwarding a portion of the payment to the third party to reduce the obligation. | "WHEREAS, LITLE and NPC are engaged in the business of processing paper-based and electronic data representing transactions conducted through the use of CHARGE CARDS, and<br>WHEREAS, MEMBER desires to honor CHARGE CARDS in connection with the retail sale of PRODUCTS to MEMBER's customers, to submit SALES RECORDs and REFUNDs representing such transactions to LITLE for processing and to sell to FNBL the SALES RECORDs generated with BANK CARDs and the indebtednesses represented thereby."<br><br>Member Agreement at LI_00018.<br><br>"In consideration of Litle & Co. making advances for the account of [Museum Publications of America] to United States Postal Service, [Museum Publications of America] agrees to pay on demand the Principal Amount of Advance plus management fee to Litle & Co., or order. MEMBER further agrees that all CHARGE CARD transactions from all divisions and subsidiaries will be processed by Litle & Co. while any amount owed under this note is still outstanding. Notwithstanding that such amounts are otherwise payable on demand, MEMBER agrees that . . . (ii) the Daily Repayments shall be deducted from daily NET PROCEEDS. . . ." Promissory Note at LI_00033 and Promissory Note Repayment Schedule at LI_00035 (showing that a portion of card payments are forwarded to Litle, as a computerized payment receiver, to reduce the obligation that arose when Litle advanced postage costs ("Principal Amount of Advance") to merchant).<br><br>"NET PROCEEDS is an amount equal to: The GROSS PROCEEDS, Less LITLE FEES, Less RELEASED CHARGEBACKS (if no RESERVE exists), Less any other amounts due from MEMBER to LITLE, Less any PREPAYMENTS."<br><br>Member Agreement at LI_00018.<br><br>"As security for the obligations of Boston Publishing (the Borrower) under such financing agreements, Hanover Finance is being granted a security interest in our |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| | inventory, certain accounts and substantially all of the tangible and intangible personal property of Boston Publishing, including, without limitation, all rights of the Borrower to receive payments in respect of Card Sales from Litle & Co. . . . 1. Upon written instruction from Hanover Finance or assignees of Hanover Finance, designated in writing by Hanover Finance, without further action by Boston Publishing, you will make all payments of Net Proceeds or any other credits, reserves, deposits, balances, refunds or other amounts now or hereafter due to Boston Publishing under the Member Agreement in respect of Card Sales directly by wire transfer, to such account or accounts as Hanover Finance may designate in writing (the "Accounts")." |
| | February 17, 1994 Letter from Robert George to Michael Duffy at LI_00030-31 (showing that Litle could forward a portion of the payment to the loan payment receiver, *e.g.*, Hanover Finance, to reduce the merchant's, *e.g.*, Boston Publishing, obligation). |
| 11. The system of claim 10 wherein the accepting means comprises means for accepting a credit card number as the customer identifier. | The merchant, *e.g.*, Museum Publications of America, accepted credit cards from customers for payment. Means for accepting a credit card number as the customer identifier included, on information and belief, a magnetic card reader, keyboard input and/or telephone. |
| | "WHEREAS, LITLE and NPC are engaged in the business of processing paper-based and electronic data representing transactions conducted through the use of CHARGE CARDS, and<br>WHEREAS, MEMBER desires to honor CHARGE CARDS in connection with the retail sale of PRODUCTS to MEMBER's customers, to submit SALES RECORDs and REFUNDs representing such transactions to LITLE for processing and to sell to FNBL the SALES RECORDs generated with BANK CARDs and the indebtednesses represented thereby." |
| | Member Agreement at LI_00018. |
| | "CHARGE CARD is the plastic BANK CARD or T&E CARD issued by a |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| | CARD ORGANIZATION to the CARDHOLDER and the charge account number designated on the card, either of which MEMBER accepts from customers as payment for their purchases from MEMBER." *Id.*<br><br>"BANK CARD means a valid and unexpired CHARGE CARD issued by an ISSUING MEMBER of MCI or VISA which contains the MasterCard service mark or Visa's Blue, White and Gold Bands Design service mark. A BANK CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id.*<br><br>"CARD ORGANIZATION is VISA, MCI or the issuer of a T&E CARD." *Id.*<br><br>"T&E CARD is a valid and unexpired Travel and Entertainment CHARGE CARD issued by American Express, Carte Blanche, Diner's Club or Discover. A T&E CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id.* at LI_00019. |
