# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

|  |  |  |
|---|---|---|
| ADVANCEME, INC., | § | CASE NO. 6:05-CV-424 (LED – JDL) |
|   Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| RAPIDPAY LLC, FIRST FUNDS LLC, | § | |
| MERCHANT MONEY TREE, INC., | § | |
| REACH FINANCIAL, LLC, and FAST | § | |
| TRANSACT, INC. d/b/a SIMPLE CASH, | § | |
| | § | |
|   Defendants. | § | |
| | § | |
| ADVANCEME, INC., | § | CASE NO. 6:06-CV-082 (LED – JDL) |
|   Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| AMERIMERCHANT, LLC, | § | |
| | § | |
|   Defendant. | § | |

---

## ADVANCEME, INC.'s OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

---

Dockets.Justia.com

# TABLE OF CONTENTS

Page

I.  INTRODUCTION .................................................................................................1

II. FACTUAL BACKGROUND.............................................................................2

   A.  AdvanceMe Voluntarily Agrees To Conduct A Second Document Search
       At The Defendants' Request, But Defendants File This Motion Before
       That Search Is Complete.........................................................................2

   B.  AdvanceMe Informed The Defendants Of The Prohibitive Cost Of
       Searching Its Dozens Of Archive Tapes, Yet The Defendants Refused To
       Explain Why The Tapes Are Relevant Or Why AdvanceMe Should Have
       To Bear The Costs Of Searching Them................................................5

III. ARGUMENT.......................................................................................................10

   A.  AdvanceMe Has Already Conducted Two Diligent Searches Of Its
       Internal Documents, And Has Produced Any Relevant Documents That It
       Has Found.....................................................................................10

   B.  AdvanceMe Has Produced All Information From the Angrisani Litigation
       That Is Relevant to the Claims and Defenses in This Action................13

   C.  AdvanceMe Has Provided A Complete Response To Amended
       Interrogatory No. 1 .................................................................15

IV. CONCLUSION ........................................................................................23

# TABLE OF AUTHORITIES

Page

## CASES

Air Turbine Technology, Inc. v. Atlas Copco AB, 410 F.3d 701, 712 (Fed. Cir. 2005)..................................................................................................................................20

Finnegan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354, 1370 (Fed. Cir. 1999) ...........................17

Lance, Inc. v. Ginsburg, 32 F.R.D. 51, 53 (E.D.Pa 1962 ...........................................................20

Robinson v. Texas Automobile Dealers Assoc., 214 F.R.D. 432, 438 (E.D. Tex. 2003).................................................................................................................19, 21, 22, 23

Rowe Entertainment, Inc. v. William Morris Agency, Inc., 205 F.R.D. 421, 424 (S.D.N.Y. 2002)...................................................................................................................12

Zubulake v. UBS Warburg, LLC, 217 F.R.D. 309, 324 (S.D.N.Y. 2003) ...................................12

## RULES

Fed.R.Civ.P. 26(b)(2)(iii) (2006)...................................................................................................11

Fed.R.Civ.P. 26(b)(5) (2006)........................................................................................................20

Federal Rule 26(b)(2)(B) (effective December 1, 2006)...............................................................11

## I.   __INTRODUCTION__

Defendants' motion to compel should be denied.  Rather than meeting and conferring in good faith, Defendants rushed to file this motion before AdvanceMe even had the opportunity to articulate its position.  Indeed, the majority of the issues raised by Defendants' motion have never been the subject of _any_ meet and confer discussion between the parties.  For example, the alleged deficiencies in AdvanceMe's interrogatory responses and privilege log were raised for the first time by Defendants only a week before this motion was filed, and Defendants chose to file this motion _before_ it received any response by AdvanceMe to those issues.

If Defendants had attempted to legitimately meet and confer over these issues, they would have quickly learned that there was no good faith basis for their motion.  Defendants would have learned, for example, that AdvanceMe was nearing completion of the costly and time-consuming search it had conducted, at Defendants' specific request, to locate additional "internal" documents, even though there was no obligation to perform this search by AdvanceMe in the first place.  Defendants also would have learned that the further interrogatory response they seek to compel is not even called for by the question they asked, and that the alleged deficiencies in AdvanceMe's privilege log simply do not exist.

AdvanceMe has engaged in extraordinary efforts to locate relevant documents, provide an extensive privilege log, and provide complete interrogatory responses.  There is no possible basis for Defendants to move to compel (much less to bring a motion for sanctions).  Since Defendants' motion is utterly frivolous, it should be denied.

///

///

///

## II.     FACTUAL BACKGROUND

### A.     AdvanceMe Voluntarily Agrees To Conduct A Second Document Search At The Defendants' Request, But Defendants File This Motion Before That Search Is Complete

Throughout the fall of 2006, the parties engaged in numerous discussions concerning the scope of document production in this case. To facilitate these discussions, AdvanceMe provided Defendants with a list of document categories to guide their identification and collection of relevant documents. Exhs 1, 2, 3. Defendants, however, never provided a reciprocal list. To the contrary, during these lengthy discussions, the only documents that the Defendants claimed were relevant were documents relating to the '281 Patent, such as the patent file history or internal documentation at AdvanceMe relating to the patent. Matz Decl., ¶2. AdvanceMe explained that, to the extent AdvanceMe engaged in internal discussions relating to the patent, those discussions were between AdvanceMe employees and in-house or outside counsel for the company, and therefore were privileged. Exh. 4, p. 4. Indeed, AdvanceMe ultimately logged 131 documents on its privilege log, reflecting extensive communications with counsel concerning the '281 Patent. D.E. 143 (RapidPay Motion) and D.E. 75 (AmeriMerchant Motion), Exh. N.

