IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ADVANCEME, INC. | § | |
| | § | |
| **Plaintiff** | § | |
| | § | CIVIL ACTION NO. 6:05cv424 |
| vs. | § | |
| | § | |
| RAPIDPAY, LLC, BUSINESS | § | |
| CAPITAL CORPORATION, FIRST | § | |
| FUNDS LLC, MERCHANT MONEY | § | |
| TREE, INC., REACH FINANCIAL, | § | |
| LLC and FAST TRANSACT, INC. | § | |
| d/b/a SIMPLE CASH | § | |
| | § | |
| **Defendants,** | § | |

| | | |
|---|---|---|
| ADVANCEME, INC. | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:06cv082 |
| | § | |
| AMERIMERCHANT, LLC, | § | |
| | § | |
| **Defendant** | § | |

## MEMORANDUM OPINION AND ORDER

This claim construction opinion construes terms in U.S. Patent No. 6,941,281 ("the '281 patent"). Plaintiff AdvanceMe, Inc. ("AdvanceMe") asserts that Defendants RapidPay, LLC, Business Capital Corporation, First Funds LLC, Merchant Money Tree, Inc., Reach Financial, LLC, Fast Transact, LLC d/b/a Simple Cash, and Amerimerchant, LLC have infringed the '281 patent.

### The Patent

The '281 patent is entitled "Automated Payment" and relates to systems and processes for automated repayment of a loan by a merchant borrower via fees levied through an entity that

Dockets.Justia.com

processes payment transactions for the merchant. The systems and processes of the invention utilize consumer payment transactions with the merchant to allow the merchant to reduce the outstanding loan amount.

## Applicable Law

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id.* Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314-15.

2

Claims "must be read in view of the specification, of which they are a part." *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but

technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

The patent-in-suit also contains means-plus-function limitations that require construction. Where a claim limitation is expressed in "means plus function" language and does not recite definite structure in support of its function, the limitation is subject to 35 U.S.C. § 112, ¶ 6. *Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). In relevant part, 35 U.S.C. § 112, ¶ 6 mandates that "such a claim limitation 'be construed to cover the corresponding structure . . . described in the specification and equivalents thereof.'" *Id.* (citing 35 U.S.C. § 112, ¶ 6). Accordingly, when faced with means-plus-function limitations, courts "must turn to the written description of the patent to find the structure that corresponds to the means recited in the [limitations]." *Id.*

Construing a means-plus-function limitation involves multiple inquiries. "The first step in construing [a means-plus-function] limitation is a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). Once a court has determined the limitation's function, "the next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Id.* A "structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.*

4

Moreover, the focus of the "corresponding structure" inquiry is not merely whether a structure is capable of performing the recited function, but rather whether the corresponding structure is "clearly linked or associated with the [recited] function." *Id.*

### The Terms

The parties have agreed on the construction of several previously disputed terms, and the Court will construe the remaining disputed terms: "customer identifier," "obligation," "debit card," "smart card," "accumulating payments until a predetermined amount is reached,""periodically forwarding," "third party," "means for accepting a customer identifier as payment from the customer (accepting means)," "means for electronically forwarding information related to the payment to a computerized merchant processor (electronically forwarding means)," "means for receiving the information related to the payment from the merchant (receiving means)," and "means for forwarding a portion of the payment to the third party (portion forwarding means)."

*Customer Identifier*

Plaintiff proposes the construction, "any information submitted to a merchant or its designee for payment of goods or services." Defendant advances a construction of "unique identifying account number." However, Plaintiff argues that while an account number may serve as a customer identifier, one of ordinary skill in the art would clearly understand from reading the claims and the specification of the '281 patent that an account number is only one kind of identifying information that can be submitted to a merchant as payment for goods and services as recited in claims 1 and 10. Plaintiff discounts any attempts by Defendant to limit this term to a single specific embodiment disclosed in the '281 specification.

Defendant counters that the '281 specification consistently explains that the invention is

5

concerned with the use of unique identifying account numbers. Defendant points to Column 1, lines 31-32, in the '281 specification which provides several examples of "unique identifying account numbers" as "e.g., credit, debit, charge, payment, smart, etc. card numbers."

Indeed, the '281 specification notes that the payment information that is forwarded to the merchant processor "relates to a customer identifier" and "that identifier can be the account number associated with, for example, a debit card, a smart card, a credit card (e.g., a Visa or MasterCard card), a charge card (e.g., an American Express card), etc." Col. 1, lines 55-61. The '281 patent identifies card transactions as the basic starting point of the invention. The summary of the invention also emphasizes that the invention is based on transactions involving unique identifying account numbers, particularly card account numbers. *See* Col. 1, lines 17-25 and lines 29-33.

Because the '281 specification consistently refers to the use of account numbers, rather than just "any information," when explaining the loan repayment process, *see* Col. 2, lines 44-48, the Court finds Defendants to be correct that Plaintiff's construction is overly broad and is incompatible with the environment within which the invention operates. Thus, the Court adopts Defendant's construction and construes the term customer identifier as "unique identifying account number."

*Obligation*

Plaintiff advances a construction of the term "obligation" as "an amount owed by a merchant that is independent of any costs or fees arising out of the use of customer identifiers as payment." Defendants, on the other hand, originally asserted that "obligation" should be construed according to its ordinary meaning but then stated in their responsive briefing that the term should account for transactional costs and fees. Defendants argue that the term should exclude only certain enumerated fees and costs (*e.g.*, discount rate, interchange fees and network fees), but not other fees and costs

6

normally associated with the typical transaction processing environment. Thus, Defendants propose a construction of: "amount owed by merchant other than the processing fees, i.e., discount rate, interchange fee, and network fee."

