# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| ADVANCEME, INC., | § | **CASE NO. 6:05-CV-424 (LED – JDL)** |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| RAPIDPAY LLC, FIRST FUNDS LLC, MERCHANT MONEY TREE, INC., REACH FINANCIAL, LLC, and FAST TRANSACT, INC. d/b/a SIMPLE CASH, | § | |
| **Defendants.** | § | |
| | § | |
| ADVANCEME, INC., | § | **CASE NO. 6:06-CV-082 (LED – JDL)** |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| AMERIMERCHANT, LLC, | § | |
| **Defendant.** | § | |

---

## ADVANCEME, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR MODIFICATION OF MAGISTRATE JUDGE LOVE'S *MARKMAN* MEMORANDUM OPINION AND ORDER

---

ADVANCEME, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR
MODIFICATION OF MAGISTRATE JUDGE LOVE'S MARKMAN
MEMORANDUM OPINION AND ORDER

CASE NO. 6:05-cv-424 (LED-JDL)
CASE NO. 6:06-cv-082 (LED-JDL)

Dockets.Justia.com

## I.    INTRODUCTION

Defendants' motion for reconsideration (the "Motion") falls prey to the very same mistakes that Defendants repeatedly made before Magistrate Judge Love.  Here, as during the Markman proceeding, Defendants repeatedly ignore the plain statements made in the '281 patent specification and file history, and even ignore the plain words of the patent claims themselves. As a result, Defendants' proposed claim constructions bear little resemblance to the invention actually described by the '281 Patent.  In his Markman order, Magistrate Judge Love properly rejected Defendants' results-oriented approach to claim construction.   AdvanceMe respectfully suggests that this Court do the same and deny Defendants' motion.

Revealing the desperation of their position, Defendants play foul by trying to raise brand-new claim construction arguments that were <u>never</u> submitted to Magistrate Judge Love.  As just one example, Defendants' Motion presents a brand-new construction of the term "obligation" which is radically different from <u>any</u> proposed construction previously submitted by Defendants. It is simply impermissible on a motion for reconsideration for Defendants to raise new arguments before this Court that they failed to raise before the Magistrate.

It is clear from the Markman order that, after appointing a technical advisor to assist him, Magistrate Judge Love thoroughly reviewed the arguments and evidence submitted by the parties before construing the claim terms in dispute.  There is simply nothing in Magistrate Judge Love's Memorandum Opinion and Order that Defendants can possibly demonstrate is "clearly erroneous or contrary to law."  Since there is no factual or legal basis for overturning the Magistrate's rulings, Defendants' Motion should be denied.

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(a), a district court may only modify or set aside a magistrate's pretrial order if the order is determined to be "clearly erroneous or contrary to law." This is a very difficult burden to meet. A magistrate's order is clearly erroneous only if the court is "left with the definite and firm conviction that a mistake has been committed." Palacios Seafood, Inc. v. Piling, Inc., 888 F.2d 1509, 1513 (5th Cir. 1989). A magistrate's order is contrary to law only if it "misinterpreted or misapplied applicable law." Martinez v. Porta, 2006 WL 3289187, *2 (N.D.Tex. 2006). Further, a court may not disturb a magistrate's determination merely because the matter could have been decided differently. Id. at * 2.

Given the thoroughness of the Markman order, Defendants can not possibly satisfy this difficult standard. Realizing this, Defendants instead contend that the order is a "dispositive" ruling and therefore de novo review is appropriate. This is wrong. For purposes of Federal Rule of Civil Procedure 72, the Markman order cannot be considered "dispositive" because the order does not on its face purport to dismiss the claims or defenses of any party. FRCP 72(b) (denominating as dispositive only those rulings that are "dispositive of a claim or defense of a party . . .") Accordingly, de novo review is clearly inappropriate.

Further, this Court's Local Rules provide, under the heading "Determination of Non-Dispositive Pretrial Matters," that "[a] magistrate judge may hear and determine any procedural or discovery motion or other pretrial matter, including a management conference, in a civil or criminal case, other than the motions which are specified in subsection 1(D), infra, of these rules." Appendix B, Rule 1(C) (emphasis added). In turn, the "dispositive" motions specified in subsection 1(D) do not include any mention of claim construction or Markman orders.

ADVANCEME, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR MODIFICATION OF MAGISTRATE JUDGE LOVE'S MARKMAN MEMORANDUM OPINION AND ORDER

-2-

CASE NO 6:05-cv-424 (LED-JDL)
CASE NO. 6:06-cv-082 (LED-JDL)

Accordingly, the Local Rules compel the conclusion that the Markman order is a <u>non</u>-dispositive

ruling which does not merit *de novo* review.

