# EXHIBIT 2

to the Declaration of Shanée Y. Williams in Support of Plaintiff
AdvanceMe, Inc's Opposition to Defendant's Motion for Leave to
Amend its Invalidity Contentions

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ADVANCEME, INC., <br><br> Plaintiff <br><br> v. <br><br> AMERIMERCHANT LLC, <br><br> Defendant. | CASE NO. 6:06-CV-082 LED |

**DEFENDANT'S AMENDED P.R. 3-3 PRELIMINARY INVALIDITY CONTENTIONS**

Pursuant to Patent Rules ("P.R.") 3-3 and 3-4 of the Rules of Practice for Patent Cases before the Eastern District of Texas, Defendant AmeriMerchant LLC ("AmeriMerchant") submits the following amended preliminary invalidity contentions.

These contentions pertain to Claims 1-19 of U.S. Patent No. 6,941,281 (the '281 Patent). Defendant submits, however, that AdvanceMe has not fully complied with its obligation to submit specific Preliminary Infringement Contentions relating to the means-plus-function claims of the '281 patent, in that AdvanceMe's Contentions for Claims 10-19, relating to means-plus-function claim elements, provide only conclusory accusations of Accused Instrumentalities and do not identify structure with specificity. *See* AdvanceMe's Preliminary Infringement Contentions; P.R. 3-1. Further, Defendant submits that AdvanceMe has not fully complied with its obligation to submit specific Preliminary Infringement Contentions relating to Claims 8 and 17, in that AdvanceMe's Contentions do not identify any ability of the Accused Instrumentalities to "accumulate payments until a predetermined amount is reached." *See* AdvanceMe's Preliminary Infringement Contentions; P.R. 3-1.

Defendant has based these Preliminary Invalidity Contentions in part on AdvanceMe's proffered claim interpretations, as best understood by Defendant. Defendant does not accept AdvanceMe's proffered claim interpretation, and Defendant's application of AdvanceMe's claim interpretations for purposes of these Preliminary Invalidity Contentions shall not be deemed an acceptance of AdvanceMe's constructions or a waiver of Defendant's right to proffer alternative constructions.

Because AdvanceMe has not yet provided Defendant with reasonably specific Preliminary Infringement Contentions, the Court has not yet ruled on claim construction, and discovery and fact investigations are ongoing, Defendant reserves the right to supplement these Preliminary Invalidity Contentions.

1. **PRIOR ART – 35 U.S.C. § 102(B)**

Attached as Exhibits 1-6 are claim charts respectively indicating how prior art items 1-6 anticipate every limitation of at least certain of Claims 1-19 of the '281 Patent, based on Defendant's present understanding of how AdvanceMe is construing those claims. To the extent any limitation is deemed not to be exactly met by an item of prior art, Defendant submits that the difference would have been obvious to one skilled in the art at the time of the alleged invention in view of the state of the art and knowledge of those skilled in the art, and that the item of prior art therefore renders the claims invalid for obviousness. As evidenced at the deposition of the inventor, Barbara Johnson, and based on her testimony, prior art items 1-6 individually and collectively anticipate or render obvious all of Claims 1-19 of the '281 Patent.

| | Publication Title | Item offered for sale or publicly used or known |
|---|---|---|
| 1. | Clever Ideas – LeCard dining program documents[1] (1992-1996) | Clever Ideas - LeCard, Inc. offered a product known as LeCard that utilized a system and method of automated payment wherein LeCard would advance a sum of money or an amount of advertising to restaurants in exchange for the restaurant providing food and beverage credit for LeCard cardholders. The restaurant's contractual obligation to repay the credit amount would be reduced as customers used LeCard to pay for food and beverages. Diners Club, the merchant processor, would acquire, authorize and settle the LeCard transaction and would electronically forward some portion of the payment to LeCard in satisfaction of the restaurant's obligation to LeCard. LeCard thus publicly used the method and system as claimed in the '281 patent, and LeCard's method and system were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 1.[2] |
| 2. | SEC Form 10-K for Transmedia Network, Inc. (December 29, 1995) | Transmedia Network Inc. ("Transmedia") offered a product known as the Transmedia card that utilized a system and method of automated payment wherein Transmedia advanced a sum of money to a restaurant or other merchant, via a purchase at a discount of "Rights-to-Receive" (*i.e.*, the right to receive goods and services). After acquiring, authorizing and settling the transaction, Transmedia would withhold or otherwise electronically forward some portion of the payment to a computerized payment receiver in satisfaction of the restaurant's (or other merchant's) contractual obligation to Transmedia. Transmedia thus publicly used the method and system as claimed in the '281 patent, and Transmedia's method and system were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 2.[3] |

