UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ADVANCEME, INC., | § | CIVIL CASE NO. 6:06-CV-082 LED-JDL |
|     Plaintiff, | § | |
| v. | § | |
| AMERIMERCHANT, LLC, | § | |
|     Defendant. | § | |

**PLAINTIFF ADVANCEME, INC.'S OPPOSITION TO AMERIMERCHANT'S MOTION FOR RECONSIDERATION UNDER FRCP 59(E) AND 72(A) OF AMERIMERCHANT'S MOTION FOR LEAVE TO AMEND ITS INVALIDITY CONTENTIONS**

## TABLE OF CONTENTS

                                                                                                                          **Page**

I.    INTRODUCTION ............................................................................................................1

II.    background ....................................................................................................................1

       A.    AmeriMerchant's Awareness of the Deadlines in the Docket Control Order .......1

       B.    Defendants Serve a Subpoena on Bieler Many Weeks After Their Final Invalidity Contentions Are Served ..........................................................................3

       C.    AmeriMerchant Files a Motion To Amend Its Invalidity Contentions, Without Providing Any Showing of Diligence ...............................3

       D.    AmeriMerchant's Counsel Reveals New Facts in Oral Argument Which Proves That AmeriMerchant Did Not Act With Reasonable Diligence ................5

       E.    AmeriMerchant Files the Instant Motion ...............................................................7

III.    ANALYSIS .......................................................................................................................8

       A.    Legal Standards ........................................................................................................8

       B.    AmeriMerchant's Failure To Present Admissible Evidence To Demonstrate Its Diligence by Itself Demonstrates the Magistrate's Order Was Correct. ..........8

       C.    The Court's Determination That AmeriMerchant Failed To Show It Acted Diligently Was Clearly Correct ...............................................................................9

       D.    There Were No "Factual Errors" in the Court's Order .......................................11

IV.    CONCLUSION ..............................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*Martinez v. Porta,* No. Civ.A. 4:03CV915Y,
    2006 WL 3289187 (N.D. Tex. Nov. 1, 2006).................................................................. 8

*Palacios Seafood, Inc. v. Piling, Inc.*,
    888 F.2d 1509 (5th Cir. 1989) ....................................................................................... 8

## STATUTES

Federal Rule of Civil Procedure 72 ....................................................................................... 8

I.  **INTRODUCTION**

AmeriMerchant's motion fails to provide a single valid reason why Magistrate Judge Love's July 3, 2007 Order should be "reconsidered."  To the contrary, the record before the Magistrate Judge compelled denial of the motion.  Under well-settled and binding precedent from the Fifth Circuit, AmeriMerchant was required in its initial motion to explain – using admissible evidence – why it was unable to obtain information concerning the alleged Bieler prior art before the deadline to submit final Invalidity Contentions set forth in the Docket Control Order and this Court's Local Rules.  *AmeriMerchant utterly failed to make this required showing.*  Therefore, AmeriMerchant's motion had to be denied as a matter of law.

At the hearing on its motion, AmeriMerchant recognized that its moving papers did not contain any evidence to show that it acted diligently in pursuing information from Bieler.  Rather than relying upon the admissible evidence it submitted, AmeriMerchant's counsel instead tried to provide an *oral* explanation unsupported by any declaration for AmeriMerchant's extraordinary delay in serving Bieler with a subpoena.  However, this oral explanation revealed facts that were even more devastating to AmeriMerchant's position.  Indeed, during the hearing, AmeriMerchant conceded that it had known about the Bieler website since *October of 2006*, and that it had been in regular contact with counsel for Bieler since *November of 2006*.  Yet, it is undisputed that AmeriMerchant did not serve Bieler with a subpoena until March 30, 2007, at least six weeks *after* AmeriMerchant's final Invalidity Contentions were due.  These facts compel the conclusion that AmeriMerchant did not act with reasonable diligence.

In short, the undisputed facts show that AmeriMerchant could not possibly meet the diligence standard required by the Fifth Circuit.  AmeriMerchant's failure to demonstrate that the July 3, 2007 order is clearly erroneous or contrary to law compels the denial of this motion.

II.  **BACKGROUND**

    A.  **AmeriMerchant's Awareness of the Deadlines in the Docket Control Order.**

The Docket Control Order in the instant case was issued on July 5, 2006.  [D.E. 20] Therein, the Court set a deadline of July 20, 2006 for AmeriMerchant to submit its Invalidity Contentions.  The Patent Local Rules required AmeriMerchant's Invalidity Contentions to contain

an identification of allegedly invalidating prior art, as well as an identification of where the particular elements of the patent claims could be located in this prior art. P.R. 3-3. Further, with respect to a public use defense, P.R. 3-3(b) required "the identity of the person or entity which made the use or which made and received the offer, or the person or entity which made the information known or to whom it was made known."

