# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **ADVANCEME, INC.** | § | |
| | § | |
| Plaintiff | § | |
| | § | **CIVIL ACTION NO. 6:05cv424** |
| vs. | § | |
| | § | |
| **RAPIDPAY, LLC, BUSINESS CAPITAL CORPORATION, FIRST FUNDS LLC, MERCHANT MONEY TREE, INC., REACH FINANCIAL, LLC and FAST TRANSACT, INC. d/b/a SIMPLE CASH** | § | |
| | § | |
| Defendants, | § | |

| | | |
|---|---|---|
| **ADVANCEME, INC.** | § | |
| | § | |
| Plaintiff | § | |
| | § | **CIVIL ACTION NO. 6:06cv082** |
| vs. | § | |
| | § | |
| **AMERIMERCHANT, LLC,** | § | |
| | § | |
| Defendant | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff AdvanceMe, Inc.'s ("AdvanceMe") Motion for Sanctions or Alternative Relief (Doc. Nos. 262 and 132), Defendant First Funds, LLC's ("First Funds") Response (Doc. No. 278), and the parties' replies. Having carefully considered the parties briefings and the applicable law, as well as arguments from counsel at a hearing held June 27, 2007, the Court hereby GRANTS Plaintiff's motion in part.

### BACKGROUND AND CONTENTIONS OF PARTIES

AdvanceMe filed suit against First Funds and several other defendants on November 5, 2005.

That case, entitled *AdvanceMe, Inc. v. RapidPay, LLC, et al.*, Civil Action No. 6:05-cv-424, is set for trial on July 16, 2007. On February 27, 2006, AdvanceMe filed a companion case, *AdvanceMe, Inc. v. Amerimerchant, LLC*, Civil Action No. 6:06-cv-82, which is set for trial on January 7, 2008.

On May 18, 2007, AdvanceMe filed a Motion for Sanctions or Alternative Relief against First Funds. Plaintiff AdvanceMe argues that Defendant First Funds has violated its discovery burden by not producing documents that are clearly relevant to the claims and defenses in this suit. The parties were to exchange relevant documents by June 26, 2006. AdvanceMe claims that it only received 282 pages of documents, which did not include any emails between First Funds and its merchant processors. First Funds produced 29 emails with a company named "Northern Leasing;" nevertheless, according to AdvanceMe, First Funds refused to produce any additional documents regarding Northern Leasing and refused to answer questions about Northern Leasing at a First Funds 30(b)(6) deposition, claiming it was irrelevant as Northern Leasing had "no function" and "no role" in the operation of First Funds' cash advance program.

Plaintiff AdvanceMe also argues that despite numerous requests, and several meet and confers, First Funds claimed it had no more relevant documents relating to the '281 Patent, contracts or agreements between First Funds and any merchant processors, and other documents relating to the operation of First Funds' cash advance programs, including individuals and entities referred to in its initial production of documents. At the time of the 30(b)(6) deposition, AdvanceMe claims it had received a total of 295 pages of documents.

On December 19, 2006, First Funds produced the Outlook email accounts for three employees, one of which was the First Funds operations manager (Krissy Burkey), but not the email account for the 30(b)(6) designee (David Talbert). This, plus the 295 documents already produced

2

and some copies of internal merchant files First Funds allowed AdvanceMe to copy, was the sum total of production received from First Funds. According to AdvanceMe, this pattern of conduct continued until the close of discovery on March 2, 2007, with Plaintiff requesting additional production and First Funds claiming it had produced all relevant documents.

Prior to the close of discovery, on November 13, 2006, AdvanceMe issued a subpoena on third-party Northern Leasing, based on the documents produced by First Funds. Northern Leasing objected to the subpoena, and AdvanceMe filed a motion to compel in the Southern District of New York. After oral argument, the New York court granted AdvanceMe's motion to compel on February 28, 2007, two days before the discovery deadline.

