UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ADVANCEME, INC., § § § Plaintiff, § § v. § § AMERIMERCHANT, LLC and § FIRST FUNDS, LLC, § § Defendants. § § | CIVIL CASE NO. 6:06-CV-082 LED-JDL <br><br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF ADVANCEME, INC.'S MOTION FOR SANCTIONS AGAINST
DEFENDANT FIRST FUNDS, LLC**

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION .................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 2

   A.   AdvanceMe Files Its Prior Motion for Sanctions .................................... 2

   B.   The Court's July 2, 2007 Order ............................................................... 4

   C.   AdvanceMe Repeatedly Attempts To Obtain Compliance with the July 2, 2007 Order ...................................................................................... 5

   D.   The Parties Negotiate an Amended Docket Control Order ................... 6

   E.   First Funds Waits Until After the Docket Control Order Is Issued To Inform AdvanceMe That It Is Making Available for "Inspection" in New York Over 600,000 Pages of Documents .............................................. 7

III.   ANALYSIS .............................................................................................................. 10

   A.   First Funds Has Clearly Violated the July 2 Order .............................. 10

   B.   The Court Should Issue an Order Precluding First Funds from Contending or Presenting Evidence That Its ACH Process Flow Does Not Infringe the '281 Patent ............................................................................................ 13

IV.   CONCLUSION ....................................................................................................... 14

## TABLE OF AUTHORITIES

Page

### CASES

*Residential Constructors, LLC v. Ace Property & Casualty Insurance Co.*,
  No. 2:06-CV-01318-BES-GWF, 2006 WL 1582122 (D. Nev. June 5, 2006)...................9n

*Wagner v. Dryvit Systems, Inc.*,
  208 F.R.D. 606 (D. Neb. 2001).......................................................................................12

I.  **INTRODUCTION**

This motion seeks sanctions against Defendant First Funds ("First Funds") arising out of its continuing violation of the Court's July 2, 2007 Order. AdvanceMe is left with no choice but to seek the Court's assistance in order to hopefully put an end to First Funds' misconduct.

In the July 2, 2007 Order, the Court ordered First Funds to search for and *produce* all documents responsive to the document categories that were originally provided to First Funds last year. As of the date of this motion, First Funds has still not produced a *single document* to AdvanceMe. With respect to First Funds' electronic production, First Funds has only stated that document production will commence soon and will be produced on a "rolling" basis. This is completely unacceptable. The document categories at issue have been in First Funds' possession since *July of 2006*, and the parties are only *two weeks* away from the discovery cutoff date. It is far too late for First Funds to commence a "rolling" production to comply with the Court's order.

With respect to the hard copy document production, First Funds has also not produced a single document to AdvanceMe. Rather than doing so, First Funds waited until after the Amended Docket Control Order was submitted and then informed AdvanceMe for the first time that – even though First Funds only produced 2,000 hard copy documents during the entire previous year – it now has over 20 filing cabinets and 20 boxes consisting of over *600,000* pages of "potentially" responsive documents. Further, First Funds has insisted that AdvanceMe fly to New York to begin inspection of these filing cabinets, even though the Court's order specifically required *production* of responsive documents and did not anywhere permit First Funds to initiate such an "inspection" procedure. First Funds refuses to produce these documents unless AdvanceMe pays all the copying costs, even though the parties have never paid for copying costs during the entire history of this litigation, and the estimated amount of the copying costs for the documents is over *$100,000.*

This conduct has placed AdvanceMe in an impossible position. It would take AdvanceMe months to adequately review the huge volume of documents that First Funds has just revealed. Indeed, even if the review was conducted in an expedited fashion, it would not be

possible to complete the review until at least October, by which point all the relevant discovery deadlines in the Amended Docket Control Order would already have passed. The deadlines for fact discovery cutoff, expert discovery cutoff, expert reports, submission of jury instructions, and other pretrial tasks all crucially depended on First Funds' compliance with the July 2 Order. First Funds' violation of that order has thrown this case into chaos.

