IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ADVANCEME, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:06-CV-082 LED-JDL |
| | § | |
| AMERIMERCHANT LLC, | § | |
| FIRST FUNDS LLC | § | |
| | § | |
| Defendant. | | |

## FIRST FUNDS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS

Plaintiff's Motion for Sanctions (the "Motion") seeks the most severe sanction against First Funds, LLC ("First Funds") based on the fact that First Funds did not serve on Plaintiff all of the responsive documents to this Court's July 2, 2007 Order (the "Order"), which compelled First Funds to produce every document related to its entire cash advance business. After a search of its records, First Funds produced documents responsive to the Order by making them available for inspection as they are kept in the ordinary course of business in accordance with both the Order and Federal Rule of Civil Procedure 34.

Rather than review the hard copy documents produced by First Funds (which were produced before Plaintiff's self-imposed deadline), Plaintiff filed the Motion, which addresses the adequacy of First Funds' production – a production that Plaintiff has **never** inspected. Plaintiff complains that the volume of the production is too large despite the fact that Plaintiff requested, and First Funds was ordered to produce all documents relating to its business. Plaintiff further claims that First Funds should bear the burden of

Dockets.Justia.com

the copying costs associated with the production, a request that this Court explicitly **denied**.

Plaintiff **does not cite any case law to support its position** because the case law is consistently adverse to Plaintiff's position. The relevant case law, this Court's Order, and First Funds' actions in response to the Order require that the Motion be denied in its entirety.

## Background

In its first Motion for Sanctions, Plaintiff argued that First Funds "flagrantly violated this Court's discovery rules" by "picking and choosing which documents about its accused programs to produce . . ." (Docket Entry No. 146 at p. 1). Plaintiff argued that First Funds must be required to produce ". . . **all [] documents relating to the operation of First Funds' Cash Advance Program**." (Docket Entry No. 132 at p. 3) (emphasis added).

On July 2, 2007, First Funds was sanctioned for its ". . . apparent unilateral determination that certain documents were not relevant . . ." (Docket Entry No. 151 at p. 11). First Funds was ordered to produce, among other things, "**all [] documentation**" relating to the operation of its accused programs. (*Id.* at p. 12) (emphasis added). First Funds was further ordered to produce, among other things, "**all documents related to the structure, function, or operation of First Funds' cash advance program.**" (*Id.* at p. 13 referencing Robert Matz letter to Hilary Preston dated July 12, 2006 at p. 2, attached hereto as Exhibit A, which includes this request).

Plaintiff is unhappy with the results of its previous requests. Plaintiff now seeks to sanction First Funds for producing too many responsive documents – documents which

Plaintiff has not seen but documents which clearly relate to the operation of First Funds'
cash advance program. In a drastic change in its position taken less than two months ago,
Plaintiff now seeks to sanction First Funds based on Plaintiff's unsupported allegation
that First Funds failed to pick and choose the documents to be included in its hard copy
document production. Of course, this "picking and choosing" that Plaintiff now requests
was the very action made the basis of Plaintiff's first Motion for Sanctions. Plaintiff's
position is that First Funds is darned if they do and darned if they don't.

On July 3, 2007, AmeriMerchant LLC and First Funds, LLC moved this Court to
extend the discovery deadline to September 30, 2007. (*See* Docket Entry No. 152).
Plaintiff vehemently opposed this Motion claiming, in part, that the discovery deadline
did not need to be extended to September 30, 2007, and that this much time was not
needed to "conduct follow-up discovery that became necessary due to *First Funds'*
discovery abuses." (*See* Docket Entry No. 155 at p. 2) (emphasis in original). In its
Reply, First Funds contended that the additional time was necessary, in part, to comply
with the discovery that was compelled by this Court. (*See* Docket Entry No. 158 at pp.
2-3). The Court extended the fact discovery deadline to August 24, 2007. (*See* Docket
Entry No. 160 at p. 3).

From July 2 to July 20, the parties were engaged in pretrial matters as well as a
week long trial for Case No. 6:05-cv-424 (LED-JDL).[1] Prior to trial, Defendants were
forced to devote over a week of meetings with Plaintiff's counsel regarding Plaintiff's

---

[1] This trial resulted in a finding that Plaintiff's patent was **invalid**. (*See* Docket Entry No. 341, Cause
No. 6:05-cv-424 (LED-JDL)). Defendants intend to take the necessary immediate action in this matter as a
result of this Order.