| 12. The system of claim 10 wherein the accepting means comprises means for accepting a debit card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply systems and means in use for one type of customer identifier to another type of customer identifier, *e.g.* for debit cards as well as credit cards. And the statements by the alleged inventor and by the examiner, and the language of the patent itself makes clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including debit cards. Debit card numbers may be accepted, for example, using the merchant's magnetic card reader, keyboard input and/or telephone.<br><br>"WHEREAS, LITLE and NPC are engaged in the business of processing paper-based and electronic data representing transactions conducted through the use of CHARGE CARDS, and<br>WHEREAS, MEMBER desires to honor CHARGE CARDS in connection with the retail sale of PRODUCTS to MEMBER's customers, to submit SALES |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| | RECORDs and REFUNDs representing such transactions to LITLE for processing and to sell to FNBL the SALES RECORDs generated with BANK CARDs and the indebtednesses represented thereby." |
| | Member Agreement at LI_00018. |
| | "<u>CHARGE CARD</u> is the plastic BANK CARD or T&E CARD issued by a CARD ORGANIZATION to the CARDHOLDER and the charge account number designated on the card, either of which MEMBER accepts from customers as payment for their purchases from MEMBER." *Id*. |
| | "<u>BANK CARD</u> means a valid and unexpired CHARGE CARD issued by an ISSUING MEMBER of MCI or VISA which contains the MasterCard service mark or Visa's Blue, White and Gold Bands Design service mark. A BANK CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id*. |
| | "<u>CARD ORGANIZATION</u> is VISA, MCI or the issuer of a T&E CARD." *Id*. |
| | "<u>T&E CARD</u> is a valid and unexpired Travel and Entertainment CHARGE CARD issued by American Express, Carte Blanche, Diner's Club or Discover. A T&E CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id*. at LI_00019. |
| 13. The system of claim 10 wherein the accepting means comprises means for accepting a smart card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply systems and means in use for one type of customer identifier to another type of customer identifier, *e.g.* for smart cards as well as credit cards. And the statements by the alleged inventor and by the examiner, and the language of the patent itself makes clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including smart cards. Smart card numbers may be accepted, for example, using the merchant's |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| | magnetic card reader, keyboard input and/or telephone. |
| | "WHEREAS, LITLE and NPC are engaged in the business of processing paper-based and electronic data representing transactions conducted through the use of CHARGE CARDS, and WHEREAS, MEMBER desires to honor CHARGE CARDS in connection with the retail sale of PRODUCTS to MEMBER's customers, to submit SALES RECORDs and REFUNDs representing such transactions to LITLE for processing and to sell to FNBL the SALES RECORDs generated with BANK CARDs and the indebtednesses represented thereby." |
| | Member Agreement at LI_00018. |
| | "CHARGE CARD is the plastic BANK CARD or T&E CARD issued by a CARD ORGANIZATION to the CARDHOLDER and the charge account number designated on the card, either of which MEMBER accepts from customers as payment for their purchases from MEMBER." *Id.* |
| | "BANK CARD means a valid and unexpired CHARGE CARD issued by an ISSUING MEMBER of MCI or VISA which contains the MasterCard service mark or Visa's Blue, White and Gold Bands Design service mark. A BANK CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id.* |
| | "CARD ORGANIZATION is VISA, MCI or the issuer of a T&E CARD." *Id.* |
| | "T&E CARD is a valid and unexpired Travel and Entertainment CHARGE CARD issued by American Express, Carte Blanche, Diner's Club or Discover. A T&E CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id.* at LI_00019. |
| 14. The system of claim 10 wherein the accepting means comprises means for accepting | The merchant, *e.g.*, Museum Publications of America, accepted charge cards from customers for payment. Means for accepting a charge card number as the |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| a charge card number as the customer identifier. | customer identifier included, on information and belief, a magnetic card reader, keyboard input and/or telephone. |
| | "WHEREAS, LITLE and NPC are engaged in the business of processing paper-based and electronic data representing transactions conducted through the use of CHARGE CARDS, and<br>WHEREAS, MEMBER desires to honor CHARGE CARDS in connection with the retail sale of PRODUCTS to MEMBER's customers, to submit SALES RECORDs and REFUNDs representing such transactions to LITLE for processing and to sell to FNBL the SALES RECORDs generated with BANK CARDs and the indebtednesses represented thereby." |
| | Member Agreement at LI_00018. |
| | "CHARGE CARD is the plastic BANK CARD or T&E CARD issued by a CARD ORGANIZATION to the CARDHOLDER and the charge account number designated on the card, either of which MEMBER accepts from customers as payment for their purchases from MEMBER." *Id*. |
| | "BANK CARD means a valid and unexpired CHARGE CARD issued by an ISSUING MEMBER of MCI or VISA which contains the MasterCard service mark or Visa's Blue, White and Gold Bands Design service mark. A BANK CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id*. |
| | "CARD ORGANIZATION is VISA, MCI or the issuer of a T&E CARD." *Id*. |
| | "T&E CARD is a valid and unexpired Travel and Entertainment CHARGE CARD issued by American Express, Carte Blanche, Diner's Club or Discover. A T&E CARD shall be deemed valid on and after the effective date, if shown, and through and including the expiration date embossed thereon." *Id*. at LI_00019. |