By October of 2006, AdvanceMe had largely completed its search for documents, and had either produced or was in the course of producing all documents located in this search. Matz Decl., ¶3. This production included thousands of pages of documents. Id. By point of comparison, AdvanceMe has produced more documents in this case than all of the Defendants *combined* (including the Defendant in the parallel AmeriMerchant case). Id., ¶3. By this point, AdvanceMe had completed a reasonably diligent search for relevant documents and was in the course of producing everything that it had located.

At some point, it became apparent to Defendants from reviewing the document productions by AdvanceMe that the documents did not contain any support for their attempt to smear AdvanceMe and the named inventors with allegations of inequitable conduct. The documents produced by AdvanceMe did not contain any "internal" discussions between employees about any prior art to the patent, precisely because such discussions did not happen. As a result, there were simply no "internal" documents that were left for AdvanceMe to produce.

Since Defendants did not receive any documents to support their inequitable conduct theory, they decided to take a different approach. Rather than simply asking for documents relating to the '281 Patent or prosecution of the patent, Defendants instead asked – for the very first time on August 31, 2006 – for AdvanceMe to produce every single document that so much as *mentioned* any of the companies that were cited in any of the prior art references contained in their Invalidity Contentions, regardless of whether these documents related to the '281 Patent and regardless or whether the document was relevant to the case. The Defendants made this demand while AdvanceMe was conducting an extensive search for relevant documents, and therefore would have required AdvanceMe to start all over and conduct brand-new searches.

This new demand by Defendants raised a host of other problems. Most prominently, because Defendants' prior art references relied upon systems involving large institutions such as the Bank of America or Transmedia, the demand would have meant that AdvanceMe was required to search for every single document in the entire company that mentioned such institutions. According to Defendants, every document that simply mentioned the Bank of America should be produced, even if the document only concerned an employee opening a checking account at this bank. Clearly, such a document search was absurdly overbroad, which AdvanceMe repeatedly attempted (to no avail) to explain to Defendants. Exh. 4, p.4. Further,

though Defendants initially took the position that the search could be limited to documents in the possession of those individuals involved in the prosecution of the '281 Patent (which made sense, since those were the only individuals that were relevant under an inequitable conduct theory), they refused to commit to this position, and at varying times took the position that the records of every employee in the company should be searched. Matz Decl., ¶4.

Though Defendants' position was clearly untenable, AdvanceMe continued to make efforts to meet and confer in the hope of finding a resolution. Ultimately, however, it became clear that Defendants were not interested in reaching a reasonable compromise. Rather than digging in its heels, however, AdvanceMe decided to do precisely the opposite – it decided to "bite the bullet" and conduct a *whole new search* for responsive documents, in an attempt to identify and locate the documents Defendants were seeking (despite the fact that those documents were utterly irrelevant to this case). AdvanceMe was not required to do this second search, and indeed this search went far above and beyond anything called for by the Federal Rules. In a show of good faith, AdvanceMe did it anyway.

It took AdvanceMe several weeks to conduct this search, and several more weeks to review the documents that were collected. Matz Decl., ¶5. All told, AdvanceMe's counsel searched more than *two hundred and forty thousand* pages of documents to locate the type of documents the Defendants claimed to be looking for. Id. These documents were collected and marked for production by AdvanceMe, even though the documents generated by Defendants' overbroad search parameters in no way supported Defendants' "inequitable conduct" theory. Id. at ¶6. For instance, this second search located documents referencing certain companies such as Transmedia, but without any connection between such companies and the '281 Patent, and without any acknowledgement these alleged competitors were performing the same inventions as

contained in the patent (because, in fact, they were not). Some of these documents are privileged and will be included on AdvanceMe's privilege log. Id.

During this time period, AdvanceMe kept the Defendants informed of the progress of the search. D.E. 143 (RapidPay Motion) and D.E. 75 (AmeriMerchant Motion), Exhs. E, G; Matz Decl., ¶7. Defendants were fully aware that AdvanceMe had voluntarily decided to perform another search, and that any documents located in the search would be produced. Id. Incredibly, however, Defendants rushed to file this motion *before* they had even seen the results of the very search they had asked AdvanceMe to perform.

**B.    AdvanceMe Informed The Defendants Of The Prohibitive Cost Of Searching Its Dozens Of Archive Tapes, Yet The Defendants Refused To Explain Why The Tapes Are Relevant Or Why AdvanceMe Should Have To Bear The Costs Of Searching Them**

On September 30, 2006, AdvanceMe informed Defendants that, though it was otherwise conducting a broad search for the additional documents Defendants demanded, this search would not include the 48 achieved back-up tapes in AdvanceMe's possession. D.E. 143 (RapidPay Motion) and D.E. 75 (AmeriMerchant Motion), Exh. E. AdvanceMe explained to Defendants that the documents on these tapes were stored in a different file format than AdvanceMe currently utilized, and that the cost of converting and searching these older electronic documents would be prohibitive. Id. In particular, AdvanceMe informed Defendants that it had received a cost estimate from a vendor of between *$130,000 to $1.3 million dollars* to perform this document conversion and collection. Id.; see also Exh. E. (copy of estimate). Since there was no reason to believe that these costs would result in the production of *any* relevant documentation, AdvanceMe explained that it would be improper and unfair for AdvanceMe to incur these costs. Id. AdvanceMe further made clear, however, that if Defendants were willing to pay the costs, AdvanceMe was willing to proceed.