The '281 specification describes a number of fees and costs that are usually incurred by a merchant, including merchant processor fees, discount rates or surcharges, interchange fees, network fees, card service fees, transaction fees, and card issuer fees. Col. 4, line 21 - Col. 5, line 3. However, the term "obligation," as used in the context of the '281 patent consistently refers to an amount owed by the merchant that is independent of any particular purchase and outside of any of the fees and/or costs normally imposed on the merchant for a typical processing transaction. The '281 specification provides an example of the kinds of fees that are incurred in a typical transaction processing environment:

> The merchant processor 300 thus pays the merchant 20 some amount less than what the merchant 20 would receive in the [typical transaction processing environment described in relation to FIGS. 1A and 1B]. . . . For example, carrying on with the example introduced above with reference to FIGS. 1A and 1B, instead of paying $98.10 to the merchant 20 on a $100 original card purchase, the merchant processor 30 might send $88.10 to the merchant 20 and the other $10.00 to the [payment receiver or third party].

*See* Col. 5, lines 29-37.

When read in the context of authorization and settlement of a customer payment for goods or services, it is clear from the illustrations that the "obligation" recited in the claims of the '281 patent does not include any of the fees or costs deducted for using the typical transaction processing environment, *i.e.*, the "overhead" amounts that are incurred as a result of merely handling the customer payment using a customer identifier, not just the discount rate, interchange fees and network fees as Defendants claim. To limit the "overhead" amounts exclusion to just those things

specifically enumerated in the '281 patent specification would amount to expanding the scope of the claim language beyond the restrictions fairly articulated in the '281 patent specification.

Plaintiff also directs the Court to the prosecution history of the '281 patent, and notes that during the prosecution, the Applicant articulated that "[t]he existence of the loan in the present invention is *independent of* and *unrelated to* the consummation of any particular purchase [by a customer]." '544 Patent File History, 1/20.99 Am. and Resp., p. 3. Defendants assert that this portion of the prosecution history can be ignored because it was made "during prosecution of a different patent and with respect to a different term in a different claim" Defs.' Resp. Claim Construction Br., p. 8. However, the prosecution history of a parent patent is part of the prosecution history of the child patent. *See Goldenberg v. Cytogen*, 373 F.3d 1158, 1167 (Fed. Cir. 2004) (holding that the prosecution history of the parent application is treated "as part of the instrinsic evidence" of the child application when construing claim terms). The '281 Patent is a continuation of the '544 Patent, and as Plaintiff points out, both patents contain identical disclosures. Thus, the statements made during the prosecution of the '544 Patent apply to the construction of "obligation" in the '281 Patent.

Accordingly, the Court construes the term "obligation" as "an amount owed by a merchant that is independent of any costs or fees arising out of the use of customer identifiers as payment."

*Debit card*

Both parties agree that this term should be construed as "a card linked to a deposit account." However, Defendants propose a construction that includes the phrase "that can be used to make purchases." Without this phrase, Defendants argue that "debit card" could be read illogically to include such things as ATM cards that are linked to deposit account but can only be used to

8

withdraw cash from those linked deposit accounts, and not to make purchases at a merchant that are processed using the system and method of the invention.

Plaintiffs assert that including the phrase "that can be used to make purchases" to the construction of debit card would make the "as payment" portions of claims 1 and 10 superfluous. Plaintiff is correct that Defendants' construction referencing "used to make purchases" is superfluous because the use of the customer identifier to make payment is already specified. *See, e.g., Elekta Instrument S.A. v. O.U.R. Scientific Intern., Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000); *Brainy Ideas, Inc. v. Media Group*, 169 F. Supp.2d 361, 363 n.2 (E.D. Pa. 2001).

Defendants' argument that otherwise the card could be an ATM card ignores the context of usage of the term in the claim. The "debit card" is already limited by the claim to use to make purchases. Moreover, the claim is directed to structure. To add the phrase "that can be used to make purchases" goes beyond mere structure and makes a statement of intended use, which is not a structural limitation.

Thus, the Court declines to include the additional phrase proposed by Defendants and construes the term "debit card" as "a card linked to a deposit account."

*Smart card*

Again, the parties propose similar constructions except that Defendants seek to impose an additional limiting phrase. Plaintiff proposes the construction, "a card that contains an integrated circuit such as a microprocessor or a memory," while Defendants advance the construction, "card containing an integrated circuit, such as a microprocessor or a memory, that can be used to make purchases."

This is the same issue as presented by "debit card," although the term "smart," unlike the

9

term "debit" does connote a structural aspect. Likewise, the Court declines to include the additional phrase proposed by Defendants and construes the term "smart card" as "a card that contains an integrated circuit such as a microprocessor or a memory."

*Accumulating the payments until a predetermined amount is reached*

Plaintiff asserts that the phrase "accumulating the payments until a predetermined amount is reached" should be construed as "holding a payment or payments until a predetermined monetary amount is reached." Defendants agree with the ending of Plaintiff's proposed construction ". . . until a predetermined monetary amount is reached." However, Defendants assert that the construction should start with "accumulating the payments . . ." rather than "holding a payment or payments . . ." as proposed by Plaintiff.

The claim term itself expressly uses "payments" in the plural. This requires that there must be more than one payment, and that more than one payment, i.e., at least two payments, have to be accumulated. Thus, Defendants are correct that more than a single payment must be held, and the Court construes the phrase "accumulating the payments until a predetermined amount is reached" as "accumulating the payments until a predetermine monetary amount is reached."

*Periodically forwarding*

Plaintiff advances a construction for "periodically forwarding" of "forwarding at intervals defined by time or predetermined amount." Plaintiff points to two specific situations described in the illustrated embodiments in the '281 specification:

> In another embodiment, the merchant processor may periodically forward at least a portion of the payment to the lender or designee. For example, the merchant processor may forward payment amounts every month, or based on an amount such as after each one thousand dollars ($1000) worth of transactions. Col. 2, lines 20-25.

10

Also, as another example, the merchant processor 300 can periodically forward payment to the lender 60, such as upon every other payment received from the card issuer 50. Col. 5, lines 45-48.

Plaintiff interprets these two statements to require that "periodically forwarding" occurs either: (1) after a period of time has elapsed (*e.g.*, every month), or (2) after an event has occurred (*e.g.*, after an amount has been reached or after a certain number of payments have been received). According to Plaintiff, the proper construction of the term "periodically forwarding" must therefore encompass both of these scenarios.