**III.    ANALYSIS**

    **A.    Defendants' First Objection Is Meritless.**

        1.    **Defendants Impermissibly Attempt to Advance a Brand-New Construction Which Was Never Submitted to the Magistrate.**

Defendants' first two objections are, in actuality, an improper attempt to convince the

Court to adopt a brand-new construction of the term "obligation" that Defendants did <u>not</u> propose

to the Magistrate. Put simply, Defendants are not permitted to do this.

In the parties' Joint Claim Construction and Prehearing Statement, Defendants originally

took the position that the term "obligation" had an ordinary meaning, and therefore the Court did

not need to adopt any construction of the term at all. D.E. 86, p. 8. Defendants ultimately

realized, however, that this position could not withstand scrutiny. As AdvanceMe explained in

its responsive Markman brief, there are a wealth of statements in the specification and file

history which make clear that the "obligation" being referred to in the patent claims is not just

any obligation, but rather an obligation that is independent of costs or fees arising out of the use

of customer identifiers as payment. D.E. 110, pp. 12-14.

Recognizing that their "ordinary meaning" construction could not possibly

prevail, Defendants completely changed their tune in their Markman brief, advancing a brand-

new argument that the term "obligation" should be construed to mean an "amount owed by the

merchant <u>other</u> than processing fees, i.e., discount rate, interchange fee, and network fee." D.E.

117, p. 5 (emphasis added). In other words, Defendants took the new position that the term

"obligation" should be interpreted to encompass certain types of transactional fees, but exclude

others.

ADVANCEME, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR       -3-       CASE NO 6:05-cv-424 (LED-JDL)
MODIFICATION OF MAGISTRATE JUDGE LOVE'S MARKMAN                     CASE NO. 6:06-cv-082 (LED-JDL)
MEMORANDUM OPINION AND ORDER

Defendants' brand-new construction was procedurally problematic because it did not appear in the Defendants' Joint Claim Construction and Prehearing Statement and was therefore untimely. From a substantive point of view, this new construction was even more problematic since it was clear from the specification and file history that the patentee did <u>not</u> distinguish between different transactional fees or obligations. D.E. 129, pp. 1-5.

In his Markman order, the Magistrate rightly recognized that Defendants had switched positions on the meaning of this claim term. D.E. 166, p. 6. The Magistrate graciously overlooked this deficiency, however, and addressed Defendants' new position on its merits. As Magistrate Judge Love explained, Defendants' attempt to exclude only certain enumerated fees and costs (e.g., the discount rate, interchange fees, and network fees) was baseless. The Magistrate correctly determined that <u>any</u> fees and costs arising from the use of customer identifiers were properly excluded from the claim term. <u>Id</u>., pp. 6-8.

Incredibly, Defendants now attempt to ignore this entire history and all the prior arguments made to the Magistrate. Defendants do <u>not</u> attempt to resurrect the "ordinary meaning" position that they included in the Joint Claim Construction and Prehearing Statement, nor do they attempt to defend the revised claim construction position they articulated for the first time in their Markman brief. Instead, Defendants use their Motion to advance yet another construction for the term "obligation" that they <u>never</u> submitted to the Magistrate.

Defendants' "shifting sands" approach is wholly impermissible under the Federal Rules. It is well-settled that, in ruling on a Magistrate's order, the Court is <u>only</u> permitted to rule on the arguments and evidence presented to the Magistrate. "[P]arties that litigate before a Magistrate Judge must raise any and all arguments before the Magistrate Judge, or <u>waive</u> their right to assert the arguments before the district court on appeal." <u>Cooper Hospital v. Sullivan</u>, 183 F.R.D. 135,

142 (D.N.J. 1998) (emphasis added); <u>Jesselson v. Outlet Associates</u>, 747 F.Supp. 1446, 1447 (E.D.Va. 1991) (a Magistrate's decision "should not be disturbed on the basis of arguments not presented to him"). The Defendants are <u>not</u> permitted to proffer an entirely new construction that was never previously submitted to the Magistrate. <u>Lithuanian Commerce Corp. Ltd. v. Sara Lee Hosiery</u>, 177 F.R.D. 205, 209-12 (D.N.J. 1997). Since the new construction Defendants propose in their Motion was <u>not</u> raised in the Joint Claim Construction and Prehearing Statement, and was <u>not</u> raised in Defendants' Markman briefing, Defendants are absolutely precluded from proposing it now. For this reason alone, Defendants' Motion should be denied.