---

[1] These documents include Clever Ideas-LeCARD Cash and/or Advertising Advance Agreements; Restaurant Statements; Letters from LeCard to Participating Restaurants; and other related correspondence.
[2] Clever Ideas-LeCard anticipates Claims 1, 5-10 and 14-19. Clever Ideas-LeCard renders obvious Claims 2-4 and 11-13. *See* Exhibit 1.
[3] Transmedia anticipates Claims 1, 5-10 and 14-19. Transmedia renders obvious Claims 2-4 and 11-13. *See* Exhibit 2.

| 3. | First USA Merchant Services, Inc. Merchant Credit Card Agreement<br><br>(July 1, 1993) | First USA Merchant Services, Inc. ("First USA") offered to provide credit card processing services to merchants that incorporated a system and method of automated payment as claimed in the '281 patent. First USA, the merchant processor, would acquire, authorize and settle the transaction. First USA would withhold or otherwise electronically forward some portion of the payment to a computerized payment receivers as payment of at least a portion of an obligation made by the merchant. First USA thus publicly used the method and system as claimed in the '281 patent, and First USA's system and method were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 3.[4] |
| --- | --- | --- |
| 4. | Bank of America Merchant Services Card Processing Service Agreement Terms and Conditions<br><br>(November 1994 (Reprinted August 1995)) | Bank of America NT&SA offered to provide credit card processing services to merchants which incorporated a system and method of automated payment as claimed in the '281 patent. Bank of America, the merchant processor, would acquire, authorize and settle the transaction. Bank of America would withhold or otherwise electronically forward some portion of the payment to a computerized payment receiver as payment of at least a portion of an obligation made by the merchant. First USA thus publicly used the method and system as claimed in the '281 patent, and First USA's system and method were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 4.[5] |

---

[4] First USA anticipates Claims 1-2, 6-11 and 15-19. First USA renders obvious Claims 3-5 and 12-14. *See* Exhibit 3.
[5] Bank of America anticipates Claims 1-2, 6-11 and 15-19. Bank of America renders obvious Claims 3-5 and 12-14. *See* Exhibit 4.

| 5. | Credit Card Processing Agreement; Reserve Account Agreement (among Reno Air, Inc., Electronic Data Systems Corportation and First USA Merchant Services, Inc.) (June 1995) | Electronic Data Systems Corporation ("EDS"), as agent for First USA Merchant Services, Inc. ("First USA"), offered to provide credit card processing services to merchants that incorporated a system and method of automated payment as claimed in the '281 patent. EDS, the merchant processor, would receive payment information from the merchant and provide the merchant with the payment amount less processing fees and other obligations of the merchant. EDS would electronically forward some portion of the payment to a computerized payment receiver as payment of some portion of an obligation made by the merchant. EDS, as agent for First USA, thus publicly used the method and system as claimed in the '281 patent, and First USA's system and method were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 5.[6] |
| --- | --- | --- |
| 6. | Litle & Co. documents[7] (1990-1992) | Litle & Co. ("Litle") utilized a system and method of automated payment wherein an entity would advance a sum of money or an amount of postage costs to catalog or other companies. Litle, the merchant processor, would acquire, authorize and settle the transaction and would electronically forward some portion of the payment to a computerized payment receiver in satisfaction of the company's obligation that arose from the advance of cash or postage costs. Litle, alone or in combination with other entities, thus publicly used the method and system as claimed in the '281 patent, and Litle's method and system were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 6.[8] |

Defendant's investigation of these products and services is ongoing, and Defendant reserves the right to supplement these contentions to include additional details regarding these products and services as discovery in this case continues.

---

[6] EDS anticipates Claims 1-2, 6-11 and 15-19. EDS renders obvious Claims 3-5 and 12-14. See Exhibit 5.
[7] These documents include the Litle & Co. Member Agreement; Demand Promissory Note for Postage Advances (between Museum Publications of America and Litle & Co.); "People Thought I was Nuts" Forbes Article (6/8/92); Promissory Note Repayment Schedule; and related correspondence.
[8] Litle & Co. anticipates Claims 1-2, 5-11 and 14-19. Litle & Co. renders obvious Claims 3-4 and 12-13. See Exhibit 6.