On July 20, 2006, AmeriMerchant served its Invalidity Contentions. [D.E. 140B, Ex. 1] These Invalidity Contentions made no mention whatsoever of a company called Bieler & Associates ("Bieler"). Though the Contentions alleged that prior art relating to a processor called Litle & Co. anticipated the patent claims, the Contentions did not specify the identity of any payment receiver or third party that allegedly received and applied the portions of payment as required by the claims of the '281 Patent.

On October 4, 2006, over AdvanceMe's objection, the Court granted AmeriMerchant's motion for leave to amend its Invalidity Contentions. [D.E. 61] However, even though AmeriMerchant now admits it knew of Bieler in October of 2006, AmeriMerchant never amended its Contentions pursuant to that order to add Bieler, or for any other reason. Rather, on November 2, 2006, AmeriMerchant again sought leave to amend its Contentions. Once again, leave was granted to AmeriMerchant on December 5, 2006. [D.E. 96]

On February 12, 2007, AmeriMerchant served its final set of Invalidity Contentions. [D.E. 111, D.E. 140B, Ex. 3] Apparently, AmeriMerchant believed it was entitled to amend its Invalidity Contentions without leave of Court pursuant to P.R. 3-6(a). Once again, these contentions did not make any mention of Bieler, even though by this point AmeriMerchant had (according to the oral representations of its counsel) already been referred to Bieler's website, reviewed the website, and engaged in several conversations with Bieler's attorneys.

As of the end of March of 2007, AmeriMerchant had served three different sets of Invalidity Contentions, including the final Contentions allegedly permitted by P.R. 3-6(a). None of these Contentions made any mention whatsoever of Bieler, nor did they make reference to any third party or payment receiver related to the Litle prior art other than a third party called Hanover Finance. Further, though AmeriMerchant's counsel had by this point been in contact with Bieler for months,

AmeriMerchant never once disclosed Bieler in its Rule 26 initial disclosures or otherwise informed AdvanceMe of Bieler's existence.

### B. Defendants Serve a Subpoena on Bieler Many Weeks After Their Final Invalidity Contentions Are Served.

On March 30, 2007, more than six weeks *after* its final Invalidity Contentions were served, AmeriMerchant served a subpoena on Bieler. Though it was carefully concealed at the time, the Court now knows that this subpoena was served at least *five months* after AmeriMerchant had been referred to Bieler as a potential source of prior art.

On April 30, 2007, Bieler made a production of documents in response to this subpoena. This production included hundreds of pages of documents relating to Bieler's alleged system, including numerous draft agreements between Bieler and other entities which contained broad confidentiality clauses. [RapidPay[1] D.E. 277 at Ex. 9] The production also revealed the existence of at least a dozen different witnesses to the alleged agreements, including employees at Bieler, counsel for Bieler, and employees at Litle & Co.

On April 30, 2007, AmeriMerchant sent a letter to AdvanceMe announcing its intention to use the Bieler prior art in the upcoming trial in the *RapidPay* case, as well as in the instant *AmeriMerchant* case. [*RapidPay* D.E. 264 at Ex. D] The letter failed to explain why AmeriMerchant waited until weeks *after* its final Invalidity Contentions were served to serve a subpoena on Bieler. In its responsive letter, AdvanceMe explained how the attempt to belatedly introduce this prior art threatened to severely prejudice AdvanceMe's case, and how AmeriMerchant's "offer" of a single deposition to rectify this prejudice was woefully inadequate. [*Id.* at Ex. E]

### C. AmeriMerchant Files a Motion To Amend Its Invalidity Contentions, Without Providing Any Showing of Diligence.

On May 25, 2007, AmeriMerchant filed a motion seeking leave to amend its Invalidity Contentions for the third time. This motion did not make any serious attempt to provide the

---

[1] References to the *RapidPay* docket refer to the case styled *AdvanceMe v. RapidPay*, No. 6:05-CV-424 LED-JDL pending before this Court.

evidence that the law required. For example, though the law required that AmeriMerchant make an evidentiary showing to explain why it was unable to comply with the deadlines in the Docket Control Order despite the exercise of reasonable diligence, AmeriMerchant's motion did not contain *any* showing of diligence at all. Rather, AmeriMerchant submitted a brief declaration from counsel which merely authenticated correspondence between counsel, but did not address the question of why AmeriMerchant waited until March 30, 2007 to subpoena Bieler.