In April 2007, Northern Leasing produced more than two gigabytes of electronic data, over 150,000 pages of documents, most of which AdvanceMe claims relate to First Funds' cash advance program. The production included more than 4,000 emails between the First Funds and Northern Leasing's Operations Managers concerning the cash advance program, as well as 1,000 emails emails to, from, or referencing Jay Cohen, a principal of First Funds, Northern Leasing and TX Direct, regarding his involvement and participation in the cash advance program.

AdvanceMe contends that the production also contained an email, not produced by First Funds, indicating First Funds' knowledge of the '281 patent prior to being sued by AdvanceMe, contrary to its' deposition testimony. AdvanceMe posits that had this email been timely produced by First Funds, it would have led to additional discovery on AdvanceMe's claims that First Funds willfully and knowingly induced infringement of the '281 patent.

According to AdvanceMe, the production also contained signed contracts between First Funds and another company, Cynergy, which performed the "split funding" process flow for First

Funds. This contract was entered into on June 23, 2006, months after First Funds because aware of the '281 patent. According to AdvanceMe, this contract was not produced by First Funds, even after production of all such contracts had been specifically requested in July of 2006.

The production from Northern Leasing allegedly contained other items not included in First Funds production: including unsigned agreements between First Funds and four other merchant processors; a signed Program Agreement between First Funds and IRN Payment Systems; an email suggesting that First Funds is also offering cash advances under the name "Global Cash Direct;" documents relating to First Funds' sales and gifting of POS terminals to facilitate merchants' abilities to communicate with the merchant processor, as well as the development of proprietary software for such point-of-sale ("POS") terminals (contradicting First Funds' expert's opinion that First Funds does not infringe the '281 Patent because it does not have sufficient involvement in the POS terminals); an email which indicates that First Funds did not formally instruct its staff to retain communications between First Funds and merchant processors or banks until November 2006, five months after First Funds' production was supposed to have taken place; and documents indicating that First Funds regularly produces and send "Daily Updates" to Jay Cohen which identify all merchant processors in the cash advance program.

Plaintiff AdvanceMe claims these documents bear on numerous issues in the case, including the manner in which the infringing programs operate, the degree to which First Funds directs or controls the merchant processors in the operation of the programs, their knowledge of the '281 Patent, and contradiction of expert opinions as to infringement and invalidity. Despite the newly received documentation from Northern Leasing, Plaintiff AdvanceMe complains that First Funds still maintains that it produced or made available for inspection all documents that it had decided

were relevant to the claims and defenses in this action.

AdvanceMe claims that Northern Leasing has produced thousands of documents that should have been produced by First Funds a year ago, and those documents pertain to practically every relevant issue in this case. AdvanceMe claims it has been prejudiced because First Funds allegedly violated this Court's discovery order by failing to produce all documents relevant to the claims and defenses.

For example, First Funds' expert has used the alleged lack of sufficient relationships between First Funds and its processors as a basis for his opinion of non-infringement. However, AdvanceMe claims that the documents produced by Northern Leasing suggest that there are at least four additional merchant processors who are providing split-funding services to First Funds for whom AdvanceMe has received no documents. AdvanceMe claims the existence, term, and date of First Funds' contractual relationships with its processors is critical because the existence of a "contractual relationship" providing for the performance of part of a patented method by a third party is one of the ways that a party (such as First Funds) can be held liable for direct infringement when it does not perform all of the steps of a patented method itself. *See Charles E. Hill v. Amazon.com, Inc.*, No. 2:02-cv-186, 2006 U.S. Dist. LEXIS 3389, *17-18 (E.D. Tex. Jan. 19, 2006).

Also, AdvanceMe claims that it is now clear that there are numerous additional merchant processors that are working with First Funds and AdvanceMe should be entitled to depose them, along with employees from First Funds that worked with such companies. Further, AdvanceMe claims it will need additional 30(b)(6) depositions of First Funds with respect to document collection and preservation efforts, its process flows, willfulness, inducement, and damages. Moreover, additional third party discovery will likely be needed based on the information received in the

depositions.