Given this situation, AdvanceMe respectfully submits that the only fair solution is to moot the issue which is causing the need for much of this discovery. The main reason why most of the remaining First Funds documents are critical is First Funds' argument that its alternative "ACH process flow" does not infringe the '281 Patent. This is precisely the issue on which First Funds' discovery misconduct has caused the most prejudice to AdvanceMe. Accordingly, AdvanceMe requests issuance of an order precluding First Funds from contending or presenting any evidence that its ACH process flow does not infringe the '281 Patent. AdvanceMe further requests an order requiring First Funds to produce all remaining relevant and responsive documents to AdvanceMe within 72 hours, at its own cost.

## II.    BACKGROUND

### A.    AdvanceMe Files Its Prior Motion for Sanctions.

On May 19, 2007, AdvanceMe filed its prior motion for sanctions against First Funds. D.N. 132. In that motion, AdvanceMe explained that the recent production of documents by third party Northern Leasing Systems, Inc. indicated that First Funds had failed to produce all relevant documents. AdvanceMe further explained that it had provided a list of 83 document categories to First Funds in July of 2006, and First Funds had agreed that it would either produce all responsive documents or inform AdvanceMe of particular categories it believed were not reasonably calculated to lead to the discovery of admissible evidence. D.N. 132 (Matz Decl.), Exh. 5. In response to this letter, First Funds never identified *any* of the 83 categories as beyond the scope of discoverability in this case.

In its motion, AdvanceMe further explained how First Funds had improperly attempted to manipulate its "inspection" procedure to hide the production of relevant documents. In

November of 2006, First Funds insisted that instead of producing responsive documents, AdvanceMe's counsel would be required to fly to New York to "inspect" numerous filing cabinets of documents. D.N. 132 (Matz Decl.), Exhs. 7-9. AdvanceMe reluctantly agreed to this demand, and sent a letter to First Funds to confirm that all documents responsive to the 83 document categories would be made available for inspection in New York. *Id.*, Exh. 12. Thereafter, AdvanceMe's counsel flew to New York to select documents that it wanted copied. Yet, after returning back to California, AdvanceMe's counsel was informed that many of the documents it flagged for copying would *not* be produced, because they allegedly did not constitute "business records" of First Funds (even though they were contained in First Funds' own filing cabinets). *Id.*, Exh. 13.

In its opposition to the sanctions motion, First Funds argued that "it made a good faith effort to provide all relevant categories of documents." *RapidPay* D.N. 278, p. 4.[1] At no point during its opposition did First Funds indicate or suggest that it was in possession of over 600,000 pages of hard copy documents responsive to AdvanceMe's document categories, or that it was in possession of a huge volume of additional electronic documents responsive to those categories.

At the hearing on the motion, discussion focused on the failure of First Funds to produce any documents relating to its alleged "ACH process flow," which First Funds recently contended was a design-around to the '281 Patent. Declaration of Michael Edelman ("Edelman Decl."), Exh. A. First Funds did not dispute that it withheld documents relating to this process flow, and attempted to excuse this by stating that it did not believe this flow was "relevant" (even though AdvanceMe's infringement contentions clearly alleged that First Funds' entire program was infringing, and did not distinguish between particular process flows). *Id.* at 52:4-23; 53:9-15.

---

[1] References to the *RapidPay D.N.* refer to the case styled *AdvanceMe, Inc. v. RapidPay, LLC, et al.*, Action No. 6:05-cv-424 (LED-JDL), pending before this Court.

### B. The Court's July 2, 2007 Order

On July 2, 2007, the Court issued its order on AdvanceMe's motion. In the order, the Court severed First Funds from the *RapidPay* action, ordered that First Funds be added as a defendant to the instant action, and permitted AdvanceMe to assert a claim for money damages against First Funds. D.N. 151. On pages 7 and 8 of the order, the Court also recited certain allegations by First Funds concerning its offered "inspection" of documents in 2006. *Id.*, pp. 7-8. After analysis of the parties' arguments, the Court held as follows with respect to the production of documents:

> Defendant First Funds shall conduct a supplemental *search* of its files and *produce to AdvanceMe* all documents in its possession, custody, or control that are relevant to the pleaded claims and defenses in Civil Action No. 6:05-cv-424 and Civil Action No. 6:06-cv-82, including but not limited to all documents responsive to the categories of documents requested by AdvanceMe in July of 2006 and all documents relating to AdvanceMe, Inc.'s damages claim . . . .