300 plus frivolous objections to evidence offered by Defendants – the vast majority of which were either eventually withdrawn by Plaintiff or overruled by this Court.

During the weeks of July 23 and July 30, counsel for First Funds had numerous meetings with First Funds in an effort to organize the productions at issue. (*See* Declaration of Graham E. Sutliff at ¶ 2, attached hereto as Exhibit B).

On August 3, 2007, First Funds notified Plaintiff that it would produce its hard copy production on August 7, 2007. (*See* Letter from Graham E. Sutliff to Shaneé Williams dated August 3, 2007, attached hereto as Exhibit C).[2]  Plaintiff responded that this production was inadequate because First Funds was required to serve its hard copy production on Plaintiff. (*See* Letter from Shaneé Williams to Willem G. Schuurman, Joseph D. Gray, and Graham E. Sutliff, dated August 3, 2007, attached hereto as Exhibit D). Plaintiff further mischaracterized First Funds' production despite the fact that Plaintiff had not inspected the production. *Id*. at pp. 1-2. Plaintiff demanded that the hard copy documents be copied and served no later than August 7, 2007, at 5:00 p.m. PDT. *Id*. at pp. 2-3.

First Funds' responded to Plaintiff's letter via e-mail correcting: (1) Plaintiff's mischaracterization of the production that Plaintiff had not even seen (and informing Plaintiff that the documents being produced were "responsive," not potentially responsive, as Plaintiff appears to still assert, despite having never seen the documents); (2) Plaintiff's misunderstanding of Federal Rule of Civil Procedure 34; and (3) Plaintiff's mischaracterization of the text of the Order. (*See* Graham E. Sutliff e-mail to Shaneé

---

[2]  Plaintiff points out that First Funds made "objections" to the 83 document categories to be produced. Motion at 7.  But Plaintiff fails to mention that these objections were on the basis of the attorney-client privilege, work product immunity, and/or an objection to the production of documents that were not in the possession, custody, or control of First Funds. *See* Exhibit C.

Williams dated August 3, 2007, at 7:06 p.m. CDT, attached hereto as Exhibit E).  First Funds' further informed Plaintiff that First Funds' was meeting Plaintiff's self-imposed deadline for the production.  *Id*.

Plaintiff responded, standing by its previous position as stated in Ms. Williams' August 3, 2007 letter.  (*See* Michael N. Edelman e-mail to Graham E. Sutliff dated August 3, 2007, at 7:34 p.m. CDT, attached hereto as Exhibit F).  First Funds again corrected both Plaintiff's mischaracterizations of the production that Plaintiff had not seen and Plaintiff's flawed interpretation of the case law.  (*See* Graham E. Sutliff e-mail to Michael N. Edelman dated August 3, 2007, at 8:04 p.m. CDT, attached hereto as Exhibit G).  First Funds also asked Plaintiff to clarify whether it was declining to receive First Funds document production.  *Id*.  Plaintiff responded, again standing by its previous position as stated in Ms. Williams' August 3, 2007 letter.  (*See* Michael N. Edelman e-mail to Graham E. Sutliff dated August 3, 2007, at 8:25 p.m. CDT, attached hereto as Exhibit H).

Counsel for Plaintiff then called counsel for First Funds.  Counsel for First Funds stated that: (1) he did not know the *exact* number of filing cabinets involved; (2) he did not know the *exact* volume of documents being produced; (3) the documents being made available for inspection were responsive to the Order; (4) the documents were being produced on August 7; and (5) he would provide Plaintiff with an estimate of the volume of the production on the next business day.  (*See* Exhibit B at ¶ 3).  First Funds followed up on the call via an e-mail confirming that First Funds would contact Plaintiff on August 6, 2007, the next business day.  (*See* Graham E. Sutliff e-mail to Michael N. Edelman dated August 3, 2007, at 8:47 p.m. CDT, attached hereto as Exhibit I).  First

Funds also provided Plaintiff case law confirming that Plaintiff's position with respect to Federal Rule of Civil Procedure 34 and the Order was wrong. *Id*.

At around the same time, Plaintiff also "followed-up" on the call via an e-mail mischaracterizing the conversation. (*See* Michael N. Edelman e-mail to Graham E. Sutliff dated August 3, 2007, at 8:58 p.m. CDT, attached hereto as Exhibit J). First Funds immediately corrected Mr. Edelman's mischaracterization of the call and again pointed out that the documents being produced were "responsive," not potentially responsive, as Plaintiff still repeatedly mischaracterizes. (*See* Graham E. Sutliff e-mail to Michael N. Edelman dated August 3, 2007, at 9:18 p.m. CDT, attached hereto as Exhibit K).