| 15. The system of claim 10 wherein the | On information and belief, means for accepting the customer identifier existed at |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| accepting means comprises means for accepting the customer identifier at a merchant location. | a location of a merchant or merchant's agent, including, on information and belief, a magnetic card reader, keyboard input and/or telephone.<br><br>"c. MEMBER shall complete each SALES RECORD to include a notation in the space provided for the CARDHOLDERS's signature that the sale was initiated by mail order (MO), telephone order (TO) or pre-authorized order (PO) (except for sales made in person, for which the CARDHOLDER's signature shall be obtained). . . ." Member Agreement at LI_00019. |
| 16. The system of claim 10 wherein the accepting means comprises means for electronically accepting the customer identifier. | On information and belief, means for a merchant's electronically accepting a customer identifier existed in the Litle system, including, on information and belief, a magnetic card reader, keyboard and/or telephone.<br><br>"c. MEMBER shall complete each SALES RECORD to include a notation in the space provided for the CARDHOLDERS's signature that the sale was initiated by mail order (MO), telephone order (TO) or pre-authorized order (PO) (except for sales made in person, for which the CARDHOLDER's signature shall be obtained) . . . ." Member Agreement at LI_00019.<br><br>"WHEREAS, LITLE and NPC are engaged in the business of processing paper-based and electronic data representing transactions conducted through the use of CHARGE CARDS . . . ." Member Agreement at LI_00018 (showing that the merchant electronically accepts the customer identifier).<br><br>"SALES RECORD means all documents or data presented to LITLE as evidence of a CARD SALE." *Id.* at LI_00019 (showing that the merchant electronically accepts the customer identifier). |
| 17. The system of claim 10 wherein the means at the merchant processor further comprise means for accumulating the payments until a predetermined amount is reached and means for forwarding at least a portion of the accumulated | Litle would accumulate the payments until a predetermined amount was reached and then forward at least a portion of the accumulated payments. *See* Promissory Note Repayment Schedule at LI_00035 (outlining specified daily and weekly payment amount). |

| CLAIMS | SPECIFICATION REFERENCES |
|---|---|
| payments to the third party. | On information and belief, the means for accumulating the payments until a predetermined amount was reached and means for forwarding at least a portion of the accumulated payments was a modem and computer running appropriate software. |
| 18. The system of claim 10 wherein the forwarding means at the merchant processor comprises means for periodically forwarding at least a portion of the payment to the third party. | Litle would periodically forward at least a portion of the payment. *See* Promissory Note Repayment Schedule at LI_00035 (outlining daily and weekly payment schedules). On information and belief, the means for performing this function was a modem and computer running appropriate software.<br><br>"In consideration of Litle & Co. making advances for the account of [Museum Publications of America] to United States Postal Service, [Museum Publications of America] agrees to pay on demand the Principal Amount of Advance plus management fee to Litle & Co., or order. MEMBER further agrees that all CHARGE CARD transactions from all divisions and subsidiaries will be processed by Litle & Co. while any amount owed under this note is still outstanding. Notwithstanding that such amounts are otherwise payable on demand, MEMBER agrees that . . . (ii) the Daily Repayments shall be deducted from daily NET PROCEEDS. . . ." Promissory Note at LI_00033 (showing that payments were periodically forwarded). |
| 19. The system of claim 10 wherein the forwarding means at the merchant processor comprises means for forwarding to the third party an amount that is a percentage of the obligation. | Litle forwarded an amount that is a percentage of the obligation. On information and belief, the means for performing this function was a computer running appropriate software.<br><br>"In consideration of Litle & Co. making advances for the account of [Museum Publications of America] to United States Postal Service, [Museum Publications of America] agrees to pay on demand the Principal Amount of Advance plus management fee to Litle & Co., or order. MEMBER further agrees that all CHARGE CARD transactions from all divisions and subsidiaries will be processed by Litle & Co. while any amount owed under this note is still outstanding. Notwithstanding that such amounts are otherwise payable on |

| CLAIMS | SPECIFICATION REFERENCES |
|--------|--------------------------|
| | demand, MEMBER agrees that . . . (ii) the Daily Repayments shall be deducted from daily NET PROCEEDS. . . ." <br><br> Promissory Note at LI_00033 (showing that payments forwarded were in an amount that was a percentage of the obligation); *see also* Promissory Note Repayment Schedule at LI_00035 (outlining daily and weekly payment amount, all of which individually and collectively constituted a percentage of the merchant's total obligation). |