Defendants never explained why they believed the documents on these tapes were even relevant, much less why AdvanceMe should have to pay up to a million dollars to restore and search them. Defendants also never provided any authority to support their position that, under these circumstances, AdvanceMe should have any obligation to pay the costs of restoring these tapes. Nevertheless, without any supporting authority or explanation, Defendants now demand that AdvanceMe pay huge sums of money to restore a gigantic mass of irrelevant information.

### C.    Defendants Rush to File This Motion

On Saturday, November 4, 2006, AdvanceMe received a letter from Defendants. Exh. F. In this letter, Defendants suddenly threatened to file a motion to compel unless each of the discovery issues discussed in this letter were "resolved immediately" by AdvanceMe. Id. None of the demands set forth in the letter, however, were legitimate.

First, the Defendants demanded an immediate production of all internal documents reflecting AdvanceMe's knowledge of the systems and methods identified in Defendants' Invalidity Contentions. Yet, the Defendants were fully aware when they sent this letter that AdvanceMe was already conducting a costly and time-consuming search for such documents. This production is now largely complete.[1]

Second, Defendants demanded an immediate production of 1,100 pages of deposition testimony from an unrelated, employment litigation between AdvanceMe and a former officer of the company named Frank Angrisani. The only conceivable relevance of the Angrisani action is that a few questions pertaining to the '281 Patent were raised in passing in that action. Recognizing this, AdvanceMe conducted a painstaking review of thousands of pages of

---

[1]  AdvanceMe is conducting a final pass through its documents in an attempt to ensure that it did not miss anything of relevance in its search; at present, AdvanceMe is unaware of any documents left to produce, but should be able to confirm this by the end of this week.

deposition testimony from that action, and produced every single page of testimony that had any conceivable connection to the '281 Patent, the prosecution of that patent, prior art to that patent, or anything else that could possibly be of relevance. Matz Decl., ¶8. AdvanceMe also produced all of the "surrounding" testimony so that the questions and answers would have context. Id. All the remaining portions of the transcripts contained confidential testimony concerning private issues in AdvanceMe's business, which had absolutely nothing to do with this case and some of which had been designated as confidential under the Protective Order in the Angrisani litigation. AdvanceMe repeatedly informed Defendants that they had already received production of every single relevant excerpt from the depositions. D.E. 143 (RapidPay Motion) and D.E. 75 (AmeriMerchant Motion), Exhs. E and G. Defendants decided to include this issue in their motion anyway.

Third, Defendants' letter suddenly demanded that AdvanceMe conduct a search of its 48 archived back-up tapes, even though (a) AdvanceMe had already informed them that this search would cost from between $130,000 to $1.3 million to conduct (depending upon the scope of the search and the search terms that are used), and (b) AdvanceMe had already explained to Defendants that it had no reason to believe there was any relevant information on the tapes (and, if there was, certainly not significant enough information to justify the exorbitant cost). Defendants decided to include this issue in their motion anyway, even though they still have not made any showing which would lead the Court to believe that there is any relevant information on the tapes.

Fourth, Defendants' letter demanded immediate revisions to certain of the descriptions set forth on AdvanceMe's privilege log. This was an issue on which the parties had never previously met and conferred, which made sense inasmuch as it is clear from the face of

AdvanceMe's privilege log that the descriptions on the log are easily sufficient. Though AdvanceMe was never given a chance to discuss this matter with them, Defendants decided to include this issue in the motion, as well.

After making these demands, AdvanceMe was given until November 10, 2006 (four business days) to "resolve each issue." Exh. 6. Defendants issued these demands knowing that Michael Edelman, the attorney to whom the letter was addressed, was scheduled to take the 30(b)(6) depositions in New York of Defendant AmeriMerchant on November 8, 2006, and Defendant First Funds on November 10, 2006. Exh. 7.

On November 10, 2006, counsel for AdvanceMe, Robert Matz, sent a letter acknowledging receipt of Defendants' letter and "respectfully request[ing] that Defendants extend AdvanceMe the courtesy of extending these deadlines so that Mr. Edelman has a reasonable period of time to review, research, respond, and resolve these issues, if possible." Exh. 8. Mr. Matz also pointed out that Defendants' November 4, 2006 letter was the first time that Defendants had raised any issues concerning the descriptions in AdvanceMe's privilege log. Id. After receiving Mr. Matz's letter, Defendants sent an e-mail stating that they believed AdvanceMe "could have at least attempted to resolve the issues reiterated in my letter within the time set, if it intended to do so." Exh. 7. This same e-mail acknowledged, however, that Defendants knew that Mr. Edelman "alone" was responsible for conducting 30(b)(6) depositions of Defendants AmeriMerchant and First Funds on November 8 and 10, 2006, respectively, which made it impossible for AdvanceMe to comply with the deadlines set by Defendants. Id.

On Monday, November 13, 2006, despite AdvanceMe's good faith request for a few more days to respond, Defendants rushed to file their motion to compel. Defendants did not contact AdvanceMe prior to filing this motion. Matz Decl., ¶9. Had they bothered to pick up the

phone, they would have known that AdvanceMe was in the process of finalizing a further

production of documents, which AdvanceMe had repeatedly indicated to Defendants would be

forthcoming. Id. at ¶10. On Wednesday, November 21, 2006, AdvanceMe made this

production. Exh. 9.