Defendants, however, argue that "periodically forwarding" should be construed as "forwarding at an interval other than upon every payment," according to its ordinary and customary meaning. Defendants argue that Plaintiff's proposed construction violates the principle of claim differentiation in that dependant Claims 8 and 17 refer to accumulation to a predetermined amount, but under Plaintiff's construction, Claims 9 and 18 will improperly include the scope of Claims 8 and 17. Further, Defendants argue that Plaintiff's construction is premised on an incomplete excerpt from the '281 specification.

The Court finds that Plaintiff improperly seeks to limit the claim language to only those situations described in the above-mentioned illustrated embodiments. The claim language is broader in scope. The independent claims are specific that forwarding is conducted contemporaneously with each payment. The dependent claims' use of the "periodically" limitation only distinguishes that forwarding is not done contemporaneously with each payment. Thus, the Court finds Defendants' construction to be correct and construes the term "periodically forwarding" as "forwarding at an interval other than upon every payment."

*Third party*

11

Plaintiff sets forth a construction for the term "third party" of "a payment receiver, i.e., a party that is neither the merchant or merchant processor." Defendants, on the other hand, argue for the construction, "party other than the merchant." The main distinction between Defendants' and Plaintiff's proposed construction is that Plaintiff seeks to exclude merchant processors from the definition of "third party," whereas Defendants' position is that the "third party" can be the merchant processor itself.

The term "third party" is expressly recited in the second element of claim 10 as follows: "means for forwarding a portion of the payment to the third party to reduce the obligation." Col. 8, lines 19-20. In claim 10, the portion of the payment that would otherwise go to the merchant from the merchant processor is instead sent to a separate party that is the payment receiver, i.e., the "third party." The "third party," as this claim language indicates, is that party which receives the portion of the payment that is forwarded by the merchant processor. The payment receiver is referred to as a "third party" in claim 10 because the payment receiver is a party other than the merchant or merchant processor.

The '281 patent specification describes the environment of the invention as the purchase transaction diagramed in Figs. 1A and 1B. Both the merchant and the merchant processor are shown. The automated repayment system of the invention is shown in Fig. 1C, which illustrates an additional party (lender 60) that receives a payment from the merchant processor. Because the merchant processor is identified as a principal, it cannot also be a third party to the same transaction. The claim language finds support only in construing "third party" to be an entity that is not the merchant or the merchant processor.

Accordingly, the Court adopts Plaintiff's construction and construes the term "third party"

to mean a "payment receiver, i.e., a party that is neither the merchant or the merchant processor."

*Means (at a merchant) for accepting a customer identifier as payment from the customer and means for electronically forwarding information related to the payment to a computerized merchant processor*

The parties have addressed this single "means-plus-function" claim limitation as two separate limitations, one being "means for accepting" and the other being "means for forwarding." However, the claim, as written, clearly sets forth dual functions and requires the corresponding structure to perform both. *See Cardiac Pacemakers Inc. v. St. Jude Med. Inc.*, 296 F.3d 1106 (Fed. Cir. 2002).

Also, both parties advance a construction that includes a telephone and a World Wide Web page as alternative corresponding structures. Initially, it is to be noted that the claim clearly specifies that the structure is "at a merchant." The '281 patent specification only identifies that a modality for a customer to provide a customer identifier as payment to a merchant can be use of a telephone or use of the World Wide Web. These modalities are alternatives to a customer being "at a merchant location," such as a retail establishment. *See* Col. 2, lines 7-11 and Col. 3, lines 20-27. Therefore, a telephone and a World Wide Web page are not linked as structure "at a merchant" that performs the customer identifier accepting function specified in the claim, nor is such structure linked to performing the "forwarding" function.

The Plaintiff identifies corresponding structure as being consumer data input device 316 and input/output device 322 as the "accepting means" and "forwarding means," respectively. Defendants contend that the "accepting means" is a keyboard or magnetic card reader but no structure is disclosed for the "forwarding means." According to Defendants, the absence of structure is because a computer, properly configured software, and a communications device are required to perform the forwarding function but the '281 patent specification fails to provide an algorithm according to

13

which software performs the forwarding function. *See* Defs.' Br. at 23-28.

In support of their position, Defendants rely upon *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339 (Fed. Cir. 1999) and *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005). According to Defendants, the corresponding structure cannot be just a general purpose computer alone but must also include the algorithm being executed in realization of the specified function. Plaintiff sidesteps *WMS Gaming* and *Harris* by contending that the function is not computer-implemented. Rather, according to Plaintiff's view, the "forwarding" function simply requires a transmission of the payment-related information, which function is adequately accomplished by just the modem. Although the parties purport to have "agreed" as to the function, they have staked out positions as to the corresponding structure based on differing views of the "forwarding" function. Plaintiff contends it is simply a transfer of data between the merchant location and the merchant processor, whereas Defendants consider it to involve a complex, algorithmic processing operation.

The parties, however, do agree that any corresponding structure must be clearly linked to the claimed function by the '281 patent specification. *See* Pl.'s Br. at 9; Defs.' Br. at 30. The parties also agree that the diagram of Fig. 3B illustrates the structure that is disclosed as being "at a merchant." The structure of Fig. 3B is further identified as being in accordance with Verifone merchant-location equipment. *See* Col. 6, lines 57-59. Moreover, the '281 patent specification reiterates the linking of Verifone equipment to the accepting and forwarding functions in the Summary of the Invention. *See* Col. 2, lines 31-43. Neither of the parties disputed at oral argument that Verifone merchant-location equipment includes a keypad, magnetic card reader, processor, memory and modem. All of these components are shown in Fig. 3B. Also, such equipment would

14

be understood by one skilled in the art to include the necessary software algorithms for execution by a processor in conducting the necessary point-of-sale operations attendant accepting a customer identifier and forwarding payment information.