2.     **Defendants' New Proposed Construction Is Erroneous.**

The construction adopted by the Magistrate for the term "obligation" was consistent with the intrinsic evidence and applicable claim construction law, and therefore there is no reason why Magistrate Judge Love's construction should be "modified" in any way.

Throughout the prosecution of the '281 Patent, the patentee made it clear that the "obligation" referenced by the patent claims did <u>not</u> include any obligations that arose out of the use of standard merchant processing systems. The '281 Patent itself makes clear that the claimed inventions are constructed on top of the transaction processing environment, and all the fees and costs associated therewith. See, e.g., '281 Patent, 1:52-54; 2:48-51; 4:16-5:3. As the patentee stated during prosecution, "[t]he invention relates to modifying the existing merchant processor system that is now used by merchants to authorize and settle card payment transactions." D.E. 110, Exh. B, ADV0001035; see also Exh. G, p. ADV0001077 (similar argument to the BPAI).

Further, during prosecution, a wide range of costs and fees associated with the processing environment were disclosed to the PTO as being distinguishable from the inventions. These

ADVANCEME, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR
MODIFICATION OF MAGISTRATE JUDGE LOVE'S MARKMAN
MEMORANDUM OPINION AND ORDER

-5-

CASE NO 6:05-cv-424 (LED-JDL)
CASE NO. 6:06-cv-082 (LED-JDL)

included point of sale terminal rental fees (see D.E. 129, Exh. B, Reference C9 at FHC0140-

FHC0144); POS switch fees (Exh. C, Reference C10 at FHC0160); advertising fees (Exh. C,

Reference C10 at FCH0162); and foreign transaction fees (Exh. C, Reference C10 at

FHC01071). It is simply not true that these costs and fees were all related to a "particular

purchase" or a "particular transaction;" rather, the only thing all these costs and fees had in

common was that they arose from the standard use of merchant processing systems and were

known in the art at the time.

Faced with this intrinsic evidence, the Magistrate adopted a construction which

incorporated the very distinctions explained by the patentee during prosecution. The Magistrate

properly determined that the "obligation" referred to by the patent claims cannot include fees or

costs arising from the typical processing environment, i.e., fees or costs arising from the use of

customer identifiers as payment. D.E. 166, pp. 7-8. As the Magistrate explained, "it is clear

from the illustrations that the "obligation" recited in the claims of the '281 patent does not

include any of the fees or costs deducted for using the typical transaction processing

environment, i.e., the "overhead" amounts that are incurred as a result of merely handling the

customer payment using a customer identifier, not just the discount rate, interchange fees and

network fees as Defendants claim." Id., p. 7.

Though fully supported by the intrinsic evidence and applicable claim construction law,

Magistrate Judge Love's Memorandum Opinion and Order presents a considerable problem for

Defendants' invalidity defense because much of that defense is predicated on their attempt to cite

as "prior art" the very sort of fees and costs that the patentee distinguished during prosecution.

For example, Defendants have cited as "prior art" the payment of monthly rental fees for credit

card swipe machines, even though these were precisely the type of fees arising from the use of

credit card processing systems that the patentee distinguished during prosecution. D.E. 129, p. 4. Since Magistrate Judge Love's construction severely undermines this defense, Defendants have now conjured up two new arguments. Neither of these arguments has any merit.

First, Defendants contend that the Magistrate's construction is "impermissibly vague." D.E. 189, p. 2. Apparently, this contention boils down to Defendants' dislike of the words "arising from" because these words are allegedly "broadly worded and amorphous." Id. at p. 3. This is simply untrue. The phrase "arising from" is a common English phrase which is readily understood to mean something "originating" from a particular source. See http://www.m-w.com/dictionary/arising (Merriam-Webster's Online Dictionary entry for "arising"). There is nothing "vague" about Magistrate Judge Love's use of the term "arising from."

Defendants' contention that they do not understand the meaning of these words is entirely feigned. Indeed, the application of the Magistrate's construction will be very easy and straightforward in this case. This is easily seen by simply applying the example that the Defendants themselves cite in their Motion. In Defendants' example, a merchant incurs a cost that is earmarked to purchase or lease equipment used for processing customer identifiers (i.e., credit or charge cards). D.E. 189, p. 3. This cost directly arises from the use of customer identifiers as payment because it is clearly an overhead amount incurred solely to handle the processing of credit cards. Accordingly, it is obvious that under the Magistrate's construction, this cost would clearly be excluded from the reach of the patent claims.