2. **INVENTORSHIP – 35 U.S.C. § 102(f)**

The '281 patent is invalid because the alleged inventor did not herself invent the subject matter sought to be patented. As evidenced during the deposition of the alleged inventor, Barbara Johnson, she lacks knowledge of card processing and familiarity with, or knowledge of, the meaning of many, if not all, features of the '281 patent.

| Name of person from whom the invention or any part was derived | Circumstances |
|---|---|
| Gary Johnson | Gary Johnson is the husband of the inventor. On information and belief, he was knowledgeable of the card processing industry at the time of the alleged inventor's invention. Barbara Johnson testified that she did not directly correspond with the prosecuting attorneys, but instead indirectly corresponded with the prosecuting attorneys through Gary Johnson. On knowledge and belief, the invention or some part of the invention was derived from Gary Johnson. |
| Les Falk, Glen Goldman, Tom Burnside and/or other employees of Media Works Funding Corporation, Countrywide Business Alliance, Inc. and/or AdvanceMe, Inc. | On information and belief, Les Falk is the former CEO of the assignee of the '281 patent. Glen Goldman is the current CEO of AdvanceMe, and Tom Burnside is the current President and Chief Operating Officer of AdvanceMe. On information and belief, the invention or some part of the invention was derived from Les Falk, Glen goldman, Tom Burnside, and/or other employees of the assignee (which underwent multiple name changes). |
| Paula Campbell, Robert Tosti, John Forcier and/or other attorneys of the law firm Testa, Hurwitz & Thiebeault LLP involved in the prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. | Attorneys from Testa, Hurwitz & Thiebeault LLP were involved in the prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. On information and belief, the invention or some part of the invention was derived from Paula Campbell, Robert Tosti, John Forcier and/or other attorneys of the law firm Testa, Hurwitz & Thiebeault LLP. |
| David Klein and/or other attorneys of the law firm Shearman & Sterling LLP involved in the prosecution of the U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. | Attorneys from Shearman & Sterling LLP were involved in the prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. On information and belief, the invention or some part of the invention was derived from David Klein and/or other attorneys of the law firm Shearman & Sterling LLP. |

Defendant's investigation of these individuals and the circumstances surrounding their contribution to the alleged invention is ongoing, and Defendant reserves the right to supplement these contentions to include additional details regarding these individuals and circumstances as discovery in this case continues.

3.   **P.R. 3-4 DOCUMENT PRODUCTION**

Defendant produced prior art items 1-5 and a portion of 6 on July 20, 2006, with service of Defendant's Preliminary Invalidity Contentions. Defendant produced the remainder of item 6 on July 28, 2006. At the present time, Defendant has made every effort to produce all relevant, non-privileged documents in its possession, custody or control that may evidence the information required under P.R. 3-4(a). Defendant's search for documents is ongoing, and Defendant reserves the right to supplement its document production as additional relevant, non-privileged documents in its possession, custody or control are identified.

Dated: August 30, 2006

Respectfully submitted,

By: *Hilary Preston* w/permission Akley

Willem G. Schuurman
Texas State Bar No. 17855200
Joseph D. Gray
Texas State Bar No. 24045970
VINSON & ELKINS L.L.P.
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Phone: (512) 542-8400 –
Fax: (512) 236-3476

- and -

Hilary L. Preston
VINSON & ELKINS L.L.P.
666 Fifth Avenue – 26th Floor
New York, New York 10103
Phone: (212) 237-0000
Fax: (212) 237-0100

- and -

Douglas McSwane
Texas State Bar No. 13861300
POTTER MINTON, P.C.
110 North College
500 Plaza Tower
Tyler, Texas 75702
Phone: (903) 597-8311
Fax: (903) 593-0846

*ATTORNEYS FOR DEFENDANT*
*AMERIMERCHANT LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument has been served upon all counsel of record on this the 30th day of August, 2006 as indicated:

*Via Electronic Mail and U.S. Mail*
Ronald S. Lemieux
PAUL, HASTINGS, JANOFSKY & WALKER LLP
Five Palo Alto Square, Sixth Floor
Palo Alto, CA 94306-2155

Otis Carroll
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703

*/s/ Amy A Reiley*