In its opposition to AmeriMerchant's motion, AdvanceMe cited governing precedent from the Fifth Circuit requiring AmeriMerchant to demonstrate that it acted diligently in attempting to comply with the Docket Control Order, but that the deadlines in that order could not be complied with despite such diligence. [D.E. 140A] AdvanceMe further explained that AmeriMerchant had not even attempted to show that it acted diligently to investigate the Bieler prior art. For example, AmeriMerchant did not indicate when it learned of Bieler, how it learned of Bieler, or what steps it had previously taken to get information from Bieler. This information also was not contained in AmeriMerchant's Reply memorandum. [D.E. 148]

Not only did AmeriMerchant fail to provide any explanation for why it waited until the end of March to subpoena Bieler, the few vague statements its counsel did make on the subject were extremely misleading. For example, in the companion motion in the *RapidPay* case, AmeriMerchant's counsel represented that "[u]pon discovering the existence of Bieler Marketing Associates, Defendants diligently pursued discovery." [*RapidPay* D.E. 264, p. 2] However, counsel carefully avoided informing the Court that it had "discovered the existence" of Bieler in *October of 2006*-at least *five months* before any subpoena was served.

Similarly, AmeriMerchant's counsel represented to the Court that it should not be blamed for delays in locating the Bieler website because it was not "easily discoverable." In particular, counsel argued as follows:

> In its attempt to rebut diligence, Plaintiff emphasizes that, "The website for Media Funding Corporation has been publicly accessible since at least 2003[.]" (Pl.'s Opp'n at 10.) That statement is relevant only if Defendants are charged with constructive knowledge of *every website in the entire Internet*. There are undoubtedly countless publicly accessible websites that have not been visited by any party in this litigation -- some of which were accessible in 2003. Plaintiff's assumption that the existence of Media Funding Corporation's website was easily

> discoverable cannot stand, especially given that the neither Peter Bieler nor Media Funding Corporation was ever mentioned at a deposition. (Pl.'s Opp'n at 4-5.)

[*RapidPay* D.E. 293, p. 2 (italics in original; footnote omitted)] This paragraph was also extremely misleading. When it made this statement, AmeriMerchant knew that its counsel had first accessed the Bieler website in *October of 2006*. Rather than inform the Court of this fact in its moving or reply papers, AmeriMerchant attempted to create the impression that the discovery of the Bieler website was of recent vintage.

As of the time of the hearing on AmeriMerchant's motion, therefore, AmeriMerchant simply had not made the showing of diligence required in order to permit the granting of the motion. AmeriMerchant had instead attempted to dodge the question of diligence entirely, and provided several vague statements that were designed to mislead the Court. Based on the record before the Court, therefore, a denial of AmeriMerchant's motion was inevitable.[2]

### D.     AmeriMerchant's Counsel Reveals New Facts in Oral Argument Which Proves That AmeriMerchant Did Not Act With Reasonable Diligence.

On June 27, 2007, the parties presented oral argument concerning AmeriMerchant's motion. Bill Schuurman, counsel for AmeriMerchant, presented AmeriMerchant's argument. Incredibly, though AmeriMerchant's motion failed to provide any details to demonstrate diligence, Mr. Schuurman's presentation consisted of a "new" explanation for AmeriMerchant's activities which was unsupported by the briefing and declarations that it submitted.

Mr. Schuurman started by representing that AmeriMerchant had first become aware of Bieler in *October of 2006,* by clicking on the Bieler website. Declaration of Shanée Y. Williams ("Williams Decl."), Ex. A at 70:14-15. This admission was contained nowhere in AmeriMerchant's briefs or supporting declarations, and to the contrary AmeriMerchant clearly led the Court to believe in its papers that the website was a recent discovery. The concession that AmeriMerchant

---

[2] Rather than provide evidence of diligence, in its reply memorandum AmeriMerchant stated that "[t]o the extent the Court wishes to learn additional details concerning Defendants' diligence, Defendants will further detail their extensive efforts at the hearing on this motion on June 27th." [D.E. 148, p. 4] AdvanceMe is unaware of any authority which would permit AmeriMerchant to purposefully omit supporting evidence in its briefing, and instead present such evidence for the *first time* at the hearing – especially when such evidence takes the form of oral representations unsupported by any sworn declarations.

had known of Bieler for at least *five months* before they even attempted to *serve* a subpoena on Bieler by itself demonstrated AmeriMerchant's lack of diligence.