Accordingly, AdvanceMe requests: (1) that the Court sever First Funds from the action and add First Funds as a defendant in the companion *Amerimerchant* case, Civil Action No. 6:06-cv-82. AdvanceMe claims this will enable it to keep the July 16, 2007 trial date against Merchant Money Tree and Reach Financial in the current case but give it additional time to conduct follow-up discovery needed in light of the Northern Leasing production; (2) that it be permitted to amend its complaint against First Funds to add a claim for money damages in addition to injunctive relief and attorneys' fees. According to AdvanceMe, the decision not to seek damages was based on a misunderstanding of the limited size of the company and the scope of their infringement. However, the Northern Leasing documents revealed four more merchant processors providing split funding services, and far more extensive operations than first believed; (3) an order from the Court requiring First Funds to search its files again and produce *all* relevant documents in its possession, custody, or control, including all documents responsive to the categories AdvanceMe submitted to First Funds in 2006; and to take additional discovery, at First Funds' expense, relating to the claim against First Funds once the trial in this case, *i.e.*, the *RapidPay* case, Civil Action No. 6:05-cv-424, has concluded; (4) an order from the Court requiring First Funds and its national counsel to submit declarations under penalty of perjury concerning their document collection and preservation efforts and the standard of "relevance" that was employed; and (5) an order from the Court permitting it to supplement its infringement contentions and expert reports after follow-up discovery.

First Funds answers that AdvanceMe misstates its position as to whether First Funds withheld information relating the size of its cash advance program. First Funds contends that by December 2006, it had produced all documents to that issue so that AdvanceMe was in possession

of all information it needed to determine whether to add a damages claim six months ago. Specifically, as to the size of the operation, First Funds argues that it provided on September 22, 2006, in response to Interrogatory No. 1 in AdvanceMe's First Set of Interrogatories, a 94-page spreadsheet identifying every cash advance it had ever made as of September 15, 2005.

First Funds also contends that it produced all documents regarding the processing entities involved by December 2006. First Funds admits that it did not initially produce the contract between First Funds and Cynergy; however, it claims it produced documents no later than December of 2006 revealing that Cynergy forwarded payment to First Funds. AdvanceMe claimed the production from Northern Leasing contained unsigned agreements between First Funds and four other merchant processors. However, First Funds states that it did not produce these because they are *not relevant* in that only four processing entities, IRN Payment Systems, Bankcard Central, TX Direct and Cynergy, made payment to First Funds and all four were disclosed in 2006.

First Funds states that it also produced by December 2006 all information regarding the role of employees involved in its cash advance program. First Funds claims that it did not conceal information; it posited that the *relevant* employees were included in the both parties' initial disclosures, were discussed at depositions, and/or were senders, recipients or subjects of thousands of *relevant* emails produced by First Funds in December 2006.

First Funds also claims it is a misrepresentation to say that First Funds' documents were never made available for inspection. First Funds states that it offered in September 2006 to make additional documents available for AdvanceMe's inspection, specifically: (1) "hard copy files respecting [sic] merchants with a First Funds' cash advance outstanding after September 6, 2005" and (2) "Electronic files of correspondence between merchant processors and First Funds,

7

specifically e-mails to merchant processors advising of new merchants to whom cash advances have been made and e-mails from merchant processors showing daily activity for merchants to whom cash advances have been made." First Funds also claims that on December 19, 2006, it produced a DVD of the electronic documents that were made available for inspection which contained 6.4 gigabytes of information (approximately 38,000 emails).