*Id.*, p. 13 (emphasis added).

The language of the July 2 Order was clear and specific: First Funds is required to *search* its files and *produce* the relevant and responsive documents that it located. The order does not indicate that First Funds could comply with the order by making documents available for "inspection" rather than producing them, much less that First Funds could attempt to replicate its prior misconduct by insisting (yet again) that AdvanceMe travel to New York and spend day after day looking through filing cabinets that First Funds' own counsel did not want to spend the time to review. The order also does not contain any language permitting First Funds to demand the reimbursement of copying costs, or that such a demand for reimbursement could be used to hold up the production of documents.

### C. AdvanceMe Repeatedly Attempts To Obtain Compliance with the July 2, 2007 Order.

The day after the July 2 Order was issued, AdvanceMe sent a letter to First Funds asking for production of the documents ordered by the Court. In that letter, AdvanceMe stated: "With the close of fact discovery fast approaching, please confirm by July 5 that First Funds will complete its production and compliance with the Court's July 2, 2007 Order by July 12." Edelman Decl., Exh. B. Yet, First Funds did not produce documents by July 12, nor did it even bother to respond to the letter.

On July 25, 2007, AdvanceMe sent another letter on the subject. Edelman Decl., Exh. C. By this time, First Funds' delay in complying with the July 2 Order was getting serious, as less than a month remained before the discovery cutoff date and AdvanceMe needed to receive the remaining documents in order to begin preparing for the numerous First Funds-related depositions that needed to be scheduled for August and September. Accordingly, in the July 25 letter, AdvanceMe explained that it would not be possible to prepare for the upcoming depositions "unless First Funds *immediately* complies with the Court's order, including the production of all relevant and responsive documents in the possession of its witnesses." *Id.* (emphasis added).

On July 25, 2007, AdvanceMe also sent a separate email to First Funds, expressing further concern over the state of First Funds' document production. The email explained that AdvanceMe had still not received any of the additional documents, and that it is "frankly impossible for us to prepare for the remaining depositions in this case (or even reach a final conclusion on the identity of all the remaining deponents) until we receive these documents." Edelman Decl., Exh. D. The email concluded by asking First Funds to ensure that "all documents required by the Court's order are produced no later than the end of this week." *Id.* Once again, however, First Funds failed to produce the Court-ordered documents as requested.

On July 26, 2007, First Funds finally responded to AdvanceMe's numerous entreaties. After apologizing for the "delayed response," counsel for First Funds represented that First Funds is "actively searching its documents and intends to fully comply with the Court's order as soon as possible." Edelman Decl., Exh. E. The email further stated that "Defendants are willing to work with AdvanceMe to ensure that AdvanceMe has ample time to review the final round of First Funds' production prior to taking those depositions." *Id.* The email carefully omitted the fact, however, that First Funds intended to dump over 600,000 pages of documents on AdvanceMe, in addition to its electronic production, and that it would obviously be impossible for AdvanceMe to have "ample time" to review all of these documents prior to taking depositions in August or September.

### D. The Parties Negotiate an Amended Docket Control Order.

In the July 2, 2007 Order, the Court ordered the parties to negotiate an amended Docket Control Order to accommodate the additional discovery that needed to be taken. D.N. 151. The Court required this amended Docket Control Order to be submitted by August 1, 2007. *Id.* Accordingly, during the last part of July, the parties negotiated the dates of the Amended Docket Control Order. The Amended Docket Control Order was submitted to the Court on August 1, 2007, and adopted by the Court on August 2, 2007. D.N. 164, 165, 166.

It is now clear that the entire negotiation over the Amended Docket Control Order was a sham, because First Funds secretly knew (but did not tell AdvanceMe) that it was imminently planning to dump hundreds of thousands of "potentially" responsive documents on AdvanceMe which would take months to review. At no point during this negotiation did First Funds indicate that it would require AdvanceMe to fly to New York to review over 600,000 pages of hard copy documents. Further, at no point during these negotiations did First Funds indicate that its electronic documents would be produced on a rolling basis *beginning* in the middle of August. Rather, First Funds kept these details hidden until *after* the amended Docket Control Order was submitted and the relevant discovery schedule had been locked-in.