As promised, on the next business day, First Funds provided Plaintiff an estimate of the volume of hard copy documents that would be produced at First Funds' offices in New York (which amounted to an estimated 609,000 pages). (*See* Graham E. Sutliff e-mail to Michael N. Edelman dated August 6, 2007, attached hereto as Exhibit L). First Funds explained that the volume of the documents produced was a direct result of the Court's Order to produce, among other things, "**all documents relating to the operation of First Funds' cash advance program**." *Id*. (emphasis added).[3] First Funds again attempted to correct Plaintiff's mischaracterization of the production that Plaintiff had not inspected and to again remind Plaintiff of a party's obligations under both Federal Rule of Civil Procedure 34 and the clear text of the Order. *Id*. First Funds informed Plaintiff that it would provide Plaintiff an index relating to the production in an effort to assist Plaintiff in its inspection. *Id*. First Funds further offered to have an employee available

---

[3] It is important to note that Plaintiff has **never** offered to narrow its overly broad discovery requests. Instead, it has repeatedly stuck by its position that it is entitled to see **all documents** relating to First Funds' cash advance business.

to answer any questions Plaintiff may have regarding the organization of the document production.  *Id*.  First Funds pledged to follow-up on the production of its electronically stored information by the end of the week.  *Id*.

Plaintiff responded demanding the index for the hard copy production.  (*See* Michael N. Edelman e-mail to Graham E. Sutliff dated August 6, 2007, attached hereto as Exhibit M).  Plaintiff also indicated that it would further respond to First Funds' e-mail by August 7, 2007.  *Id*.  To date, Plaintiff has not further responded to this e-mail.[4]

On August 7, 2007, the production at issue was produced.  First Funds provided Plaintiff an index to its hard copy production as well as a key to the index.  (*See* Graham E. Sutliff e-mail and attachments to Michael N. Edelman dated August 7, 2007, attached hereto as Exhibit N).[5]  First Funds informed Plaintiff that it met with two third-party vendors in an effort to give Plaintiff an estimate of the copying charges associated with the hard copy document production.  *Id*.  First Funds gave Plaintiff these estimates (which amounted to $121,800 and $140,070).  *Id*.  First Funds reiterated the fact that it would make an employee available to Plaintiff in the event Plaintiff had questions concerning the hard copy production's organization.  *Id*.  First Funds informed Plaintiff that it would also be serving certain documents on Plaintiff rather than making them

---

[4]  Plaintiff's e-mail on August 6, 2007, was the last time Plaintiff contacted First Funds' counsel who was handling the document production regarding the same before Plaintiff filed the Motion.  From August 6 to August 10, Plaintiff's counsel was apparently drafting its Motion rather than attempting to meet and confer with First Funds in an effort to avoid burdening the Court with this issue.  The parties' local counsel had several communications during the week of August 6, but these communications did not involve the specifics of the production.

[5]  In the Motion, Plaintiff questions the usefulness of this index and key.  Motion at p. 9 n. 2.  Obviously, one must first attempt to use the index and key while inspecting the documents prior to questioning their usefulness.  Since forwarding this index to counsel for Plaintiff on August 7, the index and key has been revised.  The revised index and key will be provided to counsel for Plaintiff if Plaintiff ever reviews the productions or if counsel ever requests the revised key and index.

available for inspection.[6]  *Id*.  First Funds again reminded Plaintiff that the hard copy documents had been produced and confirmed that Plaintiff had made **no attempt** to schedule an inspection of the production.  *Id*.

On August 10, 2007, First Funds served on Plaintiff the hard copy documents addressed in its August 7, 2007 e-mail to Plaintiff.  (*See* Graham E. Sutliff letter to Michael N. Edelman dated August 10, 2007, attached hereto as Exhibit O).  First Funds also informed Plaintiff that the majority of its electronically stored information was also being produced on August 10, 2007.  (*See* Graham E. Sutliff letter to Shaneé Williams (sent via e-mail at 6:33 p.m. CDT) dated August 10, 2007, attached hereto as Exhibit P).  First Funds' notified Plaintiff that the production of its Microsoft Exchange electronically stored information would be produced in the very near future.  *Id*.  First Funds informed Plaintiff that it was producing its electronically stored information on a rolling basis in an effort to give Plaintiff immediate access to the electronically stored information that was ready for production.  *Id*.