### D.    Defendants' Failure To Meet And Confer Regarding AdvanceMe's Response To Amended Interrogatory No. 1

On October 31, 2006, AdvanceMe served its Objections and Response to Defendants'

Amended First Set of Interrogatories. Exh. 10. AdvanceMe's response to Amended

Interrogatory No. 1 was seven pages long, and contained a thorough listing of all the differences

between the invention in the '281 Patent and the alleged prior art. Id. at 3-10. On November 4,

2006, AdvanceMe received a letter from Defendants stating that AdvanceMe "appears to have

improperly objected to and narrowed the scope" of the interrogatory. Exh. 11. This was the first

time that Defendants had raised an issue with AdvanceMe's interrogatory response. Defendants

demanded that AdvanceMe "confirm the completeness of Plaintiff's response to this

interrogatory by Wednesday, November 8, 2006" or Defendants would "be forced to seek Court

intervention to obtain an appropriate response." Id. However, on Wednesday, November 8,

2006, Michael Edelman, the attorney to whom this letter was addressed, was taking the 30(b)(6)

deposition of AmeriMerchant in New York.

On November 10, 2006, Mr. Matz sent a letter stating that it appeared Defendants had

deliberately set the November 8, 2006 deadline to coincide with the scheduled date for

AmeriMerchant's deposition in New York. Exh. 8. Mr. Matz further "respectfully request[ed]

that Defendants extend AdvanceMe the courtesy of extending these deadlines so that Mr.

Edelman has a reasonable period of time to review, research, respond, and resolve these issues, if

possible." Id. Incredibly, the Defendants' response to this letter was to file the instant motion to

compel, less than six business days after AdvanceMe provided its interrogatory response and before the parties had even once discussed the response.

## III.   ARGUMENT

### A.   AdvanceMe Has Already Conducted Two Diligent Searches Of Its Internal Documents, And Has Produced Any Relevant Documents That It Has Found

Defendants' first argument in its motion to compel is that AdvanceMe should be compelled to produce documents that it does not have. AdvanceMe has already engaged in two different searches of its "internal" documents for relevant information. AdvanceMe has produced any relevant documents that it has found in these searches. AdvanceMe has also logged 131 different privileged documents located in these searches. D.E. 143 (RapidPay Motion) and D.E. 75 (AmeriMerchant Motion), Exh. N. There is nothing else that AdvanceMe can do, or that the Federal Rules require it to do.

In their motion, Defendants falsely state that AdvanceMe has "failed to produce a single internal document." D.E. 143 (RapidPay Motion) and D.E. 75 (AmeriMerchant Motion) pp. 2, 3, 7, and 9. This point is moot, since AdvanceMe has now produced over 1800 pages of such documents. Exh. 9. These documents were located as a result of a time-consuming search of over *two hundred and forty thousand* AdvanceMe documents – a search that AdvanceMe was not required to conduct, but that it decided to conduct in good faith at Defendants' specific request. Moreover, Defendants overlook the fact that AdvanceMe had previously found "internal" documents which were relevant to the case; however, these documents were privileged and therefore included on AdvanceMe's privilege log. D.E. 143 (RapidPay Motion) and D.E. 75 (AmeriMerchant Motion), Exh. N.

AdvanceMe cannot produce "internal" documents that never existed. The fact of the matter is that AdvanceMe does not possess documents of the type the Defendants seek, because

such documents do not exist. AdvanceMe did not engage in any nefarious discussions about withholding prior art, nor did it engage in any discussions about how competitors had previously performed the inventions in the '281 Patent. At all times, AdvanceMe has believed (and continues to believe) that it was the first to conceive of the patented method recited in the claims of the '281 Patent, and in fact believes that its patented system differentiates AdvanceMe from others. Defendants' dislike of these facts is not a basis for them to move to "compel" AdvanceMe to produce documents that it does not have.

Defendants also demand that AdvanceMe spend exorbitant sums to restore and search its back-up tapes. This demand, however, is completely inappropriate. AdvanceMe has already informed Defendants that it would cost somewhere between $130,000 and $1.3 million dollars (*not* including attorney fees) to restore and review these tapes. Yet, there is no showing whatsoever by the Defendants that these tapes would contain *any* relevant information, much less information that would probative of the defenses that the Defendants have asserted.

The Federal Rules simply do not permit Defendants to make this demand. New Federal Rule 26(b)(2)(B) (effective December 1, 2006) explicitly provides that "a party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." AdvanceMe further submits that the burden and expense of restoring and reviewing the documents contained on these 48 back-up tapes far outweighs its likely (or non-existent) benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the lack of importance of this requested search in resolving the issues in this case. Fed.R.Civ.P. 26(b)(2)(iii) (2006).