The "forwarding" function is with respect to "information related to the payment" from the customer. The '281 patent specification describes the equipment of Fig. 3B as including a cash register device 318, which permits a sales clerk to enter the amount of the customer purchase and "possibly other related information." *See* Col. 6, lines 34-39. The description continues with an explanation that the transaction data entered through the keypad/card reader and the cash register may be stored in memory along with merchant data including information identifying, for example, the time or location of the sale. *See* Col. 6, lines 43-49. Throughout the description of Fig. 3B in relation to the "information related to the payment," the '281 patent specification does not mention the I/O modem 322 and instead focuses on the processor and memory elements of Fig. 3B. Thus, the '281 patent specification does not link the modem 322 standing alone to "information related to the payment."

Because the processor 312 is part of the corresponding structure linked to forwarding information related to the payment, in accordance with *WMS Gaming* and *Harris*, any disclosed algorithm is necessarily part of the corresponding structure. Defendants contend that there is no algorithm disclosed. However, the '281 patent specification identifies Verifone merchant-location equipment, which was generally available and is identified in the '281 patent as including all the structure, including software to be executed by the processor, for implementing the accepting and forwarding functions. This is a description of sufficient disclosure to one skilled in the art. *See Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374 (Fed. Cir. 1999).

The Court concludes therefore that the corresponding structure "at a merchant" linked by the '281 patent specification to the accepting and forwarding functions is a combination of processor 312, memory 320, modem 322, and a keypad or magnetic card reader 316, together with software executing an algorithm as implemented by Verifone merchant-location equipment available as of the July 9, 1997, filing date of the parent application, serial no. 08/890,398. Consequently, the limitation of "at a merchant, means for accepting a customer identifier as payment from the customer and for electronically forwarding information related to the payment to a computerized merchant processor" covers a combination of processor 312, memory 320, modem 322, and a keypad or magnetic card reader 316 together with software executing an algorithm as implemented by Verifone merchant-location equipment available as of the July 9, 1997 filing date of the parent application, serial no. 08/890,398, and equivalents thereof.

*Means for receiving the information related to the payment from the merchant*

The parties agree that the function of the "receiving means" is "receiving the information related to the payment from the merchant." However, Plaintiffs claim that the corresponding structure for the "receiving means" is "input/output device 306 or telephone," while Defendants argue that the corresponding structure is a combination of a computer, software, and a physical communications device. However, Defendants claim that the specification fails to identify any software.

The function is only that of "receiving," which is separate from the functions of authorizing and settling. The '281 patent speaks in terms of an authorization request going to a merchant processor electronically by transmission through the telephone system or other network prior to authorization. *See* Col. 3, lines 31-36. The authorization based on the received information involves

processing of the information and thus stands apart from the receiving of the information.

The structure that is clearly linked to the receiving function is a modem. Plaintiff's construction is overly generalized and ignores that the patentee specifically linked the particular modem I/O device to performance of the receiving function. The I/O device disclosed is one for communications between computers over a telephone line or a network. Thus, the device 306 is an interface for communication between computers for both input and output. Also, there is no linking of the use of a telephone to communication between the merchant 20 and the merchant processor 300.

Defendants bootstrap their argument by positing that modem driver software is required. Defendants assert that the receiving means is necessarily computer-implemented and software must be included as part of the disclosure of corresponding structure. Defendants then advance that argument into an implicit construction of the receiving function as being part of the functionality referenced as being performed by execution of software on processor 300.

Defendant's position is without merit. A software driver merely provides the functionality of converting more general I/O instructions of a computer's operating system to messages of a type that the peripheral device can understand. A modem has a particular chipset that implements the modulation and demodulation functions. In order for the modem to transmit data, the modem chipset must be appropriately controlled. This control functionality is outside the recited receiving function. The forwarded information is received following demodulation of the transmission signal to extract the original data signals containing the information.

Thus, the Court construes the corresponding structure for the "receiving means" to be the modem 306.

17

*Means for forwarding a portion of the payment to the third party to reduce the obligation*

Again, the parties indicate that they agree as to the function of the "portion forwarding means" other than the term "third party." However, their dispute as to the corresponding structure disclosed in the '281 patent specification derives from divergent views as to the scope of that function. Plaintiff advances a proposed construction that the corresponding structure is simply I/O device 306 in Fig. 3A. Consistent with their argument as to the "payment forwarding means," Defendants maintain that the forwarding function is computer-implemented but no algorithm is disclosed according to which software performs the function. According to Defendants, without such an algorithm, there is insufficient structure disclosed and the claim is invalid for indefiniteness.

First, the portion forwarding means is specified as being at the computerized merchant processor. The merchant processor 300 of Fig. 3A is thus linked to the function. Second, the claim specifies that "a portion of the payment" is forwarded to the third party. None of the preceding claim limitations provides "a portion of the payment." Therefore, the portion forwarding means necessarily involves derivation of "a portion of the payment." The I/O device 306, which is disclosed as a modem, is not linked to a derivation of "a portion of the payment." The modem 306 is linked only to the communication with the merchant 20 or a third party lender. Col. 6, lines 60-63; Col. 5, lines 53-58. The '281 patent specification links the broader functionality of the merchant processor to processor 302, memory 304, modem 306, merchant accounts database and bus 310, which are described as performing "all of the functionality described herein." Col. 5, lines 58-61. Such functionality necessarily includes forwarding a portion of the payment to a third party lender.

The '281 patent specification describes the environment of the invention as a purchase transaction and uses an example of a $100 customer purchase. *See* Col. 4, line 44 to Col. 5, line 3.

The description provides specifics of payment authorization and settlement. Defendants agree that the '281 patent specification reasonably describes the algorithm according to which software operates to perform the authorizing and settling functions recited in the claim. *See* Defs.' Br. at 34-35. In relation to the forwarding of a portion of the customer payment to a third party lender, the '281 patent specification describes in the context of the $100 customer purchase example the derivation of a portion of the payment that is sent to the lender. *See* Col. 5, lines 21-37. In that description, an algorithm is set forth in which the $98.10 payment amount that exists after settlement of the merchant processor fees is applied has a $10.00 amount subtracted from it that is sent to the lender. This description in the '281 patent specification also reasonably describes the algorithm according to which software operates to perform the function of "forwarding a portion of the payment to the third party."