The Defendants further contend that "there is no basis whatsoever in the intrinsic record for excluding automatic repayment of broad categories of cash advances, contractual obligations, or routine business expenses from the scope of the term obligation." D.E. 189, p. 3. Yet, the Magistrate's claim construction does not provide a blanket exclusion for any of those categories.

Rather, the Magistrate's claim construction <u>only</u> excludes those obligations to the extent that they arise out of using customer identifiers as payment.

Further, it is ironic that Defendants accuse Magistrate Judge Love of adopting a "vague" construction when the brand-new construction they propose would open this claim term up to a multitude of uncertainties. Defendants now contend, for the very first time, that the claim term should be limited to obligations that are "independent of any particular purchase and outside of any of the fees and/or costs <u>normally</u> imposed on the merchant for a <u>typical</u> processing transaction." This construction would leave a slew of questions unanswered. How are the parties to determine what fees are "normally" imposed on the merchant? How can the parties determine a "normal" fee or cost given the dozens of different interchange or merchant processing fees that can be applied to credit card transactions? How are the parties to determine what a "typical" processing transaction is? How are the parties to determine the time period during which a "typical" transaction should be measured? It is clear that Defendants' new proposed construction would raise the very "zone of uncertainty" they allegedly want to avoid.[1]

**B.** **Defendants' Second Objection is Meritless Because the Magistrate's Construction of the Term "Obligation" Is Entirely Consistent With the Intrinsic Record and Applicable Claim Construction Law.**

Defendants' second objection is that any deviation from the ordinary meaning of the term "obligation" must be "applied strictly," and that Magistrate Judge Love erred by adopting a construction which was not limited to the deviations revealed in the intrinsic record. This too is

---

[1] Further, even setting aside its vagueness problems, it is difficult to see what the point would be of modifying the Magistrate's construction in favor of the Defendants' brand-new construction. In practice, the result of these constructions would appear to be exactly the same. For instance, in the example provided by the Defendants, the cost for purchasing or leasing credit card equipment would still not constitute an obligation under the Defendants' construction because it would still constitute a "normal" cost incurred in a "typical" processing environment.

untrue. The Magistrate's construction precisely matches the scope of the distinction that the patentee repeatedly made during prosecution. Contrary to the Defendants' contentions, the patentee's statements were <u>not</u> limited to the exclusion of obligations pre-dating the invention, or to fees that are independent of any particular purchase or transaction. Rather, the patentee <u>broadly</u> disclaimed from the scope of the patent <u>any</u> obligations that arose out of the use of customer identifiers as payment, including merchant processor fees, discount rates or surcharges, interchange fees, network fees, card service fees, transaction fees, card issuer fees, and terminal rental fees. See, e.g., '281 Patent 4:21 – 5:3; D.E. 129, Exhs. B & C.

The Defendants further contend that the patentee's statements were limited to the exclusion of fees or costs relating to a "particular transaction or a particular purpose." D.E. 189, p. 6. This is also untrue. The patentee's statements repeatedly and broadly stated that the invention was designed as a modification to the existing merchant processor system, and all the fees and costs that came with it. D.E. 110, Exhs. B at ADV0001035 and G at ADV0001076. Regardless of whether the fees and costs associated with the normal merchant processing system related to a particular purchase or not, the patentee made it clear that those fees and costs would always fall outside the scope of the invention. Indeed, the <u>only</u> obligations within the scope of the patent claims that were ever discussed anywhere in the intrinsic record are obligations that were incurred wholly independent from the processing of credit cards or other customer identifiers.

Defendants also contend that Magistrate Judge Love's reference to "overhead amounts" was inappropriate. However, the Magistrate's comment in this regard was consistent with the intrinsic record. By referencing "overhead amounts," the Magistrate was simply conveying the point that the invention was not intended to encompass fees and costs (such as terminal rental

fees, switch fees, merchant processor fees, or discount rates) that were part and parcel of the normal merchant processing system. Though Defendants attempt to feign ignorance over the meaning of the phrase "overhead amounts," the meaning of this phrase is clear and plain – it is just another way of stating that any fees and costs arising from the use of customer identifiers as payment fall outside the scope of the inventions.

In short, even if Defendants were permitted to advance a new construction that was not submitted or proposed to the Magistrate, their arguments would still fail. Magistrate Judge Love's construction precisely tracks the arguments that were made by the patentee to the PTO and the Board of Patent Appeals. Since that construction is not clearly erroneous or contrary to law, Defendants' Motion should be denied.