Mr. Schuurman did not stop with that admission, however. Rather, Mr. Schuurman proceeded to explain how, in November of 2006, he had a conversation with Bieler's counsel, during which there was discussion of the type of documentation that Bieler might have. *Id*. at 71:1-14. This fact was also completely absent from AmeriMerchant's briefing, and indeed the existence of such a conversation had been carefully concealed from the Court until the June 27 hearing. Mr. Schuurman failed to explain why this fact was not included in AmeriMerchant's briefing or declarations, nor did he explain why AmeriMerchant was unable to issue a subpoena to Bieler at the same time it was discussing the case with Bieler.

Mr. Schuurman then continued his oral argument by representing that, in the early part of 2007, there was yet another conversation he had with a different counsel for Bieler, during which Bieler's documentation was again discussed. *Id*. at 71:22-72:7. This fact was also completely absent from the evidence submitted by AmeriMerchant in support of the motions. Once again, Mr. Schuurman was unable to explain why AmeriMerchant failed to subpoena Bieler at that time.

Collectively, these oral representations further confirmed the extraordinary lack of diligence on the part of AmeriMerchant. These representations confirmed that AmeriMerchant had known of Bieler in October of 2006, had reviewed Bieler's website in October of 2006, had discussed the case with Bieler's counsel in November of 2006, and had discussed the case with another of Bieler's counsel in early 2007. Yet, even though the deadlines in the Docket Control Order were passing by during the intervening time period, AmeriMerchant did not issue any subpoena to Bieler to find out what documentation it possessed.

On July 5, 2007, the Court issued its order denying AmeriMerchant's motion. In that order, the Court cited the governing law from the Fifth Circuit, which requires "the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." [D.E. 153, p. 4, *quoting S & W Enters., L.L.C. v. Southtrust Bank of Ala., NA,* 315 F.3d 533, 535 (5th Cir. 2003)] The Court explained that AmeriMerchant had not provided any explanation in its briefing to show reasonable diligence and that the oral representations from

AmeriMerchant's counsel at the hearing further showed that AmeriMerchant did not act with the requisite diligence. In particular, the Court explained:

> In order to establish good cause, AmeriMerchant had a duty to establish that it acted diligently to gather the relevant evidence before the deadlines in the Docket Control Order, and that it could not meet those deadlines despite diligent efforts. *S & W Enters., LLC*, 315 F.3d at 535. The Court is realistic in its evaluation and will not penalize parties for best efforts, but there must be a clear and convincing showing of attempts to comply with scheduling deadlines. AmeriMerchant fails to make the required showing of diligence in their briefing, and the explanation provided to the Court at hearing was not sufficient to explain the minimal discovery efforts between October 2006 and March 2007.

[*Id.*, p. 7]

In addition, the Court's order recognized the extreme prejudice AdvanceMe would suffer if the motion was granted, because "if the Bieler documents had been produced in a timely fashion, AdvanceMe would have been able to spend months conducting discovery on the issues raised by those documents." [*Id.*, p. 9] The Court further stated that "[a]t some point, efforts to amend Invalidity Contentions must come to an end, and this district has consistently discouraged parties from adopting a 'rolling' approach to invalidity contentions because it thwarts the purposes of the local patent rules designed to require parties to crystallize their theories of the case early in litigation." *Id.*

### E.    AmeriMerchant Files the Instant Motion.

On July 16, 2007, AmeriMerchant filed the instant motion for reconsideration. The apparent basis for the motion is that Magistrate Judge Love made certain factual errors in his order because he allegedly misinterpreted certain oral representations made by Mr. Schuurman. AmeriMerchant's motion fails to disclose, however, that the actual *evidence* submitted by AmeriMerchant on the question of diligence was non-existent. Further, AmeriMerchant's motion does not once cite the governing "good cause" standard for amendment of Invalidity Contentions, nor does it explain how Magistrate Judge Love misapplied that standard. Indeed, AmeriMerchant's motion does not cite any case law at all.

III.  ANALYSIS

    A.  **Legal Standards**

Under Federal Rule of Civil Procedure 72, a district court may only modify or set aside a magistrate's pretrial order if the order is determined to be "clearly erroneous or contrary to law." This is a very difficult burden to meet. A magistrate's order is clearly erroneous only if the court is "left with the definite and firm conviction that a mistake has been committed." *Palacios Seafood, Inc. v. Piling, Inc.*, 888 F.2d 1509, 1513 (5th Cir. 1989). A magistrate's order is contrary to law only if it "misinterpreted or misapplied applicable law." *Martinez v. Porta*, No. Civ.A. 4:03CV915Y, 2006 WL 3289187, *2 (N.D. Tex. Nov. 1, 2006). Further, a court may not disturb a magistrate's determination merely because the matter could have been decided differently. *Id.* at *2.