First Funds contends that it did not abuse the discovery process and points to the fact that, until now, AdvanceMe has not objected to First Funds' production or brought a motion seeking to obtain additional documents. First Funds claims that AdvanceMe's 83 document requests were unreasonably broad and burdensome, so that it chose not to respond to them. Instead, First Funds told AdvanceMe that it would instead "comply with [its] obligations under the Discovery Order in place in this case and the applicable Local Rules and Federal Rules of Civil Procedure" and produce all documents that were *relevant* to the parties' claims and defenses. The rest of AdvanceMe's discovery abuse allegations, First Funds argues, are either untrue or are of marginal relevance so that any harm in not being produced is harmless. First Funds argues that the sanctions sought by Advanceme are not warranted nor proportionate to the conduct at issue. First Funds argues that all *relevant* documents were produced by December 2006, so that there is no delay or bad faith on their part.

## APPLICABLE LAW

Rule 26 of the Federal Rules of Civil Procedure mandate that, "Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows: (1) In General. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...." FED. R. CIV. P. 26(b)(1). Rule 37 provides that, "A party that without

substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanctions, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions."

The Court wields broad discretion in discovery matters. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996). The Court also has inherent power to levy sanctions in response to abusive litigation practices during discovery. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-65 (1980).

In determining whether to impose sanctions, the Fifth Circuit has articulated several factors for the court to consider: (1) willfulness or bad faith by a party; (2) a clear record of delay; (3) substantial prejudice to the opposing party; and (4) whether a lesser sanction would not be appropriate. *Coane v. Ferreara Pan Candy Co.*, 898 F.2d 1030,1032 (5th Cir. 1990). However, later cases have instructed that sanctions must be used with great restraint and caution. *Toon v. Wackenhut Corrections Corp.*, 250 F.3d 950, 952-53 (5th Cir. 2001) (*citing Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996). Furthermore, the court must try a less restrictive measure first if it will have the desired effect. *Natural Gas Pipeline*, 86 F.3d at 467.

**DISCUSSION**

The issue in this motion pares down to one of relevance and who gets to decide what is relevant. First Funds admits that it withheld many documents because it determined those documents had "marginal relevance."

Further, First Funds admits that it withheld certain documents relating to the ACH process flow and its contracts with merchant processors who are allegedly performing ACH flow for First Funds because the patent only deals with the "split process" flow. According to First Funds, the claims of the '281 patent require forwarding a portion of the funds, which, First Funds alleges, happens only in the split process flow and does not happen in the ACH process. Because the infringing process must read on the claims of the patent, and Defendant claims that the ACH process does not do so, First Funds has decided that any information relating to that process is irrelevant.

In support of its contention that there are two processes and that information relating to the ACH would therefore be irrelevant, First Funds points to an email produced during discovery where a First Funds employee, Krissy Burkey, differentiated between the two different processes as ACH and "split process" flow. However, AdvanceMe claims it never made any effort to except out the ACH flow. In fact, AdvanceMe claims that the 30(b)(6) deposition notice that AdvanceMe served upon First Funds, in terms of matters that were requested for examination, included "the manner in which First Funds' cash advance program or other programs operate," and "First Funds' business and contractual relationships with all processors who facilitate the operation of First Funds' cash advance program or any programs (Categories 3 and 20, related in June 27, 2007 Hearing Tr.)." During the 30(b)(6) deposition, counsel for AdvanceMe specifically asked the corporate representative about the two different processes based on a documents that had been produced that made reference to an ACH process flow. AdvanceMe claims that First Funds' corporate designee was unable or unprepared to testify as to the ACH process as a separate process employed by First Funds (June 27, 2007 Hearing Tr.) AdvanceMe argues that, due to the corporate representative's inability to testify concerning the ACH process flow, it is entitled to rely on the corporate

representative's sworn testimony regarding different process flows rather than the employee's email that First Funds relies on as its basis for its withholding of documents.