### E. First Funds Waits Until After the Docket Control Order Is Issued To Inform AdvanceMe That It Is Making Available for "Inspection" in New York Over 600,000 Pages of Documents.

On August 3, 2007, *one month* after the July 2 Order was issued, First Funds sent a letter which for the very first time indicated that some portion of the document production would become available. This letter did not, however, attach a single document. Rather, First Funds' letter contained additional "objections" to the 83 document categories provided to First Funds a year earlier, and then stated that "First Funds is making *all* of its filing cabinets containing *potentially* responsive documents available for your inspection." Edelman Decl., Exh. F (emphasis added). The letter further stated that any "copying, endorsing, Bates labeling, and shipping" of any selected documents would be done "*at Plaintiff's expense*." *Id.* (emphasis added). In other words, rather than searching through all of the files within its cabinets and then collecting and producing actually responsive documents as the July 2 Order required, First Funds instead waited a month and then attempted (just as it had tried to do in November of 2006) to shift this entire burden to AdvanceMe. Further, with respect to electronic documents, First Funds' August 3 letter again failed to provide a single responsive document, but instead only stated that "First Funds is currently in the process of gathering and processing the data." *Id.*

After reviewing this letter, AdvanceMe immediately responded with a letter explaining that it had no intention of repeating the debacle in November of 2006, in which First Funds attempted the same "inspection" procedure as a substitute for a serious collection and review of its responsive documents. Edelman Decl., Exh. G. AdvanceMe explained that the July 2 Order did not permit First Funds to repeat this "inspection" procedure, but instead required First Funds itself to *search* the documents within its filing cabinets and *produce* all responsive documents. *Id.* AdvanceMe concluded by again (for at least the fourth time) asking First Funds to simply produce all of its responsive documents. *Id.* Once again, First Funds did not do so.

During the evening of August 3, First Funds sent an email responding to AdvanceMe's letter. In this email, First Funds took the position that, by using the word "produce," the Court

implicitly permitted First Funds to direct AdvanceMe to filing cabinets located in New York containing "potentially" responsive documents. Edelman Decl., Exh. H. AdvanceMe responded by stating that it was "not going to fly to New York (yet again) so that we have to look through filing cabinets in order to locate responsive and relevant documents; that is First Funds' responsibility." *Id.* AdvanceMe further explained that, if all First Funds was going to do was make a bunch of filing cabinets available for inspection, it could at least have told AdvanceMe of this weeks earlier. *Id.* Again, AdvanceMe asked First Funds to produce a copy of all responsive documents, and First Funds refused to do so, stating that it "has reviewed its filing cabinets to determine which filing cabinets contain documents *potentially* responsive to both the Order and the Letter . . . ." *Id.* (emphasis added).

After these emails were sent, counsel for the parties further discussed the matter. During this conversation, AdvanceMe explained that First Funds' proposal was a clear violation of the July 2 Order. Edelman Decl., ¶ 10. To clarify the situation, AdvanceMe asked First Funds how many different filing cabinets were involved and to provide an estimate of how many documents were contained within the cabinets. *Id*. First Funds' counsel said that he did not know. *Id*. AdvanceMe further asked First Funds whether, in fact, *all* the documents contained within the cabinets were responsive or only a *percentage* of them were responsive (in which case it was obviously First Funds' responsibility to segregate the responsive documents from the non-responsive ones). First Funds' counsel again responded that he did not know. *Id*. AdvanceMe further asked whether the cabinets being made available for inspection were the very same cabinets AdvanceMe had already traveled to New York to "inspect" in November of 2006. First Funds' counsel responded that, since he was not involved in the case in November of 2006, he did not know. *Id*.

During this conversation, AdvanceMe further made it clear that First Funds was not permitted to avoid its obligation to review, collect, and produce responsive documents by simply opening its doors so that AdvanceMe could spend weeks or months in New York digging through filing cabinets. Edelman Decl., ¶ 11. AdvanceMe stated that the July 2 Order required

*production* of responsive documents. *Id.* First Funds responded that it would not agree to produce any documents unless AdvanceMe paid the copying costs, even though such a condition was completely absent from the July 2 Order. *Id.* First Funds further stated that it would provide an estimate of the number of documents and the copying costs by Monday, August 5. *Id.*

On August 6, First Funds sent an email providing additional details of its filing cabinets. Incredibly, this letter indicated that the cabinets (and 21 additional boxes being made available for "inspection") consisted of *609,000* pages of documents. Edelman Decl., Exh. I. Further, the email still did not provide any date by which any of the responsive electronic documents would be produced, and instead stated that "First Funds is making its production available on a rolling basis," and that "I anticipate that the electronically stored information will be produced in the very near future." *Id.*

On August 7, First Funds sent an additional email on its document production, in which it indicated that the "costs associated with scanning, Bates labeling, stamping, and printing the hard copy documents" exceeded *$120,000.* Edelman Decl., Exh. J. This estimate was exclusive of shipping charges. Accordingly, unless AdvanceMe sent a check for at least $120,000, First Funds would not produce a copy of the documents that this Court ordered (without condition) to be produced. First Funds' August 7 email also continued its stalling on the electronic production, only stating that "I anticipate that Plaintiff will have access to this production sometime next week." *Id.* In other words, AdvanceMe would not even *begin* to receive electronic documents until, at the earliest, only *11 days* before the discovery cutoff date.[2]

---

[2] On Tuesday, August 6, First Funds also provided an "index" of the documents in the filing cabinets. This index consisted of a single page matrix along with a second page giving the "key" to the matrix. In this matrix, First Funds summarized the contents of entire filing cabinets in just a few words, such as "Approved Merchant Applications." Edelman Decl., Exh. I. Obviously, a one-page matrix that purports to encompass 600,000 pages is entirely useless. Even those cases which have permitted inspections of far *smaller* amounts of material – without any sanctions order previously issued by the court – have insisted that the index be thorough and comprehensive. *See, e.g.*, *Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, No. 2:06-CV-01318-BES-GWF, 2006 WL 1582122, *2-3 (D. Nev. June 5, 2006) ("[A]ny archived documents produced must be *thoroughly indexed*, the boxes accurately labeled and the

(continued...)

On August 9, counsel for AdvanceMe sent a letter indicating that AdvanceMe would be filing the instant motion for sanctions. Edelman Decl., Exh. K. By that date, only fifteen days remained until the discovery cutoff date, and AdvanceMe had still not received a single document responsive to the July 2 Order. Not a single email or other electronic document had been produced to AdvanceMe. Not a single hard copy document had been produced to AdvanceMe, and instead First Funds still insisted that AdvanceMe had to either travel again to New York to sift through cabinets of "potentially" responsive documents, or else had to pay copying costs in excess of $100,000 to get the documents that the July 2 Order required.[3]

## III. ANALYSIS

### A. First Funds Has Clearly Violated the July 2 Order.

There can be no question that First Funds has egregiously violated the July 2 Order. As of the filing of this motion, First Funds has failed to produce a *single* electronic document in compliance with the July 2 Order. Rather than produce the documents, First Funds has spent two weeks falsely assuring AdvanceMe that the documents would be produced, and currently takes the position that it will make a "rolling" production of such documents. This is unacceptable. If, in fact, First Funds intended to make a "rolling" production of such documents, then why did it not commence this production immediately after the order was issued? As things now stand, even if First Funds produced the entirety of its electronic document production next week, AdvanceMe would not have any of the time that would be necessary to review these documents and use them for follow-up discovery.

If possible, First Funds' conduct with respect to its hard copy documents is even worse. Whereas during the entire previous year of discovery, First Funds took the position that it only

---

(...continued)

depository kept in good order."), *citing In re Aldelphia Commc'ns Corp.*, 338 B.R. 546, 551 (S.D.N.Y. 2005).

[3] A few hours prior to the filing of this motion, AdvanceMe received a letter from First Funds indicating it served via Federal Express a small volume of documents. Edelman Decl., Exh. L. However, AdvanceMe has not received these documents as of the time of filing this motion.

had a couple of thousand pages of relevant hard copy documents, it has now gone to the opposite extreme and stated that it has possession of over 600,000 pages of "potentially" responsive documents, including over 500,000 pages contained in 21 filing cabinets in New York.  It is clear that First Funds has not bothered to actually review the documents *within* these cabinets to determine which of these documents are responsive.  Indeed, First Funds now demands that AdvanceMe's counsel again fly to New York so that AdvanceMe can go page-by-page through the cabinets to determine which documents are responsive and which are not.  This position violates both the letter and spirit of the July 2 Order.

First Funds' insistence that AdvanceMe review 600,000 pages of hard copy documents in order to find the truly relevant and responsive documents is even more troubling in light of its previous representations.  The document categories that First Funds now claims these documents are "potentially" responsive to were first provided to First Funds in *July of 2006*.  Thereafter, First Funds confirmed that it would produce all documents responsive to these categories unless it objected to particular categories, but First Funds never provided any such objections.  Further, when AdvanceMe reminded First Funds later in 2006 that it needed to make all responsive documents available, First Funds again did not object.  It is unacceptable for First Funds to now inform AdvanceMe, only two weeks before the discovery cutoff date, that First Funds has 600,000 pages that are "potentially" responsive to the very same categories it received a year ago.

In any event, even setting aside the amount of documents that are truly responsive, the July 2 Order does not permit First Funds to try to revive the "inspection" procedure it tried to foist on AdvanceMe in 2006.  Indeed, First Funds' prior misconduct, spelled out in AdvanceMe's prior motion for sanctions, plainly demonstrates why First Funds cannot be trusted with that procedure.  The July 2 Order explicitly required First Funds to *search for* and *produce* any additional responsive documents, and certainly did not permit First Funds to wait five weeks after the order was issued and then suddenly insist that AdvanceMe travel again to New York so that it could spend weeks looking through 21 filing cabinets.

First Funds contends that its "inspection" procedure is appropriate because Rule 34 typically permits a party to either produce documents or make them available for inspection. However, though this may be what Rule 34 normally permits, it is not what this Court's sanctions order states. By withholding a huge mass of relevant documents during a year of discovery, First Funds has forfeited its right to invoke an alternative procedure. Rather, First Funds is required to comply with the letter of the sanctions order, which specifically requires *production* and not inspection.

In any event, even assuming First Funds' refusal to produce the responsive documents was permitted by the sanctions order, this is also irrelevant because the "inspection" offered by First Funds does not even remotely comply with Rule 34. Case law makes clear that a party cannot dump a huge mass of "potentially" responsive documents on the requesting party, and then expect the responding party to find the relevant documents among volumes of irrelevant information. *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610-11 (D. Neb. 2001). "The fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information." *Id.* at 611. And, of course, where a party has already abused an attempted "inspection" procedure, and then was sanctioned for failing to produce documents, attempting to avoid discovery obligations by way of a massive document dump is even more egregious.

First Funds has also clearly violated the Order by suddenly insisting that it would not produce any documents unless AdvanceMe paid all the copying costs. First Funds entirely overlooks the fact that it has been *compelled* to produce these documents due to its previous *sanctionable* conduct. It is simply beyond the pale for First Funds to demand that AdvanceMe pay over $100,000 in copying costs before the documents will be produced. The July 2 Order does not state that First Funds must produce responsive documents upon receipt of copying costs, but rather states unambiguously that First Funds must produce the documents, without any conditions attached. Further, even without the sanctions order, this condition would be

inappropriate, as AdvanceMe has never requested that First Funds pay any of its own copying costs, nor is AdvanceMe aware of *any* instance in this case where any party has ever reimbursed the copying costs of another.

In short, though the July 2 Order required production of all responsive documents, AdvanceMe is two weeks away from the discovery cutoff and *still* has not received production of a single document. First Funds' violation of the July 2 Order is beyond dispute.

### B. The Court Should Issue an Order Precluding First Funds from Contending or Presenting Evidence That Its ACH Process Flow Does Not Infringe the '281 Patent.

First Funds has indicated that its hard copy production alone will be over 600,000 pages, and it appears that its electronic production will be at least as large. It is simply impossible for AdvanceMe to review a million pages of documents before depositions are scheduled to commence in a week, and indeed it is impossible to adequately review this volume of documents at all consistent with any of the deadlines in the Amended Docket Control Order.

Indeed, one of the main reasons why this document production was critical was for AdvanceMe to thoroughly explore the operation of First Fund' alleged "ACH process flow." As was established at the sanctions hearing, though First Funds contends that this flow does not result in a split of payments between a merchant and First Funds, AdvanceMe was permitted to test that contention through discovery. And it was recognized at the hearing that at least nine depositions might be necessary to do so. Yet, even though it has been five weeks since the July 2 Order was issued, AdvanceMe still has not received a *single document* in response to the order that in any way relates to the alleged ACH process flow.

The Amended Docket Control Order contains a discovery cutoff of August 24, which this Court has indicated can only be moved for "extraordinary circumstances." D. N. 166, 160. However, moving the discovery cutoff date would do nothing to rectify the prejudice here, because AdvanceMe will need several weeks (if not months) to adequately review the documents and there is simply no way to accommodate a time period for this review and all the follow-up

depositions necessary after this review is completed. Put simply, by waiting until mid-August to begin producing its documents, and by then revealing for the first time that it is in possession of at least 600,000 pages of "potentially" responsive documents, First Funds has created prejudice to AdvanceMe which cannot be rectified by further amendments to the Docket Control Order.

It is clear, therefore, that a stricter remedy must be selected which rectifies the prejudice to AdvanceMe from First Funds' conduct. In AdvanceMe's view, such a remedy is clearly available in this case. The main reason why the upcoming discovery is critical is First Funds' belated contention that (though there is no serious question that its "split funding" flow is infringing) its "ACH process flow" does not infringe the '281 Patent. It is this contention that lies at the heart of First Funds' discovery misconduct. If this contention was mooted, the need for all of this discovery would greatly diminish. Accordingly, AdvanceMe requests the issuance of an order precluding First Funds from contending or presenting any evidence that its ACH process flow does not infringe the '281 Patent.

In addition, since the remaining documents may still be relevant to numerous other issues in the case, AdvanceMe requests an order requiring First Funds to produce, at its own cost, *all* documents within 72 hours (including both hard copy and electronic documents) that are required by the July 2 Order.

### IV. CONCLUSION

For all the reasons set forth above, AdvanceMe's motion should be granted.

Date: August 10, 2007                     Respectfully submitted,

By:  */s/ Michael N. Edelman*
**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
Ronald S. Lemieux  (ronlemieux@paulhastings.com)
(CA Bar No. 120822) (Admitted Pro Hac Vice)
Michael N. Edelman (michaeledelman@paulhastings.com)
(CA Bar No. 180948) (Admitted Pro Hac vice)
Vidya R. Bhakar (vidbhakar@paulhastings.com)
(CA Bar No. 220210) (Admitted Pro Hac Vice)
Robert C. Matz  (robertmatz@paulhastings.com)

(CA Bar No. 217822) (Admitted Pro Hac Vice)
Shanée Y. Williams (shaneewilliams@paulhastings.com)
(CA Bar No. 221310) (Admitted Pro Hac vice)
Five Palo Alto Square, Sixth Floor
Palo Alto, CA  94306-2155
Telephone:  650.320.1800  Facsimile:  650.320.1900

**IRELAND CARROLL & KELLEY**
Otis W. Carroll, Jr. (fedserve@icklaw.com)
LEAD ATTORNEY
State Bar No. 03895700
Deborah J. Race (drace@icklaw.com)
State Bar No. 16448700
6101 S. Broadway, Suite 500
Tyler, TX  75730
Telephone:  903.561.1600  Facsimile:  903.581.1071

ATTORNEYS FOR PLAINTIFF ADVANCEME, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

By: */s/ Michael N. Edelman*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for plaintiff AdvanceMe, Inc. has in good faith conferred with counsel for Defendant First Funds, LLC in an effort to resolve the dispute without Court action but was unable to reach any agreement. Defendant First Funds, LLC opposes this motion.

By: */s/ Michael N. Edelman*

LEGAL_US_W # 56840223.1 34717.00011