**After** First Funds produced the vast majority of its hard copy production and **after** First Funds served documents on Plaintiff, Plaintiff still filed its Motion and represented to the Court that "First Funds ha[d] not produced a single document to AdvanceMe."  Motion at p. 1.

At almost the same time that First Funds informed Plaintiff of the production of the vast majority of its electronically stored information production (Exhibit P), Plaintiff filed the current Motion for Sanctions, claiming that "First Funds has only stated that [the electronic] document production will commence soon and will be produced on a 'rolling

---

[6]  Certain documents were served on Plaintiff due to the fact that the documents were not kept in the ordinary course of First Funds' business in First Funds' filing cabinets.

basis.'" Motion at 1.  Of course, this statement is not true, and presumably could have been prevented had Plaintiff abided by the Local Rules and conferred with First Funds prior to filing the Motion for Sanctions seeking the most severe sanction.

Plaintiff claims that it met and conferred with First Funds prior to filing this Motion.  Motion at p. 16.  Apparently, counsel's basis for this questionable certification was a letter that Plaintiff's local counsel sent to First Funds' local counsel (not copying any other attorneys, much less the attorney who was intimately involved with First Funds' document production).  Motion at Exhibit K.  But despite Plaintiff's representation that the letter was sent, it was never received by Mr. McSwane.  (*See* Declaration of Doug McSwane, attached hereto as Exhibit Q).  Even if this letter was sent and even if it was received (it was not), such a letter does not satisfy a litigant's duty to **meet** and confer with the other side prior to filing a motion seeking severe sanctions, and it certainly does not amount to a good faith effort to resolve the dispute without Court involvement.

Four days **after** Plaintiff filed its Motion, Plaintiff informed counsel for First Funds **for the first time** that it intended to inspect First Funds' production.  (*See* Robert C. Matz letter to Graham E. Sutliff dated August 14, 2007 (sent via e-mail at 11:37 a.m. CDT), attached hereto as Exhibit R).[7]  Despite the fact that First Funds previously requested at least three days notice for Plaintiff's inspection of the production, Plaintiff provided First Funds less than 24 hours of advance notice.  Nevertheless, First Funds informed Plaintiff that it would accommodate its request if Plaintiff would confirm

---

[7] Plaintiff apparently now concedes that First Funds' method of production is in conformance with both the Federal Rules of Civil Procedure and the Order.  Unfortunately, Plaintiff did not refrain from burdening this Court with a motion for sanctions before it made this concession.  Such a concession moots Plaintiff's Motion altogether.

that it would definitely be traveling to New York. (S*ee* Graham E. Sutliff e-mail to Robert C. Matz dated August 14, 2007, at 12:21 p.m. CDT, attached hereto as Exhibit S); (s*ee also* Graham E. Sutliff letter to Robert C. Matz dated August 14, 2007, attached hereto as Exhibit T). Counsel for Plaintiff confirmed that he would be inspecting the documents at First Funds' offices on August 15, 2007. (*See* Robert C. Matz e-mail to Graham E. Sutliff dated August 14, 2007, at 12:27 p.m. CDT, attached hereto as Exhibit U). As a result, counsel for First Funds, Floyd Walker, flew to New York on the 5:08 p.m. CDT flight. (Exhibit B at ¶ 9).

Minutes after Mr. Walker landed in New York, Plaintiff notified First Funds that it no longer intended to review the documents despite its numerous representations to the contrary. *Id.* at ¶ 11. (*see also* Graham E. Sutliff e-mail to Robert C. Matz dated August 14, 2007, at 9:29 p.m. CDT, attached hereto as Exhibit V). Obviously, Plaintiff's shenanigans resulted in unnecessary expenses for First Funds. (Exhibit B at ¶ 9).

On August 14, 2007, Defendants served damages related documents on Plaintiff. (*See* Graham E. Sutliff letter to Michael N. Edelman dated August 14, 2007, attached hereto as Exhibit W).[8] Additionally, on August 15, 2007, First Funds informed Plaintiff that the majority of its Microsoft Exchange production was also being produced. (*See* Graham E. Sutliff letter to Shaneé Williams dated August 15, 2007, attached hereto as Exhibit X).

It is clear that First Funds has made every effort to comply with the Court's Order. It is also clear that Plaintiff has no intention of reviewing First Funds' document

---

[8]  First Funds explained that the documents produced constituted a representative set of some of the documents that were produced on August 10, 2007.

productions.  Rather, Plaintiff has engaged in its common litigation tactic, which creates

unnecessary work, results in unnecessary expenses, and wastes judicial resources.

### Argument and Authorities

Not surprisingly absent from Plaintiff's Motion is case law to support its

position.[9]  This is because the case law does not support Plaintiff's position.  The legal

issues presented in Plaintiff's Motion are: (1) whether making documents available for

inspection as they are kept in the ordinary course of business amounts to a "production"

under Federal Rule of Civil Procedure 34 and the Court's Order; and (2) whether the

producing party bears the copying costs associated with its production.  But before these

two issues are addressed via consistent case law rejecting Plaintiff's position, it is

important to clear up yet another misrepresentation made by Plaintiff.

**A.**     **First Funds' filing cabinets were searched prior to the production and First Funds made every effort to produce the documents as quickly and efficiently as possible.**

Prior to the hard copy production, First Funds' employees and counsel for First

Funds searched First Funds' filing cabinets in an effort to determine which filing cabinets

contained documents responsive to the Court's Order. (*See* Exhibit B at ¶ 5.)  As a result

of this search, counsel for First Funds eliminated 21 filing cabinets from First Funds'

production.  *Id*.  These filing cabinets were removed from the production based on the

fact that they were clearly not responsive to the Court's Order or they merely contained

duplicative documents.  *Id*.  Plaintiff's counsel was notified of the specifics of this search.

*Id*.

---

[9] In fact, the two cases cited by Plaintiff actually support First Funds' position.  *Residential Constructors, LLC v. Ace Prop. and Casualty Ins. Co.* recognizes that making documents available for inspection as they are kept in the ordinary course of business constitutes a production under Federal Rule of Civil Procedure 34.  No. 2:05-CV-01318-BES-GWF, 2006 WL 1582122, *2 (D. Nev. June 5, 2006).  *Wagner v. Dryvit Sys., Inc.* recognizes the same.  208 F.R.D. 606, 610-11 (D. Neb. 2001).

Additionally, First Funds met with three e-discovery vendors to discuss the possibility of engaging them for the electronically stored information ("ESI") production. These e-discovery vendors provided the following three cost estimates to First Funds: $1,090,000.00, $509,000.00, and $410,629.00.  *Id*. at ¶¶ 4 and 7.  First Funds also met with two other vendors in an effort to provide Plaintiff with a cost estimate of copying charges.  *Id*. at ¶ 6.  First Funds was quoted the following cost estimates for charges relating to copying the production: $121,800.00 and $140,070.00.  *Id*.  Counsel for First Funds also participated in at least 10 separate meetings with individuals associated with First Funds' IT department in an effort to prepare the responsive electronically stored information for production.  *Id*. at ¶ 8.  It is clear that First Funds was taking very active steps to prepare its documents for production, regardless of what Plaintiff might have this Court believe.

First Funds made every effort to assist Plaintiff in its review of the production. First Funds provided Plaintiff an index in an attempt to help Plaintiff understand the organization of the production.  First Funds further offered to make an employee available to Plaintiff in the event Plaintiff had any questions regarding the document production's organization.

In its Motion, Plaintiff repeatedly mischaracterizes the production of documents that Plaintiff has not even seen.[10]  Moreover, Plaintiff misrepresents to this Court that First Funds did not search its filing cabinets in an effort to produce relevant documents in

---

[10]  Plaintiff's attempt to compare this production to First Funds' 2006 production is far more than a stretch. First Funds was sanctioned for its 2006 production, in part, because it did not make enough of its filing cabinets available for inspection.  In the current Motion, Plaintiff's position seems to be that First Funds' is making too many of its filing cabinets available for inspection.  Plaintiff is now arguing that First Funds should be sanctioned because it allegedly did not pick and choose which documents to make available.  Of course, Plaintiff previously advocated that First Funds should be sanctioned for "picking and choosing."

response to the Order. Plaintiff was repeatedly told that such a search was conducted, and in fact, First Funds was able to cut the amount of filing cabinets in half based on the fact that some filing cabinets only contained documents relating to overhead expenses and many filing cabinets contained duplicative documents. *See* Exhibit L.

Plaintiff's attempt to have this Court believe that First Funds and its counsel did not take the necessary steps to comply with the Order should be rejected. The facts demand this result.

**B.    Making documents available for inspection amounts to a "production" under Federal Rule of Civil Procedure 34 and the Order.**

"Nothing in the Federal Rules of Civil Procedure in general, and nothing in those rules relating to discovery in particular *require service* of documents on the adversaries." *Mirak v. McGhan Med. Corp.*, 142 F.R.D. 34, 39 (D. Mass. 1992) (emphasis in original). Federal Rule of Civil Procedure 34(b) permits a party producing documents to choose one of two methods for production – either by serving the documents on the requesting party, organized by request, or by allowing inspection of the requested documents, organized as they are kept in the normal course of business. *McCall v. Lockheed Martin Corp.*, No. 4:04CV122LP, 2006 WL 1751796, *2 (S.D. Miss. 2006); 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure, § 2213 (3d ed. 2007). Rule 34 leaves it to the producing party to decide how it will produce its records, so long as the records have not been maintained in bad faith. *Rowlin v. Ala. Dept. of Pub. Safety*, 200 F.R.D. 459, 462 (M.D. Ala. 2001); *CP Solutions PTE, Ltd. v. Gen. Elec. Co.*, No. 3:04CV2150, 2006 WL 1272615, at *3 (D. Conn. 2006) ("Rule 34(b) clearly provides two alternative options for complying with a document production request."); *In re Adelphia Commc'n Corp.*, 338 B.R. 546, 552-53 (Bankr. S.D.N.Y. 2005)

(access to warehoused boxes of documents kept in ordinary course of business satisfied Rule 34).

The volume of the production is irrelevant to a Rule 34 analysis as long as documents are made available for inspection in good faith as they are kept in the ordinary course of business. *See In re G-I Holdings*, 218 F.R.D. 428, 439-40 (D. N.J. 2003) (where documents were made available for inspection as kept in the ordinary course of business, requesting party's objection to the volume of the production was irrelevant). *Renda Marine, Inc. v. United States*, 58 Fed. Cl. 57, 64 (Fed. Cl. 2003) ("[party's] objection to the production [for inspection] of requested documents based on the volume alone is insufficient to trigger relief from the court"); *DCA Inc. v. Resorts Intern. Inc. of N.J.*, No. 88-6644, 1989 WL 138846, *1 (E.D. Pa. 1989) (although "materials may not have been arranged in the order which plaintiff wished them to be," Rule 34 was satisfied where documents were made available for inspection "in the manner in which they were maintained during the usual course of business").

## C.    The requesting party must bear the copying costs.

Furthermore, Rule 34 contains no requirement that the producing party provide the requesting party with copies. *Monarch Ins. Co. of Ohio v. Spach*, 281 F.2d 401, 413 n.30 (5th Cir. 1960); *Border Collie Rescue Inc. v. Ryan*, No. 3:04-CV-568-J32HTS, 2005 WL 307660, at *1 (M.D. Fla. 2005) ("The Rule places no obligation on the party receiving the request to copy documents for the requestor.") 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2213 (3d ed. 2007) ( "However the documents are organized for production, the party who has made them available for inspection need not itself make copies for the use of the

discovering party."). Moreover, where the producing party makes originals available for inspection, the cost of any copies falls on the requesting party. *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 619-20 (D. Kan. 2005) (plaintiff required to pay cost of copying and shipping documents if it refused to inspect them as kept in the ordinary course of defendant's business); *Williams v. Taser Intern., Inc.*, No. 1:06-CV-0051-RWS, 2006 WL 1835437, at *6 (N.D. Ga. 2006) (same); *Dew v. 39th Street Realty*, No. 99 Civ. 12343, 2001 WL 388053, at *1 (S.D.N.Y. Apr. 16, 2001) (responding party is only required to produce original documents for the requesting party's inspection, to be copied at the requesting party's cost); *Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293, 297 (W.D.N.Y.1996) ("Rule 34 allows the plaintiff 'to inspect and copy' relevant documents and does not require a responding party to pay for copying costs of voluminous materials.").

**D.**    **The Court DENIED Plaintiff's previous request for First Funds to bear all costs associated with its production.**

Plaintiff previously requested that First Funds' production be made at First Funds' expense: "All of this discovery should be at First Funds' expense." (Docket Entry no. 132 at p. 20). The Court **denied** this request: "All additional relief requested is **DENIED**." (Docket Entry No. 151 at p. 13) (emphasis in original); (*see also* Transcript from June 27, 2007 Hearing, at p. 70:1-2, attached hereto as Exhibit Y) ("The additional relief requested is **denied**.") (emphasis added). Plaintiff's attempt to shift the burden of production costs to First Funds, which is in direct contradiction to both the relevant case law and the Order, should once again be rejected.

**E.     Plaintiff has previously demanded that Defendants bear the costs relating to Defendants' production requests despite Plaintiff's representation to the contrary.**

AdvanceMe surprisingly claims that it has never requested that First Funds pay costs associated with production sought by Defendants.  Motion at p. 13.[11]  This is simply not true.  Plaintiff previously refused to produce relevant information contained on back-up tapes on the basis of cost.  (*See* Robert C. Matz letter to Willem Schuurman and Joseph D. Gray dated September 30, 2006, at p. 2, attached hereto as Exhibit Z).  Plaintiff refused to produce the relevant information **unless Defendants agreed to pay the costs associated with the production.**  *Id.*[12]

**F.     The negotiations regarding the Amended Docket Control Order had nothing to do with the deadline for fact discovery.**

Plaintiff's apparent attempt to mislead the Court in asserting that the negotiations over the Amended Docket Control Order between the parties was a sham is unfounded.  The negotiations had nothing to do with the date for the close of fact discovery – a date which Defendants previously moved to extend and which Plaintiff's vehemently opposed.  The close of fact discovery was determined on July 16, 2007, via this Court's Order.  (*See* Docket Entry No. 160.)  It was not subject to negotiation.

Only **after** this order was entered, did the parties begin negotiating with respect to other aspects relating to the Amended Docket Control Order (*e.g.*, expert discovery deadline, *etc.*).  (*See* Docket Entry No. 164)  Because First Funds had not yet produced additional documents, **First Funds agreed** to allow Plaintiff to take the depositions of

---

[11]   Plaintiff specifically refers to copying costs, but copying costs are certainly encompassed in costs associated with production.

[12]   Contrary to Plaintiff's position in September 2006, First Funds has not refused to make a production based on costs.

certain individuals **outside of the discovery period**. (*See* Joseph D. Gray e-mail to Michael N. Edelman dated July 26, 2007, attached hereto as Exhibit AA). Plaintiff attempts to characterize these negotiations as a "sham" without regard to the substance of the actual negotiations, which had nothing to do with moving the deadline for fact discovery.

**G.    The documents produced are responsive to the Order.**

Plaintiff makes no attempt to claim that the documents produced in First Funds' hard copy production are not responsive to the Order. As indicated by the index provided to Plaintiff, the following categories certainly relate to the operation of First Funds' cash advance business: (1) approved merchant applications; (2) dead files/incomplete applications for longer than three months; (3) declined merchant applications; (4) pre-approved/incomplete approved merchant applications; (5) contract/approved contracts, awaiting batches; (6) signed vendor and processor agreements; (7) ACH reports; and (8) declined deals prior to December 1, 2006.

Nor does Plaintiff claim that documents relating to First Funds' electronic document production from First Funds' network file servers containing information from individual employees, departmental shares and financial systems are not responsive to the Court's Order.

Rather, in its Motion, Plaintiff complains about the volume of a production that it did not even take the time to inspect.[13] Rather than inspecting any of First Funds' document productions, Plaintiff chose to embark in unfounded and wasteful motions practice (prior to meeting and conferring with counsel for First Funds) in an attempt to

---

[13]   In its Motion, Plaintiff mischaracterizes the production, which it has not even seen, as a "dump." Motion at p. 6. But Plaintiff fails to recognize that its request for a production of every document relating to First Funds' business will result in the production of a large volume of documents.

back-door a finding of infringement on a process that Plaintiff presumably knows does not infringe.  Unfortunately for Plaintiff, the law is clearly contrary to its position.

**H.     Plaintiff waited until after it filed its Motion to even attempt to inspect the productions.**

Four days after it filed its Motion and the same day that this Court held that Plaintiff's patent was **invalid,** Plaintiff notified First Funds that it intended to inspect First Funds' document productions.  Despite the fact that it was given less than 24 hours notice, First Funds' notified Plaintiff that it would make arrangements to accommodate such a last minute inspection.  As explained above, it appears Plaintiff never had any intention of reviewing the productions.  Rather, Plaintiff just wanted First Funds to waste time and money in accommodating Plaintiff's last minute feigned request.  First Funds certainly did.

One must question why Plaintiff would file the Motion, which seeks severe sanctions, prior to even inspecting the production and then request to inspect the production.  It is obvious that Plaintiff put the cart before the horse.  In any event, the fact that Plaintiff indicated that it intended to inspect the production should resolve the issues Plaintiff complains about in its Motion.  One must also question why Plaintiff would represent to First Funds that it wanted to inspect the production, knowing that First Funds was flying its counsel to New York to accommodate the last minute request, and then cancel the inspection minutes after First Funds' counsel arrived in New York.  Plaintiff's games must stop.

**I.    Plaintiff has no support for its contention that a discovery violation has occurred much less any support for its argument that the most severe sanctions are warranted.**

Plaintiff's Motion does not even bother to address the applicable case law relating to the severe sanctions that it asks this Court to impose.    Sanctions under the courts' inherent power "must be used with great restraint and caution."    *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.,* 86 F.3d 464, 467 (5th Cir. 1996).    "The threshold for the use of the inherent power sanction is high.    Such powers may be exercised only if essential to preserve the authority of the court and the sanction chosen must employ the least possible power adequate to the end proposed."    *Id.* (internal citations omitted).    Several factors should be considered when determining whether sanctions under either the courts' inherent power or under Federal Rule of Civil Procedure 37 are appropriate:  (1) willfulness or bad faith by a party; (2) a clear record of delay; (3) substantial prejudice to the opposing party; and (4) whether a lesser sanction would not be appropriate. *Tobias v. Davidson Plywood,* No. 9:06-CV-163, __F.R.D. __, 2007 WL 974106, at *3 (E.D. Tex. Mar. 30, 2007).    Plaintiff has utterly failed to establish that any of these factors are applicable to the case at hand.

But that does not stop Plaintiff from requesting the most severe sanction possible – "the issuance of an order precluding First Funds from contending or presenting any evidence that its ACH process flow does not infringe the '281 Patent." Motion at p. 14. To impose such a severe sanction, Plaintiff would have to provide this Court with a strong basis for doing so.  Plaintiff's Motion utterly fails to provide this Court with any basis for doing so.

## **Conclusion**

It is abundantly clear that Plaintiff had no intention of reviewing First Funds' document productions.  Instead, Plaintiff chose to mischaracterize the production (which, until yesterday, it made no "effort" to inspect) in an attempt to obtain a verdict that it presumably knows it is not entitled to.

The overwhelming case law and the events leading up to Plaintiff's Motion clearly support First Funds' position.  For the foregoing reasons, First Funds' respectfully requests that Plaintiff's Motion be denied in its entirely.  First Funds respectfully requests that this Court instruct Plaintiff to cease the filing of baseless motions for sanctions.  First Funds respectfully requests reimbursement from Plaintiff for the costs associated with the travel, lodging, and attorney time resulting from Plaintiff's feigned request on August 14, 2007, for an inspection.  First Funds further respectfully requests a finding that it has fully complied with the Court's previous Order, and an order finding that Plaintiff is no longer allowed access to First Funds' productions.  First Funds further respectfully requests reimbursement from Plaintiff for all fees and costs associated with filing this Response, which could have presumably been avoided with a proper meet and confer prior to the filing of the Motion.

First Funds' further respectfully requests any other relief that it may be entitled to.

Respectfully submitted,


Dated: August 15, 2007                            BY: /s/ Graham E. Sutliff

                                      Willem G. Schuurman
                                        Texas State Bar No. 17855200
Brian K. Buss
Texas State Bar No. 00798089
Hilary Preston
Admitted Pro Hac Vice
Joseph D. Gray
Texas State Bar No. 24045970
Graham E. Sutliff
Texas State Bar No. 24046935
R. Floyd Walker
Texas State Bar No. 24044751
VINSON & ELKINS L.L.P.
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Phone: (512) 542-8400
Fax: (512) 236-3476

    - and –

Douglas McSwane
Texas State Bar No. 13861300
J. Matt Rowan
Texas State Bar No. 24033137
POTTER MINTON, P.C.
110 North College
500 Plaza Tower
Tyler, Texas 75702
Phone: (903) 597-8311
Fax: (903) 593-0846

*ATTORNEYS FOR
DEFENDANT FIRST FUNDS,
LLC*

## <u>CERTIFICATE OF SERVICE</u>

     The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by First Class Mail on this the 15th day of August, 2007.

     In addition, the following counsel are being served a copy via hand delivery on this 15th day of August, 2007:

Otis Carroll
Deborah Race
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703

                              /s/  Graham E. Sutliff
                              Graham E. Sutliff