Even before the enactment of this new Federal Rule, however, it was clear that Defendants' demand must be denied. Not only have Defendants failed to establish relevance for the production of AdvanceMe's archived email communications, Defendants have also failed to establish why AdvanceMe should be forced to bear the exorbitant costs of retrieving and producing such communications. AdvanceMe objects to the production of archive email communications as the cost of doing so would impose a burden on AdvanceMe disproportionate to any advantage of producing such documents. More particularly, the cost of retrieving the archived emails alone would exceed $1 million. Courts have refused to impose upon a party responding to discovery the burden of bearing the costs of production by shifting such costs to the requesting party. See, e.g., Rowe Entertainment, Inc. v. William Morris Agency, Inc., 205 F.R.D. 421, 424 (S.D.N.Y. 2002) (refusing to impose $400,000 cost of searching backup tapes on responding party); see also Zubulake v. UBS Warburg, LLC, 217 F.R.D. 309, 324 (S.D.N.Y. 2003) (performing cost shifting analysis for production of emails stored on backup tapes that were not organized for retrieval of individual documents or files). However, AdvanceMe contends that the Court should not even reach the cost-shifting analysis performed by the Rowe Entertainment and Zubulake courts unless and until Defendants establish that they are entitled to discovery of the emails in the first place. See In re General Instrument Corp. Securities Lit., 1999 WL 1072507 *6 (N.D. Ill. 1999) (denying motion to compel production of emails because the requesting party failed to identify any relevance for the emails).

Indeed, Defendants have failed to show that, to the extent any relevant documents existed on these tapes, they would be non-duplicative of the documents that Defendants already have. It is likely that, at most, the 48 back-up tapes merely contain the same type of internal documents that AdvanceMe has already searched through twice. This costly and unnecessary third search

would be unreasonably cumulative or duplicative, which is reason enough why it should not be conducted. FED.R.CIV.P. 26(b)(2)(i). If the Defendants want to pay a million dollars to get copies of documents they already have, they are free to do so. But AdvanceMe is certainly not required to fund such a pointless expedition.

Moreover, while Defendants claim this costly search is necessary to support their invalidity defenses, they have listed no less than 34 additional witnesses who they believe have still more information and knowledge of allegedly invalidating prior art systems and methods. Exhs. 12, 13, 14, 15. Defendants have ample opportunity to obtain information to support their invalidity defenses from these 34 witnesses, to the extent any such information exists. Further, the Defendants are free, within the limits of the Federal Rules, to take depositions of AdvanceMe or its employees to locate additional information to support their defenses.

In sum, AdvanceMe has already conducted two diligent searches of its internal documentation, and has already produced (or will finish producing within the next week) all remaining relevant documents that it has located. Defendants have not established a basis for insisting that AdvanceMe spend a million dollars to restore duplicative and irrelevant information from old back-up tapes. Defendants' motion should be denied.

**B.    AdvanceMe Has Produced All Information From the *Angrisani* Litigation That Is Relevant to the Claims and Defenses in This Action.**

Defendants' motion also includes a demand that AdvanceMe produce information relating to the Angrisani litigation. However, as AdvanceMe has repeatedly explained to Defendants, AdvanceMe has already produced all information from that action which is relevant to the issues in this action. Defendants have failed to articulate any valid reason why AdvanceMe should be compelled to produce documents that are not relevant to the pleaded claims and defenses *in this action.*

Defendants contend that AdvanceMe should be required to produce over a thousand additional pages of testimony from the Angrisani litigation, but fail to intelligibly explain why. AdvanceMe has already represented to Defendants that they have thoroughly reviewed all of this testimony, on a line-by-line basis, and have produced every single line of testimony that could possibly be relevant to any of the issues in this action. All testimony relating to the '281 Patent, the prosecution of the patent, prior art to the patent, or any other relevant issue has been produced. The remainder of the testimony deals with confidential material which is specific to the employment-related issues in the Angrisani action. Since this testimony has nothing whatsoever to do with this case, and it consists of confidential material produced under protection of the Protective Order in the Angrisani action, it is clearly inappropriate for production here.

Defendants further make the bizarre claim that over 1,000 pages of irrelevant and confidential testimony must be produced to provide "context." Yet, to the extent this is even a relevant consideration, it has already been taken into account in AdvanceMe's production. AdvanceMe did not simply produce tiny snippets, but rather produced the entirety of the exchanges in the depositions where any relevant issue was discussed. Matz Decl., ¶8. To ensure no context was lost, AdvanceMe produced all testimony from the beginning of such exchange to the end. Id. As a result, Defendants have already received more testimony that they would otherwise be entitled to. Defendants' "context" argument is therefore meritless.

In this regard, it should be emphasized that the Angrisani action revolves a whole range of employment-related issues that have nothing to do with the issues in this case. The deposition testimony reflects this. Out of thousands of pages of deposition testimony, there are only tiny portions of the testimony that relate to the '281 Patent or the patented inventions; the remainder

deal, as one would expect, with confidential details concerning Angrisani's hiring and

termination by AdvanceMe.  Similarly, the documents produced in the Angrisani litigation

related to employment issues, and these documents were irrelevant to the '281 Patent or anything

else of relevance to the case.   To the extent any relevant documents were located by AdvanceMe

which related to the Angrisani case, they were produced.[2]

Defendants already have received production of relevant information from the Angrisani

case.  The remaining confidential information they seek is not discoverable.  Accordingly,

Defendants' motion should be denied.

### C.    AdvanceMe Has Provided A Complete Response To Amended Interrogatory No. 1

Not satisfied with their efforts to compel AdvanceMe to produce documents that it does

not have, Defendants also attempt to compel AdvanceMe to answer an interrogatory that they

never propounded.  The scope of Amended Interrogatory No. 1 is clear.  The interrogatory asks

AdvanceMe the following:

> For each of the LeCard Prior Art, Litle & Co. Prior Art, and First USA
> Prior Art identify every element in both of the asserted independent claims
> of the '281 Patent (Claims 1 and 10) that is not disclosed in these three
> prior art references and state all facts supporting Plaintiff's contention that
> these identified pieces of prior art do not anticipate every element of both
> asserted independent claims of the '281 Patent (Claims 1 and 10).

The interrogatory *explicitly defines* the capitalized terms "LeCard Prior Art," "Litle & Co. Prior

Art," and "First USA Prior Art" as meaning the prior art identified in Exhibits 1, 3, and 6 to

Defendants' Second Amended Invalidity Contentions.  Accordingly, the interrogatory clearly

---

[2]    In fact, this is one reason why AdvanceMe has, to Defendants' great consternation, produced
"multiple copies of prosecution histories and publicly-available articles" in this case – those
documents were produced separately by AdvanceMe, and then needed to be produced again
because they were also part of the production in the Angrisani case.

asks AdvanceMe to compare the exhibits attached to Defendants' Second Amended Invalidity

Contentions to the inventions in the '281 Patent, and identify those claim elements which are not

present in the alleged prior art.

That is precisely what AdvanceMe did. AdvanceMe reviewed Exhibits 1, 3, and 6 to

Defendants' Second Amended Invalidity Contentions, and specifically identified those claim

elements which appear in the claims of the '281 Patent but which are *not* disclosed in the prior

art. AdvanceMe listed each of those elements in its interrogatory response, and explained why

they were not disclosed in the cited prior art. Accordingly, AdvanceMe did exactly what the

interrogatory asked.

Apparently, Defendants decided that they do not like AdvanceMe's answer, and now are

attempting through this motion to redraft the interrogatory to ask a question that was never

asked. Instead of comparing the specific exhibits referenced by the interrogatory to the patent

claims, Defendants now take the position that AdvanceMe is required to review the deposition

testimony of certain individuals related to the alleged prior art, and explain why this deposition

testimony does not reflect the performance of certain claim elements and therefore constitute a

"public use."

This is *not* what Interrogatory No. 1 asks for. This interrogatory makes no mention of the

public use doctrine, or of any witness' deposition testimony. Further, the definitions of the terms

in the interrogatory do not make any mention of deposition testimony. Rather, this interrogatory

clearly and explicitly asks AdvanceMe to identify those elements which are not disclosed by

Exhibits 1, 3, and 6 to Defendants' Second Amended Invalidity Contentions. If Defendants now

wish to propound a separate interrogatory, they are free to do so within the limits of the Federal

Rules. Defendants are *not*, however, permitted to rewrite an interrogatory after the responding party has already provided the answer that was requested.

In any event, Defendants' motion is pointless because, even if the interrogatory had asked AdvanceMe to compare the '281 patent claims with deposition testimony, AdvanceMe's answer would not have changed in the slightest. It is well-settled that a party cannot demonstrate a "public use" under Section 102(b) unless that public use is sufficiently corroborated through contemporaneous documentation or similar information. See Finnegan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354, 1370 (Fed. Cir. 1999). Here, Defendants have not produced any corroborating information to demonstrate that the various claim elements were performed; all that they have proffered is biased deposition testimony. This testimony is legally ineffectual and will be inadmissible at trial in this action. Accordingly, AdvanceMe's answer will not change regardless of how Defendant attempt to twist the deposition testimony.

Defendants also argue that AdvanceMe waived its right to object on the grounds of attorney-client privilege or attorney work product, because AdvanceMe allegedly served its response less than 24 hours after its objections and responses were due. However, had Defendants met and conferred on this issue, they would have understood that AdvanceMe has not withheld any information based on their objections. This issue is therefore moot.

AdvanceMe provided a full response to the question that Defendants actually asked. It is too late for Defendants to decide that they wished they had asked a different question. Since AdvanceMe's response fully complies with the Federal Rules, Defendants' motion should be denied.

**D.    AdvanceMe's Objections To Defendants' 30(b)(6) Topics Are Well-Founded**

There is no question that Topics 4-6, 8-10, and 22 clearly call for testimony that is protected by the attorney-client privilege and attorney work product doctrine. Indeed, these topics do not simply encompass privileged information, but are *explicitly targeted* at invading the attorney-client privilege. For example, the entire subject of Topic 4 is information provided by AdvanceMe to its attorneys, and the entire subject of Topic 6 is communications between AdvanceMe and its attorneys. As these topics entirely concern privileged information, they are wholly inappropriate.

In their motion, Defendants state that "…portions of [these topics] may call, in part, for privileged information…" D.E. 143 (RapidPay Motion) and D.E. 75 (AmeriMerchant Motion), p. 15. This is a vast understatement. In fact, the entirety of Topics 4, 6, 10, and 22 call for privileged information, and Topics 5 and 9-10 call almost entirely for privileged information. It was for precisely this reason that AdvanceMe urged Defendants, over and over again, to drop certain of the topics and entirely revise others. Exhs. 16, 17, 18, 19. Defendants, refused to do so, however.

In their motion, Defendants now attempt in essence to rewrite certain of the deposition topics in an futile attempt to salvage them. Defendants now assert, for example, that AdvanceMe should be compelled to prepare and produce a 30(b)(6) witness to testify on Topic 4 because "information provided to attorneys . . . with the intent that such information be communicated to the Patent Office" would not call for the disclosure of privileged information. D.E. 143 (RapidPay Motion) and D.E. 75 (AmeriMerchant Motion), p. 15. However, this is simply incorrect; the attorney-client privilege protects *all* communications made to an attorney for the purpose of securing a legal opinion or assistance in some legal proceeding, unless an exception

applies. See, e.g., Robinson v. Texas Automobile Dealers Assoc., 214 F.R.D. 432, 438 (E.D. Tex. 2003). Regardless, therefore, of the client's original intent, any communication with the attorney relating to the patent prosecution is still protected by the attorney-client privilege. Further, though the privilege might be inapplicable to subsequent communications between the patent prosecutor and the PTO, these communications are not encompassed by Topic 4.

In any event, Defendants' strained attempt to try to locate some aspect of these topics which are not protected by the attorney-client or work product privileges entirely misses the point. The topics at issue are part of a 30(b)(6) deposition. AdvanceMe's obligation is not limited to merely showing up at this deposition, but rather AdvanceMe is also required to locate an appropriate corporate representative and prepare that representative to testify. As long as the topics on their face are explicitly targeted at seeking privileged information, it is impossible for AdvanceMe to prepare a witness. It is Defendants' responsibility to adequately frame deposition topics so that AdvanceMe knows the topics on which its witness should be prepared to testify. Defendants failed to do so, and therefore a deposition on these topics cannot proceed until those topics are withdrawn or completely rewritten.

Topics 11-15 are even more problematic. These topics ask a lay witness to compare all of the different claims in the '281 Patent (as to be construed by the Court in its pending Order on claims construction) with the breathtakingly broad definition of "Prior Art" cited in the deposition notice, and then give AdvanceMe's position on all the distinctions between the inventions and the prior art. It is simply unrealistic to expect a lay witness to perform this exercise. Indeed, these are precisely the sort of deposition topics that courts have repeatedly indicated are inappropriate for a lay deposition. See, e.g., Air Turbine Technology, Inc. v. Atlas

Copco AB, 410 F.3d 701, 712 (Fed. Cir. 2005) (upholding exclusion of lay witness testimony as to means-plus-function limitation in patent claim because issue required expert testimony).

Questions seeking AdvanceMe's contentions as to the many differences between the inventions and the alleged prior art are the proper subject of expert testimony. See, e.g., Lance, Inc. v. Ginsburg, 32 F.R.D. 51, 53 (E.D.Pa 1962 (denying motion to compel answers to deposition contention questions). Indeed, AdvanceMe has already designated an expert that it expects will testify on these matters, Dr. Michael Shamos. Exh. 20. Defendants are certainly permitted to ask AdvanceMe's designated expert these sort of question during expert discovery, as it will be the task of the experts in this case to compare the properly construed patent claims with the disclosures of the prior art and explain whether there is any merit in Defendants' invalidity arguments. As the case law indicates, however, these questions are inappropriate for a 30(b)6) deponent.

Further, even if the topics did not improperly call for expert testimony, they are still objectionable as premature. Undoubtedly, Defendants' strategy is to force AdvanceMe to prepare and produce a lay witness to testify as to these contention topics, and thereafter use this testimony to "bind" AdvanceMe to these answers even before this Court has construed the claims of the '281 Patent or expert reports are due. This is inappropriate. The proper place for contention topics such as these is after the Markman ruling has been issued, and after expert reports have been prepared and served.

///

///

E.   **AdvanceMe's Privilege Log Provides Defendants With Sufficient Information To Evaluate The Privileged Nature Of Documents That Have Been Withheld From Production**

Unlike Defendants, AdvanceMe has provided a detailed privilege log that fully complies with the requirements of the Federal Rules, which only require the party invoking the privilege to "make the claim expressly" and "describe the documents . . . in a manner that . . . will enable other parties to assess the . . . applicability of the privilege." Fed.R.Civ.P. 26(b)(5) (2006). Indeed, had Defendants bothered to meet and confer with AdvanceMe before it filed this motion, they would have been informed that AdvanceMe had already provided all details concerning these privileged documents that it was able to provide.

Defendants' first complaint with respect to the descriptions contained in AdvanceMe's privilege log is aimed at AdvanceMe's Board Meeting Minutes. D.E. 143 (RapidPay Motion) and D.E. 75 (AmeriMerchant Motion), p. 18. Defendants contend that the log does not contain adequate information to evaluate whether the privilege attaches. However, this assertion makes no sense, because the log explicitly identifies all the information necessary to establish that an attorney-client privilege attaches. The log identifies the author of the Board Meeting Minutes as Les Falke or Frank Angrisani, who were corporate agents of AdvanceMe empowered to act on behalf of the corporation. It is black-letter law that communications between corporate agents and attorneys are protected if the agent is empowered to act on behalf of the corporation. Robinson, 214 F.R.D. at 440. The privilege log also identifies the attorney to whom these client confidences were communicated, "W. Durkin, III, Esq." or "P. Sanz, Esq," both were in-house counsel for AdvanceMe. The privilege log also explicitly states that the attorney-client communications in question were made "in connection with a request for legal services and legal advice." Accordingly, all the elements of the attorney-client privilege are satisfied.

Defendants contend that the log entries are insufficient because they do not provide a listing of all the subjects discussed during this Board meeting. But Defendants do not cite any authority, because there is none, which would require AdvanceMe to provide this information in a privilege log. Further, if Defendants had bothered to meet and confer on this subject, they would have understood that the vast majority of these meeting minutes are completely irrelevant to this case, as they involve discussion of mundane business issues that have nothing to do with the '281 Patent or any other relevant matter. The only portion of the minutes that has any conceivable relevance to this action is the "legal" portion of the minutes in which the status of patent prosecution is briefly discussed with or by in-house counsel. As all the remaining portions of the meeting minutes are irrelevant and non-discoverable, there is no reason for the entries to reflect any information concerning those portions.

Defendants' second complaint with respect to the descriptions contained in AdvanceMe's privilege log is based on their mistaken belief that there is an entry identifying attorney notes where the purported author is not an attorney. Again, this assertion is made because Defendants failed to make any effort to meet and confer. In fact, the privilege log does not state that the attorney notes at issue were "produced" by Gary Johnson, as Defendants falsely suggest in their motion; rather, as this entry clearly explains, on September 26, 2000, Gary Johnson authored correspondence that was *communicated* to his attorney, Mr. Tosti, and Mr. Tosti then made notes on this correspondence in response to Mr. Johnson's request for legal services and legal advice. It is clear that the attorney-client privilege protects items such as research, notes, files, and memoranda that are not themselves confidential communications, if disclosure would reveal the substance of any confidential communications between attorney and client that were made in the course of seeking or giving legal advice. Robinson, 214 F.R.D. at 438. Had Defendants met and

conferred with AdvanceMe on this issue before filing their motion, AdvanceMe would have explained that Defendants were simply misreading this entry.

Defendants' third complaint with respect to the descriptions contained in AdvanceMe's privilege log is based on an entry concerning a facsimile. As stated in the privilege log, this document is a facsimile that Mr. Byrne made notes on in response to a request for legal services and legal advice and sent to his file. Therefore, as stated in the privilege log, the recipient was Mr. Byrne's attorney file. The underlying facsimile was produced to Defendants as part of the certified file history. However, since Mr. Byrne's copy of this facsimile contains his attorney notes, this particular copy contains privileged information which is not discoverable. Robinson, 214 F.R.D. at 438. Again, had Defendants met and conferred on this issue, AdvanceMe could have explained that Defendants were misreading this entry.

## IV.   CONCLUSION

For all the reasons stated above, Defendants' motion to compel should be denied.

Date: November 28, 2006        Respectfully submitted,

                               By: _____ /s/ Michael N. Edelman _____
                               PAUL, HASTINGS, JANOFSKY & WALKER LLP
                               Michael N. Edelman
                               (CA Bar No. 180948) (Admitted Pro Hac Vice)
                               Ronald S. Lemieux
                               (CA Bar No. 120822) (Admitted Pro Hac Vice)
                               Vidya R. Bhakar
                               (CA Bar No. 220210) (Admitted Pro Hac Vice)
                               Robert C. Matz
                               (CA Bar No. 217822) (Admitted Pro Hac Vice)
                               Five Palo Alto Square, Sixth Floor
                               Palo Alto, CA  94306-2155
                               Telephone: (650) 320-1800
                               Telecopier: (650) 320-1900
                               Email:  medelman@paulhastings.com

IRELAND, CARROLL & KELLEY, P.C.
Otis W. Carroll, Attorney-in-Charge
State Bar No. 03895700
Deborah Race
State Bar No. 16448700
6101 South Broadway, Suite 500
Tyler, TX  75703
Telephone:  903-561-1600
Facsimile:  903-581-1071
Email:  fedserv@icklaw.com

ATTORNEYS FOR PLAINTIFF ADVANCEME, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served a copy of this document via the court's CM/ECF system pursuant to Local Rule cv-5(a)(3) on this the 28th day of November, 2006.  Any other counsel of record will be served by first class mail on this same date.

_____ */s/* _____
*Rose Jones-Shine*

# TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| 1 | July 12, 2006 Letter from Robert Matz to Hilary Preston |
| 2 | July 12, 2006 Letter from Robert Matz to Hilary Preston |
| 3 | July 12, 2006 Letter from Robert Matz to Hilary Preston |
| 4 | August 31, 2006 Letter from Robert Matz to Hilary Preston |
| 5 | September 13, 2006 Kroll Ontrack Document |
| 6 | November 3, 2006 Letter from Joseph Gray to Michael Edelman |
| 7 | November 10, 2006 Email from Joseph Gray to Robert Matz |
| 8 | November 10, 2006 Letter from Robert Matz to Joseph Gray |
| 9 | November 21, 2006 Letter from Robert Matz to Joseph Gray |
| 10 | Plaintiff AdvanceMe, Inc.'s Objections And Response To Defendants' Amended First Set Of Interrogatories To Plaintiff AdvanceMe |
| 11 | November 3, 2006 Letter from Joseph Gray to Michael Edelman |
| 12 | Defendant Reach Financial LLC's Third Amended Rule 26(a)(1) Initial Disclosures |
| 13 | Defendant Merchant Money Tree, Inc.'s Third Amended Rule 26(a)(1) Initial Disclosures |
| 14 | Defendant First Funds LLC's Third Amended Rule 26(a)(1) Initial Disclosures |
| 15 | Defendant AmeriMerchant, LLC's Second Amended Rule 26(a)(1) Initial Disclosures |
| 16 | October 20, 2006 Letter from Michael Edelman to Willem Schuurman |
| 17 | October 27, 2006 Letter from Michael Edelman to Hilary Preston |
| 18 | November 7, 2006 Letter from Michael Edelman to Joseph Gray |
| 19 | November 22, 2006 Letter from Michael Edelman to Joseph Gray |
| 20 | November 9, 2006 Letter from Vid Bhakar to Willem Schuurman, Hilary Preston, Douglas McSwane |

TABLE OF EXHIBITS