The Court concludes therefore that the corresponding structure linked by the '281 patent specification to the forwarding a portion of the payment function is a combination of processor 302, memory 304, and modem 306 together with software executing an algorithm as described at column 5, lines 21-37. Consequently, the limitation of "means for forwarding a portion of the payment to the third party to reduce the obligation" covers a combination of processor 302, memory 304, and modem 306, together with software executing an algorithm as described at column 5, lines 21-37, and equivalents thereof.

### Conclusion

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's claim interpretations are set forth in a table attached to this opinion.

So **ORDERED** and **SIGNED** this 21st day of December, 2006.

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

ADVANCEME, INC. V. RAPIDPAY LLC ET AL. - CIVIL CASE NO. 6:05-cv-424 (LED)
ADVANCEME, INC. V. AMERIMERCHANT - CIVIL CASE NO. 6:06-cv-82 (LED)

JOINT CLAIM CONSTRUCTION CHART PURSUANT TO P.R. 4-5(D)
DEFINITIONS ONLY – PAGES 1-11
MEANS-PLUS-FUNCTION CLAIMS ONLY – PAGES 12-19

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| 1. A method for automated payment, comprising: at a merchant, accepting a **customer identifier** as payment from the customer and electronically forwarding information related to the payment to a computerized merchant processor; at the computerized merchant processor, acquiring the information related to the payment from the merchant, authorizing and settling the payment, and forwarding at least a portion of the payment to a computerized payment receiver as payment of at least a portion of an **obligation** made by the merchant; and at the computerized payment receiver, receiving the portion of the payment forwarded by the computerized merchant processor and applying that portion to the outstanding **obligation** made by the merchant to reduce such **obligation**. | customer identifier  (Recited in Claims 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15 and 16) | Any information submitted to a merchant or its designee for payment of goods or services | Unique identifying account number | Unique identifying account number |
| | electronically forwarding  (Recited in Claims 1 and 10) | AGREED | AGREED | Sending through the use of electronics, including, for example, a telephone system or other electronic network |
| | computerized merchant processor  (Recited in Claims 1 and 10) | AGREED | AGREED | A computer-equipped entity or combination of entities that acquires or processes merchant transactions. |
| | acquiring the information related to the payment  (Recited in Claim 1) | AGREED | AGREED | Receiving the information related to the payment. |

1

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| | authorizing [the payment] (Recited Claims 1 and 10) | AGREED | AGREED | Obtaining permission for using the customer identifier for the transaction between the customer and the merchant. |
| | settling the payment (Recited in Claims 1 and 10) | AGREED | AGREED | The part of a transaction when an amount is transferred or credited to the merchant processor |
| | computerized payment receiver (Recited in Claim 1) | AGREED | AGREED | Account or entity capable of receiving payments or credits electronically. |
| | obligation (Recited in Claims 1, 10 and 19) | An amount owed by a merchant that is independent of any costs or fees arising out of the use of customer identifiers as payment | Amount owed by merchant other than processing fees, i.e., discount rate, interchange fee, and network fee | An amount owed by a merchant that is independent of any costs or fees arising out of the use of customer identifiers as payment |

2

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's, Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| | applying that portion to the outstanding obligation made by the merchant to reduce such obligation (Recited in Claim 1) | AGREED | AGREED | Using the portion that was received from the merchant processor to reduce the obligation owed by the merchant. |
| 2. The method of claim 1 wherein the accepting step comprises accepting a credit card number as the customer identifier. | credit card (Recited in Claims 2 and 11) | AGREED | AGREED | A card that entitles a person or entity to make purchases on credit. |
| | customer identifier (Recited in Claims 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15 and 16) | Any information submitted to a merchant or its designee for payment of goods or services | Unique identifying account number | Unique identifying account number |
| 3. The method of claim 1 wherein the accepting step comprises accepting a debit card number as the customer identifier. | debit card (Recited in Claims 3 and 12) | A card linked to a deposit account | A card linked to a deposit account that can be used to make purchases | A card linked to a deposit account |
| | customer identifier (Recited in Claims 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15 and 16) | Any information submitted to a merchant or its designee for payment of goods or services | Unique identifying account number | Unique identifying account number |

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| 4. The method of claim 1 wherein the accepting step comprises accepting a **smart card** number as the **customer identifier**. | smart card (Claims 4 and 13) | A card that contains an integrated circuit such as a memory | Card containing an integrated circuit, such as a microprocessor or a memory, that can be used to make purchases | A card that contains an integrated circuit such as a microprocessor or a memory |
| | customer identifier (Recited in Claims 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15 and 16) | Any information submitted to a merchant or its designee for payment of goods or services | Unique identifying account number | Unique identifying account number |
| 5. The method of claim 1 wherein the accepting step comprises accepting a charge card number as the **customer identifier**. | charge card (Recited in Claims 5 and 14) | AGREED | AGREED | A card that requires full payment every billing cycle. |
| | customer identifier (Recited in Claims 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15 and 16) | Any information submitted to a merchant or its designee for payment of goods or services | Unique identifying account number | Unique identifying account number |
| 6. The method of claim 1 wherein the accepting step comprises accepting the **customer identifier** at a merchant location. | customer identifier (Recited in Claims 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15 and 16) | Any information submitted to a merchant or its designee for payment of goods or services | Unique identifying account number | Unique identifying account number |

4

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| 7. The method of claim 1 wherein the accepting step comprises electronically accepting the **customer identifier**. | electronically accepting the customer identifier (Recited in Claims 7 and 16) | AGREED | AGREED | Accepting the customer identifier using an electronic device. |
|  | customer identifier (Recited in Claims 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15 and 16) | Any information submitted to a merchant or its designee for payment of goods or services | Unique identifying account number | Unique identifying account number |
| 8. The method of claim 1 wherein the steps performed at the merchant processor further comprise **accumulating the payments until a predetermined amount is reached** and then forwarding at least a portion of the accumulated payments to the payment receiver. | accumulating the payments until a predetermined amount is reached (Recited in Claims 8 and 17) | Holding a payment or payments until a predetermined monetary amount is reached | Accumulating the payments until a predetermined monetary amount is reached | Accumulating the payments until a predetermined amount is reached |
| 9. The method of claim 1 wherein the steps performed at the merchant processor comprise **periodically forwarding** at least a portion of the payment to the payment receiver. | periodically forwarding (Recited in Claims 9 and 18) | Forwarding at intervals defined by time or predetermined amount | Forwarding at an interval other than upon every payment | Forwarding at an interval other than upon every payment |

5

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| 10. A system for automated payment of an **obligation** made by a merchant, comprising; at a merchant, means for accepting a **customer identifier** as payment from the customer and for electronically forwarding information related to the payment to a computerized merchant processor, wherein the merchant associated with the payment has an outstanding **obligation** to a **third party**; and at the computerized merchant processor, means for receiving the information related to the payment from the merchant, means for authorizing and settling the payment, and means for forwarding a portion of the payment to the **third party** to reduce the **obligation**. | obligation (Recited in Claims 1, 10 and 19) | An amount owed by a merchant that is independent of any costs or fees arising out of the use of customer identifiers as payment | Amount owed by merchant other than processing fees, i.e., discount rate, interchange fee, and network fee | An amount owed by a merchant that is independent of any costs or fees arising out of the use of customer identifiers as payment |
| | customer identifier (Recited in Claims 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15 and 16) | Any information submitted to a merchant or its designee for payment of goods or services | Unique identifying account number | Unique identifying account number |
| | electronically forwarding (Recited in Claims 1 and 10) | AGREED | AGREED | Sending through the use of electronics, including, for example, a telephone system or other electronic network |
| | computerized merchant processor third party (Recited in Claims 10, 17, 18 and 19) | Payment receiver, i.e., a party that is neither the merchant or the merchant processor | Party other than the merchant | Payment receiver, i.e., a party that is neither the merchant or the merchant processor |
| | computerized merchant processor (Recited in Claims 1 and 10) | AGREED | AGREED | A computer-equipped entity or combination of entities that acquires or processes merchant transactions. |

6

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's, Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| | authorizing [the payment]<br><br>(Recited 1 and 10) | AGREED | AGREED | Obtaining permission for using the customer identifier for the transaction between the customer and the merchant. |
| | settling the payment<br><br>(Recited in Claims 1 and 10) | AGREED | AGREED | The part of a transaction when an amount is transferred or credited to the merchant processor |
| 11. The system of claim 10 wherein the accepting means comprises means for accepting a credit card number as the **customer identifier.** | credit card<br><br>(Recited in Claims 2 and 11) | AGREED | AGREED | A card that entitles a person or entity to make purchases on credit. |
| | customer identifier<br><br>(Recited in Claims 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15 and 16) | Any information submitted to a merchant or its designee for payment of goods or services | Unique identifying account number | Unique identifying account number |

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| 12. The system of claim 10 wherein the accepting means comprises means for accepting a **debit card** number as the **customer identifier.** | debit card<br><br>(Recited in Claims 3 and 12) | A card linked to a deposit account | A card linked to a deposit account that can be used to make purchases | A card linked to a deposit account |
| | customer identifier<br><br>(Recited in Claims 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15 and 16) | Any information submitted to a merchant or its designee for payment of goods or services | Unique identifying account number | Unique identifying account number |
| 13. The system of claim 10 wherein the accepting means comprises means for accepting a **smart card** number as the **customer identifier.** | smart card<br><br>(Claims 4 and 13) | A card that contains an integrated circuit such as a microprocessor or a memory | Card containing an integrated circuit, such as a microprocessor or a memory, that can be used to make purchases | A card that contains an integrated circuit such as a microprocessor or a memory |
| | customer identifier<br><br>(Recited in Claims 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15 and 16) | Any information submitted to a merchant or its designee for payment of goods or services | Unique identifying account number | Unique identifying account number |

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's Reach Financial's First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| 14. The system of claim 10 wherein the accepting means comprises means for accepting a charge card number as the **customer identifier**. | charge card<br><br>(Recited in Claims 5 and 14) | AGREED | AGREED | A card that requires full payment every billing cycle. |
| | customer identifier<br><br>(Recited in Claims 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15 and 16) | Any information submitted to a merchant or its designee for payment of goods or services | Unique identifying account number | Unique identifying account number |
| 15. The system of claim 10 wherein the accepting means comprises means for accepting the **customer identifier** at a merchant location. | customer identifier | Any information submitted to a merchant or its designee for payment of goods or services | Unique identifying account number | Unique identifying account number |
| 16. The system of claim 10 wherein the accepting means comprises means for electronically accepting the **customer identifier**. | electronically accepting the customer identifier<br><br>(Recited in Claims 7 and 16) | AGREED | AGREED | Accepting the customer identifier using an electronic device. |
| | customer identifier<br><br>(Recited in Claims 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15 and 16) | Any information submitted to a merchant or its designee for payment of goods or services | Unique identifying account number | Unique identifying account number |

9

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's Reach Financial's, First Funds', and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| 17. The system of claim 10 wherein the means at the merchant processor further comprise means for **accumulating the payments until a predetermined amount is reached** and means for forwarding at least a portion of the accumulated payments to the **third party**. | accumulating the payments until a predetermined amount is reached (Recited in Claims 8 and 17) | Holding a payment or payments until a predetermined monetary amount is reached | Accumulating the payments until a predetermined monetary amount is reached | Accumulating the payments until a predetermined monetary amount is reached |
| | third party (Recited in Claims 10, 17, 18 and 19) | Payment receiver, i.e., a party that is neither the merchant or the merchant processor | Party other than the merchant | Payment receiver, i.e., a party that is neither the merchant or the merchant processor |
| 18. The system of claim 10 wherein the forwarding means at the merchant processor comprises means for **periodically forwarding** at least a portion of the payment to the **third party**. | periodically forwarding (Recited in Claims 9 and 18) | Forwarding at intervals defined by time or predetermined amount | Forwarding at an interval other than upon every payment | Forwarding at an interval other than upon every payment |
| | third party (Recited in Claims 10, 17, 18 and 19) | Payment receiver, i.e., a party that is neither the merchant or the merchant processor | Party other than the merchant | Payment receiver, i.e., a party that is neither the merchant or the merchant processor |

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's, Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| 19. The system of claim 10 wherein the forwarding means at the merchant processor comprises means for forwarding to the **third party** an amount that is a percentage of the **obligation**. | third party (Recited in Claims 10, 17, 18 and 19) | Payment receiver, i.e., a party that is neither the merchant or the merchant processor | Party other than the merchant | Payment receiver, i.e., a party that is neither the merchant or the merchant processor |
| | a percentage of the obligation (Recited in Claim 19) | AGREED | AGREED | Any percentage of the obligation. |
| | obligation (Recited in Claims 1, 10 and 19) | An amount owed by a merchant that is independent of any costs or fees arising out of the use of customer identifiers as payment | Amount owed by merchant other than processing fees, i.e., discount rate, interchange fee, and network fee | An amount owed by a merchant that is independent of any costs or fees arising out of the use of customer identifiers as payment |

11

JOINT CLAIMS CONSTRUCTION CHART PURSUANT TO P.R. 4-5(D) FOR MEANS-PLUS-FUNCTION CLAIMS ONLY

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| 10. A system for automated payment of an obligation made by a merchant, comprising: at a merchant, **means for accepting a customer identifier as payment from the customer and for electronically forwarding information related to the payment to a computerized merchant processor,** wherein the merchant associated with the payment has an outstanding obligation to a third party; and at the computerized merchant processor, **means for receiving the information related to the payment from the merchant,** means for authorizing and settling the payment, and **means for forwarding a portion of the payment to the third party to reduce the obligation.** | means for accepting a customer identifier from the customer | **Function**: AGREED | **Function**: AGREED | **Function**: accepting a customer identifier from the customer |
| | (Recited in Claim 10) | **Structure:** consumer data input device 316 or telephone or computer or World Wide Web page | **Structure:** keyboard, magnetic card reader, telephone, World Wide Web page, physical delivery, and U.S. Postal Service (or other carrier) | **Structure:** a combination of processor 312, memory 320, modem 322, and a keypad or magnetic card reader 316 together with software executing an algorithm as implemented by Verifone merchant-location equipment available as of the July 9, 1997 filing date of the parent application, serial no. 08/890,398, and equivalents thereof |
| | means for electronically forwarding information related to the payment to a computerized merchant processor | **Function**: AGREED | **Function**: AGREED | **Function:** electronically forwarding information related to the payment to a computerized merchant processor |
| | (Recited in Claim 10) | | | |

12

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's, Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| | | **Structure:** input/output device 322 | **Structure:** None disclosed | **Structure:** a combination of processor 312, memory 320, modem 322, and a keypad or magnetic card reader 316 together with software executing an algorithm as implemented by Verifone merchant-location equipment available as of the July 9, 1997 filing date of the parent application, serial no. 08/890,398, and equivalents thereof |

13

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's, Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| | means for receiving the information related to the payment from the merchant<br><br>(Recited in Claim 10) | **Function:** AGREED<br><br>**Structure:**<br>input/output device 306 or telephone | **Function:** AGREED<br><br>**Structure:**<br>None disclosed | **Function:** receiving the information related to the payment from the merchant<br><br>**Structure:**<br><br>modem |
| | means for authorizing the payment<br><br>(Recited in Claim 10) | **Function:** AGREED<br><br>**Structure:** AGREED | **Function:** AGREED<br><br>**Structure:** AGREED | **Function:** authorizing the payment<br><br>**Structure:**<br>one or more computers and/or dedicated electronics programmed or configured to route an authorization request to a card issuer and receive approval of the authorization from the card issuer |

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| | means for settling the payment (Recited in Claim 10) | **Function:** AGREED | **Function:** AGREED | **Function:** settling the payment |
| | | **Structure:** AGREED | **Structure:** AGREED | **Structure:** one or more computers and/or dedicated electronics programmed or configured to submit the amount of the customer's purchase to the card issuer and receive or be credited some amount by the card issuer |
| | means for forwarding a portion of the payment to the third party. (Recited in Claim 10) | **Function:** AGREED | **Function:** AGREED | **Function:** forwarding a portion of the payment to the third party |
| | | **Structure:** input/output device 306 | **Structure:** None disclosed | **Structure:** a combination of processor 302, memory 304 and modem 306 together with software executing an algorithm as described at column 5, lines 21-37, and equivalents thereof |

15

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| 11. The system of claim 10 wherein the accepting means comprises **means for accepting a credit card number as the customer identifier.** | means for accepting a credit card number as the customer identifier (Recited in Claim 11) | **Function:** AGREED  **Structure:** consumer data input device 316 or telephone or computer or World Wide Web page | **Function:** AGREED  **Structure:** Keyboard, magnetic card reader, telephone, World Wide Web page, physical delivery, and U.S. Postal Service (or other carrier) | **Function:** accepting a credit card number as the customer identifier  **Structure:** a combination of processor 312, memory 320, modem 322, and a keypad or magnetic card reader 316 together with software executing an algorithm as implemented by Verifone merchant-location equipment available as of the July 9, 1997 filing date of the parent application, serial no. 08/890,398, and equivalents thereof |
| 12. The system of claim 10 wherein the accepting means comprises **means for accepting a debit card number as the customer identifier.** | means for accepting a debit card number as the customer identifier (Recited in Claim 12) | **Function:** AGREED | **Function:** AGREED | **Function:** accepting a debit card number as the customer identifier |

16

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's, Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| | | **Structure:** consumer data input device 316 or telephone or computer or World Wide Web page | **Structure:** Keyboard, magnetic card reader, telephone, World Wide Web page, physical delivery, and U.S. Postal Service (or other carrier) | **Structure:** a combination of processor 312, memory 320, modem 322, and a keypad or magnetic card reader 316 together with software executing an algorithm as implemented by Verifone merchant-location equipment available as of the July 9, 1997 filing date of the parent application, serial no. 08/890,398, and equivalents thereof |

17

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| 13. The system of claim 10 wherein the accepting means comprises **means for** accepting a smart card number as the customer identifier. | means for accepting a smart card number as the customer identifier<br><br>(Recited in Claim 13) | **Function:** AGREED<br><br>**Structure:**<br>consumer data input device 316 or telephone or computer or World Wide Web page | **Function:** AGREED<br><br>**Structure:**<br>keyboard, magnetic card reader, telephone, World Wide Web page, physical delivery, and U.S. Postal Service (or other carrier) | **Function:** accepting a smart card number as the customer identifier<br><br>**Structure:**<br>a combination of processor 312, memory 320, modem 322, and a keypad or magnetic card reader 316 together with software executing an algorithm as implemented by Verifone merchant-location equipment available as of the July 9, 1997 filing date of the parent application, serial no. 08/890,398, and equivalents thereof |
| 14. The system of claim 10 wherein the accepting means comprises **means for** accepting a charge card number as the customer identifier. | means for accepting a charge card number as the customer identifier<br><br>(Recited in Claim 14) | **Function:** AGREED | **Function:** AGREED | **Function:** accepting a charge card number as the customer identifier customer identifier |

18

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's, Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| | | **Structure:** consumer data input device 316 or telephone or computer or World Wide Web page | **Structure:** keyboard, magnetic card reader, telephone, World Wide Web page, physical delivery, and U.S. Postal Service (or other carrier) | **Structure:** a combination of processor 312, memory 320, modem 322, and a keypad or magnetic card reader 316 together with software executing an algorithm as implemented by Verifone merchant-location equipment available as of the July 9, 1997 filing date of the parent application, serial no. 08/890,398, and equivalents thereof |
| 15. The system of claim 10 wherein the accepting means comprises **means for accepting the customer identifier at a merchant location.** | means for accepting the customer identifier at a merchant location<br><br>(Recited in Claim 15) | **Function: AGREED** | **Function: AGREED** | **Function:** accepting the customer identifier at a merchant location |

19

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's, Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| | | **Structure:** consumer data input device 316 or telephone or computer or World Wide Web page | **Structure:** keyboard, magnetic card reader, telephone, World Wide Web page, physical delivery, and U.S. Postal Service (or other carrier) | **Structure:** a combination of processor 312, memory 320, modem 322, and a keypad or magnetic card reader 316 together with software executing an algorithm as implemented by Verifone merchant-location equipment available as of the July 9, 1997 filing date of the parent application, serial no. 08/890,398, and equivalents thereof |
| 16. The system of claim 10 wherein the accepting means comprises **means for electronically accepting the customer identifier.** | means for electronically accepting the customer identifier (Recited in Claim 16) | **Function:** AGREED | **Function:** AGREED | **Function:** accepting the customer identifier at a merchant location |

20

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| | | **Structure:** consumer data input device 316 or telephone or computer or World Wide Web page | **Structure:** keyboard, magnetic card reader, telephone, World Wide Web page | **Structure:** a combination of processor 312, memory 320, modem 322, and a keypad or magnetic card reader 316 together with software executing an algorithm as implemented by Verifone merchant-location equipment available as of the July 9, 1997 filing date of the parent application, serial no. 08/890,398, and equivalents thereof |
| 17. The system of claim 10 wherein the means at the merchant processor further comprise means for accumulating the payments until a predetermined amount is reached and **means for forwarding at least a portion of the accumulated payments to the third party.** | means for accumulating the payments until a predetermined amount is reached (Recited in Claim 17) | **Function:** AGREED | **Function:** AGREED | **Function:** accumulating the payments until a predetermined amount is reached |

21

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's Reach Financial's, First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| | | **Structure:** AGREED | **Structure:** AGREED | **Structure:** one or more computers and/or dedicated electronics programmed or configured to accumulate payments it receives until a predetermined amount is reached |
| | means for forwarding at least a portion of the accumulated payments to the third party (Recited in Claim 17) | **Function:** AGREED | **Function:** AGREED | **Function:** forwarding at least a portion of the accumulated payments to the third party |
| | | **Structure:** input/output device 306 | **Structure:** None disclosed | **Structure:** a combination of processor 302, memory 304 and modem 306 together with software executing an algorithm as described at column 5, lines 21-37, and equivalents thereof |

22

| Claim Number and Claim Language | Claim Term | AdvanceMe's Proposed Construction | Merchant Money Tree's Reach Financial's First Funds' and AmeriMerchant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| 18. The system of claim 10 wherein the merchant processor comprises **means for periodically forwarding at least a portion of the payment to the third party.** | means for periodically forwarding at least a portion of the payment to the third party (Recited in Claim 18) | **Function:** AGREED **Structure:** input/output device 306 | **Function:** AGREED **Structure:** None disclosed | **Function:** periodically forwarding at least a portion of the payment to the third party **Structure:** a combination of processor 302, memory 304 and modem 306 together with software executing an algorithm as described at column 5, lines 21-37, and equivalents thereof |
| 19. The system of claim 10 wherein the merchant processor comprises **means for forwarding to the third party an amount that is a percentage of the obligation.** | means for forwarding to the third party an amount that is a percentage of the obligation (Recited in Claim 19) | **Function:** AGREED **Structure:** input/output device 306 | **Function:** AGREED **Structure:** None disclosed | **Function:** forwarding to the third party an amount that is a percentage of the obligation **Structure:** a combination of processor 302, memory 304 and modem 306 together with software executing an algorithm as described at column 5, lines 21-37, and equivalents thereof |

23

24