C. **Defendants' Third Objection Is Meritless Because the Magistrate's Construction of the Term "Third Party" Appropriately Adopts the Plain and Ordinary Meaning of the Term.**

Defendants' third objection relates to the term "third party." Magistrate Judge Love construed this term to mean a "payment receiver, i.e., a party that is neither the merchant or the merchant processor." D.E. 166, pp. 11-12. In adopting this construction, Magistrate Judge Love logically determined that the "third" party described in Claim 10 can neither be the "first" party identified in the claim (the merchant) or the "second" party (the merchant processor). Given the plain language of the claim, it is difficult to comprehend how the Magistrate could have arrived at any other conclusion.

Defendants' objection to this construction is nonsensical. According to Defendants, the Magistrate clearly erred because the term "third party" must be construed to <u>include</u> the merchant processor. This cannot possibly be true. By definition, the merchant processor cannot be the "third party" referenced by Claim 10 because the claim requires that payment be forwarded

from the merchant processor to a third party.  If the merchant processor was included in the construction of "third party," then the language of the claim would make no sense – a party does not "forward" a payment "to a third party" if all it is doing is keeping the payment for itself.

Further, as AdvanceMe explained during the Markman proceedings, the dictionary definition of the term "third party" is "one other than the principals involved in a transaction." D.E. 110, Ex. O (American Heritage College Dictionary, Third Edition 1997, p. 1409).  Here, the principals identified in the transaction set forth in Claim 10 are the merchant and the merchant processor, and therefore the "third party" referenced by the claim must be a party that is separate from those entities.  As the Magistrate found, "[b]ecause the merchant processor is identified as a principal, it cannot also be a third party to the same transaction."  D.E. 166, p. 12.  This logic is inescapable.

Recognizing that they cannot seriously dispute the logic of the Magistrate's reasoning, Defendants simply ignore the plain language of the claims and focus exclusively on a couple of isolated statements in the specification and file history, as well as a brief snippet of testimony from the inventor.  None of these statements provide any support for the Defendants' position.

First, Defendants allege that there is an "explicit statement" in the specification that "a lender to whom the payment is made by the merchant processor may be the same entity as the merchant processor."  D.E. 189, p. 7.  However, Defendants entirely overlook that, in the very same sentence that they cite, the specification also points out that a "third party" must be an entity "other than the borrower or the lender."  '281 Patent, 1:35-37 (stating that "[the merchant processor may be, for example, a third party entity (i.e., an entity other than the borrower or the lender")).  This sentence clearly demonstrates that the patentee was using the term "third party"

consistent with its plain and ordinary meaning. Therefore, the very sentence cited by the Defendants overwhelmingly <u>supports</u> the Magistrate's construction.

Defendants' argument also overlooks the fact that the sentence fragment they refer to is <u>not</u> directed to the specific invention set forth in Claim 10. Unlike the method claims 1-9 of the '281 Patent, Claim 10 is a means-plus-function claim. Thus, the terms of Claim 10 specifically limit the recited system to one where the forwarding of a portion of the payment is from the merchant processor to a third party. In contrast, Claim 1 more broadly recites forwarding to a "computerized payment receiver," which does not necessarily have to be a third party. It is the broader language of Claim 1 to which the statement cited by Defendants is directed, not the narrower "third party" recited in Claim 10.

Defendants' contention that it is improper to "limit a claim term to a preferred embodiment of the invention" also misses the mark. D.E. 189, p. 8. Again, this argument ignores the fact that Claim 10 is a means-plus-function claim. By definition, a means-plus-function claim must be limited in scope to the structure disclosed in the specification, and this typically means that the claim will be limited to the preferred embodiment. In fact, it is clear that Claim 10 was drafted to encompass the specific embodiment described in the specification, in which the lender or payment receiver is always described as being a separate third party from the merchant processor. '281 Patent, FIG. 2; 5:14-17.

<u>Second</u>, Defendants contend that an isolated statement in the file history supports their bizarre construction of the claim term. However, as AdvanceMe explained at length in the Markman proceedings, there is nothing anywhere in the file history to indicate that the patentee intended to deviate from the plain and ordinary meaning of the term "third party." Indeed, the only portion of the file history cited by the Defendants is a brief statement by the patentee

referencing the substitution of "third party" for the term "lender." There is nothing in this statement to indicate any intent to deviate from the plain meaning of the term "third party." Nor is there anything in this statement which contradicts the fact that, under the plain language of Claim 10, a merchant processor cannot be the third party.

Recognizing that there is no clear statement by the patentee on this subject, Defendants instead argue that the patentee implicitly intended to include a merchant processor within the term "third party" because the patentee did not explicitly state otherwise. This argument defies logic. Clearly, the reason the patentee did not explicitly point out that a merchant processor was excluded from the "third party" described in Claim 10 is because this would already have been blatantly obvious to the Examiner simply from reading the claim. The patentee was not required to point out the obvious to the PTO, nor was it required to explicitly state that the term "third party" is intended to mean exactly what it says.

In any event, Defendants' attempt to divine intent from the patentee's silence is insufficient to satisfy their heavy burden. In order to deviate from the plain and ordinary meaning of the term "third party," Defendants were required to provide <u>clear</u> and <u>unequivocal</u> evidence that the patentee intended to deviate from the ordinary meaning of this term. As a matter of law, Defendants cannot meet this high burden by pointing to statements that the patentee did <u>not</u> make. Rather, Defendants were required to point to an <u>affirmative</u> statement which clearly indicates that a deviation from the plain meaning was intended. Since Defendants have not and cannot point to any such statement, their argument must fail as a matter of law.

<u>Third</u>, Defendants argue that there was an "admission" by the inventor which contradicts the Magistrate's rulings. However, Defendants never once made this argument during the Markman briefing and have therefore <u>waived</u> their right to raise this argument. See D.E. 117.

ADVANCEME, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR
MODIFICATION OF MAGISTRATE JUDGE LOVE'S MARKMAN
MEMORANDUM OPINION AND ORDER

-13-

CASE NO 6:05-cv-424 (LED-JDL)
CASE NO. 6:06-cv-082 (LED-JDL)

In any event, the brief snippet of testimony cited by Defendants does not support their argument. In this excerpt, Defendants' attorney did <u>not</u> ask the inventor about the meaning of the term "third party" in Claim 10; rather, Defendants' attorney merely read a statement in the specification (which addressed Claim 1 rather than Claim 10) and asked whether it was "part of the patent" for the merchant processor and the third party to be the same. The inventor merely responded that "its language from the patent that you're reading to me, so yes." As this testimony indicates, the inventor did nothing more affirm that the specification speaks for itself. This testimony says absolutely nothing about the meaning of "third party" in Claim 10.

In short, as the Magistrate properly determined, the plain meaning of the term "third party" controls. Since Defendants have failed to demonstrate that the Magistrate's construction is clearly erroneous or contrary to law, the Motion should be denied.

### D.    The Defendants' Fourth Objection is Meritless, Because It Rests on a Misunderstanding of the Requirements for Means-Plus-Function Claims.

Defendants' fourth objection rests on a complete misunderstanding of the applicable law pertaining to means-plus-function claims. Defendants contend that the means-plus-function claims in the '281 Patent contain insufficient structure simply because the specification does not contain every conceivable detail concerning the different ways the invention could be performed. However, the law is clear that sufficient structure is disclosed in the specification as long as <u>any</u> structure is disclosed that could be understood by one skilled in the art to perform the recited function. <u>Budde v. Harley-Davidson, Inc.,</u> 250 F.3d 1369-1377 (Fed. Cir. 2001).

To succeed in their argument, Defendants were required to demonstrate by <u>clear</u> and <u>convincing</u> evidence that the specification did not disclose any structure sufficient to be understood by one with skill in the art. However, Defendants never made any serious attempt to meet their burden. Defendants did not present <u>any</u> evidence before the Magistrate to

demonstrate what one with ordinary skill in the art would understand. Defendants also did not present any expert declarations to demonstrate the understanding of one with skill in the art. It is hardly surprising, therefore, that Magistrate Judge Love rejected Defendants' arguments.

With respect to the forwarding element in Claim 10, the Defendants contend that the algorithm identified by the Magistrate "contains no algorithm whatsoever" for performing the forwarding element. D.E. 189, p. 13. This argument rests on the assumption that, in order to disclose an algorithm for means-plus-function elements, the patentee is required to describe the algorithm in complete and mind-numbing detail.[2] Defendants do not cite any cases to support this argument because none exist. To the contrary, this Court has explicitly recognized that the requirement to describe an "algorithm" can be satisfied in a variety of ways:

> Since this function is computer implemented, the patent must disclose an algorithm to be performed by the computer to accomplish the recited function. This does not mean that the patent must disclose specific source code for the computer. And, the term "algorithm" is not limited to a formula of mathematical symbols. For example, the steps, formula or procedures to be performed by the computer might be expressed textually, or shown in a flow chart.

Finisar Corp. v. the DirectTV Group, 416 F.Supp.2d 512, 518-19 (E.D. Tex. 2006) (citations omitted).

The standard delineated by this Court in Finisar is clearly and easily met by the '281 Patent. As the Magistrate properly found, the '281 patent specification "reasonably describes the algorithm according to which software operates to perform the function of 'forwarding a portion

---

[2]  This contention also rests on the assumption that the claim elements at issue are the type of "computer-implemented" elements for which disclosure of an algorithm is even required. AdvanceMe vigorously disputed this issue in its Markman briefing. The Magistrate's order does not ultimately make a finding on this issue, but rather just assumes it to be true for the purpose of argument. For the reasons set forth in its prior briefing, AdvanceMe submits that given the nature of the patented inventions, there is no requirement to disclose an algorithm at all.

of the payment to the third party.'" D.E. 166, p. 19. Indeed, the passage cited by the Magistrate thoroughly discloses the steps and procedures to be performed as part of the forwarding, and it also refers to an example and flow chart to demonstrate these procedures:

> The invention involves a merchant processor **300** designed to pay a portion of what would normally go to the merchant **20** to the lender **60** as repayment of at least a portion of the merchant's outstanding loan amount, as indicated by an arrow <u>29</u>. The lender **60** then receives that portion of the payment forwarded by the merchant processor **300** and applies it to the merchant's outstanding loan amount to reduce that outstanding loan amount. The merchant processor **300** thus pays the merchant **20** some amount less than what the merchant **20** would receive in the arrangement of FIG. 1B, as indicated by an arrow **27** in FIG. 2. For example, carrying on with the example introduced above with reference to FIGS. 1A and 1B, instead of paying $98.10 to the merchant **20** on a $100 original card purchase, the merchant processor **300** might send $88.10 to the merchant **20** and the other $10.00 to the lender **60**.

This detailed disclosure of the forwarding algorithm goes above and beyond anything required by law. This passage discloses (a) who forwards the payment under the algorithm (the merchant processor), (b) what the processor pays to the payment receiver under the algorithm (a portion of the amount that would normally go to the merchant), (c) what the processor deducts (the necessary fees and costs typically associated with merchant processing systems), (d) what the processor does with the remainder of the unforwarded amount (it is sent to the merchant, less applicable fees and costs), and (e) what is done with the portion of the payment after it is forwarded (applied by the third party to the outstanding amount). The passage further provides an example where the algorithm is performed, and it also makes reference to three different flow charts in order to visually depict how the algorithm operates. It is difficult to imagine what more the patentee could have possibly done to describe the forwarding algorithm. Certainly, there is nothing more that one with skill in the art would need to know in order to understand how the claim element is performed.

Defendants' Motion ignores all of the details provided in this passage and the attached flow charts, and instead attempts to dream up arcane details that the passage does not contain. For example, Defendants complain that the algorithm does not describe "when the portion should be forwarded, what account or entity should receive the payment, and to what account the payment will be forwarded." D.E. 189, p. 13. However, Defendants fail to explain why any of this is relevant. All that the law requires is that an algorithm be disclosed which informs one of ordinary skill in the art how the recited function is performed. Finisar, 416 F.Supp.2d at 518-19. This means that the patentee need only disclose a series of steps, or boxes in a flow chart, which generally indicate how the recited function is performed. Id. The detailed disclosure in the '281 Patent goes far beyond this requirement.

In short, it is clear that the '281 Patent easily discloses sufficient structure for the forwarding element, and the Magistrate's determination that sufficient structure is disclosed is not clearly erroneous or contrary to law. Accordingly, Defendants' motion should be denied.

### E.    Defendants' Fifth Objection Is Waived Because the Defendants Did Not Present This Argument to the Magistrate.

Defendants' last objection alleges that Magistrate Judge Love clearly erred because the algorithm for performing the specific forwarding elements in Claims 17 through 19 is allegedly not disclosed. However, this argument was never made by Defendants before the Magistrate. Since Defendants' fifth objection raises brand-new claim construction arguments that were not presented to the Magistrate, this objection is clearly waived.

With respect to Claim 17, Defendants argue that the '281 specification does not contain sufficient structure for forwarding accumulated payments to a third party. However, during the Markman briefing, the Defendants explicitly agreed with AdvanceMe's proposed structure for accumulating payments. Responsive Brief, p. 33 ("Defendants agree with

ADVANCEME, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR MODIFICATION OF MAGISTRATE JUDGE LOVE'S MARKMAN MEMORANDUM OPINION AND ORDER

-17-

CASE NO 6:05-cv-424 (LED-JDL)
CASE NO. 6:06-cv-082 (LED-JDL)

Plaintiff's proposed identification of structure for this computer-implemented means-plus-function claim"). Though the Defendants generically argued that insufficient structure was disclosed for the forwarding of information, at no point did the Defendants ever argue that the patent failed to disclose sufficient structure for the forwarding of accumulated payments. Accordingly, this argument has been waived.

In any event, even if this argument had been presented to the Magistrate, it would have been without merit. The algorithm that was identified by the Court for the forwarding of payments applies equally to the forwarding of accumulated and non-accumulated payments. Regardless of whether payments have been accumulated beforehand, the procedure by which payment would be provided to the payment receiver would be precisely the same. In both instances, the algorithm set forth in column 5, lines 21 through 37 would be followed, and the computer equipment set forth by the Court (i.e., a combination of processor 302, memory 304 and modem 306 together with software executing the identifying algorithm) would be used. Since there is sufficient structure disclosed for the forwarding element of Claim 10, it naturally follows that sufficient structure is disclosed for Claim 17.

With respect to Claim 18, Defendants contend that there is no algorithm disclosed in the patent for determining "what portion should be sent and what 'period' should be employed." D.E. 189, p. 14. Again, Defendants never raised this issue before the Magistrate. In fact, at no point during the Markman proceedings did Defendants ever argue that the structure for periodically forwarding was insufficient. Indeed, Defendants' briefing did not separately address Claim 18 at all. Accordingly, this argument has been waived.

Defendants also overlook the fact that the term "periodically forwarding" was the subject of separate arguments before the Magistrate. In the Markman order, the Magistrate determined

that the term "periodically forwarding" should mean "forwarding at an interval other than upon every payment." Since this same claim term appears in Claim 18, the same construction is also applicable. Accordingly, the means for periodically forwarding set forth in Claim 18 is limited to the algorithm identified by the Magistrate, together with the limitation for "periodically forwarding" adopted by the Magistrate. This construction easily provides sufficient structure under the governing law.

With respect to Claim 19, Defendants contend that the algorithm "cannot identify any information about the size of the obligation, cannot determine the appropriate percentage to be used, and cannot convert that percentage of the obligation into a dollar amount to be diverted to a third party." D.E. 189, p. 14. Once again, this objection is improper because these arguments were never raised before the Magistrate. In any event, Defendants again misunderstand the nature of the pertinent inquiry. The issue is not whether every conceivable detail is included in the specification, but rather whether structure is disclosed which is sufficient to be understood by one skilled in the art to perform the recited function. Finisar, 416 F.Supp.2d at 518-19. The structure identified by the Magistrate easily satisfies this standard.

## IV.    CONCLUSION.

For the foregoing reasons, AdvanceMe respectfully requests that the Court deny the Defendants' motion for reconsideration.

Date:  January 24, 2007                Respectfully submitted,

By: _____/s/ Robert C. Matz_____
PAUL, HASTINGS, JANOFSKY & WALKER LLP
Michael N. Edelman
(CA Bar No. 180948) (Admitted Pro Hac Vice)
Ronald S. Lemieux
(CA Bar No. 120822) (Admitted Pro Hac Vice)
Robert C. Matz
(CA Bar No. 217822)

Five Palo Alto Square, Sixth Floor
Palo Alto, CA  94306-2155
Telephone: (650) 320-1800
Telecopier: (650) 320-1900
Email:  medelman@paulhastings.com

IRELAND, CARROLL & KELLEY, P.C.
Otis W. Carroll, Attorney-in-Charge
State Bar No. 03895700
Deborah Race
State Bar No. 16448700
6101 South Broadway, Suite 500
Tyler, TX  75703
Telephone:  903-561-1600
Facsimile:  903-581-1071
Email:  fedserv@icklaw.com
ATTORNEYS FOR PLAINTIFF ADVANCEME, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served a copy of this document via the court's CM/ECF system pursuant to Fed.R.Civ.P. 5(d) and Local Rule 5(c) on this the 24th day of January, 2007. Any other counsel of record will be served by first class mail on this same date.

_____ */s* Robert C. Matz

Robert C. Matz