    B.  **AmeriMerchant's Failure To Present Admissible Evidence To Demonstrate Its Diligence by Itself Demonstrates the Magistrate's Order Was Correct.**

The first reason the Court denied AmeriMerchant's motion to amend was because AmeriMerchant had failed to demonstrate that it could not have complied with the deadlines in the Docket Control Order despite the exercise of reasonable diligence. The Fifth Circuit has made clear that a party in AmeriMerchant's position *must* make this showing: "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." [D.E. 153, p. 4, *quoting S & W Enters., L.L.C.,* 315 F.3d at 535]

AmeriMerchant's motion does not cite this standard, nor does it explain how the admissible evidence presented by AmeriMerchant could possibly satisfy it. During the briefing before Magistrate Judge Love, the *only* declaration submitted by AmeriMerchant was a brief declaration by its counsel that merely authenticated certain documents. This declaration did *not* provide an explanation for AmeriMerchant's delay in subpoenaing Bieler, did *not* explain what AmeriMerchant had done to follow up with Bieler before its final Invalidity Contentions were served, and did *not* provide any details concerning when, how, or why AmeriMerchant had first learned of Bieler. Put simply, AmeriMerchant's briefing was entirely devoid of *any* admissible evidence from which the Court could find that AmeriMerchant had acted diligently.

The July 5, 2007 Order explicitly recognized this lack of supporting evidence:

> Counsel's declaration (*See* 6:05-CV-424, Doc. No. 264, Ex. A) does not provide a detailed chronology of the steps taken by AmeriMerchant after Bieler was first identified. Such a chronology is also absent in Defendants' briefing for both actions (*See* 6:05-CV-424, Doc. No. 264; 6:06-CV-082 Doc. No. 133) and counsel did not disclose the actions that it took to contact Bieler until it addressed the Court on June 27, 2007. . . . *AmeriMerchant fails to make the required showing of diligence in their briefing*, and the explanation provided to the Court at hearing was not sufficient to explain the minimal discovery efforts between October 2006 and March 2007.

[D.E. 153, pp. 6-7 (emphasis added)]  This finding is not challenged by AmeriMerchant.  By itself, this finding is completely dispositive of the instant motion.  In order to obtain leave to amend its Invalidity Contentions, AmeriMerchant was required to demonstrate in its briefing the steps it had allegedly taken to diligently investigate its case.  However, the briefing provided by AmeriMerchant was completely devoid of any facts from which the Court could determine that AmeriMerchant had acted diligently with respect to Bieler.

Recognizing the inadequacy of its briefing, AmeriMerchant instead focuses in the instant motion on the *oral* representations made by Bill Schuurman, counsel for AmeriMerchant, for the first time at the June 27, 2007 hearing.  However, these representations were not contained in any sworn declarations, and do not constitute admissible evidence.  Indeed, since Mr. Schuurman's representations were made for the first time at the June 27 hearing, AdvanceMe did not even have an opportunity to respond to such representations in its briefing.  Mr. Schuurman's oral, unsworn representations are utterly irrelevant.

In short, given the paucity of the admissible evidence in the record, the Court's denial of AmeriMerchant's motion was clearly appropriate under any conceivable standard.

### C. The Court's Determination That AmeriMerchant Failed To Show It Acted Diligently Was Clearly Correct.

During the June 27, 2007 hearing before Magistrate Judge Love, AmeriMerchant for the first time attempted to provide an "explanation" for why it waited until weeks *after* the final Invalidity Contentions were served to serve a subpoena on Bieler.  These oral representations, however, completely backfired on AmeriMerchant, as they demonstrated beyond a shadow of a doubt that AmeriMerchant had not acted diligently.  Indeed, during the course of providing this

verbal explanation, AmeriMerchant's counsel *conceded* that (a) AmeriMerchant had known about and reviewed the Bieler website in *October of 2006*, (b) AmeriMerchant had engaged in discussions with Bieler's counsel in *November of 2006*, (c) AmeriMerchant had engaged in further discussions with another of Bieler's counsel in *early 2007*, and (d) AmeriMerchant had nonetheless chosen to wait until the end of March of 2007, weeks *after* its final Invalidity Contentions were submitted, to serve a subpoena on Bieler. These concessions paint a devastating picture of AmeriMerchant's lack of diligence. It is small wonder that AmeriMerchant chose to conceal these facts during its briefing, and instead waited to reveal them for the first time during oral argument.

AmeriMerchant now contends that its lack of diligence is somehow excusable, because all it allegedly knew in October of 2006 was the "bare existence" of Bieler, and this was "not sufficient to identify Bieler Marketing Associates as relevant prior art." [D.E. 161, p. 9] This argument is absurd. As of October of 2006, AmeriMerchant knew that Bieler was a potential source of prior art, since that is precisely why it had been "referred" (by some source that AmeriMerchant refuses to disclose) to the website in the first place. AmeriMerchant also knew that Bieler had worked with infomercial companies, since that was plainly announced on the Bieler website. AmeriMerchant further knew that Tim Litle had just testified, during his deposition, that funding of infomercial companies was part of his alleged prior art system. What more did AmeriMerchant possibly need to know in order to serve a subpoena?

AmeriMerchant's subsequent activity also belies the assertion that all it knew in 2006 was the "bare existence" of Bieler. If this is all that AmeriMerchant knew, then why it would even have bothered to review the website in the first place? Why did AmeriMerchant then attempt to follow-up with Bieler's counsel in November of 2006 to discuss this case? Why did AmeriMerchant engage in further discussions with another of Bieler's counsel in early 2007 to discuss the case? Clearly, AmeriMerchant knew far more than the "bare existence" of Bieler, but rather knew that Bieler was a potentially relevant source of prior art. AmeriMerchant's failure to serve a subpoena on Bieler during this entire time period is impossible to justify.

AmeriMerchant further contends that it "could not have reasonably issued a subpoena" at any time from October of 2006 until March of 2007 because it did not know "whether or not Bieler

Marketing Associates was prior art." [D.E. 161, pp. 9-10]  This theory is completely at odds with the very purpose of discovery.  The whole reason for serving a subpoena on Bieler would have been to *find out* whether it constituted prior art.  Yet, even though AmeriMerchant knew Bieler was a potential source of information, and had visited the Bieler website and engaged in numerous discussions with Bieler's attorneys, AmeriMerchant did not take any steps to obtain documentation from Bieler for at least *five months,* during which time the parties served their final Infringement Contentions and Invalidity Contentions and completed numerous depositions.  There is simply no excuse for AmeriMerchant to sit around for months without even bothering to serve an appropriate subpoena.

AmeriMerchant also claims that "it would be inappropriate to issue subpoenas for 10-year-old documents without any reasonable belief that the documents exist." [D.E. 161, p. 10] Yet, AmeriMerchant obviously did have a reasonable belief that the documents existed, which is precisely why it visited the website in October of 2006 and engaged in repeated discussions with Bieler's counsel after that date.  The fact that AmeriMerchant allegedly was *uncertain* that such documents existed only begs the question why AmeriMerchant did not subpoena Bieler in 2006.  Indeed, AmeriMerchant had *months* before its final Invalidity Contentions were served to subpoena Bieler in order to determine whether it had any relevant documents.

In short, the Court's finding on AmeriMerchant's lack of diligence is not erroneous in any respect.  Accordingly, AmeriMerchant's motion should be denied.

   D.   **There Were No "Factual Errors" in the Court's Order.**

AmeriMerchant further alleges that Magistrate Judge Love made various "factual errors" in the July 3, 2007 Order. [D.E. 161, p. 1]  This is simply untrue.

First, AmeriMerchant contends that "the Court erroneously found that AmeriMerchant learned of Bieler's role in the Little & Co. prior art in October of 2006, when all evidence in the record establishes that AmeriMerchant did not learn of this fact until April 27, 2007 . . . ." [D.E. 161, pps. 1-2]  To the extent the Court made such a finding, it is overwhelmingly established by the record.  The record clearly indicates that, on September 6, 2006, Defendants took the deposition of Tim Litle, and during this deposition Mr. Litle explicitly testified about the relationship

between Litle & Co. and the funding of infomercial companies. [*RapidPay* D.E. 277, Ex. 6] AmeriMerchant claims it was then "referred" to the Bieler website, which specifically describes the involvement of a credit card processor in funding infomercials. AmeriMerchant cannot seriously expect this Court to believe that it was a "coincidence" that it reviewed the Bieler website immediately after the Litle deposition, or that it did not understand there was a potential connection between Bieler and Litle.

AmeriMerchant complains that its knowledge of a connection between Bieler and Litle in October of 2006 was "speculation." To the extent there is any "speculation" involved, however, this is only because AmeriMerchant has once again chosen to hide behind a veil of secrecy rather than coming clean to the Court about what transpired. If in fact AmeriMerchant was completely unaware of any relationship between Bieler and Litle in October of 2006, then why was AmeriMerchant looking at the Bieler website in the first place? Why was AmeriMerchant ever "referred" to the website? AmeriMerchant did not choose to review that website out of thin air, but rather went to the website because it knew that Bieler was a potential source of prior art.

AmeriMerchant also claims that it would have had no "motive" for withholding information about Bieler. The Court need only look at the past actions of AmeriMerchant's counsel in this case to know this is untrue. Throughout this case, Defendants in this and the *RapidPay* cases have withheld relevant information that they were obligated to provide to AdvanceMe, precisely so that they could wait until the last minute and then spring new allegations without giving AdvanceMe an adequate opportunity to respond. This is precisely why fellow defendant First Funds, represented by the same counsel, was recently sanctioned. The failure to disclose Bieler to AdvanceMe for months is perfectly consistent with that pattern. In any event, AmeriMerchant's "motives" are irrelevant. The Court did not deny AmeriMerchant's motion because AmeriMerchant intentionally hid information, but rather because AmeriMerchant was unable to demonstrate that it acted with reasonable diligence.

<u>Second</u>, AmeriMerchant contends that Magistrate Judge Love somehow erred by finding that Hanover Finance was the only merchant creditor disclosed by AmeriMerchant's Invalidity Contentions as having been paid using the Litle & Co. system. This finding was indisputably

correct. In its Invalidity Contentions, AmeriMerchant only named a single alleged "third party" that received payments from Litle & Co., and this company was Hanover Finance. Though AmeriMerchant vaguely alleged that other "merchant creditors" existed, it did not identify the name of a single one of these entities. Similarly, during the extensive summary judgment proceedings, the only third party identified was Hanover Finance. As Magistrate Judge Love correctly determined, "At no time during these [summary judgment] briefings was there any mention of third parties that were publicly using the Litle system and method except for the 'Hanover Finance Program,' whose security agreement with Litle was identified in Amended Invalidity Contentions." [D.E. 153, p. 2]

AmeriMerchant contends that because it vaguely referred to "third party creditors," it should be permitted to inject into this case any arrangements with any creditors that it wants, even if the creditor was not identified until months after its Invalidity Contentions were due. This is not the law. As Magistrate Judge Love explained in the July 3 Order, this Court's Local Rules expressly required AmeriMerchant to identify in its Contentions "the identity of the person or entity which made the use or which made and received the offer, or the person or entity which made the information known or to whom it was made known." [D.E. 153, p. 6, citing P.R. 3-3(b)] Accordingly, to provide AdvanceMe with fair notice, AmeriMerchant was required to identify *all* merchant creditors or other third parties that allegedly knew of the purported public use of the Litle prior art. Since, however, AmeriMerchant did not disclose Bieler in their Invalidity Contentions, the Court correctly determined that Bieler was not part of this case.

AmeriMerchant alternatively contends that "the '281 patent only tangentially involves Bieler Marketing Associates, and thus Bieler Marketing Associates does not fit into any of the categories required by P.R. 3-3(b) for [Section] 102(b) prior art." [D.E. 161, p. 6] Apparently, AmeriMerchant claims this is true because third party creditors have no "actions to perform" under the elements of the patent. Once again, however, AmeriMerchant entirely ignores the plain language of this Court's Local Rules. Rule 3-3(b) does not merely require identification of those parties with "actions to perform" under the patent, but rather explicitly requires identification of *all* parties that publicly used the invention *or* to whom the use of the invention was known.

Accordingly, regardless of whether Bieler needed to perform "actions" under the patent, AmeriMerchant was required to identify Bieler in its Invalidity Contentions.

AmeriMerchant also appears to argue that, since Bieler was just "another party paid by the Litle & Co. system," AmeriMerchant's failure to diligently investigate Bieler was harmless. This argument is meritless. AmeriMerchant completely overlooks the fact that the identification of any third party users or witnesses to the alleged Litle system is critical, because without such identification it is simply impossible for AmeriMerchant to establish the existence of the allegedly invalidating public use. By failing to disclose *any* third parties other than Hanover Finance, AmeriMerchant robbed AdvanceMe of the opportunity to conduct the months of discovery that would be necessary to explore Litle's alleged relationship with such third parties. Indeed, if AdvanceMe had received identification of Bieler in a timely fashion, AdvanceMe would have spent months exploring whether the Bieler documentation qualified as a "public use" or whether the alleged Litle system was adequately corroborated.

Further, AmeriMerchant's contention that the third party involved is irrelevant to the patent claims is belied by the plain terms of the claims themselves. Claim 1 of the '281 Patent explicitly requires that a payment receiver receive and apply a portion of the amount forwarded by the merchant processor. Claim 10 of the '281 Patent explicitly requires that, under the forwarding algorithm, a third party receive a portion of the amount that would otherwise be paid to the merchant. For both of the independent claims in the patent, therefore, the payment receiver or third party is a critical component of the three-way relationship that the patent describes. Without any corroboration that such a payment receiver or third party existed, or that the third party received the portion of the payment under the algorithm required by the patent, AmeriMerchant's invalidity defense cannot even get past first base.

<u>Third</u>, AmeriMerchant claims that the Court's order was erroneous because it did not find that AdvanceMe became aware of Bieler on March 30, 2007, and could have conducted discovery of Bieler after that time. This argument is hard to comprehend. As AdvanceMe explained in its opposition to the underlying motion, the discovery AdvanceMe would have needed to respond to Bieler went far beyond the deposition of Peter Bieler, but rather would have involved a host of

depositions and written discovery regarding the plethora of new issues raised by the Bieler documentation. It is beyond the pale for AmeriMerchant to suggest that, due to its own lack of diligence, AdvanceMe should have been required to drop everything while it was in the midst of pretrial preparation and notice 10 different depositions with respect to a prior art reference that was never disclosed in AmeriMerchant's Invalidity Contentions.

During the briefing on the underlying motion, AdvanceMe painstakingly explained the huge volume of discovery that would be required if AmeriMerchant was permitted to inject Bieler into this case at such a late date. As AdvanceMe explained, not only would it have to conduct a series of brand-new depositions, it would also have to re-depose individuals (such as Tim Litle) whose depositions had already been concluded in 2006. AdvanceMe would also have to issue its own subpoenas and other written discovery requests in order to explore brand-new issues such as whether Bieler qualified as "public use," whether Bieler performed all the claim elements before the priority date of the '281 Patent, and whether the actual operation of Bieler was adequately corroborated. The Court recognized that it would take months for AdvanceMe to explore these issues. [D.E. 153, p. 9] This prejudice alone compelled the denial of the motion.

Indeed, this prejudice is even greater now than it was at the time the Order was issued. Pursuant to the Court's July 16, 2007 order, AdvanceMe has been given only until August 24, 2007 to complete fact discovery on all aspects of this case. [D.E. 160] Between now and August 24, AdvanceMe will need to devote its time and attention to the huge wealth of follow-up discovery arising out of the sanctions order issued against defendant First Funds. [D.E. 151] To this end, AdvanceMe has already noticed the depositions of 11 different third-party entities, and anticipates the need to notice further depositions and subpoenas within the next week. Williams Decl., ¶ 3.[3] It would be the height of unfairness for AdvanceMe to be required, during this same time period, to begin conducting months of discovery on yet *another* issue that AmeriMerchant failed to promptly investigate during the fact discovery period.

---

[3] Due to this large volume of upcoming discovery, the parties have agreed in principle that they will be permitted until September to complete depositions noticed before the cutoff date.

## IV.  CONCLUSION

For the foregoing reasons, AdvanceMe respectfully requests that the Court deny AmeriMerchant's Motion.

Date:  July 30, 2007		Respectfully submitted,

					By:  */s/ Shanée Y. Williams*
					**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
					Ronald S. Lemieux  (ronlemieux@paulhastings.com)
					(CA Bar No. 120822) (Admitted Pro Hac Vice)
					Michael N. Edelman (michaeledelman@paulhastings.com)
					(CA Bar No. 180948) (Admitted Pro Hac vice)
					Five Palo Alto Square, Sixth Floor
					Palo Alto, CA  94306-2155
					Telephone:  650.320.1800  Facsimile:  650.320.1900

					**IRELAND CARROLL & KELLEY**
					Otis W. Carroll, Jr. (fedserve@icklaw.com)
					LEAD ATTORNEY
					State Bar No. 03895700
					Deborah J. Race (drace@icklaw.com)
					State Bar No. 16448700
					6101 S. Broadway, Suite 500
					Tyler, TX  75730
					Telephone:  903.561.1600  Facsimile:  903.581.1071

					ATTORNEYS FOR PLAINTIFF ADVANCEME, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

By: */s/ Shanée Y. Williams*

LEGAL_US_W # 56739634.1