Next, First Funds argues that AdvanceMe only alleged that the ACH process infringes claims of the '281 patent after the close of discovery and did not accuse the ACH process in its Amended Infringement Contentions nor detail it in its expert report. Because it was not accused by Plaintiff in its Amended Infringement Conditions, First Funds argues that the ACH process is precluded from discovery. However, AdvanceMe argues that its infringement contentions are not limited to any particular process flow, but rather "the systems and methods used in connection with First Funds' Cash Advance Program," in total. AdvanceMe argues that just because First Funds labels something "ACH" does not limit it to one payment function. The point of discovery is to test the process and determine if it falls under the claims of the patent, *i.e.*, perform a forwarding function, which AdvanceMe can only do if AdvanceMe is allowed discovery to fully investigate how the process operates.

The Court agrees. This Court employs a broad standard of discoverability. *See STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 756 (E.D. Tex. 2004). The Court recognizes that a plaintiff must set forth its infringement contentions with as much particularity as possible, but AdvanceMe never conceded there are two distinct processes or that they never accused a particular process. There is nothing in its infringement contentions that suggests AdvanceMe is not accusing the ACH process. Given that First Funds 30(b)(6) representative could provide no testimony on the ACH process, AdvanceMe was unable to evaluate whether this method read on the asserted claims. This was compounded by First Funds' apparent unilateral determination that certain documents were not relevant, based upon one email of its employee, so that documents regarding

ACH entities were not produced. First Funds should not be able to "cherry pick" and unilaterally decide if thousands of documents relating to the operation of its accused programs are discoverable in this case. First Funds was put on notice that AdvanceMe was accusing all "systems and methods used in connection with First Funds' cash advance program." Therefore, First Funds is required to produce all documentation relating to the process flows, whether ACH or split process flow, so that AdvanceMe can fully investigate its claim for infringement.

Accordingly, the Court finds that an appropriate remedy is to sever First Funds from this case and add it as a defendant in the companion *Amerimerchant* case, Civil Action No. 6:06-cv-82. The Court finds this to be the least restrictive sanction against First Funds for withholding discovery, while allowing time for AdvanceMe to review the additional discovery without jeopardizing the current trial setting in the *RapidPay* case. By employing this sanction, the Court is not precluding First Funds from presenting any of its defenses or evidence in the *Amerimerchant* case. The Court is merely allowing AdvanceMe to conduct further discovery and evaluation of a damages claim against First Funds.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's motion in part. It is THEREFORE ORDERED THAT:

(1) Defendant First Funds is severed from Civil Action No. 6:05-cv-424, entitled *AdvanceMe, Inc. v. RapidPay, et al.*, and added as a defendant in Civil Action No. 6:06-cv-82, entitled *AdvanceMe, Inc. v. Amerimerchant, LLC*;

(2) AdvanceMe is granted leave of court to amend its complaint in Civil Action No. 6:06-cv-82 to add a claim for money damages against First Funds;

(3) Defendant First Funds shall conduct a supplemental search of its files and produce to AdvanceMe all documents in its possession, custody, or control that are relevant to the pleaded claims and defenses in Civil Action No. 6:05-cv-424 and Civil Action No. 6:06-cv-82, including but not limited to all documents responsive to the categories of documents requested by AdvanceMe in July of 2006 and all documents relating to AdvanceMe, Inc.'s damages claim;

(4) AdvanceMe is granted leave of Court to obtain additional discovery against First Funds and third parties after the conclusion of the trial of Civil Action No. 6:05-cv-424 and after the discovery cut-off in Civil Action No. 6:06-cv-82;

(5) AdvanceMe is permitted to supplement its infringement contentions and expert reports after it completes this follow-up discovery and in order to account for the information obtained in this discovery and the documents produced by Northern Leasing; and

(6) the parties assess deadlines for the additional discovery as outlined in this Order and submit an amended Docket Control Order to the Court in the *Amerimerchant* case reflecting the same by August 1, 2007.

All additional relief requested is **DENIED**.

**So ORDERED and SIGNED this 2nd day of July, 2007.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE